**2014-1718**

# United States Court of Appeals
# for the Federal Circuit

R&L CARRIERS, INC.,

*Plaintiff-Appellant,*

*v.*

QUALCOMM, INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Southern District of Ohio in Case No. 1:09-cv-00445-SSB, Sandra S. Beckwith Senior Judge*

## JOINT APPENDIX

Anthony C. White, Esq.
Philip B. Sineneng, Esq.
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, OH  43215
(614) 469-3200

Stephen J. Butler, Esq.
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45202
(513) 352-6587

Megan D. Dortenzo, Esq.
Arthur P. Licygiewicz, Esq.
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
(216) 566-5500

*Counsel for Plaintiff-Appellant*
*R+L Carriers, Inc.*

Jonathan S. Franklin, Esq.
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 662-0466

Sheila Kadura, Esq.
FULBRIGHT & JAWORSKI LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
(512) 474-5201

J. Derek Vandenburgh, Esq.
Douglas J. Williams, Esq.
CARLSON, CASPERS, VANDENBURGH,
LINDQUIST & SCHUMAN P.A.
225 South Sixth, Suite 4200
Minneapolis, MN 55402
(612) 436-9600

*Counsel for Defendant-Appellee*
*Qualcomm, Inc.*

JANUARY 26, 2015

*Counsel continued inside.*

*Counsel Continued*

Richard S. Zembek, Esq.
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010
713-651-5151

*Counsel for Defendant-Appellee*
*Qualcomm, Inc.*

## UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT
R+L Carriers, Inc. v. Qualcomm, Inc., No. 2014-1718
*(On Appeal from the United States District Court for the Southern District of Ohio in Case No. 1:09-MD-2050-SSB-SKB, Sandra S. Beckwith, Senior Judge)*

## APPENDIX
## <u>TABLE OF CONTENTS</u>

| Docket No. | Date Filed | Document Description | Appendix No |
|------------|------------|---------------------|-------------|
| 372 | 05/19/2014 | Order | A1-13 |
| 379 | 08/12/2014 | Agreed Entry of Final Judgment as to Qualcomm | A14 -16 |
| 000 | | Docket Sheets | A17-96 |
| 068.2 | 12/01/2009 | Qualcomm's Memorandum of Law in Support of its Motion to Dismiss | A110, A114 |
| 068.4 | 12/01/2009 | Exhibit 2 – U.S. Patent No. 6,401,078 | A136-152 |
| 123.2 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit B – In-Cab Scanning from Qualcomm Website | A425-426 |
| 123.3 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit C – Qualcomm Announces In-Cab Scanning Service | A428-429 |
| 123.6 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit F – Qualcomm Transportation Services Delivered on the MCP100 Series, Will Drive Your Fleet Efficiency and Safety into the Future | A437, A439 |

| Docket No. | Date Filed | Document Description | Appendix No |
|---|---|---|---|
| 123.8 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit H – Qualcomm Transportation Services Delivered on the MCP200 Series, Will Drive Your Fleet Efficiency, Safety and Customer Service into the Future | A445, A447 |
| 123.10 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit J – Web pages from Qualcomm's Website | A454, A456 |
| 123.11 | 04/06/2010 | R+L's Amended Complaint Against Qualcomm Exhibit K – OmniTRACS System for Transportation | A457-458 |
| 142 | 04/27/2010 | Defendants' Joint Motions to Dismiss Amended Complaint with Memorandum in Support | A529 |
| 162 | 07/15/2010 | Order Granting Defendants' Joint Motions to Dismiss Amended Complaint | A850-894 |
| 237 | 08/17/2011 | Pitt Ohio's Motion for Claim Construction With Memorandum in Support | A898, A922-923 |
| 238 | 08/17/2011 | R+L's Opening Claim Construction Brief | A953, A972-973 |
| 244 | 09/19/2011 | R+L's Response to Pitt Ohio's Opening Claim Construction Brief | A1130, A1141-1142 |
| 257 | 12/13/2011 | Order Granting Pitt Ohio's Motion for Summary Judgment | A1181-1193 |
| 274 | 06/11/2012 | Federal Circuit's Decision Reversing District Court's Order That Granted Defendants' Joint Motions to Dismiss Amended Complaint | A1194 |

| Docket No. | Date Filed | Document Description | Appendix No |
|---|---|---|---|
| 325.2 | 06/07/2013 | Exhibit 1 – '078 File Wrapper (Part 2) | A1409, A1434-1443 |
| 325.41 | 06/07/2013 | Exhibit 25 – Excerpt from Blacks Law Dictionary (6th ed. 1990) | A2773-2779 |
| 325.42 | 06/07/2013 | Exhibit 26 – Excerpt from Illustrated Dictionary of Cargo Handling (2nd ed. 1996) | A2780 |
| 325.43 | 06/07/2013 | Exhibit 27 – Excerpt from Dictionary of International Trade (1994) | A2781 |
| 326.1 | 06/07/2013 | Joint Claim Construction and Prehearing Statement Exhibit A – Joint Disputed Claim Terms Chart | A2787 |
| 344.1 | 12/18/2013 | Exhibit A – PTO's First Office Action (December 12, 2013) | A2919-2949 |
| 348 | 12/31/2013 | Order on Claim Construction | A2950-2971 |
| 358.1 | 02/26/2014 | R+L's Notice of PTO's Action Exhibit A – Notice of Intent to Issue Reexamination Certificate | A3082, A3088 |
| 359 | 02/27/2014 | Order Requiring Briefing of the Effect of PTO's Action | A3091 |
| 361.6 | 03/03/2014 | Defendants' Supplemental Brief Related to R+L's Motion to Stay Exhibit 6 – Summary of Examiner Interview | A3193-3195 |
| 361.7 | 03/03/2014 | Defendants' Supplemental Brief Related to R+L's Motion to Stay Exhibit 7 – Ex Parte Reexamination Interview Summary | A3196-3198 |

| Docket No. | Date Filed | Document Description | Appendix No |
|---|---|---|---|
| 361.9 | 03/03/2014 | Defendants' Supplemental Brief Related to R+L's Motion to Stay Exhibit 9 – R+L's Remarks on Reexamination | A3207-3220 |
| 362.3 | 03/07/2014 | R+L's Reply to Defendants' Supplemental Brief Related to R+L's Motion to Stay Exhibit C – Defendants' Invalidity Contentions (Served Jan. 15, 2013) | A3233 |
| 366 | 04/14/2014 | Defendants' and Declaratory Judgment Plaintiffs' Brief Regarding the Substantive Changes to and Impermissible Amendment of the Asserted Claims | A3273-3295 |
| 366.4 | 04/14/2014 | Exhibit 4 – R+L's Reply to Office Action of March 9, 2009 | A3296, A3306 |
| 367 | 04/14/2014 | R+L's Brief on Claim Amendments to '078 Patent | A3327-3343 |
| 367.3 | 04/14/2014 | Exhibit C – Ex Parte Reexamination Certificate | A3344-3346 |
| 367.6 | 04/14/2014 | Appendix B – Intrinsic Support for '078 Claim 1 Amendment: *Advanced + Document + On Another Transporting Vehicle* | A3352-3354 |
| 368 | 04/30/2014 | Defendants' and Declaratory Judgment Plaintiffs' Reply Brief  Regarding the Substantive Changes to and Impermissible Amendment of the Asserted Claims | A3355-3374 |
| 369 | 04/30/2014 | R+L's Supplemental Brief in Support of Its Brief on Claim Amendments to '078 Patent | A3774-3795 |
| 372 | 05/19/2014 | Order Finding that R+L Narrowed Claim 1 During Reexamination | A3812-3824 |

| Docket No. | Date Filed | Document Description | Appendix No |
|---|---|---|---|
| 376 | 08/01/2014 | Joint Motion for Agreed Entry of Judgment Under Fed. R. Civ. P. 54(b) | A3825-3830 |
| 376.1 | 08/01/2014 | Exhibit A – Declaration of James E. Hoffmann | A3832-3834 |
| 379 | 08/12/2014 | Agreed Entry of Final Judgment Dismissing R+L's Claims against Qualcomm | A3841-3842 |
| 382 | 08/12/2014 | R+L's Notice of Appeal of Agreed Judgment | A3844 |
| 265 | 03/06/2012 | Order | A3852-3874 |
| 273 | 06/06/2012 | Order | A3875-3883 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. _____ | : : : : | MDL Docket No. 1:09-md-2050 |

**O R D E R**

This matter is before the Court on its sua sponte order directing the parties to brief the effect, if any, on this lawsuit of the Patent & Trademark Office's ("PTO") decision to allow amended claim 1 at the conclusion of the ex parte reexamination of the patent-in-suit.  Doc. No. 359.  The parties filed principal briefs on the question presented by the Court on April 14, 2014 and responsive briefs on April 30, 2014.  (Doc. Nos. 366-369).  Accordingly, the question presented by the Court is ripe for decision. For the reasons that follow, the Court concludes that the reexamination proceedings resulted in a narrowing of claim 1, thereby precluding recovery of damages for infringement prior to the date the PTO issued the reexamination certificate.  The Court concludes further, however, that the scope of claim 1 was not broadened during the reexamination proceedings.  Consequently, claim 1 is not invalid on the grounds that it was impermissibly enlarged during those proceedings.

I. Introduction

A redundant but necessary introduction - Plaintiff R+L Carriers, Inc. is the owner of U.S. Patent 6,401,078 ("the '078 Patent") with an original issue date of June 4, 2002.

A1

Generally speaking, the '078 Patent claims a method for transmitting bills of lading to improve the efficiency of less-than-a-load trucking operations.

Claim 1 is the only independent claim of the '078 Patent.  As originally issued claim 1 stated:

> 1. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:
>
> placing a package on a transporting vehicle;
>
> using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;
>
> providing a portable image processor capable of wirelessly transmitting the image from the transporting vehicle;
>
> wirelessly sending the image to a remote processing center;
>
> receiving the image at said remote processing center; and
>
> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

'078 Patent col. 13, ll. 40-48, col. 14, ll. 1-12.

Currently pending before the Court are claims concerning alleged direct and induced infringement of the '078 Patent.  In June 2013, Plaintiff applied to the PTO for ex parte reexamination the '078 Patent on the grounds that several prior art references raised substantial new questions of patentability of the patent.  In August 2013, the PTO granted the application for reexamination and in December 2013 issued a First Office Action rejecting claims 1 through 9 of the '078 Patent as either being anticipated by the prior art references or obvious in light of the prior art references.

Plaintiff contested the First Office Action but, after concluding an in-person

-2-

A2

interview with the patent examiner, amended claim 1 as follows (amendments

italicized):

> 1. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center *comprising the steps of:*
>
> placing a package on a transporting vehicle;
>
> using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;
>
> providing a portable image processor capable of wirelessly transmitting the image from the transporting vehicle;
>
> wirelessly sending the image to a remote processing center;
>
> receiving the image at said remote processing center; and
>
> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare [a] *an advance* loading manifest *document for another transporting vehicle* which includes said package for further transport of the package on another transporting vehicle.

<u>See</u> Doc. No. 367-3 (Reexamination Certificate).  As can be seen, Plaintiff amended the

'078 Patent by adding "comprising the steps of" as a transitional phrase in the preamble,

by changing "a loading manifest" to "an advance loading manifest document," and by

inserting the phrase "for another transporting vehicle" after "advance loading manifest

document."  The PTO concluded that as a result of these amendments, the '078 Patent

was not anticipated by or obvious in light of the cited prior art references.  The PTO

issued an Intent to Issue Reexamination Certificate confirming claims 1-9 as amended

on February 26, 2014.  The PTO issued the Reexamination Certificate on March 21,

2014.

Because the ex parte reexamination proceedings potentially altered the scope of

-3-

A3

the claims of the patent-in-suit, with a consequent effect on the infringement and

invalidity claims at issue in this case, the Court sua sponte ordered the parties to brief

the effect, if any, of the amended claims on this case.

II. <u>Plaintiff Narrowed Claim 1 by Amending</u>
<u>"Loading Manifest" to "Advance Loading Manifest Document"</u>

Title 35, Section 252 of the United States Code provides that when reexamined

or reissued claims are identical to those of the original patent, they shall "have effect

continuously from the date of the original patent."  If, however, a patentee narrows a

claim during patent reexamination proceedings, he is precluded from recovering

damages for infringement prior to the effective date of the amended claim.  <u>Bloom Eng'g</u>

<u>Co., Inc. v. North Am. Mfg. Co., Inc.</u>, 129 F.3d 1247, 1250 (Fed. Cir. 1997); <u>Fresenius</u>

<u>USA, Inc. v. Baxter Int'l, Inc.</u>, 721 F.3d 1330, 1339 (Fed. Cir. 2013). "Unless a claim

granted or confirmed upon reexamination is identical to an original claim, the patent can

not be enforced against infringing activity that occurred before issuance of the

reexamination certificate." <u>Bloom Eng'g</u>, 129 F.3d at 1250.  The <u>Bloom Engineering</u>

Court explained further the process for determining when an amended claim is identical

to the original claim:

> "Identical" does not mean verbatim, but means at most without substantive
> change. . . [T]he scope of the claims must be the same after reissue, not that the
> same words must be used. Thus whether amendments made to overcome
> rejections based on prior art are substantive depends on the nature and scope of
> the amendments, with due consideration to the facts in any given case that
> justice will be done.
>
> There is no absolute rule for determining whether an amended claim is legally
> identical to an original claim.  An amendment that clarifies the text of the claim or
> makes it more definite without affecting its scope is generally viewed as identical
> for the purpose of § 252.  Determination of whether a claim change during
> reexamination is substantive requires analysis of the scope of the original and

-4-

A4

reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information.

Id. (some quotation marks and internal citations omitted).

In this case, the parties agree that the term "advance loading manifest document" is limited to loading manifests that are created or prepared by computer load planning software. Indeed, that definition is specifically mentioned in the specification of the patent. See '078 Patent, col. 7, ll. 48-50 ("Advance loading manifests are documents generated by the load planning software[.]"). Defendants argue that Plaintiff narrowed the scope of claim 1 by amending it to "advance loading manifest document" because as originally issued, the term "loading manifest" in claim 1 was broad enough to cover both manually prepared loading manifests and loading manifests prepared by computer load planning software. Plaintiff, however, contends that the term "loading manifest" in original claim 1 was always limited to covering loading manifests prepared by computer load planning software and that the amendment of claim 1 to "advance loading manifest document" was made simply to clarify that point. See Doc. No. 369, at 14 (Plaintiff's Reply Brief) (rejecting Defendants' argument that "the loading manifest described in original claim 1 could be generated by a human without using software."); see also id. ("Over and over again, the specification teaches that these loading manifests were always prepared using computer software[.]"). According to Plaintiff, this amendment did not result in a substantive change to claim 1. The Court concludes, however, that the scope of "advance loading manifest document" in amended claim 1 is narrower than the scope of "loading manifest" in original claim 1.

First, the plain language of original claim 1 puts no limitation on the means by

A5

which a person practicing the method can prepare a loading manifest.  Rather, claim 1

states that a person practicing the method performs the last step by "*utilizing* said

documentation data at said remote processing center to prepare a loading manifest

which includes said package for further transport of the package on another transporting

vehicle." '078 Patent, col. 14, ll. 7-12 (emphasis added).  To "utilize" something is to

"make use of" it.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2525 (1971).   In

other words, the last step of original claim 1 only requires a person practicing the patent

to use the documentation data to prepare a loading manifest - there are no limitations

on how the documentation data is actually used to prepare the loading manifest.

Moreover, there is no indication in the specification that the patentee was giving

"utilizing" a meaning other than its ordinary meaning.

Second, the Court's claim construction of original claim 1 did not impose any

limitations on how a person practicing the patent prepares the loading manifest.  See

Doc. No. 348 (Order on Claim Construction), at 4 (defining "loading manifest" as "a

document that both identifies the cargo of a vehicle and all the packages that must be

on another transporting vehicle for further shipment.").

Third, while Plaintiff is correct that the specification of the '078 Patent is replete

with references that "an advance loading manifest document" is generated by computer

load planning software, Plaintiff is incorrect that the specification does not disclose or

teach preparing loading manifests manually.  In fact, there are several references in the

specification to manually preparing loading manifests.

Figures 1A and 1B, which are flow charts of a preferred embodiment, indicate

that load planning information is transmitted to a "*load planner* or load planning

software." '078 Patent, Figures 1A & 1B.  The Summary of the Invention states that "The load planning data is sent to a *load planner* or to load planning software[ .]" '078 Patent, col. 2, ll. 65-67 (emphasis added).  Later, the specification recites that once a document communication system extracts the load planning information from the bill of lading, the system will "transmit the required information to *either the load planner* or the billing and accounting software package."  '078 Patent, col. 5, ll. 55-56 (emphasis added).  The specification next states that an optical character reader could extract the load planning information which "would preferably then be transmitted to *the load planner* over a local area network" but to save time the information could be transmitted directly to a computer that "would run a load planning software package which would do the load consolidation and planning automatically."  '078 Patent, col. 5, ll. 57-67, col. 6, ll. 1-6 (emphasis added).  A person of ordinary skill in the art would understand that a "load planner," particularly when that term is consistently juxtaposed with terms such as "load planning software package," is a person who manually prepares the loading manifest.

The specification also indicates in several places that use of load planning software to prepare the loading manifest is optional.  The specification notes that "*If a computerized load planning system was not utilized*, a paper copy of the electronic bill of lading would be printed and given to *the load planner*."  '078 Patent, col. 6, ll. 12-15 (emphasis added).  Next, the specification states that "[t]he load planning information extracted *could be* transmitted or input into a load planning software package that could automatically build a shipping and loading plan to minimize partial loads and keep the shipments on time."  '078 Patent, col. 6, ll. 19-23 (emphasis added).  Finally, the

A7

specification states, "In practice, this system can range from a fully automatic, electronic, paper less [sic] system *to one which relies on paper and uses the system merely as a transmission device.*" '078 Patent, col. 6, ll. 27-30 (emphasis added).

In short, the specification clearly discloses that use of load planning software to prepare the loading manifest is not mandatory to practice the claimed method and that the manual preparation of loading manifests is contemplated by the method as originally claimed. Plaintiff's contention that the term "loading manifest" has always been limited to documents prepared by load planning software violates the maxim that limitations from the specification cannot be used to limit the scope of the claim. Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374 (Fed. Cir. 2008). Moreover, given the numerous references in the specification relating to the manual preparation of loading manifests, Plaintiff's argument also violates the principle that a claim construction that excludes a preferred embodiment "is rarely, if ever, correct." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996); see also Primos Inc. v. Hunter's Specialties Inc., 451 F.3d 841, 848 (Fed. Cir. 2006) ("[W]e . . . should not normally interpret a claim term to exclude a preferred embodiment.").

Fourth and finally, at least one of the prior art references considered during the reexamination proceedings discloses the manual preparation of loading manifests. Specifically, the N&M reference notes that "[f]or the first week you will have to *fill out a hand written manifest* along with faxing in your bills." Doc. No. 366-1, at 9 (emphasis added). Although the examiner was apparently considering N&M in the context of whether the loading manifest in that reference related to the current transporting vehicle or another transporting vehicle, it is reasonable to conclude that N&M also anticipated

manually prepared loading manifests and, consequently, that Plaintiff's amendment of claim 1 to "advance loading manifest document" was necessary to avoid the N&M reference.

In summary, the foregoing discussion illustrates that, as originally allowed, claim 1 of the '078 Patent covered loading manifests prepared both manually and through use of load planning software.  The term "advance loading manifest document" is narrower than "loading manifest" given the parties' agreement that an advance loading manifest document is only prepared by computerized load planning software.  Therefore, this amendment to claim 1 was substantive, meaning that amended claim 1 is not identical to original claim 1.

Accordingly, Plaintiff is precluded from recovering damages for infringement prior to the issue date of the reexamination certificate.

### III. Adding "comprising the steps of" as a Transitional Phrase to Claim 1 Did Not Broaden the Scope of the Claim

A patentee cannot enlarge the scope of a claim during reexamination proceedings.  Quantum Corp. v. Rodime, PLC, 65 F.3d 1577, 1580 (Fed. Cir. 1995).  A claim that has been enlarged in reexamination proceedings is invalid.  Id. at 1584; Thermalloy, Inc. v. Aavid Eng'g, Inc., 121 F.3d 691, 692 (Fed. Cir. 1997).  A claim has been enlarged if it includes within its scope any subject matter that would not have infringed the original claim.  Quantum Corp., 65 F.3d at 1580.

Use of the word "comprising" as a transition in the preamble of a claim signals that the claim is open-ended, meaning that it does not exclude elements or steps not specifically recited in the claim.  MagSil Corp. v. Hitachi Global Storage Tech., Inc., 687

A9

F.3d 1377, 1383 (Fed. Cir. 2012).  In other words, with an open-ended claim, an

accused method can perform additional steps and still infringe the claimed method.

Whirlpool Corp. v. LG Elec., Inc., 423 F. Supp.2d 730, 741 (W.D.Mich. 2004).  In this

case, the addition of "comprising the steps of" as a transitional phrase in the preamble

of amended claim 1 presumptively makes that claim an open-ended claim.  Magsil, 687

F3.d at 1377.  Indeed, Plaintiff does not contend otherwise.  Accordingly, the scope of

amended claim 1 is broader than the scope of the steps specifically recited in the claim.

The issue presented, therefore, is whether original claim 1 was open-ended or whether

its scope was limited to the six steps specifically recited in the claim.  If original claim 1

was not open-ended, then it was impermissibly broadened during the reexamination

process.

        Initially, the Court notes that despite considerable research on its part, it does not

appear that an interpretative default rule has ever been laid to down to establish if a

claim is open-ended, closed-ended, or partially open-ended when "comprising" is not

included in the preamble.  Nevertheless, if a claim is presumptively open-ended when

"comprising" is in the preamble, it is logical that the obverse would be true - a claim is

presumptively not open-ended when "comprising" is not included in the preamble.

Compare with Crystal Semiconductor Corp. v. TriTech Microelec. Int'l., Inc., 246 F.3d

1336, 1348 (Fed. Cir. 2001)(stating that the transition "having" can make a claim open-

ended, but that "having" does not convey the open-ended meaning as strongly as

"comprising"; therefore "having" "does not create a presumption that the body of the

claim is open.").  Accordingly, in this case, since the transition "comprising the steps of"

was not included in the preamble of original claim 1, the Court starts with the

-10-

A10

presumption that original claim 1 was not open-ended.  The Court, however, must examine original claim 1 in its "full context" to determine whether it was open-ended or limited to its recited steps.  Id.; see also Lampi Corp. v. American Power Prod., Inc., 228 F.3d 1365, 1376 (Fed. Cir. 2000) ("Transitional phrases such as 'having' must be interpreted in light of the specification to determine whether open or closed language is intended.")(quoting MPEP § 2113.03 (7th ed. rev. 2000)(internal ellipses omitted).  In light of its examination of the specification, the Court concludes that original claim 1 was open-ended.  Therefore, claim 1 was not broadened during the reexamination proceedings.

The Court agrees with Plaintiff that the specification of original claim 1 indicates that claim 1 was broad enough to cover, at a minimum, accused methods which also include a billing step.  As Plaintiff correctly observes, the specification contains many, many references to performing load planning and billing as part of the same process.  Doc. No. 369, at 7-8.  Citing a few examples, therefore, will be sufficient to illustrate the point.  Figures 1A and 1B indicate that billing information is transmitted to a billing or accounting software package.  '078 Patent, Fig. 1A & 1B.  The Background of the Invention states that the claimed method involves "transmitting shipping documents or bills of lading directly from the truck driver to a common point or terminal *so that billing and load planning* can be accomplished while the load is being delivered from the customer."  '078 Patent, col. 1, ll. 17-20 (emphasis added).  The Summary of the Invention states that billing and load planning information is extracted from the electronic bill of lading and that "the billing data is sent to the billing clerk or accounting/billing software application."  '078 Patent, col. 3, ll.1-2.  Columns 5 and 6 of

-11-

A11

the patent contain an extended discussion of methods for extracting and processing billing data from the bill of lading.  '078 Patent, cols. 5-6, <u>passim</u>.

The Court concludes that the specification of the '078 Patent indicates that original claim 1 was broader than the elements specifically recited in the claim. Therefore, Plaintiff did not impermissibly enlarge the scope of claim 1 during the reexamination proceedings.  Consequently, amended claim 1 is not invalid on the grounds that it was impermissibly broadened during reexamination.  While Defendants contend that Plaintiff admits that it used the reexamination process for an impermissible purpose by adding "comprising the steps of" to clarify claim 1, and therefore, that the amended claim is invalid, amendments that clarify the claim language or make it more definite are permissible during reexamination.  <u>Bloom Eng'g</u>, 129 F.3d at 1250.  Here, the Court agrees with Plaintiff that the addition of "comprising the steps of" to claim 1 simply made definite what was already indicated by the specification.  Defendants' motion to file an additional brief to further emphasize its argument (Doc. No. 370) is not well-taken and is **DENIED.**

-12-

A12

<u>Conclusion</u>

In conclusion, the Court finds that Plaintiff narrowed the scope of claim 1 during the reexamination proceedings.  Therefore, Defendants are entitled to judgment on infringement claims that predate the issuance of the reexamination certificate.  Plaintiff, however, did not broaden the scope of claim 1 during the reexamination proceedings. Therefore, amended claim 1 is not invalid on the grounds that it was enlarged during reexamination.

**IT IS SO ORDERED.**

Dated: May 19, 2014                        s/Sandra S. Beckwith
                                                    Sandra S. Beckwith
                                         Senior United States District Judge

-13-

A13

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | ) ) ) ) | MDL Docket No. 1:09-md-2050 |
| | ) | JUDGE BECKWITH |
| This document relates to: | ) ) ) | |
| **R+L CARRIERS, INC.** | ) ) | |
| Plaintiff, | ) ) | Case No.:  1:09-cv-445 |
| vs. | ) ) ) | **AGREED ENTRY OF FINAL JUDGMENT** |
| **QUALCOMM, INC.,** | ) ) ) | |
| Defendant. | ) ) | |

        Upon consideration of R+L Carriers, Inc. ("R+L") and Qualcomm, Inc.'s ("Qualcomm, Inc." and together with R+L, the "Parties") Joint Motion for an Agreed Entry of Final Judgment, and for other good cause shown, it is hereby ORDERED AND ADJUDGED THAT:

        (a)     the Parties' Joint Motion for an Agreed Entry of Final Judgment is GRANTED;

        (b)     all of R+L's claims against Qualcomm are DISMISSED WITH PREJUDICE, and judgment is hereby entered in favor of Qualcomm on those claims;

        (c)     judgment is hereby entered in favor of Qualcomm against R+L on Qualcomm's counterclaim of non-infringement;

        (d)     Qualcomm's counterclaim seeking a declaratory judgment of invalidity of U.S. Patent 6,401,078 is DISMISSED WITHOUT PREJUDICE as moot;

        (e)     Qualcomm's exceptional case counterclaim is DISMISSED WITHOUT PREJUDICE in view of the Court's order extending the deadline for Qualcomm to file any

A14

motion for costs, attorneys' fees, an exceptional case determination, or other relief until after the

Court of Appeals for the Federal Circuit enters its mandate on R+L's appeal of this Court's Final

Judgment, or the time has expired for filing an appeal if no appeal is filed;

(f)    any and all pending motions filed by Qualcomm are DENIED WITHOUT

PREJUDICE as moot;

(g)    this is a final and appealable judgment of non-infringement as to Qualcomm

under Fed. R. Civ. P. 54(b) entered upon an express determination that there is no just reason for

delay; and

(h)    nothing in this Agreed Entry shall preclude the Parties from taking an appropriate

appeal permitted under law of any adverse determination including, but not limited to, the

Court's May 19, 2014 Order (Docket No. 372).

SO ORDERED,

Date: _8/12/14_                           _____
                                          The Honorable Sandra S. Beckwith

Agreed to by:


_____/s/ Anthony C. White_____
Anthony C. White        (0062146)
THOMPSON HINE LLP
41 S. High Street, Suite 1700
Columbus, OH 43215-6101
Tel: (614) 469-3200; Fax: (614) 469-3361
Tony.White@ThompsonHine.com

*Counsel for Plaintiff R+L Carriers, Inc.*

2

A15

_____/s/ Richard S. Zembek_____
Richard S. Zembek
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Tel:  (713) 651-5151; Fax:  (713) 651-5246
richard.zembek@nortonrosefulbright.com

*Counsel for Defendant Qualcomm, Inc.*

3

A16

APPEAL,CASREF,JURY,REOPEN,STAYED

**U.S. District Court**
**Southern District of Ohio (Cincinnati)**
**CIVIL DOCKET FOR CASE #: 1:09-md-02050-SSB-SKB**

| | |
|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation | Date Filed: 11/17/2008 |
| Assigned to: Judge Sandra S Beckwith | Jury Demand: Both |
| Referred to: Magistrate Judge Stephanie K. Bowman | Nature of Suit: 830 Patent |
| related Cases: 1:08-cv-00805-SSB | Jurisdiction: Federal Question |

related Cases: 1:08-cv-00805-SSB
1:09-cv-00177-SSB
1:09-cv-00178-SSB
1:09-cv-00179-SSB
1:09-cv-00180-SSB
1:09-cv-00190-SSB
1:09-cv-00445-SSB
1:12-cv-00473-SSB
2:10-cv-00090-SSB
1:09-cv-00532-SSB
1:09-cv-00531-SSB
1:09-cv-00502-SSB
1:09-cv-00472-SSB
1:09-cv-00530-SSB
1:09-cv-00818-SSB

Case in other court: Court of Appeals for the Federal Circuit, 14-01718
USCA for the Federal Circuit, 11-01101
USCA for the Federal Circuit, 12-01142
U.S. Court of Appeals for the Federal Circuit, 12-01471

Cause: 35:271 Patent Infringement

**Plaintiff**

**R&L Carriers, Inc.**                    represented by **Brett L. Foster**
Holland & Hart
60 E. South Temple
Ste. 2000
Salt Lake City, UT 84111-1031
Email: bfoster@hollandhart.com
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
Wood, Herron & Evans, LLP

2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202-2917
513-707-0401
Fax: 513-241-6234
Email: cbrown@whe-law.com
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
Leonard Street and Deinard, PA
150 S 5th St
Suite 2300
Minneapolis, MN 55402
612-335-1988
Fax: 612-335-1657
Email: donald.campbell@leonard.com
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
Leonard Street and Deinard, PA
150 S 5th St Ste 2300
Mpls, MN 55402
612-335-1667
Fax: 612-335-1657
Email: jeff.ehrich@leonard.com
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
Dinsmore & Shohl - 1
1900 Chemed Center
255 E 5th Street
Cincinnati, OH 45202
513-977-8200
Fax: 513-977-8323
Email: john.luken@dinslaw.com
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
Thompson Hine
1919 M St., N.W., Suite 700
Washington, DC 20035

A18

202.331.8800
Fax: 202.331.8330
Email:
John.Ryan@ThompsonHine.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
Thompson Hine LLP
41 S High St, Ste 1700
Columbus, OH 43215
614-469-3247
Email:
stephanie.chmiel@thompsonhine.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
Thompson Hine
1919 M St., N.W., Suite 700
Washington, DC 20035
202.331.8800
Fax: 202.331.8330
Email:
Thomas.Haas@ThompsonHine.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
41 South High Street
Suite 1700
Columbus, OH 43215-6101
614/469-3235
Fax: 614.469.3361
Email:
Tony.White@ThompsonHine.com
*ATTORNEY TO BE NOTICED*

**Arthur P Licygiewicz**
3900 Key Center
127 Public Square
Cleveland, OH 44114
216-566-7165
Fax: 216-566-5800
Email:
art.licygiewicz@thompsonhine.com
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44141
216-566-5636
Fax: 516-566-5800
Email:
megan.dortenzo@thompsonhine.com
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
McDonald Hopkins
240 N. Fifth Street
Suite 300
Columbus, OH 43215
614-484-0702
Email: jscheaf@mcdonaldhopkins.com
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
Thompson Hine LLP
41 S. High St.
Suite 1700
Columbus, OH 43215-6101
(614) 469-3200
Fax: (614) 469-3361
Email:
Philip.Sineneng@thompsonhine.com
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
Thompson Hine LLP - 1
312 Walnut Street
14th Floor
Cincinnati, OH 45202-4029
513-352-6700
Email: steve.butler@thompsonhine.com
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44141
216-566-5579
Fax: 216-566-5800

A20

Email: troy.prince@thompsonhine.com
*TERMINATED: 09/07/2012*

V.

**Defendant**

**Interstate Distributor Company**          represented by    **Brett A Schatz**
Wood Herron & Evans
2700 Carew Tower
441 Vine St
Cincinnati, OH 45202
513 241-2324
Fax: 513-241-6234
Email: bschatz@whepatent.com
*TERMINATED: 09/10/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
Carlson, Caspers, Vandenburgh,
Lindquist & Schuman P.A.
225 South 6th St., Suite 4200
Minneapolis, MN 55402
612-436-9600
Fax: 612-436-9605
Email: dwilliams@carlsoncaspers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Frederick Ahrens**
Wood, Herron & Evans - 1
441 Vine Street
Suite 2700
Cincinnati, OH 45202
513-241-2324
Fax: 513-421-7269
Email: gahrens@whepatent.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Darin Ardizzone**
Wood, Herron & Evans, L.L.P.
441 Vine St.
2700 Carew Tower
Cincinnati, OH 45202
513-241-2324
Fax: 513-241-6234
Email: tardizzone@whepatent.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Pegasus Transtech Corp.**                    represented by    **Daniel Jerome Buckley**
*TERMINATED: 04/14/2010*                                        Vorys Sater Seymour & Pease - 1
                                                                Atrium Two
                                                                221 E Fourth Street
                                                                Suite 2000
                                                                Cincinnati, OH 45201-0236
                                                                513-723-4000
                                                                Fax: 513-852-7819
                                                                Email: djbuckley@vorys.com
                                                                *TERMINATED: 04/14/2010*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Eric Wade Richardson**
                                                                Vorys Sater Seymour & Pease LLP
                                                                Great American Tower
                                                                301 E Fourth Street
                                                                Suite 3500
                                                                Cincinnati, OH 45201-0236
                                                                513-723-4019
                                                                Fax: 513-852-7885
                                                                Email: ewrichardson@vorys.com
                                                                *TERMINATED: 04/14/2010*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **John Francis Bennett**
                                                                Baker & Hostetler LLP
                                                                312 Walnut Street
                                                                Suite 3200
                                                                Cincinnati, OH 45202-4074
                                                                513-929-3485
                                                                Fax: 513-929-0303
                                                                Email: jbennett@bakerlaw.com
                                                                *TERMINATED: 02/01/2010*
                                                                *LEAD ATTORNEY*

                                                                **Lara V Klapper**
                                                                Neal, Gerber & Eisenberg
                                                                Two North LaSalle St., Suite 1700
                                                                Chicago, IL 60602
                                                                312.269.8000
                                                                Fax: 312.269.1747
                                                                Email: lklapper@ngelaw.com
                                                                *TERMINATED: 12/18/2009*

A22

*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael G Kelber**
Neal, Gerber & Eisenberg
Two North LaSalle St., Suite 1700
Chicago, IL 60602
312.269.8000
Fax: 312.269.1747
Email: mkelber@ngelaw.com
*TERMINATED: 04/14/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*TERMINATED: 04/14/2010*

**Katherine Greiner Barnes**
Vorys Sater Seymour & Pease LLP
301 East Fourth Street
Great American Tower, Suite 3500
Cincinnati, OH 45202
513-723-4483
Fax: 513-852-7878
Email: kgbarnes@vorys.com
*TERMINATED: 04/14/2010*
*ATTORNEY TO BE NOTICED*

**Luis M Lozada**
Neal, Gerber & Eisenberg
2 North LaSalle Street
Suite 1700
Chicago, IL 60602
312/269-8000
Email: llozada@ngelaw.com
*TERMINATED: 04/14/2010*
*PRO HAC VICE*

**Robert E Browne**
Neal, Gerber & Eisenberg
Two N. LaSalle, Suite 1700
Chicago, IL 60602
312-269-8000
Fax: 312-269-1747
Email: rbrowne@ngelaw.com
*TERMINATED: 04/14/2010*

A23

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Profit Tools, Inc.**
*TERMINATED: 04/09/2010*

represented by    **James David Liles**
Porter Wright Morris & Arthur LLP
250 East Fifth Street
Suite 2200
Cincinnati, OH 45202-5118
513-369-4209
Fax: 513/421-0991
Email: jliles@porterwright.com
*TERMINATED: 04/09/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*TERMINATED: 04/09/2010*

**Jay A Yurkiw**
Porter Wright Morris & Arthur - 2
41 S High Street
Suite 2800
Columbus, OH 43215-6194
614-227-2000
Email: jyurkiw@porterwright.com
*TERMINATED: 04/09/2010*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Microdea, Inc**

represented by    **Carl Joseph Stich , Jr.**
White, Getgey & Meyer Co., LPA
1700 Fourth & Vine Tower
1 West Fourth Street
Cincinnati, OH 45202
513-241-3685
Fax: 513-241-2399
Email: cstich@wgmlpa.com
*TERMINATED: 01/04/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**

A24

Fulbright & Jaworski
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
713-651-5151
Fax: 713-651-5246
Email: rzembek@fulbright.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
Fulbright & Jaworski LLP
80 S 8th St Ste 2100
Mpls, MN 55402
612-321-2206
Email: lborst@fulbright.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**SMARTLogix**                              represented by  **Albert P Allan**
*TERMINATED: 06/08/2010*                                   Allan IP Litigation
                                                           409 East Boulvevard
                                                           Charlotte, NC 28203
                                                           704/371-5605
                                                           Fax: 704/372-7411
                                                           Email: alallan@allaniplitigation.com
                                                           *TERMINATED: 06/08/2010*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Douglas J Williams**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **William Richard Gallagher**
                                                           Arenstein & Gallagher - 1
                                                           The Citadel
                                                           114 E Eighth Street
                                                           Cincinnati, OH 45202
                                                           513-651-5666
                                                           Email: bill@ArensteinGallagher.com
                                                           *TERMINATED: 06/08/2010*
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

                              represented by

A25

**Enterprise Information Solutions, Inc.**
*TERMINATED: 04/06/2010*

**Dean R Niro**
Niro, Scavone, Haller & Niro
181 West Madison
Suite 4600
Chicago, IL 60602
312/236-0733
Fax: 312/236-3137
Email: dniro@nshn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Douglas M Hall**
Niro Scavone Haller & Niro
181 West Madison
Suite 4600
Chicago, IL 60602-0733
312-236-0733
Email: dhall@nshn.com
*TERMINATED: 02/03/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Richard Leo Creighton , Jr**
Keating Muething & Klekamp - 1
Suite 1400
One East 4th Street
Cincinnati, OH 45202
513-579-6513
Fax: 513-579-6457
Email: rcreighton@kmklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)

**Robert A Conley**
Niro, Scavone, Haller & Niro
181 W. Madison St.
Suite 4600
Chicago, IL 60602
312-377-3278
Fax: 312-236-3137
Email: rconley@nshn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

A26

**Qualcomm, Inc.**                          represented by   **James Eugene Burke**
                                                             Keating Muething & Klekamp - 1
                                                             One E Fourth Street
                                                             Suite 1400
                                                             Cincinnati, OH 45202
                                                             513-579-6428
                                                             Fax: 513-579-6427
                                                             Email: jburke@kmklaw.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jennifer J Morales**
                                                             Keating Muething & Klekamp PLL
                                                             One East Fourth Street
                                                             Suite 1400
                                                             Cincinnati, Oh 45202
                                                             513-639-3972
                                                             Fax: 513-579-6457
                                                             Email: jmorales@kmklaw.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Douglas J Williams**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Laura J Borst**
                                                             Fulbright & Jaworski LLP
                                                             80 S 8th St Ste 2100
                                                             Minneapolis, MN 55402
                                                             612-321-2206
                                                             Email: lborst@fulbright.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Richard S. Zembek**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Peoplenet Communications**                represented by   **Cynthia A Bremer**
**Corporation**                                             Fulbright & Jaworski LLP
                                                             80 S 8th St Ste 2100
                                                             Minneapolis, MN 55402
                                                             612-321-2800
                                                             Fax: 612-321-2288
                                                             Email: cbremer@fulbright.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*

A27

**Douglas J Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Eugene Burke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer J Morales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Drivertech LLC**                    represented by    **Douglas J Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip D Dracht**
Fabian & Clendenin
215 S. State St.
Ste. 1200
Salt Lake City, UT 84111-2323
801-531-8900
Fax: 801-531-1716
Email: pdracht@fabianlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A28

Scott M. Petersen
Fabian & Clendenin
215 S. State St.
Ste. 1200
Salt Lake City, UT 84111-2323
Email: spetersen@fabianlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Intermec Technologies Corp.**        represented by     **Carson P Veach**
Freeborn & Peters
311 South Wacker Dr.
Suite 3000
Chicago, IL 60606
312-360-6382
Fax: 312-360-6995
Email: cveach@freebornpeters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob D Koering**
Freeborn & Peters
311 South Wacker Dr.
Suite 3000
Chicago, IL 60606
312-360-6703
Fax: 312-360-6996
Email: jkoering@freebornpeters.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara Ann Czanik**
Graydon, Head and Ritchey, LLP
1900 5/3 Center
511 Walnut Street
Cincinnati, OH 45202-3157
513/629-2746
Fax: 513/651-3836
Email: kczanik@graydon.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J Kramer**
Freeborn & Peters
311 South Wacker Dr.
Suite 3000

A29

Chicago, IL 60606
312-360-6382
Fax: 312-360-6995
Email: mkramer@freebornpeters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David S Becker**
Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
312/360-6000
Fax: 312/360-6520
Email: dbecker@freebornpeters.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Defendant | | |
|---|---|---|
| **EBE Technologies, Inc.** *TERMINATED: 04/09/2010* | represented by | **Douglas J Williams** (See above for address) *TERMINATED: 04/09/2010* |

**James David Liles**
(See above for address)
*TERMINATED: 04/09/2010*
*ATTORNEY TO BE NOTICED*

**Jay A Yurkiw**
(See above for address)
*TERMINATED: 04/09/2010*
*ATTORNEY TO BE NOTICED*

| Defendant | | |
|---|---|---|
| **Berry & Smith Trucking Ltd.** | represented by | **James Eugene Burke** (See above for address) *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Jennifer J Morales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Affiliated Computer Services**          represented by   **Douglas J Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas H Shunk**
Baker & Hostetler LLP
1900 East Ninth Street
Suite 3200
Cleveland, OH 44114
216-861-7592
Fax: 216-373-6557
Email: tshunk@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Breck Weigel**
GE Aviation
Litigation and Preventive Law
One Neumann Way

A31

Bldg. 501
MD J104
Cincinnati, OH 45215
513-243-6678
Fax: 513-787-5274
Email: breck.weigel@ge.com
*TERMINATED: 06/10/2011*

**Defendant**

**Pitt Ohio Express Inc**                    represented by    **Douglas J Williams**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Gretchen L Jankowski**
                                                              Buchanan Ingersoll & Rooney PC
                                                              One Oxford Centre
                                                              301 Grant Street
                                                              20th Floor
                                                              Pittsburgh, PA 15219-1410
                                                              412-562-1417
                                                              Fax: 412-562-1041
                                                              Email: gretchen.jankowski@bipc.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Mark David Landes**
                                                              Isaac Wiles Burkholder & Teetor, LLC
                                                              Suite 700
                                                              Two Miranova
                                                              Columbus, OH 43215-3742
                                                              614-221-2121
                                                              Fax: 614-365-9516
                                                              Email: mlandes@isaacwiles.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Michael L Dever**
                                                              Buchanan Ingersoll PC
                                                              One Oxford Centre
                                                              301 Grant Street
                                                              20th Floor
                                                              Pittsburgh, PA 15219-1410
                                                              412-562-1637
                                                              Fax: 412-562-1041
                                                              Email: michael.dever@bipc.com
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**FFE Transportation Services, Inc.**        represented by    **Christina J Moser**
                                                              1900 E. 9th Street, Suite 3200

A32

Cleveland, OH 44114-3485
216-621-0200
Fax: 216-696-0740
Email: cmoser@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John L Landolfi**
Vorys Sater Seymour & Pease - 2
PO Box 1008
52 E Gay Street
Columbus, OH 43216-1008
614-464-6400
Fax: (614) 464-8390
Email: jllandolfi@vssp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas H Shunk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Profit Tools, Inc.**                 represented by   **James David Liles**
*TERMINATED: 04/09/2010*                (See above for address)
                                        *TERMINATED: 04/09/2010*
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **Jay A Yurkiw**
                                        (See above for address)
                                        *TERMINATED: 04/09/2010*
                                        *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**SMARTLogix**                          represented by   **Albert P Allan**
*TERMINATED: 06/08/2010*                (See above for address)
                                        *TERMINATED: 06/08/2010*
                                        *LEAD ATTORNEY*
                                        *PRO HAC VICE*
                                        *ATTORNEY TO BE NOTICED*

                                        **William Richard Gallagher**

A33

(See above for address)
*TERMINATED: 06/08/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Pegasus Transtech Corp.**                    represented by    **Lara V Klapper**
*TERMINATED: 04/14/2010*                                          (See above for address)
                                                                 *TERMINATED: 12/18/2009*
                                                                 *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*

                                                                 **Michael G Kelber**
                                                                 (See above for address)
                                                                 *TERMINATED: 04/14/2010*
                                                                 *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Katherine Greiner Barnes**
                                                                 (See above for address)
                                                                 *TERMINATED: 04/14/2010*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Luis M Lozada**
                                                                 (See above for address)
                                                                 *TERMINATED: 04/14/2010*
                                                                 *PRO HAC VICE*

                                                                 **Robert E Browne**
                                                                 (See above for address)
                                                                 *TERMINATED: 04/14/2010*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Interstate Distributor Company**             represented by    **Brett A Schatz**
                                                                 (See above for address)
                                                                 *TERMINATED: 09/10/2013*
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Gregory Frederick Ahrens**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Timothy Darin Ardizzone**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**                    represented by    **Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A35

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

**Intermec Technologies Corp.**          represented by   **Carson P Veach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob D Koering**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara Ann Czanik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J Kramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David S Becker**

A36

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**                    represented by    **Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)

A37

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

| | | |
|---|---|---|
| **EBE Technologies, Inc.**<br>*TERMINATED: 04/09/2010* | represented by | **James David Liles**<br>(See above for address)<br>*TERMINATED: 04/09/2010*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jay A Yurkiw**<br>(See above for address)<br>*TERMINATED: 04/09/2010*<br>*ATTORNEY TO BE NOTICED* |

V.

**Counter Defendant**

| | | |
|---|---|---|
| **R&L Carriers, Inc.** | represented by | **Brett L. Foster**<br>(See above for address)<br>*TERMINATED: 10/13/2009*<br>*LEAD ATTORNEY* |

A38

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

A39

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

**Berry & Smith Trucking Ltd.**    represented by    **James Eugene Burke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**    represented by    **Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

A41

|  |  | **Troy S Prince**<br>(See above for address)<br>*TERMINATED: 09/07/2012* |
|---|---|---|
| **Counter Claimant** |  |  |
| **Affiliated Computer Services** | represented by | **Thomas H Shunk**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Laura J Borst**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
|  |  | **William Breck Weigel**<br>(See above for address)<br>*TERMINATED: 06/10/2011* |

V.

**Counter Defendant**

| **R&L Carriers, Inc.** | represented by | **Brett L. Foster**<br>(See above for address)<br>*TERMINATED: 10/13/2009*<br>*LEAD ATTORNEY* |
|---|---|---|
|  |  | **Charles Hampton Brown , III**<br>(See above for address)<br>*TERMINATED: 02/26/2009*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Donald T Campbell**<br>(See above for address)<br>*TERMINATED: 07/30/2009*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Jeffrey A Ehrich**<br>(See above for address)<br>*TERMINATED: 07/30/2009*<br>*LEAD ATTORNEY* |
|  |  | **John David Luken**<br>(See above for address)<br>*TERMINATED: 02/26/2009*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

A42

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

**Intermec Technologies Corp.**          represented by **Carson P Veach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A43

**Jacob D Koering**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kara Ann Czanik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J Kramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David S Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**                          represented by   **Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A44

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

**Qualcomm, Inc.**                    represented by  **James Eugene Burke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer J Morales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**                    represented by    **Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

**Counter Claimant**

**Microdea, Inc**                    represented by **Carl Joseph Stich , Jr.**
(See above for address)
*TERMINATED: 01/04/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Williams**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard S. Zembek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura J Borst**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**R&L Carriers, Inc.**                    represented by    **Brett L. Foster**
(See above for address)
*TERMINATED: 10/13/2009*
*LEAD ATTORNEY*

**Charles Hampton Brown , III**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald T Campbell**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey A Ehrich**
(See above for address)
*TERMINATED: 07/30/2009*
*LEAD ATTORNEY*

**John David Luken**
(See above for address)
*TERMINATED: 02/26/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Ryan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Chmiel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Haas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony C White**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur P Licygiewicz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan D Dortenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**O Judson Scheaf , III**
(See above for address)
*TERMINATED: 04/26/2012*
*ATTORNEY TO BE NOTICED*

**Philip Bernardo Sineneng**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Joseph Butler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Troy S Prince**
(See above for address)
*TERMINATED: 09/07/2012*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/17/2008 | | Filing fee: $ 350.00, receipt number 100CIN003612 (mtw1, ) (Entered: 11/17/2008) |
| 11/17/2008 | 1 | COMPLAINT with JURY DEMAND against Interstate Distributor Company, filed by R&L Carriers, Inc. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet and # 3 Filing Fee Receipt) (mtw1, ) (Entered: 11/17/2008) |

A49

| 11/17/2008 | 2 | Report on the Filing or Determination of an Action regarding a Patent or Trademark. Sent to Director of US Patent and Trademark Office by Clerk via regular mail. (mtw1) Modified docket text on 11/18/2008 (eh1, ). (Entered: 11/17/2008) |
|---|---|---|
| 11/17/2008 | 3 | Corporate Disclosure Statement by Plaintiff R&L Carriers, Inc.. (Brown, III, Charles) (Entered: 11/17/2008) |
| 02/24/2009 | 4 | NOTICE of Appearance by Anthony C White Plaintiff R&L Carriers, Inc. (White, Anthony) (Entered: 02/24/2009) |
| 02/25/2009 | 5 | Summons Issued as to Interstate Distributor Company. (er1 ) (Entered: 02/25/2009) |
| 02/25/2009 | 6 | NOTICE of Appearance by O Judson Scheaf, III Plaintiff R&L Carriers, Inc. (Scheaf, O) (Entered: 02/25/2009) |
| 02/25/2009 | 7 | NOTICE of Appearance by Philip Bernardo Sineneng Plaintiff R&L Carriers, Inc. (Sineneng, Philip) (Entered: 02/25/2009) |
| 03/11/2009 | 8 | NOTICE by Plaintiff R&L Carriers, Inc. *Consent to Plead*, Plaintiff consents to Defendant having until 4/9/09 to answer or plead. (White, Anthony) Modified on 3/12/2009 (mb, ). Modified on 3/12/2009 (mb, ). (Entered: 03/11/2009) |
| 03/12/2009 | 9 | NOTICE by Plaintiff R&L Carriers, Inc. *Consent to Plead* (with attached certificate of service )(White, Anthony) Modified docket text on 3/19/2009 (eh1, ). (Entered: 03/12/2009) |
| 03/16/2009 | 10 | SUMMONS Returned Executed by Plaintiff R&L Carriers, Inc., Defendant Interstate Distributor Company. Interstate Distributor Company served on 2/28/2009, answer due 3/20/2009. (Sineneng, Philip) (Entered: 03/16/2009) |
| 03/19/2009 | 11 | NOTICE of Appearance by Megan D Dortenzo Plaintiff R&L Carriers, Inc. (Dortenzo, Megan) (Entered: 03/19/2009) |
| 04/09/2009 | 12 | ANSWER to 1 Complaint with Jury Demand, COUNTERCLAIM against R&L Carriers, Inc. by Defendant Interstate Distributor Company, Plaintiff R&L Carriers, Inc.. (Ardizzone, Timothy) (Entered: 04/09/2009) |
| 04/09/2009 | 13 | Corporate Disclosure Statement by Counter Claimant Interstate Distributor Company, Defendant Interstate Distributor Company. (Ardizzone, Timothy) (Entered: 04/09/2009) |
| 04/14/2009 | 14 | NOTICE of Appearance by Gregory Frederick Ahrens Defendant Interstate Distributor Company (Ahrens, Gregory) (Entered: 04/14/2009) |
| 04/29/2009 | 15 | [FORMER DOC. 15] Reply re 12 Answer to Complaint, Counterclaim *Reply to Counterclaim* by Plaintiff R&L Carriers, Inc.. (White, Anthony) Modified to remove the pdf on 5/1/2009 (eh1, ). (Entered: 04/29/2009) |
| 04/30/2009 | 16 | ANSWER to 12 Counterclaim by Counter Defendant R&L Carriers, Inc.. (White, Anthony) Modified docket text on 5/1/2009 (eh1, ). (Entered: 04/30/2009) |
| 05/01/2009 | | |

A50

| | | |
|---|---|---|
| | | Notice of Correction re:[FORMER DOC. 15] Reply to Counterclaim removed from the docket because it was filed using an incorrect event. Clerk contacted counsel and advised to refile properly as 16 Answer to Counterclaim. (eh1, ) (Entered: 05/01/2009) |
| 06/12/2009 | 17 | Letter and Transfer Order from MDL Panel re: MDL2050. (Attachments: # 1 Transfer Order) (scot1, ) (Entered: 06/16/2009) |
| 07/21/2009 | 18 | Unopposed MOTION for Extension of Time to File Answer New date requested 8/24/2009. by Defendant Microdea, Inc. (Stich, Carl) (Entered: 07/21/2009) |
| 07/22/2009 | | NOTATION ORDER granting 18 Defendant's Motion for Extension of Time until 8/24/09 to respond to the complaint (in case 1:09-cv-179). Signed by Judge Sandra S Beckwith on 7/22/09. (mb) (Entered: 07/22/2009) |
| 07/30/2009 | 19 | PRACTICE & PROCEDURE ORDER upon transfer. Signed by Judge Sandra S Beckwith on 7/30/09. All case listed on Schedule A are hereby CONSOLIDATED for pretrial purposes. All discovery is STAYED until the first pretrial conference. The initial pretrial conference is scheduled for 11/10/09 at 9:00 AM in Room B-17. Counsel shall file suggested agenda items by 10/12/09. Counsel shall also file a list of each person who intend to attend the conference, and the party they represent by 10/12/09. (Attachments: # 1 Exhibit: Schedule A, # 2 Exhibit: MDL Service List). (mb) (Entered: 07/30/2009) |
| 08/04/2009 | 20 | NOTICE of Appearance by John Francis Bennett Defendant Pegasus Transtech Corp. (Bennett, John) (Entered: 08/04/2009) |
| 08/10/2009 | | NOTICE OF CORRECTION by clerk: The Practice & Procedure Order is corrected to read, "Counsel shall file suggested agenda items by 8/31/09. Counsel shall also file a list of each person who intend to attend the conference and the party they represent by 8/31/09," (not the 10/12/09 date). (mb) (Entered: 08/10/2009) |
| 08/21/2009 | 21 | Unopposed MOTION for Extension of Time to File Answer New date requested 9/23/2009. by Defendant Microdea, Inc. (Stich, Carl) (Entered: 08/21/2009) |
| 08/25/2009 | | NOTATION ORDER granting 21 Microdea's Motion for Extension of Time until 9/23/09 to respond to the complaint. Signed by Judge Sandra S Beckwith on 8/25/09. (mb) (Entered: 08/25/2009) |
| 08/26/2009 | 22 | STIPULATION for Extension of time until 9/15/09 to respond to the Complaint by Defendant Intermec Technologies Corp.. (Czanik, Kara) Modified on 8/27/2009 (mb, ). (Entered: 08/26/2009) |
| 08/26/2009 | 23 | [FORMER DOC. 23] Corporate Disclosure Statement by Defendant Intermec Technologies Corp.. (Czanik, Kara) Modified to remove pdf on 8/27/2009 (eh1, ). (Entered: 08/26/2009) |
| 08/27/2009 | | Notice of Correction re:[FORMER DOC. 23] Corporate Disclosure Statement removed from the docket because it was unsigned. Counsel to refile signed pleading. (eh1, ) (Entered: 08/27/2009) |

A51

| 08/27/2009 | 24 | Corporate Disclosure Statement by Defendants Intermec Technologies Corp., Intermec, Inc. identifying Corporate Parent Intermec, Inc. for Intermec Technologies Corp... (Czanik, Kara) (Entered: 08/27/2009) |
| 08/28/2009 | 25 | NOTICE OF ATTENDEES by SMARTLogix. SMARTLogix will be represented by William Gallager & Albert Allan at the initial scheduling conference. No agenda items suggested. (mb) (Entered: 08/28/2009) |
| 08/31/2009 | 26 | NOTICE by Defendant Microdea, Inc *as to Attendee at 11-10 conference* (Stich, Carl) (Entered: 08/31/2009) |
| 08/31/2009 | 27 | NOTICE by Defendant Enterprise Information Solutions, Inc. *of Attendance* (Creighton, Richard) (Entered: 08/31/2009) |
| 08/31/2009 | 28 | NOTICE by Plaintiff R&L Carriers, Inc. *of Proposed Agenda and Conference Participants* (Attachments: # 1 Exhibit A: Status of Consolidated Actions, # 2 Exhibit B: List of Proposed Deadlines, # 3 Exhibit C: Proposed Stipulated Protective Order) (Sineneng, Philip) (Entered: 08/31/2009) |
| 08/31/2009 | 29 | NOTICE by Defendants Peoplenet Communications Corporation, Divertech LLC, EBE Technologies, Inc., Interstate Distributor Company, Pegasus Transtech Corp., Profit Tools, Inc. *of Agenda Items and Identification of Attendees for Pretrial Conference* (Borst, Laura) (Entered: 08/31/2009) |
| 08/31/2009 | 30 | NOTICE by Defendant Intermec Technologies Corp. *of Attendance at Initial Pretrial Conference* (Czanik, Kara) (Entered: 08/31/2009) |
| 09/03/2009 | 31 | NOTICE of Appearance by James David Liles Defendant EBE Technologies, Inc. (Originally filed in Case 1:09-cv-530 on 8/14/09. (mb) (Entered: 09/03/2009) |
| 09/03/2009 | 32 | STIPULATION extending time for Defendant EBE Technologies, Inc. to move or plead to the complaint until 9/16/09. (Originally filed in Case 1:09-cv-530 on 8/17/09.) (mb) (Entered: 09/03/2009) |
| 09/15/2009 | 33 | ANSWER to 1 Complaint with Jury Demand, COUNTERCLAIM against R&L Carriers, Inc. by Counter Claimant Intermec Technologies Corp. Defendant Intermec Technologies. (Czanik, Kara) Modified docket text on 9/16/2009 (eh1, ). (Entered: 09/15/2009) |
| 09/15/2009 | 34 | EBE Technologies, Inc's ANSWER to 1 Complaint in case 1:09-cv-530 AND COUNTERCLAIM against R&L Carriers, Inc. (Liles, James) Modified on 9/16/2009 (mb, ). (Entered: 09/15/2009) |
| 09/15/2009 | 35 | Corporate Disclosure Statement by Defendant EBE Technologies, Inc.. (Liles, James) (Entered: 09/15/2009) |
| 09/17/2009 | 36 | INTERIM ORDER REGARDING PRESERVATION. The parties are ordered to meet no later than 30 days after the date of this Order to develop a plan for the preservation of documents, and submit a proposed order to the court. If an agreed order cannot be reached, the parties are to submit a statement of unresolved issues together with each party's proposal of resolution within 3 days of the conference on preservation. Signed by Judge Sandra S Beckwith on 9/17/09. (mb) (Entered: 09/17/2009) |

A52

| | | |
|---|---|---|
| 09/22/2009 | 37 | Unopposed MOTION for Extension of Time to File Answer New date requested 10/23/2009. by Defendant Microdea, Inc. (Stich, Carl) (Entered: 09/22/2009) |
| 09/22/2009 | 38 | CONFIDENTIALITY ORDER: Setting provisions governing claims of confidentiality. Signed by Judge Sandra S Beckwith on 9/22/09. (mb) (Entered: 09/22/2009) |
| 09/23/2009 | 39 | DEPOSITION GUIDELINES ORDER setting forth guidelines for depositions. Any disputes arising during depositions needing immediate court intervention, are to be presented by telephone to Judge Beckwith or to MJ Timothy Hogan. Signed by Judge Sandra S Beckwith on 9/23/09. (mb) (Entered: 09/23/2009) |
| 09/23/2009 | | NOTATION ORDER granting 37 Defendant Microdea, Inc's Motion for Extension of Time until 10/23/09 to respond to the complaint. Signed by Judge Sandra S Beckwith on 9/23/09. (mb) (Entered: 09/23/2009) |
| 09/29/2009 | 40 | ORDER regarding Initial Conference. Anthony White & Brett Schatz to arrange initial meeting pursuant to 2(a). Prelim. reports to be submitted to the court (not filed with the clerk) by 10/10/09. Counsel to file by 10/10/09, a list of all companies affiliated with the parties. Each defendant is GRANTED an extension of time for responding by motion or answer to the complaint until a date to be set at the 11/10/09 conference. All orders by transferor courts are VACATED. Applications for Lead and Liaison Counsel Appointments to be filed by 10/16/09. Signed by Judge Sandra S Beckwith on 9/29/09. (Attachment: # 1 Exhibit: Tentative Agenda). (mb) Modified on 9/29/2009 (mb). (Entered: 09/29/2009) |
| 09/29/2009 | 41 | ANSWER to 33 Answer to Complaint, Counterclaim *of Intermec Technologies Corp.* by Counter Defendant R&L Carriers, Inc.. (Sineneng, Philip) Modified docket text on 9/30/2009 (eh1). (Entered: 09/29/2009) |
| 09/29/2009 | 42 | ANSWER to 34 Answer to Complaint, Counterclaim *of EBE Technologies, Inc.* by Counter Defendant R&L Carriers, Inc.. (Sineneng, Philip) Modified docket text n 9/30/2009 (eh1). (Entered: 09/29/2009) |
| 10/05/2009 | 43 | MOTION for Leave to Appear Pro Hac Vice of David S. Becker by Defendant Intermec Technologies Corp.. (Attachments: # 1 Certificate Good Standing, # 2 Text of Proposed Order Order Granting Pro Hac Vice) (Czanik, Kara) Modified docket text on 10/6/2009 (eh1). (Additional attachment(s) added on 10/6/2009: # 3 Filing Fee Receipt) (eh1). (Entered: 10/05/2009) |
| 10/05/2009 | 44 | MOTION for Leave to Appear Pro Hac Vice of Jacob D. Koering by Defendant Intermec Technologies Corp.. (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order Order Granting Pro Hac Vice) (Czanik, Kara) Modified docket text on 10/6/2009 (eh1). (Additional attachment(s) added on 10/6/2009: # 3 Filing Fee Receipt) (eh1). (Entered: 10/05/2009) |
| 10/05/2009 | 45 | MOTION for Leave to Appear Pro Hac Vice of Matthew J. Kramer by Defendant Intermec Technologies Corp.. (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order Order Granting Pro Hac Vice) (Czanik, Kara) Modified docket text on 10/6/2009 (eh1). (Additional attachment(s) added on 10/6/2009: # 3 Filing Fee Receipt) (eh1). (Entered: 10/05/2009) |

| 10/05/2009 | 46 | MOTION for Leave to Appear Pro Hac Vice of Carson P. Veach by Defendant Intermec Technologies Corp.. (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order Granting Pro Hac Vice) (Czanik, Kara) Modified docket text on 10/6/2009 (eh1). (Additional attachment(s) added on 10/6/2009: # 3 Filing Fee Receipt) (eh1). (Entered: 10/05/2009) |
|---|---|---|
| 10/06/2009 | | Filing fee: $ 800.00, receipt number 100CIN006484 re 43 , 44 , 45 & 46 Motions for Leave to Appear Pro Hac Vice. (eh1) (Entered: 10/06/2009) |
| 10/07/2009 | 47 | ORDER granting [43-46]] Motions for Leave for attorneys Becker, Koering, Kramer & Veach to Appear Pro Hac Vice as co-counsel for defendant Intermec. Signed by Judge Sandra S Beckwith on 10/7/09. (mb) (Entered: 10/07/2009) |
| 10/12/2009 | 48 | NOTICE by Plaintiff R&L Carriers, Inc. *of Withdrawal of Counsel* (White, Anthony) (Entered: 10/12/2009) |
| 10/15/2009 | 49 | Application for Appointment of Lead Counsel by Plaintiff R&L Carriers, Inc. (Sineneng, Philip) Modified docket text on 10/20/2009 (eh1). (Entered: 10/15/2009) |
| 10/16/2009 | 50 | MOTION to Appoint Counsel ("Application for Lead and Liaison Counsel Appointment") by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Interstate Distributor Company, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., and SMARTLogix. (sb1) (Entered: 10/19/2009) |
| 10/20/2009 | | NOTICE by clerk: Preliminary Reports received by the court from all the parties as ordered in Doc. 40, 2(b). (mb) Modified on 10/20/2009 (mb). (Entered: 10/20/2009) |
| 10/22/2009 | 51 | MOTION for Extension of Time New date requested 11/4/2009. *(To File Preservation Plan Statement)* by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., Counter Claimants EBE Technologies, Inc., Intermec Technologies Corp., Interstate Distributor Company, Profit Tools, Inc., Counter Defendants Pegasus Transtech Corp., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., Plaintiff R&L Carriers, Inc.. (Borst, Laura) (Entered: 10/22/2009) |
| 10/23/2009 | | NOTATION ORDER granting 51 Plaintiff & Defendants Berry & Smith Trucking, DriverTech, EBE Tech., Enterprise Info. Solutions, Interstate Distributor, Intermec Tech., Pegasus Transtech, PeopleNet Communications, Profit Tools & Qualcomm's Joint Motion for Extension of Time until 11/4/09 to file their Preservation Plan Statement. Signed by Judge Sandra S Beckwith on 10/23/09. (mb) (Entered: 10/23/2009) |
| 10/28/2009 | 52 | NOTICE of Appearance by Troy S Prince Plaintiff R&L Carriers, Inc., Counter Defendants R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc. (Prince, Troy) (Entered: 10/28/2009) |

| 10/29/2009 | 53 | NOTICE by Defendant SMARTLogix re 52 Notice of Appearance (Gallagher, William) (Entered: 10/29/2009) |
|---|---|---|
| 11/02/2009 | 54 | Amended NOTICE by Plaintiff R&L Carriers, Inc. *of Attendance at Initial Pretrial Conference* (Sineneng, Philip) Modified on 11/3/2009 (eh1). (Entered: 11/02/2009) |
| 11/04/2009 | 55 | NOTICE of *Submission Pursuant to the Courts Interim Order Regarding Pres* re 36 Order by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Interstate Distributor Company, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc. , (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Williams, Douglas) Modified docket text on 11/6/2009 (eh1). (Entered: 11/04/2009) |
| 11/05/2009 |  | NOTICE by clerk of receipt of Statement of Unresolved Issues and Proposed Preservation Plan by R + L Carriers. (mb) (Entered: 11/05/2009) |
| 11/05/2009 |  | NOTICE by clerk of receipt of Intermec Technologies' Proposed Order regarding Preservation & Statement of Unresolved Issues. (mb) (Entered: 11/05/2009) |
| 11/05/2009 | 56 | NOTICE by Defendant Enterprise Information Solutions, Inc. re 55 Notice (Other), Notice (Other) *Signature page omitted from Defendants Submission Pursuant To The Courts Interim Order Regarding Preservation* (Williams, Douglas) (Entered: 11/05/2009) |
| 11/05/2009 | 57 | NOTICE by Defendant SMARTLogix of Concurrence with defendants' submission (doc. 55) regarding preservation. (Gallagher, William) Modified on 11/5/2009 (mb). (Entered: 11/05/2009) |
| 11/09/2009 | 58 | NOTICE by Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation, Qualcomm, Inc. *Amended Notice Of Attendance at Initial Pretrial Conference* (Williams, Douglas) (Entered: 11/09/2009) |
| 11/09/2009 | 59 | NOTICE by Defendant Intermec Technologies Corp. re 30 Notice (Other) *Amended Notice of Attendance at Initial Pretrial Conference* (Czanik, Kara) (Entered: 11/09/2009) |
| 11/10/2009 | 60 | Minute Entry: Scheduling conference held before Judge Sandra S Beckwith. Deadlines set. Written order to follow. Next conference set for 12/15/09 at 2:00 PM. The court will initiate the call to counsel. Bob Kaiser also present. (Court Reporter Shandy Ehde (Draper & Oestreicher)). (Attachment: # 1 Appendix: Attorney List). (mb) Modified on 11/10/2009 (mb). (Entered: 11/10/2009) |
| 11/10/2009 |  | NOTICE by clerk: Counsel are to provide Mary Brown, (by email or telephone), the names & telephone numbers of the persons who will be in attendance at the 12/15/09 telephone conference no later than 12/1/09, (mb) (Entered: 11/10/2009) |
| 11/10/2009 | 61 | ORDER following conference held 11/10/09. All answers & counterclaims by existing defts. due: 12/1/09; Parties to meet re: document preservation issues before 11/24/09; Rule 26 conf. set for 12/2/09 at 1:00 PM; Joint Proposal on doc. preservation and unresolved issues statement due: 12/8/09; Telephone conf: 12/15/09 at 2:00 PM; Parties exchange initial disclosures and produce |

| | | |
|---|---|---|
| | | docs: 12/16/09; R+L's disclosures of claims & infringement contentions: 1/8/10; Telephone conf: 2/2/10 at 2:00 PM; Defts' joint invalidity contentions, etc. due: 2/26/10; Telephone conf: 3/2/10 at 2:00 PM; Exchange claims terms: 3/26/10; Parties to meet re: claim terms on 4/7/10; R+L's proposed claim construction: 4/16/10; Deadline to add parties/file new actions: 4/23/10; Defts' proposed claim construction: 5/7/10; Exchange of privilege logs: 5/14/10; Parties to meet: 5/28/10; Joint claim construction and prehearing statement due: 6/18/10; Conference with the court: 6/25/10 at 9:00 AM; Claim construction discovery deadline: 8/27/10; Opening claim construction brief due: 10/1/10; Response due: 11/5/10; Claim construction hrng: 12/13/10 at 9:00 AM. Atty. Douglas J. Williams is APPOINTED LEAD & LIAISON COUNSEL for defendants for one year from today's date, subject to renewal after review by court. A special master will not be appointed at this time. Signed by Judge Sandra S Beckwith on 11/10/09. (mb) (Entered: 11/10/2009) |
| 11/10/2009 | | NOTATION ORDER granting 50 Motion to Appoint Counsel Douglas J. Williams as lead & liaison counsel for defendants. Signed by Judge Sandra S Beckwith on 11/19/09. (mb) (Entered: 11/10/2009) |
| 11/13/2009 | | NOTICE by clerk: The Court conference scheduled for 6/25/10 is RESCHEDULED for 6/28/10 at 1:00 PM in Room 810 before Judge Beckwith. (mb) (Entered: 11/13/2009) |
| 11/18/2009 | 62 | NOTICE *of Compliance With Courts Request for Defendants Lead & Liaison Counsels Biography* by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Interstate Distributor Company, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc. (Attachments: # 1 Exhibit A) (Williams, Douglas) Modified docket text on 11/19/2009 (eh1). (Entered: 11/18/2009) |
| 11/19/2009 | 63 | NOTICE of Appearance by James Eugene Burke Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation, Qualcomm, Inc. (Burke, James) (Entered: 11/19/2009) |
| 11/25/2009 | 64 | ORDER VACATING Preliminary Scheduling Conference currently set for 12/2/2009 at 1:00 p.m. The parties shall submit any additional agenda items for discussion at the 12/15/09 conference no later than 12/8/09. Signed by Judge Sandra S Beckwith on 11/25/09. (eh1) (Entered: 11/25/2009) |
| 11/25/2009 | 65 | Unopposed MOTION for Extension of Time to File Answer New date requested 1/4/2010. by Defendant Affiliated Computer Services. (Attachments: # 1 Brief In Support Of Motion) (Shunk, Thomas) (Entered: 11/25/2009) |
| 11/30/2009 | | NOTATION ORDER granting 65 Motion for Extension of Time until 1/4/2010 move or plead to the complaint. Signed by Judge Sandra S Beckwith on 11/30/09. (mb) (Entered: 11/30/2009) |
| 11/30/2009 | 66 | AMENDED COMPLAINT against Berry & Smith Trucking Ltd., filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A to the First Amended Complaint) (Sineneng, Philip) (Entered: 11/30/2009) |
| 12/01/2009 | 67 | |

| | | Unopposed MOTION for Extension of Time to File Answer New date requested 1/4/2010. by Defendant Microdea, Inc. (Stich, Carl) (Entered: 12/01/2009) |
|---|---|---|
| 12/01/2009 | 68 | MOTION to Dismiss *Pursuant to FRCP 12(B)(6)* by Defendant Qualcomm, Inc.. Responses due by 12/28/2009 (Attachments: # 1 Text of Proposed Order, # 2 Memorandum of Law, # 3 Exhibit Ex 1 to Memorandum of Law, # 4 Exhibit x 2 to Memorandum of Law, # 5 Exhibit x 3 to Memorandum of Law) (Williams, Douglas) (Entered: 12/01/2009) |
| 12/08/2009 | 69 | NOTICE by Plaintiff R&L Carriers, Inc. re 64 Order, Set Deadlines/Hearings,, *of Additional Agenda Items for December 15, 2009 Telephone Status Conference* (Sineneng, Philip) (Entered: 12/08/2009) |
| 12/08/2009 | 70 | STATEMENT *of Unresolved Issues* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, R+L's Proposed Order Regarding Preservation, # 2 Exhibit B, R+L's Proposed Protective Order) (Sineneng, Philip) Modified docket text on 12/9/2009 (eh1). (Entered: 12/08/2009) |
| 12/08/2009 | 71 | NOTICE of *Proposed Agenda Items For The Telephone Status Conference On December 15, 2009* by Defendants Berry & Smith Trucking Ltd., Driverteck LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc. re 64 Order, Set Deadlines/Hearings,, <(Williams, Douglas) Modified docket text on 12/9/2009 (eh1). (Entered: 12/08/2009) |
| 12/08/2009 | 72 | STATUS REPORT *Defendants Submission Pursuant to the Courts Interim Order Regarding Preservation* by Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Williams, Douglas) (Entered: 12/08/2009) |
| 12/09/2009 | | NOTATION ORDER granting 67 Defendant Microdea's Motion for Extension of Time until 1/4/2010 to respond to the complaint. Signed by Judge Sandra S Beckwith on 12/9/09. (mb) (Entered: 12/09/2009) |
| 12/14/2009 | 73 | ANSWER to 66 Amended Complaint *and Affirmaitve Defenses*, COUNTERCLAIM against R&L Carriers, Inc. by Defendant Berry & Smith Trucking, Ltd. (Williams, Douglas) Modified docket text on 12/15/2009 (eh1). (Entered: 12/14/2009) |
| 12/15/2009 | | Minute Entry: Status (telephone) conference held before Judge Sandra S Beckwith. Written order to follow. (Court Reporter MA Ranz (Official).) (mb) (Entered: 12/15/2009) |
| 12/16/2009 | 74 | NOTICE of Appearance by Jay A Yurkiw for Defendant EBE Technologies, Inc. (Yurkiw, Jay) (Entered: 12/16/2009) |
| 12/16/2009 | 75 | NOTICE of Appearance by Jay A Yurkiw for Defendant Profit Tools, Inc. (Yurkiw, Jay) (Entered: 12/16/2009) |
| 12/17/2009 | 76 | ORDER pursuant to 12/15/09 telephone conference: A joint report on the outstanding preservation issues is to be filed by 12/18/09. A joint Rule 26(f) statement is due: 12/23/09. Any current party-defendant's motion to dismiss is |

| | | |
|---|---|---|
| | | due: 12/30/09; Joint response is due: 1/25/2010. No replies. A hearing on the motions to dismiss is scheduled for: 2/2/2010 at 11:00 AM in Courtroom 822, followed by a status conference. An informal conf./patent demo is set for 1/26/2010 at 9:00 AM in room B-17. Signed by Judge Sandra S Beckwith on 12/17/09. (mb) (Entered: 12/17/2009) |
| 12/17/2009 | 77 | NOTICE of Appearance by Jennifer J Morales for Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation, Qualcomm, Inc. (Morales, Jennifer) (Entered: 12/17/2009) |
| 12/17/2009 | 78 | NOTICE by Defendant Pegasus Transtech Corp. *of Substitution of Counsel* (Kelber, Michael) (Entered: 12/17/2009) |
| 12/18/2009 | 79 | MOTION for Protective Order *Defendants' Joint Motion to Enter Protective Order* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Williams, Douglas) (Entered: 12/18/2009) |
| 12/18/2009 | 80 | STATUS REPORT *Joint Report on Outstanding Preservation Order Disputes* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 12/18/2009) |
| 12/21/2009 | | NOTATION ORDER granting extension requested in the joint status report (doc. 80). A more detailed joint report will be filed on 12/21/09. Signed by Judge Sandra S Beckwith on 12/21/09. (mb) (Entered: 12/21/2009) |
| 12/21/2009 | 81 | STATUS REPORT *Joint Report on Outsatndng Preservation Order Disputes* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix, Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Williams, Douglas) (Entered: 12/21/2009) |
| 12/23/2009 | 82 | RULE 26(f) REPORT *Joint Rule 26(f) MDL Discovery Plan* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix, Plaintiff R&L Carriers, Inc.. (Williams, Douglas) (Entered: 12/23/2009) |
| 12/24/2009 | 83 | |

| | | |
|---|---|---|
| | | ORDER concerning Preservation of Documents, ESI, and Tangile Things re 81 STATUS REPORT. Signed by Judge Sandra S Beckwith on 12/24/09. (eh1) (Entered: 12/24/2009) |
| 12/29/2009 | 84 | STATUS REPORT *on Proposed Protective Order* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Sineneng, Philip) (Entered: 12/29/2009) |
| 12/30/2009 | 85 | NOTICE of Appearance by Douglas J Williams for Defendant Microdea, Inc (Williams, Douglas) (Entered: 12/30/2009) |
| 12/30/2009 | 86 | MOTION for Leave to Appear Pro Hac Vice of Robert A. Conley (Filing fee $ 200) by Defendant Enterprise Information Solutions, Inc.. (Creighton, Richard) (Entered: 12/30/2009) |
| 12/30/2009 | 87 | MOTION to Dismiss *Defendants' Joint Motions To Dismiss And For Judgment On The Pleadings With Memorandum In Support* by Defendants Affiliated Computer Services, Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc.. Responses due by 1/25/2010 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Supporting Memorandum) (Williams, Douglas) (Entered: 12/30/2009) |
| 12/31/2009 | | PHV Filing fee: $ 200.00, receipt number 100CIN007255 received for Robert A. Conley. (jlw1) (Entered: 12/31/2009) |
| 01/04/2010 | 88 | ORDER concerning Rule 26(f) discovery plan (doc. 82). Several rulings made. The remaining disputes will be discussed at the 2/2/2010 conference. Signed by Judge Sandra S Beckwith on 1/4/10. (mb) (Entered: 01/04/2010) |
| 01/04/2010 | 89 | ORDER: A telephone conference will be held on the proposed protective order re: the number of employees with access to "confidential" information and in-house attorneys' access to "attorneys eyes only" confidential information, to be scheduled. Signed by Judge Sandra S Beckwith on 1/4/2010. (mb) (Entered: 01/04/2010) |
| 01/04/2010 | 90 | ANSWER to 73 Answer to Amended Complaint, Counterclaim *of Berry & Smith Trucking, Ltd.* by Counter Defendant R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 01/04/2010) |
| 01/04/2010 | 91 | NOTICE by Defendant Microdea, Inc *of Withdrawal and Substitution of Counsel* (Stich, Carl) (Entered: 01/04/2010) |
| 01/04/2010 | 92 | ORDER granting 86 Motion for Leave for attorney Robert Conley to Appear Pro Hac Vice as co-counsel for defendant Enterprise Information Solutions. Signed by Judge Sandra S Beckwith on 1/4/10. (mb) (Entered: 01/04/2010) |
| 01/06/2010 | | NOTICE by clerk: A telephone conference on the proposed protective order is scheduled for 1/13/2010 at 10:00 AM before Judge Sandra S Beckwith. Counsel who will participate at the conference are to submit contact information to Mary Brown by email or by telephone at 513.564.7520 no later than Noon on 1/8/2010. (mb) (Entered: 01/06/2010) |

| 01/06/2010 | 93 | Joint MOTION for Extension of Time New date requested 1/29/2010. *for R+L's disclosure of Asserted Claims and Infringement Contentions and Documents to SMARTLogix* by Plaintiff R&L Carriers, Inc., Defendant SMARTLogix. (Sineneng, Philip) (Entered: 01/06/2010) |
|---|---|---|
| 01/06/2010 | | NOTATION ORDER granting 93 Joint Motion for Extension of Time until 1/29/2010 for R+L to disclose its asserted claims & infringement contentions with respect to SMARTLogix. Signed by Judge Sandra S Beckwith on 1/6/10. (mb) (Entered: 01/06/2010) |
| 01/13/2010 | 94 | Minute Entry: Conference held on proposed protective order held before Judge Sandra S Beckwith. Briefs due 1/15/2010. (Court Reporter Mary Ann Ranz (Official).). (Attachment: # 1 Appendix: List of Counsel Present.) (mb) (Entered: 01/13/2010) |
| 01/14/2010 | 95 | Transcript of Telephone Conference held on January 13, 2010, before Judge Beckwith. Court Reporter/Transcriber Mary Ann Ranz (Official), Telephone number 513-564-7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 2/4/2010. Redacted Transcript Deadline set for 2/16/2010. Release of Transcript Restriction set for 4/14/2010. (mb) (Entered: 01/14/2010) |
| 01/15/2010 | 96 | BRIEF re 94 Telephone Conference by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc.. (Zembek, Richard) (Entered: 01/15/2010) |
| 01/15/2010 | 97 | BRIEF re 94 Telephone Conference by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 01/15/2010) |
| 01/19/2010 | 98 | Response re 97 Brief *Confidentiality Level in Protective Order* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc.. (Zembek, Richard) (Entered: 01/19/2010) |
| 01/20/2010 | 99 | |

A60

| | | Reply re 98 Response re 97 Brief Confidentiality Level in Protective Order by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) Modified docket text on 1/21/2010 (eh1). (Entered: 01/20/2010) |
|---|---|---|
| 01/20/2010 | 100 | ORDER: Any demonstrative exhibits to be used at the demonstration set for 1/26/10 are to be exhibited to opposing counsel not later than 48 hours prior to the demonstration. Signed by Judge Sandra S Beckwith on 1/20/10. (mb) (Entered: 01/20/2010) |
| 01/25/2010 | 101 | RESPONSE in Opposition re 87 MOTION to Dismiss *Defendants' Joint Motions To Dismiss And For Judgment On The Pleadings With Memorandum In Support* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 01/25/2010) |
| 01/26/2010 | 102 | Minute Entry: Patent demonstration held before Judge Sandra S Beckwith. (Court Reporter Mary Ann Ranz (Official).) (Attachment: # 1 Appendix: List of Counsel present). (mb) (Entered: 01/26/2010) |
| 01/29/2010 | 103 | PROTECTIVE ORDER. Signed by Judge Sandra S Beckwith on 1/29/10. (mb) (Entered: 01/29/2010) |
| 01/29/2010 | 104 | JOINT MOTION for Extension of Time until 2/15/2010 for the filing of SMARTLogix's disclosure of asserted claims and infringement contentions and to respond to Plaintiff's first set of interrogatories and request for productions of documents. (mb) (Entered: 02/01/2010) |
| 02/01/2010 | | NOTATION ORDER granting 104 Joint Motion for Extension of Time until 2/15/2010 for Plaintiff & SMARTLogix to disclose asserted claims & infringement contentions and to respond to discovery requests. Signed by Judge Sandra S Beckwith on 2/1/10. (mb) (Entered: 02/01/2010) |
| 02/01/2010 | 105 | NOTICE of Appearance by Katherine Ann Greiner for Defendant Pegasus Transtech Corp. (Greiner, Katherine) (Entered: 02/01/2010) |
| 02/01/2010 | 106 | NOTICE by Defendant Pegasus Transtech Corp. *of Withdrawal of John F. Bennett as Co-Counsel* (Bennett, John) (Entered: 02/01/2010) |
| 02/02/2010 | 107 | Unopposed MOTION to Withdraw as Attorney *Douglas M. Hall* by Defendant Enterprise Information Solutions, Inc.. (Creighton, Richard) (Entered: 02/02/2010) |
| 02/02/2010 | 108 | Minute Entry: Hearing held before Judge Sandra S Beckwith on the pending motions to dismiss. Arguments presented. Status conference also held. The parties will attempt to resolve the process of depositions, and are to report status to the court by 2/9/2010.(Court Reporter Mary Ann Ranz (Official).). (Attachment: # 1 Appendix: Counsel List). (mb) (Entered: 02/02/2010) |
| 02/03/2010 | | ORDER granting 107 Defendant Enterprise's Motion for attorney Douglas Hall to Withdraw as counsel. Signed by Judge Sandra S Beckwith on 2/3/10. (mb) (Entered: 02/03/2010) |
| 02/08/2010 | 109 | MOTION for Leave to File *Amended Complaint (Conditional)* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 02/08/2010) |

A61

| | | |
|---|---|---|
| 02/09/2010 | 110 | STATUS REPORT *on Unresolved Issues Regarding Limitations on Depositions* by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 02/09/2010) |
| 02/09/2010 | 111 | Response re 110 Status Report *Defendants Response To R+L Carriers, Inc.s Statement Of Unresolved Issues Regarding Limitations On Depositions* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Profit Tools, Inc., Qualcomm, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Williams, Douglas) (Entered: 02/09/2010) |
| 02/11/2010 | 112 | MOTION for Extension of Time New date requested 3/8/2010. by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 02/11/2010) |
| 02/12/2010 | | NOTATION ORDER granting 112 Plaintiff & SMARTLogix's Motion for Extension of Time until 3/8/2010 for SMARTLogix to disclose asserted claims and infringement contentions and to respond to plaintiff's first set of interrogs. & request for production of documents. Signed by Judge Sandra S Beckwith on 2/12/10. (mb) (Entered: 02/12/2010) |
| 02/23/2010 | | NOTICE by clerk: Counsel who will participate at the telephone conference scheduled for 3/2/2010 at 2:00 PM, are to submit contact information to Mary Brown by email or by telephone at 513.564.7520 no later than Noon on 2/25/2010. (mb) (Entered: 02/23/2010) |
| 02/23/2010 | 113 | ORDER granting 68 Qualcomm's Motion to Dismiss; granting 87 Affiliated Computer Services, DriverTech, EBE Tech., Enterprise Information Solution, Intermec Tech., Microdea, PeopleNet Communications, Pegasus Transtech & Profit Tool's Motions to Dismiss; Plaintiff's complaints and counterclaims against each of these defendants are DISMISSED; granting 109 Plaintiff's Motion for Leave to Amend Complaints. Amended pleadings must be filed by 3/15/2010. Signed by Judge Sandra S Beckwith on 2/23/10. (mb) (Entered: 02/23/2010) |
| 03/02/2010 | | Minute Entry: Status conference held before Judge Sandra S Beckwith. The affects of the order of dismissal of several defendants discussed. Plaintiff to meet with the defendants, by 4/6/10, to discuss how they will proceed against those defendants. A further telephone conference will be held on 4/7/10 at noon. Counsel who will attend the 4/6/10 conference are to notify Ms. Brown by noon on 3/31/10. (Court Reporter MA Ranz (Official).) (mb) (Entered: 03/02/2010) |
| 03/02/2010 | 114 | Transcript of Hearing on Motions to Dismiss held on February 2, 2010, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 3/23/2010. Redacted Transcript Deadline set for 4/2/2010. Release of Transcript Restriction set for 6/1/2010. (mb) (Entered: 03/02/2010) |
|---|---|---|
| 03/03/2010 | 115 | ORDER confirming status conference of 3/2/2010, and scheduling a further status (telephone) conference for 4/7/2010 at noon. Signed by Judge Sandra S Beckwith on 3/3/10. (mb) (Entered: 03/03/2010) |
| 03/04/2010 | 116 | Letter from district court clerk to MDL Panel Clerk of tag-along case. Copy of 2:10-cv-90 complaint sent. (mb) (Entered: 03/04/2010) |
| 03/08/2010 | | NOTICE by clerk: Due to this Court's current criminal schedule, the conference scheduled for 4/7/2010 is RESCHEDULED for 4/6/2010 at Noon. (mb) (Entered: 03/08/2010) |
| 04/05/2010 | 117 | [FORMER DOC. 117] STIPULATION of Dismissal *without Prejudice as to Enterprise Information Solutions, Inc.* by Defendant Enterprise Information Solutions, Inc., Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) Modified to remove the pdf on 4/6/2010 (eh1). ). (Entered: 04/05/2010) |
| 04/06/2010 | | Notice of Correction re:[FORMER DOC. 117] Stipulation of Dismissal removed from the docket because it was actually a proposed order. Clerk contacted counsel and advised that proposed order should be emailed to chambers rather than filed on the docket. (eh1) (Entered: 04/06/2010) |
| 04/06/2010 | | Minute Entry: Status conference held before Judge Sandra S Beckwith. Written order to follow. (Court Reporter MA Ranz (Official).) (mb) (Entered: 04/06/2010) |
| 04/06/2010 | 118 | STIPULATION AND ORDER DISMISSING all claims and defenses of plaintiff and defendant Enterprise Information Solutions, Inc. without prejudice. Signed by Judge Sandra S Beckwith on 4/6/10. (mb) (Entered: 04/06/2010) |
| 04/06/2010 | 119 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Defendant EBE Technologies, Inc., Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Proposed Order) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 120 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Defendant Profit Tools, Inc., Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Proposed Order) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 121 | AMENDED COMPLAINT against Drivertech LLC, filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 |

A63

| | | |
|---|---|---|
| | | Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 122 | AMENDED COMPLAINT against Microdea, Inc, filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 123 | AMENDED COMPLAINT against Qualcomm, Inc., filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 124 | AMENDED COMPLAINT against Affiliated Computer Services, filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 125 | AMENDED COMPLAINT against Peoplenet Communications Corporation, filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 126 | AMENDED COMPLAINT against Intermec Technologies Corp., filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R) (Sineneng, Philip) (Entered: 04/06/2010) |
| 04/06/2010 | 127 | AMENDED COMPLAINT against Pegasus Transtech Corp., filed by R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P) (Sineneng, Philip) (Entered: 04/06/2010) |
| | | |

A64

| 04/07/2010 | 128 | ORDER: Status conference held 4/6/10. Answers to amended complaints, or motions directed to the sufficiency of any pleading under Rule 12, are to be filed by April 27, 2010; Responses due by May 11, 2010; Replies due by May 17, 2010. A hearing on any such motions will be held on May 25, 2010 at 9 a.m., followed by a status conference with all parties at 11:30 a.m. Parties who are not involved in the motions hearing may attend the status conference by telephone. Counsel who intend to participate by telephone must timely respond to the Clerks notice concerning the conference by the deadline set by the Clerk. Signed by Judge Sandra S Beckwith on 4/7/10. (mb) (Entered: 04/07/2010) |
|---|---|---|
| 04/07/2010 | | NOTICE by clerk: A status conference is scheduled for 5/25/10 at 11:30 AM. Any party who wishes to participate by telephone is to notify Ms. Brown no later than noon on 5/18/10. (mb) (Entered: 04/07/2010) |
| 04/09/2010 | 129 | ORDER granting 119 Plaintiff's Motion to Dismiss, with prejudice, the Complaint & Counterclaim as to EBE Technologies Inc. Signed by Judge Sandra S Beckwith on 4/9/10. (mb) (Entered: 04/09/2010) |
| 04/09/2010 | 130 | ORDER granting 120 Plaintiff's Motion to Dismiss, with prejudice, the Complaint & Counterclaim as to Profit Tools, Inc. Signed by Judge Sandra S Beckwith on 4/9/10. (mb) (Entered: 04/09/2010) |
| 04/09/2010 | 131 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Defendant Pegasus Transtech Corp., Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Proposed Order) (Sineneng, Philip) (Entered: 04/09/2010) |
| 04/14/2010 | 132 | ORDER granting 131 Plaintiff's Motion to Dismiss, with prejudice, the Complaint & Counterclaim as to Pegasus Transtech Corporation. Signed by Judge Sandra S Beckwith on 4/14/10. (mb) (Entered: 04/14/2010) |
| 04/14/2010 | 133 | Transcript of Status Conference held on April 6, 2010, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 5/5/2010. Redacted Transcript Deadline set for 5/17/2010. Release of Transcript Restriction set for 7/13/2010. (mb) (Entered: 04/14/2010) |
| 04/21/2010 | 134 | MOTION for Judgment on the Pleadings *as to PeopleNet Communications Corporation's Complaint* by Counter Defendant R&L Carriers, Inc.. Responses |

| | | due by 5/11/2010 (Attachments: # 1 Exhibit A: PeopleNet's Complaint) (Sineneng, Philip) (Entered: 04/21/2010) |
|---|---|---|
| 04/21/2010 | 135 | MOTION for Judgment on the Pleadings *as to DriverTech LLC's First Amended Complaint* by Counter Defendant R&L Carriers, Inc.. Responses due by 5/11/2010 (Attachments: # 1 Exhibit A: DriverTech LLC's First Amended Complaint) (Sineneng, Philip) (Entered: 04/21/2010) |
| 04/21/2010 | 136 | MOTION for Judgment on the Pleadings *as to Intermec Technologies Corp.'s Counterclaim* by Counter Defendant R&L Carriers, Inc.. Responses due by 5/11/2010 (Attachments: # 1 Exhibit A: Intermec Technologies Corp.'s Counterclaim) (Sineneng, Philip) (Entered: 04/21/2010) |
| 04/21/2010 | 137 | MOTION for Judgment on the Pleadings *as to Berry & Smith Trucking Ltd.'s Counterclaim* by Counter Defendant R&L Carriers, Inc.. Responses due by 5/11/2010 (Attachments: # 1 Exhibit A: Berry & Smith Trucking Ltd.'s Counterclaim) (Sineneng, Philip) (Entered: 04/21/2010) |
| 04/23/2010 | 138 | MOTION for Leave to File *Amended Claims vy Berry & Smith, PeopleNet, and DriverTech* by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, Peoplenet Communications Corporation. (Attachments: # 1 Exhibit 1 - Berry & Smith Amended Counterclaim, # 2 Exhibit V to Ex 1 for Berry & Smith, # 3 Exhibit 2 - PeopleNet Amended Complaint, # 4 Exhibit V to Ex 2 for PeopleNet, # 5 Exhibit Common Ex A to Ex E, # 6 Exhibit Common Ex F, # 7 Exhibit Common Ex G, # 8 Exhibit Common Ex H, # 9 Exhibit Common Ex I, # 10 Exhibit Common Ex J, # 11 Exhibit Common Ex K to Ex Q, # 12 Exhibit Common Ex R-1 to R-8, # 13 Exhibit Common Ex S-1 to S-23, # 14 Exhibit Common Ex T-1 to T-14, # 15 Exhibit Common Ex U-1 to U-14, # 16 Exhibit 3 - DriverTech Second Amended Complaint, # 17 Exhibit DriverTech Ex A to Ex B, # 18 Exhibit DriverTech Ex C, # 19 Exhibit DriverTech Ex D-1, # 20 Exhibit DriverTech Ex D-2, # 21 Text of Proposed Order) (Williams, Douglas) (Entered: 04/23/2010) |
| 04/23/2010 | 139 | [FORMER DOC. 139] AMENDED DOCUMENT by Defendants Berry & Smith Trucking Ltd., Drivertech LLC, Peoplenet Communications Corporation. Amendment to 138 MOTION for Leave to File *Amended Claims vy Berry & Smith, PeopleNet, and DriverTech Amended Attachment (21) Text of Proposed Order)*. (Williams, Douglas) Modified on 4/26/2010 (eh1). (Entered: 04/23/2010) |
| 04/26/2010 | | Notice of Correction re:[FORMER DOC. 139] AMENDED DOCUMENT Amendment to 138 MOTION for Leave to File *Amended Claims vy Berry & Smith, PeopleNet, and DriverTech* removed from the docket because it was a proposed order granting doc. 138 MOTION for Leave to File Amended Claims. Proposed orders should be filed as attachments to their motions and also emailed to chambers. Clerk saved before deleting. (eh1) (Entered: 04/26/2010) |
| 04/27/2010 | 140 | MOTION to Expedite *Determination of Its Rule 41 Motion or, in the Alternative, to Stay Briefing on R+L's Rule 12 Motion* by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Czanik, Kara) (Entered: 04/27/2010) |

CM/ECF LIVE - U.S. District Court:OHSD

| 04/27/2010 | 141 | MOTION to Dismiss *Its Counterclaims Without Prejudice or, in the Alternative, for Leave to Amend* by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. Responses due by 5/21/2010 (Attachments: # 1 Exhibit A) (Czanik, Kara) (Entered: 04/27/2010) |
|---|---|---|
| 04/27/2010 | 142 | MOTION to Dismiss *Defendants Joint Motions To Dismiss With Memorandum In Support* by Defendants Affiliated Computer Services, Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. Responses due by 5/21/2010 (Attachments: # 1 Memo Supporting Motion, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10) (Williams, Douglas) (Entered: 04/27/2010) |
| 05/11/2010 | 143 | RESPONSE in Opposition re 136 MOTION for Judgment on the Pleadings *as to Intermec Technologies Corp.'s Counterclaim* filed by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Czanik, Kara) (Entered: 05/11/2010) |
| 05/11/2010 | 144 | RESPONSE to Motion re 137 MOTION for Judgment on the Pleadings *as to Berry & Smith Trucking Ltd.'s Counterclaim*, 134 MOTION for Judgment on the Pleadings *as to PeopleNet Communications Corporation's Complaint* filed by Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation. (Williams, Douglas) (Entered: 05/11/2010) |
| 05/11/2010 | 145 | RESPONSE to Motion re 135 MOTION for Judgment on the Pleadings *as to DriverTech LLC's First Amended Complaint* filed by Defendant Drivertech LLC. (Petersen, Scott) (Entered: 05/11/2010) |
| 05/11/2010 | 146 | RESPONSE in Opposition re 142 MOTION to Dismiss *Defendants Joint Motions To Dismiss With Memorandum In Support* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/11/2010) |
| 05/17/2010 | 147 | REPLY to Response to Motion re 142 MOTION to Dismiss *Defendants Joint Motions To Dismiss With Memorandum In Support Defendants Reply In Support Of Joint Motions To Dismiss* filed by Defendants Affiliated Computer Services, Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit 11) (Williams, Douglas) (Entered: 05/17/2010) |
| 05/17/2010 | 148 | REPLY to Response to Motion re 137 MOTION for Judgment on the Pleadings *as to Berry & Smith Trucking Ltd.'s Counterclaim*, 136 MOTION for Judgment on the Pleadings *as to Intermec Technologies Corp.'s Counterclaim*, 135 MOTION for Judgment on the Pleadings *as to DriverTech LLC's First Amended Complaint*, 134 MOTION for Judgment on the Pleadings *as to PeopleNet Communications Corporation's Complaint* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/17/2010) |
| 05/17/2010 | 149 | RESPONSE in Opposition re 138 MOTION for Leave to File *Amended Claims vy Berry & Smith, PeopleNet, and DriverTech* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/17/2010) |
| 05/21/2010 | 150 | |

A67

| | | |
|---|---|---|
| | | RESPONSE in Opposition re 141 MOTION to Dismiss *Its Counterclaims Without Prejudice or, in the Alternative, for Leave to Amend* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/21/2010) |
| 05/24/2010 | 151 | Transcript of Status Conference held on March 2, 2010, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 6/14/2010. Redacted Transcript Deadline set for 6/24/2010. Release of Transcript Restriction set for 8/23/2010. (mb) (Entered: 05/24/2010) |
| 05/25/2010 | | NOTICE by clerk: The telephone status conference set for 5/25/10 at 11:30 AM is CANCELED and will be rescheduled pending ruling on the pending motions. (mb) (Entered: 05/25/2010) |
| 05/25/2010 | 152 | MOTION for Leave to File *Intermec's Motion for Rule 11 Sanctions* by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Attachments: # 1 Motion for Rule 11 Sanctions) (Czanik, Kara) (Entered: 05/25/2010) |
| 05/25/2010 | 153 | Minute Entry: Hearing on pending motions (Docs. 134-138, 141 & 142) held before Judge Sandra S Beckwith: Arguments presented. Status conference set for today at 11:30 AM CANCELED and will be rescheduled following decision on the motions. Motions taken under submission. (Court Reporter MA Ranz (Official).) (Attachments # 1 Appendix: List of Counsel in Attendance). (mb) (Entered: 05/26/2010) |
| 05/26/2010 | 154 | NOTICE of Corrected Exhibit CC re 124 Amended Complaint and 125 Amended Complaint by Plaintiff R&L Carriers, Inc. (Attachments: # 1 Exhibit CC to First Amended Complaint and First Amended Counterclaim) (Sineneng, Philip) Modified on 5/27/2010 (eh1). (Entered: 05/26/2010) |
| 06/08/2010 | 155 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Plaintiff R&L Carriers, Inc., Defendant SMARTLogix. (Sineneng, Philip) (Entered: 06/08/2010) |
| 06/08/2010 | 156 | STIPULATION & ORDER granting 155 Dismissal of Complaint & Counterclaim. Signed by Judge Sandra S Beckwith on 6/8/10. (mb) (Entered: 06/08/2010) |
| 06/08/2010 | 157 | |

A68

| | | |
|---|---|---|
| | | Joint MOTION to Stay re 61 Order,,,,, *of Discovery until all pending Rule 12 Motions are decided and status conference is held* by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Peoplenet Communications Corporation, Pitt Ohio Express Inc, Qualcomm, Inc., Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 06/08/2010) |
| 06/09/2010 | | NOTATION ORDER granting 157 Joint Motion to Stay Discovery and further deadlines in Doc. 61 until all pending Rule 12 motions have been ruled upon. Signed by Judge Sandra S Beckwith on 6/9/10. (mb) (Entered: 06/09/2010) |
| 06/10/2010 | 158 | Transcript of Hearing on Motions held on May 25, 2010, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |
| | | NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully. |
| | | For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 7/1/2010. Redacted Transcript Deadline set for 7/12/2010. Release of Transcript Restriction set for 9/8/2010. (mb) (Entered: 06/10/2010) |
| 06/15/2010 | 159 | RESPONSE in Opposition re 152 MOTION for Leave to File *Intermec's Motion for Rule 11 Sanctions* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G (Part I), # 8 Exhibit G (Part II)) (Sineneng, Philip) (Entered: 06/15/2010) |
| 06/21/2010 | | NOTICE by clerk: Due to this Court's current criminal calendar, the Markman hearing scheduled for 12/13/10 is RESCHEDULED for 12/20/10 at 9:00 AM. (mb) (Entered: 06/21/2010) |
| 06/24/2010 | | NOTICE of clarification by clerk: All dates set forth in the Court's Order of 11/10/09 (doc. 61) were stayed on 6/9/10 pending ruling on the motions, including the 6/28/10 conference with the court & the Markman hearing set for 12/20/10. (mb) Modified on 6/24/2010 (mb). (Entered: 06/24/2010) |
| 06/30/2010 | 160 | REPLY to Response to Motion re 152 MOTION for Leave to File *Intermec's Motion for Rule 11 Sanctions* filed by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Koering, Jacob) (Entered: 06/30/2010) |
| 07/15/2010 | 161 | ORDER denying 134 Motion for Judgment on the Pleadings; denying 135 Motion for Judgment on the Pleadings; denying 136 Motion for Judgment on |

A69

| | | |
|---|---|---|
| | | the Pleadings; denying [137] Motion for Judgment on the Pleadings; granting [138] Motion for Leave to File amended pleadings. The amended pleadings attached are deemed filed as of 7/15/10. If R&L intends to challenges these amended pleadings, it shall file its motions by 8/5/10; finding as moot [140] Motion to Expedite; granting [141] Intermec's Motion to Dismiss its counterclaim without prejudice. Signed by Judge Sandra S Beckwith on 7/15/10. (mb) Modified on 7/19/2010 (mb). (Entered: 07/15/2010) |
| 07/15/2010 | [162] | ORDER granting [142] Joint Motions to Dismiss R&L's amended complaint and counterclaims by Affiliated Computer Services, DriverTech, Inermec Tech., Microdea, PeopleNet & Qualcomm. Those amended complaints & counterclaims are dismissed with prejudice (docs. 121-126). Signed by Judge Sandra S Beckwith on 7/15/10. (mb) (Entered: 07/15/2010) |
| 08/04/2010 | [163] | ANSWER to Amended Complaint *of PeopleNet Communications Corp.* (Doc. 125) filed by R&L Carriers, Inc.. (Sineneng, Philip) Modified on 8/5/2010 (mb). (Entered: 08/04/2010) |
| 08/04/2010 | [164] | ANSWER to Amended Complaint *of DriverTech LLC* (Doc. 121) filed by R&L Carriers, Inc.. (Sineneng, Philip) Modified on 8/5/2010 (mb). Modified on 8/5/2010 (mb). (Entered: 08/04/2010) |
| 08/04/2010 | [165] | *Reply/* ANSWER to Complaint */Counterclaim of Berry & Smith Trucking Ltd.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 08/04/2010) |
| 08/06/2010 | [166] | NOTICE OF APPEAL as to [162] Order dismissing R+L's amended complaint against Intermec Technologies, by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) Modified on 8/9/2010 (mb). (Entered: 08/06/2010) |
| 08/06/2010 | [167] | NOTICE OF APPEAL as to [162] Order dismissing R+L's amended complaint against Affiliated Computer Services, by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) Modified on 8/9/2010 (mb). (Entered: 08/06/2010) |
| 08/06/2010 | [168] | NOTICE OF APPEAL as to [162] Order dismissing R+L's amended complaint against Qualcomm, Inc., by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) Modified on 8/9/2010 (mb). (Entered: 08/06/2010) |
| 08/06/2010 | [169] | NOTICE OF APPEAL as to [162] Order dismissing R+L's amended complaint against Microdea, Inc., by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) Modified on 8/9/2010 (mb). (Entered: 08/06/2010) |
| 08/06/2010 | | USCA Appeal Fees received $ 455 receipt number 100CIN009173 re [166] Notice of Appeal for case 1:09-cv-532 filed by R&L Carriers, Inc (jlw1) Modified to clarify filing date on 8/9/2010 (jlw1). (Entered: 08/09/2010) |
| 08/06/2010 | | USCA Appeal Fees received $ 455 receipt number 100CIN009174 re [167] Notice of Appeal for case 1:09-cv-818 filed by R&L Carriers, Inc (jlw1) Modified to clarify filing date on 8/9/2010 (jlw1). (Entered: 08/09/2010) |
| 08/06/2010 | | USCA Appeal Fees received $ 455 receipt number 100CIN009175 re [168] Notice of Appeal for case 1:09-cv-445 filed by R&L Carriers, Inc (jlw1) (Entered: 08/09/2010) |
| | | |

| 08/06/2010 | | USCA Appeal Fees received $ 455 receipt number 100CIN009176 re [169] Notice of Appeal 1:09-CV-179 filed by R&L Carriers, Inc. (jlw1) Modified to clarify filing date on 8/9/2010 (jlw1). (Entered: 08/09/2010) |
| 08/16/2010 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for Federal Circuit re [167] Notice of Appeal, [166] Notice of Appeal, [168] Notice of Appeal, [169] Notice of Appeal (jlw1) (Entered: 08/16/2010) |
| 08/16/2010 | [170] | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # [1] Exhibit A) (Sineneng, Philip) (Entered: 08/16/2010) |
| 08/16/2010 | [171] | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # [1] Exhibit A) (Sineneng, Philip) (Entered: 08/16/2010) |
| 08/16/2010 | [172] | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # [1] Exhibit A) (Sineneng, Philip) (Entered: 08/16/2010) |
| 08/16/2010 | [173] | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # [1] Exhibit A) (Sineneng, Philip) (Entered: 08/16/2010) |
| 08/20/2010 | [174] | NOTICE by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp. *of Manual Filing Under Seal of Motion for Attorneys' Fees, Expenses and Costs* (Czanik, Kara) (Entered: 08/20/2010) |
| 09/13/2010 | [177] | NOTICE by Plaintiff R&L Carriers, Inc. *of Manual Filing Under Seal of its Memorandum in Opposition to Intermec's Motion for Attorneys' Fees, Expenses and Costs* (Sineneng, Philip) (Entered: 09/13/2010) |
| 09/21/2010 | [178] | Minute Entry: Status conference held before Judge Sandra S Beckwith. Final judgments to be filed; PeopleNet & DriverTech to move to dismiss; Intermec's motion for leave to file motion for sanctions ripe - decision is forthcoming; Berry & Smith will file motion for leave to file motion for sanctions; Rule 35 motions will be filed by defendants. (Court Reporter: Jodie Perkins (Official).) (Attachment: # [1] Appendix: Counsel List). (mb) (Entered: 09/21/2010) |
| 09/21/2010 | [179] | ORDER granting [152] Intermec's Motion for Leave to File Rule 11 motion. Signed by Judge Sandra S Beckwith on 9/21/10. (mb) (Entered: 09/21/2010) |
| 09/22/2010 | [180] | MOTION for Sanctions *Pursuant to Rule 11* by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Koering, Jacob) (Entered: 09/22/2010) |
| 09/22/2010 | [181] | MOTION to Dismiss *DriverTech's Second Amended Complaint Without Prejudice* ( Responses due by 10/18/2010), MOTION for Entry of Judgment under Rule 54(b) *and Rule 58* by Defendant Drivertech LLC. (Petersen, Scott) (Entered: 09/22/2010) |
| 09/22/2010 | [182] | MOTION to Dismiss *First Amended Complaint without Prejudice and MOTION for Entry of Judgment pursuant to Rules 54(b) and 58* by Defendant Peoplenet Communications Corporation. Responses due by 10/18/2010 (Borst, Laura) (Entered: 09/22/2010) |
| 09/24/2010 | [183] | NOTICE OF APPEAL as to [162] Order on Motion to Dismiss, by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) (Entered: 09/24/2010) |
| | | |

A71

| 09/24/2010 | 184 | NOTICE OF APPEAL as to 162 Order on Motion to Dismiss, by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) (Entered: 09/24/2010) |
| 09/24/2010 | 185 | NOTICE OF APPEAL as to 162 Order on Motion to Dismiss, by Plaintiff R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) (Entered: 09/24/2010) |
| 09/24/2010 | 186 | RESPONSE in Opposition re 181 MOTION to Dismiss *DriverTech's Second Amended Complaint Without Prejudice* MOTION for Entry of Judgment under Rule 54(b) *and Rule 58* filed by Counter Defendant R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 09/24/2010) |
| 09/24/2010 | 187 | RESPONSE in Opposition re 182 MOTION to Dismiss *First Amended Complaint without Prejudice and MOTION for Entry of Judgment pursuant to Rules 54(b) and 58* filed by Counter Defendant R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 09/24/2010) |
| 09/30/2010 | 188 | REPLY to Response to Motion re 180 MOTION for Sanctions *Pursuant to Rule 11* filed by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Koering, Jacob) (Entered: 09/30/2010) |
| 10/05/2010 | 189 | [FORMER DOCUMENT 189] MOTION for Attorney Fees by Defendants Affiliated Computer Services, Microdea, Inc, Qualcomm, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Appendix Memorandum in Support of Motion, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Appendix Attachment A, # 14 Appendix Attachment A Ex 1, # 15 Appendix Attachment A Ex 2, # 16 Appendix Attachment A Ex 3, # 17 Appendix Attachment A Ex 4) (Zembek, Richard) Modified to remove pdf on 10/6/2010 (mtw1). (Entered: 10/05/2010) |
| 10/05/2010 | 190 | MOTION for Attorney Fees by Defendants Affiliated Computer Services, Microdea, Inc, Qualcomm, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Supplement Memorandum in Support, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Appendix Attachment A, # 14 Appendix Attachment A Ex. 1, # 15 Appendix Attachment A Ex 2, # 16 Appendix Attachment A Ex 3, # 17 Appendix Attachment A Ex 4) (Zembek, Richard) (Entered: 10/05/2010) |
| 10/06/2010 | | Notice of Correction re [FORMER DOCUMENT 189] MOTION for Attorney Fees: Document removed at Counsel's request. Pages are missing from attachment # 2 - Appendix Memorandum in Support of Motion. Counsel refiled motion as Document 190 . (mtw1) (Entered: 10/06/2010) |
| 10/06/2010 | 191 | NOTICE by Defendant Affiliated Computer Services re 190 MOTION for Attorney Fees *of filing of Exhibit 4 to Addendum A in support of the Motion* (Attachments: # 1 Exhibit 4 to Addendum A) (Shunk, Thomas) (Entered: 10/06/2010) |
| 10/18/2010 | 192 | RESPONSE in Opposition re 180 MOTION for Sanctions *Pursuant to Rule 11* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/18/2010) |
| 10/25/2010 | | |

A72

| | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re [183] Notice of Appeal, [185] Notice of Appeal, [184] Notice of Appeal (eh1) (Entered: 10/25/2010) |
|---|---|---|
| 10/29/2010 | 193 | RESPONSE in Opposition re 190 MOTION for Attorney Fees filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Sineneng, Philip) (Entered: 10/29/2010) |
| 11/04/2010 | 194 | REPLY to Response to Motion re 180 MOTION for Sanctions *Pursuant to Rule 11* filed by Counter Claimant Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Koering, Jacob) (Entered: 11/04/2010) |
| 11/12/2010 | 195 | REPLY to Response to Motion re 190 MOTION for Attorney Fees *and Costs* filed by Defendants Affiliated Computer Services, Microdea, Inc, Qualcomm, Inc.. (Attachments: # 1 Appendix, # 2 Exhibit 11, # 3 Exhibit 12) (Zembek, Richard) (Entered: 11/12/2010) |
| 11/16/2010 | 196 | ORDER granting 181 DriverTech's Motion to Dismiss without prejudice its second amended complaint; granting 182 Peoplenet's Motion to Dismiss without prejudice its first amended complaint. Signed by Judge Sandra S Beckwith on 1/16/10. (mb) (Entered: 11/16/2010) |
| 11/16/2010 | 197 | ORDER: The parties are to show cause, by 12/8/10, why attorney Douglas Williams should not be reappointed as lead and liaison counsel for defendants for a second one-year term. Signed by Judge Sandra S Beckwith on 11/16/10. (mb) (Entered: 11/16/2010) |
| 11/16/2010 | 198 | NOTICE OF APPEAL as to 196 Order on Motion to Dismiss,,, by Counter Defendant R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) (Entered: 11/16/2010) |
| 11/16/2010 | 199 | NOTICE OF APPEAL as to 196 Order on Motion to Dismiss,,, by Counter Defendant R&L Carriers, Inc.. Filing fee $ 455. (Sineneng, Philip) (Entered: 11/16/2010) |
| 11/17/2010 | | NOTICE by clerk: A status conference (telephone) is scheduled for 11/24/10 at 1:30 p.m. Counsel for plaintiff will initiate the call to chambers at 513.564.7610. (mb) (Entered: 11/17/2010) |
| 11/17/2010 | | Filing fee: $ 455.00, receipt number 100CIN010075 (lk1) (Entered: 11/17/2010) |
| 11/17/2010 | | Filing fee: $ 455.00, receipt number 100CIN010076 (lk1) (Entered: 11/17/2010) |
| 11/18/2010 | 200 | Transcript of Status Conference held on September 21, 2010, before Judge Beckwith. Court Reporter/Transcriber Jodie Perkins (Official), Telephone number 513.564. 7676. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | |
|---|---|---|
| | | NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 12/9/2010. Redacted Transcript Deadline set for 12/20/2010. Release of Transcript Restriction set for 2/16/2011. (mb) (Entered: 11/18/2010) |
| 11/18/2010 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 198 Notice of Appeal and 199 Notice of Appeal. (eh1) (Entered: 11/18/2010) |
| 11/18/2010 | 201 | TRANSCRIPT REQUEST by Counter Defendant R&L Carriers, Inc. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 11/18/2010) |
| 11/18/2010 | 202 | TRANSCRIPT REQUEST by Counter Defendant R&L Carriers, Inc. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 11/18/2010) |
| 11/24/2010 | | Minute Entry: Status conference held before Sandra S. Beckwith. New schedule established. Written order to follow. (Court Reporter Jodie Perkins (Official).) (mb) (Entered: 11/29/2010) |
| 11/30/2010 | 203 | ORDER: Pursuant to a conference held 11/24/10 the stay is lifted, and the following schedule is established: R+L's disclosure of asserted claims and infringement contentions as to Pitt Ohio due: 12/3/10; Pitt Ohio's invalidity contentions, disclosures & documents due: 12/22/10; Proposed claims terms exchanged: 1/14/11; Parties to meet & confer: 1/24/11; R+L's proposed claim construction: 2/2/11; Deadline to add parties: 2/10/11; Telephone status conference: 2/22/11 at 1:30 PM; Defendant's proposed claim construction: 2/25/11; Exchange of privilege logs: 3/7/11; Parties to meet and confer: 3/21/11; Joint claim construction & prehearing statement & any expert reports due: 4/18/11; Conference with the court: 5/6/11 at 10:00 AM; Complete claim construction discovery: 7/8/11; Telephone status conference: 7/20/11 at 10:00 AM; Opening claim construction brief: 8/17/11; Response: 9/19/11; Claim construction hearing: 10/18/11 at 10:00 AM and continued on 10/19/11 if needed. R+L's request for oral argument on the motions for sanctions and attorney's fees (docs. 175, 180 & 190) is taken under submission. COUNSEL FOR R+L IS RESPONSIBLE for arranging the telephone call to the court on all telephone conferences set forth in this order. Signed by Judge Sandra S Beckwith on 11/30/10. (mb) (Entered: 11/30/2010) |
| 11/30/2010 | 204 | Joint MOTION for Attorney Fees by Defendants Drivertech LLC, Peoplenet Communications Corporation. (Attachments: # 1 Supplement Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12) (Zembek, Richard) (Entered: 11/30/2010) |
| 12/01/2010 | 205 | |

A74

| | | |
|---|---|---|
| | | NOTICE by Plaintiff R&L Carriers, Inc. *of Subpoena* (Attachments: # 1 Exhibit Subpoena issued to PeopleNet Communications) (White, Anthony) (Entered: 12/01/2010) |
| 12/01/2010 | 206 | NOTICE by Plaintiff R&L Carriers, Inc. *of Subpoena* (Attachments: # 1 Exhibit Subpoena Issued to PeopleNet Communications) (White, Anthony) (Entered: 12/01/2010) |
| 12/01/2010 | 207 | NOTICE by Plaintiff R&L Carriers, Inc. *of Subpoena* (Attachments: # 1 Exhibit Subpoena issued to DriverTech) (White, Anthony) (Entered: 12/01/2010) |
| 12/06/2010 | 208 | NOTICE by Plaintiff R&L Carriers, Inc. *of filing Return of Service of Subpoena issued to Peoplenet Communications Corporation* (White, Anthony) (Entered: 12/06/2010) |
| 12/06/2010 | 209 | NOTICE by Plaintiff R&L Carriers, Inc. *of Return of Service of Subpoena issued to Peoplenet Communications Corporation* (White, Anthony) (Entered: 12/06/2010) |
| 12/07/2010 | 210 | MOTION for Leave to File *Motion for Sanctions Under Fed. R. Civ. P 11 Against Plantiff* by Defendant Berry & Smith Trucking Ltd.. (Attachments: # 1 Exhibit A Motion for Sanctions, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11) (Zembek, Richard) (Entered: 12/07/2010) |
| 12/07/2010 | 211 | MOTION for Leave to File *Motion for Summary Judgment of Non-Infringement* by Defendant Berry & Smith Trucking Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7) (Zembek, Richard) (Entered: 12/07/2010) |
| 12/09/2010 | 212 | USCA Case Number 2011-1101 for 199 Notice of Appeal filed by R&L Carriers, Inc., 198 Notice of Appeal filed by R&L Carriers, Inc.. (eh1) (Entered: 12/09/2010) |
| 12/10/2010 | 213 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoena issued to Drivertech, LLC* (White, Anthony) (Entered: 12/10/2010) |
| 12/22/2010 | 214 | RESPONSE in Opposition re 204 Joint MOTION for Attorney Fees filed by Counter Defendant R&L Carriers, Inc.. (Attachments: # 1 Exhibit A (Part I), # 2 Exhibit A (Part II), # 3 Exhibit A (Part III)) (Sineneng, Philip) (Entered: 12/22/2010) |
| 12/31/2010 | 215 | RESPONSE in Opposition re 210 MOTION for Leave to File *Motion for Sanctions Under Fed. R. Civ. P 11 Against Plantiff* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 12/31/2010) |
| 12/31/2010 | 216 | RESPONSE in Opposition re 211 MOTION for Leave to File *Motion for Summary Judgment of Non-Infringement* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Sineneng, Philip) (Entered: 12/31/2010) |
| | | |

| 01/10/2011 | 217 | REPLY to Response to Motion re 204 Joint MOTION for Attorney Fees filed by Defendants Drivertech LLC, Peoplenet Communications Corporation. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6) (Zembek, Richard) (Entered: 01/10/2011) |
| 01/18/2011 | 218 | REPLY to Response to Motion re 211 MOTION for Leave to File *Motion for Summary Judgment of Non-Infringement* filed by Defendant Berry & Smith Trucking Ltd.. (Attachments: # 1 Exhibit 8, # 2 Exhibit 9, # 3 Exhibit 10) (Zembek, Richard) (Entered: 01/18/2011) |
| 01/18/2011 | 219 | REPLY to Response to Motion re 210 MOTION for Leave to File *Motion for Sanctions Under Fed. R. Civ. P 11 Against Plantiff* filed by Defendant Berry & Smith Trucking Ltd.. (Attachments: # 1 Exhibit 12, # 2 Exhibit 13) (Zembek, Richard) (Entered: 01/18/2011) |
| 01/19/2011 | 220 | NOTICE by Defendants Berry & Smith Trucking Ltd., Peoplenet Communications Corporation *Correction and Withdrawal as Counsel* (Morales, Jennifer) (Entered: 01/19/2011) |
| 01/20/2011 | 221 | ORDER: The motions for attorney's fees & costs are STAYED pending the resolution of the appeals by the Federal Circuit Court of Appeals. Signed by Judge Sandra S Beckwith on 1/20/11. (mb) (Entered: 01/20/2011) |
| 02/22/2011 | | Minute Entry: Status conference held before Judge Sandra S Beckwith. Written order to follow. (Court Reporter MA Ranz (Official).) (mb) (Entered: 02/24/2011) |
| 02/23/2011 | 222 | SCHEDULING ORDER signed by Judge Sandra S Beckwith on 2/23/11. The Court conducted a telephone status conference in this matter on 2/22/11. The Court takes under submission 210 MOTION for Leave to File Motion for Sanctions Under Fed. R. Civ. P 11 Against Plantiff and 211 MOTION for Leave to File Motion for Summary Judgment of Non-Infringement. Due to the Court's criminal docket, the conference scheduled for 5/6/2011 at 10:00 a.m. is CONVERTED to a telephone status conference to be held at 12:00 p.m. on the same date. Counsel for R&L shall arrange for the conference call. (eh) (Entered: 02/23/2011) |
| 03/03/2011 | 223 | ORDER granting 211 Defendant Berry & Smith Trucking Ltd's Motion for Leave to File motion for summary judgment. R+L may either file a memo in opposition to the S.J. motion or a Rule 56(f) motion. Signed by Judge Sandra S Beckwith on 3/3/11. (mb) (Entered: 03/03/2011) |
| 03/03/2011 | 224 | MOTION for Summary Judgment of Non-Infringement by Defendant Berry & Smith Trucking Ltd.. Responses due by 3/28/2011. (Attachments: # 1 `078 Patent, # 2 Declaration of D. Vankoughnett, # 3 Exhibit Pltf's asserted claims & infringement contentions, # 4 Exhibit Penticton Herald article, # 5 Exhibit eTrucker article, # 6 Exhibit Synergize article, # 7 Exhibit PeopleNet). (mb) Modified on 3/3/2011 (mb). (Entered: 03/03/2011) |
| 03/16/2011 | 225 | Transcript of Conference held on February 22, 2011, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

| | | Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 4/6/2011. Redacted Transcript Deadline set for 4/18/2011. Release of Transcript Restriction set for 6/14/2011. (mb) (Entered: 03/16/2011) |
|---|---|---|
| 03/24/2011 | 226 | Unopposed MOTION for Extension of Time New date requested 5/18/2011. by Defendants Berry & Smith Trucking Ltd., Interstate Distributor Company, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 03/24/2011) |
| 03/25/2011 | 227 | Joint MOTION for Extension of Time to File Response/Reply as to 224 MOTION for Summary Judgment New date requested 4/11/2011. by Defendant Berry & Smith Trucking Ltd., Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 03/25/2011) |
| 03/28/2011 | | NOTATION ORDER granting 226 Motion for Extension of dates as follows: Parties to meet and confer: 4/21/11; Joint claim construction & Prehearing Statement due: 5/18/11; Complete Claim Construction Discovery: 7/18/11. Signed by Judge Sandra S Beckwith on 3/28/11. (mb) (Entered: 03/28/2011) |
| 03/28/2011 | | NOTATION ORDER granting 227 Motion for Extension of Time until 4/11/11 within which plaintiff has to respond to Berry & Smith's motion for summary judgment. Signed by Judge Sandra S Beckwith on 3/28/11. (mb) (Entered: 03/28/2011) |
| 04/11/2011 | 228 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Defendant Berry & Smith Trucking Ltd., Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 04/11/2011) |
| 04/12/2011 | | NOTATION ORDER granting 228 Joint Motion to Dismiss the Complaint with prejudice and to dismiss the Counterclaim without prejudice as to Berry & Smith Trucking, Ltd. Signed by Judge Sandra S Beckwith on 4/12/11. (mb) (Entered: 04/12/2011) |
| 04/19/2011 | | NOTICE by clerk: The telephone status conference scheduled for 5/6/11 is RESCHEDULED for 5/4/11 at 10:00 AM. R+L is to arrange telephone call. (mb) (Entered: 04/19/2011) |
| 05/04/2011 | | Minute Entry: Status conferecne held before Judge Sandra S Beckwith. Defts. Interstate & Pitt Ohio only remaining parties. A further status conference is scheduled for 6/22/11 at 10:00 AM. Counsel for R+L is requested to arrange telephone call. (Court Reporter Jodie Perkins (Official).) (mb) (Entered: 05/04/2011) |
| | | |

A77

| 05/11/2011 | 229 | Joint MOTION for Extension of Time New date requested 6/10/2011. *of Interstate Distributor Co.'s Claim Construction Deadlines* by Defendant Interstate Distributor Company, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/11/2011) |
| --- | --- | --- |
| 05/12/2011 | | NOTATION ORDER granting 229 Joint Motion as follows: Amended Joint Claim Construction & Prehearing Statement is due: 6/10/11; R+L & Interstate to complete claim construction discovery by: 7/27/11. Signed by Judge Sandra S Beckwith on 5/12/11. (mb) (Entered: 05/12/2011) |
| 05/17/2011 | 230 | Joint MOTION for Extension of Time New date requested 6/10/2011. *of Claim Construction Deadlines* by Defendant Pitt Ohio Express Inc, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/17/2011) |
| 05/18/2011 | | NOTATION ORDER granting 230 Joint Motion for extending deadlines of prehearing statement and claim construction discovery to 6/11/11 and 7/27/11, respectively. Signed by Judge Sandra S Beckwith on 5/18/11. (mb) (Entered: 05/18/2011) |
| 06/02/2011 | | NOTICE by clerk: The status conference set for 6/22/11 is RESCHEDULED for 6/27/2011 at 2:30 PM before Judge Sandra S Beckwith. (mb) (Entered: 06/02/2011) |
| 06/09/2011 | 231 | NOTICE by Defendant Affiliated Computer Services *of withdrawal of counsel, Breck Weigel* (Shunk, Thomas) (Entered: 06/09/2011) |
| 06/10/2011 | 232 | Joint MOTION for Extension of Time New date requested 7/8/2011. *of Claim Construction Deadlines* by Defendants Interstate Distributor Company, Pitt Ohio Express Inc, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 06/10/2011) |
| 06/10/2011 | | NOTATION ORDER granting 232 Joint Motion to extend deadlines as follows: Joint claim construction & prehearing statement due: 7/8/11; Plaintiff & Pitt Ohio to complete claim construction discovery by: 7/29/11. Signed by Judge Sandra S Beckwith on 6/10/11. (mb) (Entered: 06/10/2011) |
| 06/27/2011 | 233 | Minute Entry: Status conference held before Judge Sandra S Beckwith. Next conference set for 7/20/11 at 10:00 AM. (Court Reporter MA Ranz (Official).) (Attachment: # 1 Appendix: List of Counsel). (mb) (Entered: 06/29/2011) |
| 07/07/2011 | 234 | Joint MOTION to Dismiss *Complaint and Counterclaim* by Defendant Interstate Distributor Company, Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 07/07/2011) |
| 07/08/2011 | 235 | STATUS REPORT *Joint Submission Pursuant to Local Pat. R. 105.2(d)* by Defendant Pitt Ohio Express Inc, Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Appendix B, # 2 Exhibit RL-A, # 3 Exhibit RL-B, Part 1, # 4 Exhibit RL-B, Part 2, # 5 Exhibit RL-B, Part 3, # 6 Exhibit RL-B, Part 4, # 7 Exhibit RL-B, Part 5, # 8 Exhibit RL-B, Part 6, # 9 Exhibit RL-B, Part 7, # 10 Exhibit RL-B, Part 8, # 11 Exhibit RL-B, Part 9, # 12 Exhibit RL-B, Part 10, # 13 Exhibit RL-B, Part 11, # 14 Exhibit RL-C, # 15 Exhibit RL-D, # 16 Exhibit PO-A, # 17 Exhibit PO-B, # 18 Exhibit PO-C, # 19 Exhibit PO-D, # 20 Exhibit PO-E, # |

| | | |
|---|---|---|
| | | 21 Exhibit PO-F, # 22 Exhibit PO-G, # 23 Exhibit PO-H, # 24 Exhibit PO-I) (Sineneng, Philip) (Entered: 07/08/2011) |
| 07/11/2011 | | NOTATION ORDER granting 234 Joint Motion to Dismiss Interstate Distributor Company with prejudice and the Counterclaim without prejudice. Signed by Judge Sandra S Beckwith on 7/11/11. (mb) (Entered: 07/11/2011) |
| 07/14/2011 | | NOTATION ORDER finding as moot 224 Defendant Berry & Smith Trucking's Motion for Summary Judgment. Signed by Judge Sandra S Beckwith on 7/14/11. (mb) (Entered: 07/14/2011) |
| 07/20/2011 | 236 | Minute Entry: Status conference held before Judge Sandra S Beckwith. Pitt Ohio is granted leave to file a motion for summary judgment. (Court Reporter MA Ranz (Official).) (Attachment: # 1 Appendix: List of Counsel present). (mb) (Entered: 07/20/2011) |
| 08/17/2011 | 237 | Claim Construction Brief *with Memorandum in Support* by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (Jankowski, Gretchen) Modified on 12/13/2011 (mb). (Entered: 08/17/2011) |
| 08/17/2011 | 238 | OPENING CLAIM CONSTRUCTION BRIEF by Plaintiff R&L Carriers, Inc.. (White, Anthony) Modified on 8/18/2011 - To clarify docket text language (tt). (Entered: 08/17/2011) |
| 08/18/2011 | 239 | MOTION for Summary Judgment *with Memorandum in Support* by Defendant Pitt Ohio Express Inc. Responses due by 9/12/2011 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7) (Jankowski, Gretchen) (Entered: 08/18/2011) |
| 09/12/2011 | 241 | RESPONSE in Opposition re 239 MOTION for Summary Judgment *with Memorandum in Support* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A - Bowman Declaration, # 2 Exhibit B - Filed Under Seal, # 3 Exhibit C - FIled Under Seal, # 4 Exhibit D - Konezny Non-Confidential Deposition, # 5 Exhibit E - Filed Under Seal, # 6 Exhibit F Crandall Declaration (Part 1), # 7 Exhibit F - Crandall Declaration (Part 2), # 8 Exhibit F- Crandall Declaration (Part 3), # 9 Exhibit G - Filed Under Seal, # 10 Exhibit H - Filed Under Seal, # 11 Exhibit I - Filed Under Seal, # 12 Exhibit J - Filed Under Seal, # 13 Exhibit K - Filed Under Seal, # 14 Exhibit L - Seabold Affidavit) (White, Anthony) (Entered: 09/12/2011) |
| 09/12/2011 | 242 | MOTION To Defer Ruling on Pitt Ohio's Motion for Summary Judgment until infringement discovery closes by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Affidavit of Anthony C. White, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N) (White, Anthony) Modified on 9/13/2011 (mb). (Entered: 09/12/2011) |
| 09/19/2011 | 244 | RESPONSE to Motion re 237 MOTION for Claim Construction *with Memorandum in Support Pursuant to Local Patent Rule 105.4(B)* filed by Plaintiff R&L Carriers, Inc.. (White, Anthony) (Entered: 09/19/2011) |
| | | |

A79

| 09/19/2011 | 245 | RESPONSE to Motion re 237 MOTION for Claim Construction *with Memorandum in Support* filed by Defendant Pitt Ohio Express Inc. (Jankowski, Gretchen) (Entered: 09/19/2011) |
| 09/20/2011 | 246 | Transcript of Conference held on June 27, 2011, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |
| | | NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully. |
| | | For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 10/11/2011. Redacted Transcript Deadline set for 10/21/2011. Release of Transcript Restriction set for 12/19/2011. (mb) (Entered: 09/20/2011) |
| 09/26/2011 | 247 | REPLY to Response to Motion re 239 MOTION for Summary Judgment *with Memorandum in Support* filed by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit 1) (Jankowski, Gretchen) (Entered: 09/26/2011) |
| 09/30/2011 | 248 | Supplemental Memorandum Supporting re 242 MOTION To Defer Ruling on Pitt Ohio's Motion for Summary Judgment Pursuant to Rule 56(d) re 239 MOTION for Summary Judgment *with Memorandum in Support*, 241 Response in Opposition to Motion,, by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (White, Anthony) (Entered: 09/30/2011) |
| 10/03/2011 | 249 | RESPONSE in Opposition re 242 MOTION To Defer Ruling on Pitt Ohio's Motion for Summary Judgment Pursuant to Rule 56(d) re 239 MOTION for Summary Judgment *with Memorandum in Support*, 241 Response in Opposition to Motion,, filed by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit A) (Jankowski, Gretchen) (Entered: 10/03/2011) |
| 10/05/2011 | 250 | ORDER: The Markman hearing scheduled for 10/18/11 is vacated pending ruling on Pitt Ohio's motion for SJ (doc. 239) and R&L's motion to defer ruling on SJ (doc. 242). This hearing will be rescheduled, if necessary. Signed by Judge Sandra S Beckwith on 10/5/11. (mb) (Entered: 10/05/2011) |
| 10/17/2011 | 252 | NOTICE by Plaintiff R&L Carriers, Inc. *of Issuance of Subpoena* (Attachments: # 1 Exhibit Subpoena) (Sineneng, Philip) (Entered: 10/17/2011) |
| 10/20/2011 | 253 | REPLY to Response to Motion re 242 MOTION To Defer Ruling on Pitt Ohio's Motion for Summary Judgment Pursuant to Rule 56(d) re 239 MOTION for Summary Judgment *with Memorandum in Support*, 241 Response in Opposition to Motion,, filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A - Sullivan Deposition Excerpts (Under Seal), # 2 Exhibit B - Sept. 23 Correspondence, # 3 Exhibit C - Oct. 13 Correspondence, # 4 Exhibit D - |

A80

| | | |
|---|---|---|
| | | Documents Filed Under Seal, # 5 Exhibit E - Documents Filed Under Seal, # 6 Exhibit F - Ruskin Declaration) (White, Anthony) (Entered: 10/20/2011) |
| 11/07/2011 | 255 | ORDER denying 242 Plaintiff's Motion to defer ruling on defendant Pitt Ohio's motion for summary judgment. Signed by Judge Sandra S Beckwith on 11/7/11. (mb) (Entered: 11/07/2011) |
| 11/07/2011 | 256 | NOTICE by Plaintiff R&L Carriers, Inc. re 252 Notice (Other) *Supplemental Notice of Revised Subpoena* (Attachments: # 1 Exhibit A) (White, Anthony) (Entered: 11/07/2011) |
| 12/13/2011 | 257 | ORDER granting 239 Defendant Pitt Ohio's Motion for Summary Judgment. Signed by Judge Sandra S Beckwith on 12/13/11. (mb) (Entered: 12/13/2011) |
| 12/16/2011 | 258 | NOTICE OF APPEAL as to 255 Order on Motion for Miscellaneous Relief, 257 Order on Motion for Summary Judgment by Plaintiff R&L Carriers, Inc.. Filing fee $ 455, receipt number 0648-3460508. (Sineneng, Philip) (Entered: 12/16/2011) |
| 12/16/2011 | 259 | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 12/16/2011) |
| 12/19/2011 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 258 Notice of Appeal. (sct1) (Entered: 12/19/2011) |
| 12/27/2011 | 260 | MOTION for Attorney Fees *and Costs* by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Supplement Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit 1, Declaration of Gretchen L. Jankowski) (Jankowski, Gretchen) (Entered: 12/27/2011) |
| 01/12/2012 | 261 | NOTICE OF DOCKETING in the USCA for the Federal Circuit: Case Number 2012-1142 for 258 Notice of Appeal filed by R&L Carriers, Inc. (eh) (Entered: 01/12/2012) |
| 01/20/2012 | 262 | RESPONSE in Opposition re 260 MOTION for Attorney Fees *and Costs* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Affidavit of Anthony C. White with Exhibits 1-5 (Exhibit 5 FILED UNDER SEAL)) (Sineneng, Philip) (Entered: 01/20/2012) |
| 02/03/2012 | 264 | REPLY to Response to Motion re 260 MOTION for Attorney Fees *and Costs* filed by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit 2) (Jankowski, Gretchen) (Entered: 02/03/2012) |
| 03/06/2012 | 265 | ORDER granting 260 Pitt Ohio Express, Inc's Motion for Attorney Fees. Pitt Ohio is ordered to submit a fee petition using the lodestar method by 4/6/12. Response and reply to be filed pursuant to this court's local rules. Signed by Judge Sandra S Beckwith on 3/6/12. (mb) (Entered: 03/06/2012) |
| 04/04/2012 | 266 | MOTION for Attorney Fees *and Costs* by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit A - Declaration of Gretchen L. Jankowski in Support of Pitt Ohio Express, Inc.'s Lodestar Petition, # 2 Text of Proposed Order) (Jankowski, Gretchen) (Entered: 04/04/2012) |
| 04/25/2012 | 268 | NOTICE by Plaintiff R&L Carriers, Inc. *of Withdrawal of O. Judson Scheaf, III as Counsel of Record* (Sineneng, Philip) (Entered: 04/25/2012) |

A81

| 04/30/2012 | 270 | NOTICE by Plaintiff R&L Carriers, Inc. re 266 MOTION for Attorney Fees *and Costs of Manual Filing Under Seal of its Memorandum in Opposition* (Sineneng, Philip) (Entered: 04/30/2012) |
| 05/17/2012 | 271 | REPLY to Response to Motion re 266 MOTION for Attorney Fees *and Costs* filed by Defendant Pitt Ohio Express Inc. (Attachments: # 1 Exhibit B - Supplemental Declaration of Gretchen L. Jankowski in Support of Pitt Ohio Express, Inc.'s Lodestar Petition for Attorneys' Fees and Costs, # 2 Certificate of Service) (Jankowski, Gretchen) (Entered: 05/17/2012) |
| 06/06/2012 | 273 | ORDER granting in part and denying in part 266 Pitt Ohio's Motion for Attorney Fees as set forth in the order. Signed by Judge Sandra S Beckwith on 6/6/12. (mb) (Entered: 06/06/2012) |
| 06/11/2012 | 274 | Court of Appeals for the Federal Circuit's Decision reversing & remanding in part re 199 Notice of Appeal, 167 Notice of Appeal, 166 Notice of Appeal, 183 Notice of Appeal, 185 Notice of Appeal, 169 Notice of Appeal, 168 Notice of Appeal, 258 Notice of Appeal, 184 Notice of Appeal, 198 Notice of Appeal (mb) Modified on 6/12/2012 (mb). (Order refers to case numbers: 1:09-cv-532, 1:09-cv-818, 1:09-cv-445, 1:09-cv-179, 1:09-cv-502 and 1:09-cv-472. (Entered: 06/12/2012) |
| 06/19/2012 | 275 | NOTICE OF APPEAL as to 273 Order on Motion for Attorney Fees by Plaintiff R&L Carriers, Inc.. Filing fee $ 455, receipt number 0648-3689288. (Sineneng, Philip) (Entered: 06/19/2012) |
| 06/19/2012 | 276 | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 06/19/2012) |
| 06/19/2012 |  | Transmission of Notice of Appeal, 273 Order and Docket Sheet to US Court of Appeals Federal Circuit re 275 Notice of Appeal. (mtw) (Entered: 06/19/2012) |
| 06/22/2012 | 277 | NOTICE OF DOCKETING by US Court of Appeals for the Federal Circuit - Case Number 2012-1471 for 275 Notice of Appeal of order granting Pitt Ohio's motion for attorneys' fees filed by R&L Carriers, Inc. (mtw) Modified on 6/25/2012 (mb). Modified on 8/20/2012 (mb). (Entered: 06/22/2012) |
| 06/27/2012 | 278 | AMENDED NOTICE OF APPEAL of Docs. 265 & 273 by Plaintiff R&L Carriers, Inc.. Amendment to 275 Notice of Appeal . (Sineneng, Philip) Modified on 6/28/2012 (mb). (Entered: 06/27/2012) |
| 07/12/2012 | 279 | NOTICE by Plaintiff R&L Carriers, Inc. *of Posting Supersedeas Bond Pursuant to Fed. R. Civ. P. 62(d)* (Attachments: # 1 Exhibit Supersedeas Bond) (Sineneng, Philip) (Entered: 07/12/2012) |
| 08/16/2012 | 280 | FEDERAL CIRCUIT'S JUDGMENT on Order reversing in part and affirming in part as to 199 Notice of Appeal filed by R&L Carriers, Inc., 167 Notice of Appeal filed by R&L Carriers, Inc., 166 Notice of Appeal filed by R&L Carriers, Inc., 183 Notice of Appeal filed by R&L Carriers, Inc., 185 Notice of Appeal filed by R&L Carriers, Inc., 169 Notice of Appeal filed by R&L Carriers, Inc., 168 Notice of Appeal filed by R&L Carriers, Inc., 184 Notice of Appeal filed by R&L Carriers, Inc., 198 Notice of Appeal filed by R&L Carriers, Inc. (mb) (Entered: 08/20/2012) |

A82

| 08/23/2012 | 281 | ORDER: A scheduling telephone conference is set for 10/15/12 at 2:30 PM. Counsel are to submit a proposed case management order to chambers email by 10/1/12. Counsel for plaintiff is to initiate the telephone call to chambers. Signed by Judge Sandra S Beckwith on 8/23/12. (mb) (Entered: 08/23/2012) |
|---|---|---|
| 08/31/2012 | 282 | Unopposed MOTION for Extension of Time New date requested 10/4/2012. by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Pitt Ohio Express Inc, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix. (Attachments: # 1 Text of Proposed Order Exhibit A - Proposed Order) (Burke, James) (Entered: 08/31/2012) |
| 08/31/2012 | 283 | Amended MOTION for Extension of Time New date requested 10/4/2012. *(Unopposed)* by Defendants Affiliated Computer Services, Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit Proposed Order) (Borst, Laura) (Entered: 08/31/2012) |
| 09/04/2012 |  | NOTATION ORDER granting 283 Defendants Qualcomm, PeopleNet, Microdea, Drivertech, Intermec & Affiliated's Motion for Extension of Time until 10/4/12 to respond to the Complaint. Signed by Judge Sandra S Beckwith on 9/4/12. (mb) (Entered: 09/04/2012) |
| 09/06/2012 | 284 | NOTICE by Plaintiff R&L Carriers, Inc. *of Withdrawal of Counsel* (White, Anthony) (Entered: 09/06/2012) |
| 09/10/2012 | 285 | NOTICE of Appearance by Stephen Joseph Butler for Plaintiff R&L Carriers, Inc., Counter Defendant R&L Carriers, Inc. (Butler, Stephen) (Entered: 09/10/2012) |
| 10/04/2012 | 286 | ANSWER to 124 Amended Complaint,, , COUNTERCLAIM against R&L Carriers, Inc. filed by Affiliated Computer Services. (Shunk, Thomas) (Entered: 10/04/2012) |
| 10/04/2012 | 287 | ANSWER to 126 Amended Complaint, , COUNTERCLAIM against R&L Carriers, Inc. filed by Intermec Technologies Corp.. (Koering, Jacob) (Entered: 10/04/2012) |
| 10/04/2012 | 288 | ANSWER to 123 Amended Complaint, , COUNTERCLAIM against R&L Carriers, Inc. filed by Qualcomm, Inc.. (Borst, Laura) (Entered: 10/04/2012) |
| 10/04/2012 | 289 | ANSWER to 125 Amended Complaint,, *and Claims* filed by Peoplenet Communications Corporation. (Borst, Laura) (Entered: 10/04/2012) |
| 10/04/2012 | 290 | ANSWER to 121 Amended Complaint, *and Claims* filed by Drivertech LLC. (Attachments: # 1 Exhibit A-B) (Petersen, Scott) (Entered: 10/04/2012) |
| 10/15/2012 |  | Minute Entry: Status conference on proposed scheduling order held before Judge Sandra S Beckwith. Simultaneous briefs on whether plaintiff must identify any direct infringer due 10/29/12. A conference will be scheduled following ruling on this issue to discuss the proposed scheduling order. (Court Reporter MA Ranz (Official).) (mb) (Entered: 10/15/2012) |

A83

| 10/26/2012 | 291 | NOTICE of Appearance by Arthur P Licygiewicz for Plaintiff R&L Carriers, Inc. (Licygiewicz, Arthur) (Entered: 10/26/2012) |
|---|---|---|
| 10/29/2012 | 292 | Transcript of Scheduling Conference held on October 15, 2012, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.

For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 11/19/2012. Redacted Transcript Deadline set for 11/29/2012. Release of Transcript Restriction set for 1/27/2013. (mb) (Entered: 10/29/2012) |
| 10/29/2012 | 293 | ANSWER to 286 Answer to Amended Complaint, Counterclaim *of Xerox Business Services LLC, f/k/a Affiliated Computer Services, Inc.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 10/29/2012 | 294 | ANSWER to 287 Answer to Amended Complaint, Counterclaim *of Intermec Technologies Corp.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 10/29/2012 | 295 | ANSWER to 288 Answer to Amended Complaint, Counterclaim *of Qualcomm, Inc.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 10/29/2012 | 296 | ANSWER to Complaint */Claims of PeopleNet Communications Corp.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 10/29/2012 | 297 | ANSWER to Complaint */Claims of DriverTech LLC* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 10/29/2012 | 298 | BRIEF by Defendants Affiliated Computer Services, Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Zembek, Richard) (Entered: 10/29/2012) |
| 10/29/2012 | 299 | BRIEF by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 10/29/2012) |
| 11/06/2012 | 300 | ORDER: Case 12-cv-473 against FFE Transportation Services is joined to this MDL litigation. R+L is not required to identify the entities that it currently believes to be directly infringing its patent at the outset of this case as a pre-condition to further proceedings. The parties are to submit to the court an amended case schedule by 11/20/12. A telephone scheduling conference will then be set. Signed by Judge Sandra S Beckwith on 11/6/12. (mb) (Entered: 11/06/2012) |

A84

| | | |
|---|---|---|
| 11/06/2012 | 301 | ANSWER to 122 Amended Complaint, *Affirmative Defenses*, COUNTERCLAIM against R&L Carriers, Inc. filed by Microdea, Inc. (Zembek, Richard) (Entered: 11/06/2012) |
| 11/07/2012 | 302 | ORDER TO SHOW CAUSE: Defendants RE: motions docs. 175, 180, 190 & 204, shall show cause by 11/21/12, why these motions should not be dismissed without prejudice subject to renewal. Signed by Judge Sandra S Beckwith on 11/7/12. (mb) (Entered: 11/07/2012) |
| 11/20/2012 | 303 | AGREED SCHEDULING ORDER (summarized): Deadline to add additional parties and to file new actions: 4/12/13; Joint Claim Construction & Prehearing Statement: 5/31/13; Complete claim construction discovery: 7/31/13; Opening claim construction brief: 8/30/13; Response: 9/30/13. Claim construction hearing: 11/12/13 at 9:00 AM. Signed by Judge Sandra S Beckwith on 11/20/12. (mb) (Entered: 11/20/2012) |
| 11/21/2012 | 304 | RESPONSE TO ORDER TO SHOW CAUSE by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Zembek, Richard) (Entered: 11/21/2012) |
| 11/21/2012 | 305 | RESPONSE TO ORDER TO SHOW CAUSE by Counter Claimants Intermec Technologies Corp., Intermec Technologies Corp., Defendant Intermec Technologies Corp.. (Koering, Jacob) (Entered: 11/21/2012) |
| 11/29/2012 | 306 | ANSWER to 301 Answer to Amended Complaint, Counterclaim *of Microdea, Inc.* filed by R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 11/29/2012) |
| 12/05/2012 | 307 | RESPONSE TO ORDER TO SHOW CAUSE by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 12/05/2012) |
| 12/06/2012 | | CASE REFERRED to Magistrate Judge Magistrate Judge Stephanie K. Bowman for discovery purposes. (mb) (Entered: 12/06/2012) |
| 12/06/2012 | 308 | ORDER: No further conference is needed as the 11/6/12 order had anticipated. The parties are to contact the court at any time if a status conference is needed. This case is referred to Mag. Judge Bowman. Signed by Judge Sandra S Beckwith on 12/6/12. (mb) (Entered: 12/06/2012) |
| 01/07/2013 | 309 | WITHDRAWN by Order Doc. 310: REPORT AND RECOMMENDATIONS re 180 MOTION for Sanctions *Pursuant to Rule 11* filed by Intermec Technologies Corp., 204 Joint MOTION for Attorney Fees filed by Drivertech LLC, Peoplenet Communications Corporation, 190 MOTION for Attorney Fees filed by Microdea, Inc, Qualcomm, Inc., Affiliated Computer Services, 175 SEALED MOTION filed by Intermec Technologies Corp. (jl1) Modified on 1/11/2013 (jl1). (Entered: 01/07/2013) |
| 01/11/2013 | 310 | ORDER WITHDRAWING 309 REPORT AND RECOMMENDATIONS. The Clerk is DIRECTED to remove Doc. 309. Signed by Magistrate Judge Stephanie K. Bowman on 1/11/13. (jl1) (Entered: 01/11/2013) |
| 01/11/2013 | 311 | ORDER dismissing without prejudice to renewal [docs. 175, 190 & 204] Motions for attorney's fees. Intermec Technologies Corp's motion for sanctions |

| | | (doc. 180) is STAYED pending final resolution of this case. Signed by Judge Sandra S Beckwith on 1/11/13. (mb) (Entered: 01/11/2013) |
|---|---|---|
| 01/28/2013 | 312 | JUDGMENT & NOTICE OF ENTRY OF JUDGMENT WITHOUT OPINION from the United States Court of Appeals for the Federal Circuit (kk2) (Entered: 01/28/2013) |
| 02/26/2013 | 313 | MOTION for Leave to Appear Pro Hac Vice of John W. Ryan (Filing fee $ 200, receipt number 0648-3996756) by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing) (Sineneng, Philip) (Entered: 02/26/2013) |
| 02/26/2013 | 314 | MOTION for Leave to Appear Pro Hac Vice of Thomas M. Haas (Filing fee $ 200, receipt number 0648-3996760) by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing) (Sineneng, Philip) (Entered: 02/26/2013) |
| 02/27/2013 | 315 | NOTICE: Telephone Conference set for 3/8/2013 10:00 AM relating to a discovery dispute concerning R&L Carriers and FFE Transportation Services, Inc. before Magistrate Judge Stephanie K. Bowman. Counsel to call 1-888-363-4749; access code: 8651321; security code: 2010. (jl1) Modified on 2/27/2013 (jl1). (Entered: 02/27/2013) |
| 03/05/2013 | 316 | ORDER granting [313 & 314] Motions for Leave for attorneys John Ryan & Thomas Haas to Appear Pro Hac as co-counsel for R+L Carriers, Inc. Signed by Judge Sandra S Beckwith on 3/5/13. (mb) (Entered: 03/05/2013) |
| 03/06/2013 | 317 | ISSUED MANDATE of case no 2012-1142 from the United States Court of Appeals for the Federal Circuit. (er1) (Entered: 03/06/2013) |
| 03/15/2013 | 318 | JUDGMENT by the Federal Circuit affirming re: Case 2:10-cv-90, R+L Carriers v. Pitt Ohio Express re: Notice of Appeal. (mb) (Entered: 03/15/2013) |
| 04/05/2013 | 319 | STIPULATION *to Extend Deadlines* by Counter Claimants Affiliated Computer Services, Berry & Smith Trucking Ltd., EBE Technologies, Inc., Intermec Technologies Corp., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix, Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., FFE Transportation Services, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Pitt Ohio Express Inc, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix, Counter Defendants Pegasus Transtech Corp., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., R&L Carriers, Inc., Plaintiff R&L Carriers, Inc.. (Dortenzo, Megan) (Entered: 04/05/2013) |
| 04/08/2013 | 320 | STIPULATION AND ORDER extending deadlines as follows: Plaintiff's proposed claim construction extended to: 4/12/13; Defendants' proposed claim construction extended to: 5/3/13. Signed by Judge Sandra S Beckwith on 4/8/13. (mb) (Entered: 04/08/2013) |
| | | |

| 04/12/2013 | 321 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Preliminary Claim Construction* (Dortenzo, Megan) (Entered: 04/12/2013) |
| 04/12/2013 | 322 | NOTICE by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc. *of Service of Preliminary Claim Constructions* (Koering, Jacob) (Entered: 04/12/2013) |
| 05/03/2013 | 323 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Responsive Preliminary Claim Construction Pursuant to Local Patent Rule 105.2(b)* (Dortenzo, Megan) (Entered: 05/03/2013) |
| 05/31/2013 | 324 | Joint MOTION for Extension of Time New date requested 6/7/2013. *of Joint Submission Deadline* by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc., Plaintiff R&L Carriers, Inc.. (Dortenzo, Megan) (Entered: 05/31/2013) |
| 06/04/2013 | | NOTATION ORDER granting 324 Joint Motion for Extension of Time. The deadline for the filing of the Joint Claim Construction and Prehearing Statement is EXTENDED to: 6/7/13. Signed by Judge Sandra S Beckwith on 6/4/13. (mb) (Entered: 06/04/2013) |
| 06/07/2013 | 325 | JOINT APPENDIX to Preliminary Claim Construction for disputed terms. (Attachments: # 1 Exhibit 1 (Part 1) - File Wrapper for U.S. Patent No. 6,401,078, # 2 Exhibit 1 (Part 2) - File Wrapper for U.S. Patent No. 6,401,078, # 3 Exhibit 1 (Part 3) - File Wrapper for U.S. Patent No. 6,401,078, # 4 Exhibit 1 (Part 4) - File Wrapper for U.S. Patent No. 6,401,078, # 5 Exhibit 1 (Part 5) - File Wrapper for U.S. Patent No. 6,401,078, # 6 Exhibit 1 (Part 6) - File Wrapper for U.S. Patent No. 6,401,078, # 7 Exhibit 1 (Part 7) - File Wrapper for U.S. Patent No. 6,401,078, # 8 Exhibit 1 (Part 8) - File Wrapper for U.S. Patent No. 6,401,078, # 9 Exhibit 1 (Part 9) - File Wrapper for U.S. Patent No. 6,401,078, # 10 Exhibit 1 (Part 10) - File Wrapper for U.S. Patent No. 6,401,078, # 11 Exhibit 1 (Part 11) - File Wrapper for U.S. Patent No. 6,401,078, # 12 Exhibit 1 (Part 12) - File Wrapper for U.S. Patent No. 6,401,078, # 13 Exhibit 1 (Part 13) - File Wrapper for U.S. Patent No. 6,401,078, # 14 Exhibit 1 (Part 14) - File Wrapper for U.S. Patent No. 6,401,078, # 15 Exhibit 1 (Part 15) - File Wrapper for U.S. Patent No. 6,401,078, # 16 Exhibit 1 (Part 16) - File Wrapper for U.S. Patent No. 6,401,078, # 17 Exhibit 1 (Part 17) - File Wrapper for U.S. Patent No. 6,401,078, # 18 Exhibit 2 - U.S. Patent No. 5,168,444, # 19 Exhibit 3 - U.S. Patent No. 5,265,006, # 20 Exhibit 4 - U.S. Patent No. 6,411,891, # 21 Exhibit 5 - U.S. Patent No. 6,879,962, # 22 Exhibit 6 - U.S. Patent No. 8,275,675, # 23 Exhibit 7 - U.S. Patent No. 8,275,676, # 24 Exhibit 8 - U.S. Patent No. 8,275,678, # 25 Exhibit 9 - U.S. Patent. Application No. 09/283,032, # 26 Exhibit 10 - U.S. Patent. Application No. 09/283,032 Office Action dated April 10, 2001, # 27 Exhibit 11 - U.S. Patent. Application No. 10/097,828 Office Action Response dated April 9, 2007, # 28 Exhibit 12 - U.S. Patent. Application No. 10/097,828 Office Action Response dated March 15, 2006, # 29 Exhibit 13 - U.S. Patent. Application No. 10/097,828 Appeal Brief, # 30 |

A87

| | | |
|---|---|---|
| | | Exhibit 14 - U.S. Patent. Application No. 10/097,828 Decision on Appeal, # [31] Exhibit 15 - U.S. Patent. Application No. 11/950,522, # [32] Exhibit 16 - U.S. Patent. Application No. 11/950,529, # [33] Exhibit 17 - U.S. Patent. Application No. 11/950,529 Office Action dated Oct. 7, 2009, # [34] Exhibit 18 - U.S. Patent. Application No. 11/950,529 Office Action Response dated April 7, 2010, # [35] Exhibit 19 - U.S. Patent. Application No. 13/289,242 Office Action Response dated July 9, 2012, # [36] Exhibit 20 - U.S. Patent. Application No. 13/289,248 Office Action Response dated May 24, 2012, # [37] Exhibit 21 - U.S. Patent. Application No. 13/289,248 Office Action dated June 1, 2012, # [38] Exhibit 22 - U.S. Patent. Application No. 13/289,248 Office Action Response dated July 31, 2012, # [39] Exhibit 23 - U.S. Patent. Application No. 13/289,251 Office Action Response dated June 13, 2012, # [40] Exhibit 24 - U.S. Provisional Patent Application No. 60/080,365, # [41] Exhibit 25 - Excerpt from Blacks Law Dictionary (6th ed. 1990), # [42] Exhibit 26 - Excerpt from Illustrated Dictionary of Cargo Handling (2nd ed. 1996), # [43] Exhibit 27 - Excerpt from Dictionary of International Trade (1994), # [44] Exhibit 28 - Plaintiff R+Ls Opening Claim Construction Brief, doc. no. 238, R+L Carriers, Inc. v. Pitt Ohio Express, Inc., SD OH, case no. 2:10-cv-00090) (Dortenzo, Megan) Modified on 6/10/2013 (mb). (Entered: 06/07/2013) |
| 06/07/2013 | [326] | JOINT Claim Construction and Prehearing Statement. (Attachments: # [1] Exhibit A - Joint Disputed Claim Terms Chart) (Dortenzo, Megan) Modified on 6/10/2013 (mb). (Entered: 06/07/2013) |
| 07/11/2013 | [327] | MOTION to Stay *Pending Patent Re-Examination* by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 07/11/2013) |
| 07/26/2013 | [328] | RESPONSE in Opposition re [327] MOTION to Stay *Pending Patent Re-Examination Defendants' and Declaratory Judgment Plaintiffs' Opposition to R+L Carriers, Inc.'s MOTION to Stay Pending Patent Reexamination* filed by Defendants Affiliated Computer Services, Drivertech LLC, Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # [1] Exhibit 1, # [2] Exhibit 2, # [3] Exhibit 3, # [4] Exhibit 4, # [5] Exhibit 5, # [6] Exhibit 6, # [7] Exhibit 7, # [8] Exhibit 8, # [9] Exhibit 9, # [10] Exhibit 10) (Zembek, Richard) (Entered: 07/26/2013) |
| 07/31/2013 | [329] | ORDER: Defendants are to file, by 8/12/13, pinpoint page references to doc. 235 cited in their "Citation to Extrinsic Evidence." Signed by Judge Sandra S Beckwith on 7/31/13. (mb) (Entered: 07/31/2013) |
| 08/09/2013 | [330] | Response re [329] Order *Requesting Submission of Pinpoint Page References to Doc. 235* by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Borst, Laura) (Entered: 08/09/2013) |
| 08/12/2013 | [331] | REPLY to Response to Motion re [327] MOTION to Stay *Pending Patent Re-Examination* filed by Plaintiff R&L Carriers, Inc.. (Attachments: # [1] Exhibit Order Granting Re-examination) (Sineneng, Philip) (Entered: 08/12/2013) |
| 08/30/2013 | [332] | BRIEF by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 08/30/2013) |

A88

| 08/30/2013 | 333 | BRIEF by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Zembek, Richard) (Entered: 08/30/2013) |
| --- | --- | --- |
| 09/09/2013 | 334 | ORDER: Plaintiff is ordered to file the PTO's First Office Action on the re-examination application. The claim construction hearing set for 11/12/13 will be limited to four hours total. Signed by Judge Sandra S Beckwith on 9/9/13. (mb) (Entered: 09/09/2013) |
| 09/09/2013 | 335 | MOTION to Withdraw as Attorney by Counter Claimant Interstate Distributor Company, Defendant Interstate Distributor Company. (Attachments: # 1 Text of Proposed Order) (Schatz, Brett) (Entered: 09/09/2013) |
| 09/10/2013 | 336 | ORDER granting 335 Motion to Withdraw as Attorney. Attorney Brett A Schatz terminated. Signed by Judge Sandra S Beckwith on 9/10/13. (mb) (Entered: 09/10/2013) |
| 09/30/2013 | 337 | BRIEF re 333 Brief by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Zembek, Richard) (Entered: 09/30/2013) |
| 09/30/2013 | 338 | BRIEF by Plaintiff R&L Carriers, Inc.. (White, Anthony) (Entered: 09/30/2013) |
| 10/11/2013 | 339 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Exhibit A: Subpoena to Load One, LLC, # 2 Exhibit B: Subpoena to Southeastern Freight Lines, Inc.) (Sineneng, Philip) (Entered: 10/11/2013) |
| 10/18/2013 | 340 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Exhibit A: Subpoena to Old Dominion Freight Line, Inc., # 2 Exhibit B: Subpoena to Panama Transfer, Inc., # 3 Exhibit C: Subpoena to Panther Expedited Services, Inc., # 4 Exhibit D: Subpoena to Prime, Inc., # 5 Exhibit E: Subpoena to Anderson Trucking Service, Inc., # 6 Exhibit F: Subpoena to Dart Transit Company, # 7 Exhibit G: Subpoena to Diversified Transfer & Storage, # 8 Exhibit H: Subpoena to The Logistics Group, # 9 Exhibit I: Subpoena to Marten Transport, Ltd.) (Sineneng, Philip) (Entered: 10/18/2013) |
| 10/25/2013 | 341 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Exhibit A: Subpoena to Panama Transfer, Inc., # 2 Exhibit B: Subpoena to Dart Transit Company, # 3 Exhibit C: Subpoena to Marten Transport, Ltd.) (Sineneng, Philip) (Entered: 10/25/2013) |
| 11/01/2013 | 342 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Exhibit A: Subpoena to Load One, LLC, # 2 Exhibit B: Subpoena to Old Dominion Freight Line, Inc., # 3 Exhibit C: Subpoena to Panther Expedited Services, Inc., # 4 Exhibit D: Subpoena to Prime, Inc., # 5 Exhibit E: Subpoena to Southeastern Freight Lines, Inc., # 6 Exhibit F: Subpoena to Anderson Trucking Service, Inc., # 7 Exhibit G: Subpoena to Diversified Transfer & Storage, # 8 Exhibit H: Subpoena to The Logistics |

| | | Group, LLC, # 9 Exhibit I: Subpoena to Cannonball Express LLC, # 10 Exhibit J: Subpoena to Carlile Transportation Systems, # 11 Exhibit K: Subpoena to Dayton Freight Lines, Inc., # 12 Exhibit L: Subpoena to Estes Express Lines, # 13 Exhibit M: Subpoena to Pride Transport, # 14 Exhibit N: Subpoena to SLT Express, Inc.) (Sineneng, Philip) Modified to clarify docket text on 11/4/2013 (jlw). (Entered: 11/01/2013) |
|---|---|---|
| 11/12/2013 | 343 | Minute Entry: Markman hearing held before Judge Sandra S Beckwith. Presentations by the parties. Matter taken under submission. Status conference set for 11/18/13 at 10:00 AM by telephone. Counsel to arrange conference call. (Court Reporter MA Ranz (Official).) (mb) (Entered: 11/12/2013) |
| 11/18/2013 | | Minute Entry: Status conference held before Judge Sandra S Beckwith. Discussion held regarding the 23 subpoenas. The subpoenas are STAYED pending ruling on the Markman hearing. Following the decision of claim construction a further conference will be held regarding scheduling. (Court Reporter MaryAnn Maffia (Official).) (mb) (Entered: 11/18/2013) |
| 12/18/2013 | 344 | NOTICE of First Office Action and Supplemental Memo in Support of its motion for stay pending patent re-examination by Plaintiff R&L Carriers, Inc. re 327 . (Attachments: # 1 Exhibit A: First Office Action) (Sineneng, Philip) Modified on 12/19/2013 (mb). (Entered: 12/18/2013) |
| 12/20/2013 | 345 | RESPONSE to Motion re 327 MOTION to Stay *Pending Patent Re-Examination* filed by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., FFE Transportation Services, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Pitt Ohio Express Inc, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix. (Williams, Douglas) (Entered: 12/20/2013) |
| 12/29/2013 | 346 | Transcript of Telephone Conference held on November 18, 2013, before Judge Beckwith. Court Reporter/Transcriber MaryAnn Maffia (Official), Telephone number 513.564.7677. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.

For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 1/21/2014. Redacted Transcript Deadline set for 1/29/2014. Release of Transcript Restriction set for 3/31/2014. (mb) (Entered: 12/29/2013) |
| 12/31/2013 | 347 | |

| | | ORDER denying 327 Plaintiff's Motion to Stay. Signed by Judge Sandra S Beckwith on 12/31/13. (mb) (Entered: 12/31/2013) |
|---|---|---|
| 12/31/2013 | 348 | ORDER on claim construction. Signed by Judge Sandra S Beckwith on 12/31/13. (mb) (mb). (Entered: 12/31/2013) |
| 01/02/2014 | 349 | Transcript of Proceedings (Markman Hearing) held on 11/12/2013, before Judge SANDRA S. BECKWITH. Court Reporter/Transcriber Mary Ann Ranz, Official. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.

For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 1/23/2014. Redacted Transcript Deadline set for 2/3/2014. Release of Transcript Restriction set for 4/2/2014. (jlw) (Entered: 01/02/2014) |
| 01/10/2014 | | NOTICE by clerk: A Status/Scheduling (Telephone) Conference is scheduled for 2/25/2014 at 10:00 AM before Judge Sandra S Beckwith. Counsel are to submit a proposed scheduling order to Mary Brown by 2/17/14. (mb) (Entered: 01/10/2014) |
| 01/24/2014 | 350 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Subpoena to MSM Transportation, # 2 Subpoena to New Century Transportation, Inc., # 3 Subpoena to Taylor Distributing Company, # 4 Subpoena to U.S. Xpress Enterprises, Inc.) (Sineneng, Philip) (Entered: 01/24/2014) |
| 01/29/2014 | 351 | NOTICE by Defendants Affiliated Computer Services, Berry & Smith Trucking Ltd., Drivertech LLC, EBE Technologies, Inc., Enterprise Information Solutions, Inc., FFE Transportation Services, Inc., Intermec Technologies Corp., Interstate Distributor Company, Microdea, Inc, Pegasus Transtech Corp., Peoplenet Communications Corporation, Pitt Ohio Express Inc, Profit Tools, Inc., Qualcomm, Inc., SMARTLogix *Letter to Judge Sandra S. Beckwith* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H) (Williams, Douglas) (Entered: 01/29/2014) |
| 01/29/2014 | 352 | Response re 351 Notice (Other),, *re Defendants' Letter to Judge Beckwith* by Plaintiff R&L Carriers, Inc.. (White, Anthony) (Entered: 01/29/2014) |
| 01/30/2014 | 353 | NOTICE by Plaintiff R&L Carriers, Inc. *of Service of Subpoenas* (Attachments: # 1 Exhibit A: Subpoena to J.B. Hunt Transport Services, Inc., # 2 Exhibit B: Subpoena to Basic Transportation Inc., # 3 Exhibit C: Subpoeana |

A91

| | | to Combined Transport, Inc., # [4](#) Exhibit D: Subpoena to New England Motor Freight) (Sineneng, Philip) (Entered: 01/30/2014) |
|---|---|---|
| 01/31/2014 | [354](#) | Minute Entry: Telephone status conference held before Judge Sandra S Beckwith concerning Doc. 351.(Court Reporter MA Ranz (Official).) (mb) (Entered: 01/31/2014) |
| 02/04/2014 | [355](#) | ORDER pursuant to the conference held 1/31/14. The stay entered 11/18/13 remains in effect. The parties are to submit a proposed scheduling order by 2/17/14. Signed by Judge Sandra S Beckwith on 2/4/14. (mb) (Entered: 02/04/2014) |
| 02/12/2014 | [356](#) | Transcript Conference on discovery held on January 31, 2014, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully. For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 3/5/2014. Redacted Transcript Deadline set for 3/17/2014. Release of Transcript Restriction set for 5/13/2014. (mb) (Entered: 02/12/2014) |
| 02/25/2014 | | Minute Entry: Status conference held before Judge Sandra S Beckwith. Order to follow. (Court Reporter MA Ranz (Official).) (mb) (Entered: 02/26/2014) |
| 02/26/2014 | [357](#) | ORDER pursuant to a conference held 2/25/14: Defendants' supplemental brief on the ongoing patent re-examination process due: 3/3/14; Reply due: 3/7/14. Ruling to be filed by 3/12/14. Signed by Judge Sandra S Beckwith on 2/26/14. (mb) (Entered: 02/26/2014) |
| 02/26/2014 | [358](#) | NOTICE by Plaintiff R&L Carriers, Inc. *of U.S. Patent & Trademark Office Action* (Attachments: # [1](#) Exhibit A: Notice of Intent to Issue a Reexam Certificate) (Sineneng, Philip) (Entered: 02/26/2014) |
| 02/27/2014 | [359](#) | ORDER: The parties are to include in their briefs pursuant to this court's order of 2/6/14 their analysis of the effect on this case, if any, of the PTO's re-examination determination. Signed by Judge Sandra S Beckwith on 2/27/14. (mb) (Entered: 02/27/2014) |
| 03/03/2014 | [360](#) | Transcript of Conference held on February 25, 2014, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

|  |  | Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 3/24/2014. Redacted Transcript Deadline set for 4/3/2014. Release of Transcript Restriction set for 6/2/2014. (mb) (Entered: 03/03/2014) |
|---|---|---|
| 03/03/2014 | 361 | BRIEF re 359 Order by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Zembek, Richard) (Entered: 03/03/2014) |
| 03/07/2014 | 362 | Reply re 361 Brief, by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Transcript from 2/25/14 Status Conference, # 2 Exhibit B: Proposed Case Schedule, # 3 Exhibit C: Defendants' Invalidity Contentions, # 4 Exhibit D: 2/17/14 Zembek Email, # 5 Exhibit E: 2/26/14 Williams Email) (Sineneng, Philip) (Entered: 03/07/2014) |
| 03/12/2014 | 363 | ORDER: The stay on third-party discovery is continued pending further order of the court. A status conference to be scheduled. Signed by Judge Sandra S Beckwith on 3/12/14. (mb) (Entered: 03/12/2014) |
| 03/13/2014 |  | NOTICE by clerk: A telephone Status Conference is set for 3/31/2014 at 1:30 PM before Judge Sandra S Beckwith. (mb) (Entered: 03/13/2014) |
| 03/31/2014 | 364 | Minute Entry: Telephone conference held before Judge Sandra S Beckwith. Blind briefs due: 4/14/14; Replies due: 4/30/14. (Court Reporter MA Ranz (Official).) (mb) (Entered: 03/31/2014) |
| 03/31/2014 | 365 | ORDER: Pursuant to a conference held this date, simultaneous briefs are due: 4/14/14; Replies due: 4/30/14. Signed by Judge Sandra S Beckwith on 3/31/14. (mb) (Entered: 03/31/2014) |
| 04/14/2014 | 366 | BRIEF regarding the substantive changes to and impermissible amendment of the asserted claims by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6) (Zembek, Richard) Modified on 4/15/2014 (mb). (Entered: 04/14/2014) |
| 04/14/2014 | 367 | BRIEF re: 365 /Brief on claim amendments to U.S. Patent 6,401,078 pursuant to ex parte reexamination certificate by Plaintiff R&L Carriers, Inc.. |

A93

| | | (Attachments: # 1 Exhibit A: PTO's First Office Action, # 2 Exhibit B: R+L's Amendment and Response, # 3 Exhibit C: Ex Parte Reexamination Certificate, # 4 Exhibit D: U.S. Patent 6,401,078, # 5 Appendix A: Intrinsic Support for "Comprising the steps of", # 6 Appendix B: Intrinsic Support for "Advanced + Document + On Another Transporting Vehicle") (Sineneng, Philip) Modified on 4/15/2014 (mb). (Entered: 04/14/2014) |
|---|---|---|
| 04/30/2014 | 368 | Supplemental Memorandum Supporting re 366 Brief, by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Exhibit 7, # 2 Exhibit 8, # 3 Exhibit 9, # 4 Exhibit 10, # 5 Exhibit 11) (Zembek, Richard) (Entered: 04/30/2014) |
| 04/30/2014 | 369 | Response re 366 Brief, by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Declaration of Geoffrey L. Oberhaus) (Sineneng, Philip) (Entered: 04/30/2014) |
| 05/06/2014 | 370 | MOTION for Leave to File *SUMMARY RESPONSE TO PLAINTIFFS DECLARATION* by Defendants Affiliated Computer Services, Drivertech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc, Peoplenet Communications Corporation, Qualcomm, Inc.. (Attachments: # 1 Supplement Response to Declaration, # 2 Text of Proposed Order) (Zembek, Richard) (Entered: 05/06/2014) |
| 05/08/2014 | 371 | RESPONSE in Opposition re 370 MOTION for Leave to File *SUMMARY RESPONSE TO PLAINTIFFS DECLARATION* filed by Plaintiff R&L Carriers, Inc.. (Sineneng, Philip) (Entered: 05/08/2014) |
| 05/19/2014 | 372 | ORDER finding that plaintiff narrowed the scope of claim 1 during the reexamination proceedings. Claim 1 is not invalid on the grounds that it was impermissibly enlarged; denying 370 Motion for leave to file additional brief. Signed by Judge Sandra S Beckwith on 5/19/14. (mb) (Entered: 05/19/2014) |
| 06/11/2014 | | NOTICE by clerk: A telephone Status Conference is set for 7/16/2014 at 10:00 AM before Judge Sandra S Beckwith. (mb) (Entered: 06/11/2014) |
| 06/17/2014 | 373 | NOTICE by Plaintiff R&L Carriers, Inc. re 273 Order on Motion for Attorney Fees *of Satisfaction of Judgment* (Sineneng, Philip) (Entered: 06/17/2014) |
| 07/16/2014 | 374 | Minute Entry: Status conference (telephone) held before Judge Sandra S Beckwith. Written order to follow. (Court Reporter MA Ranz (Official).) (mb) (Entered: 07/16/2014) |
| 07/17/2014 | 375 | Transcript of Telephone Status Conference held on July 16, 2014, before Judge Beckwith. Court Reporter/Transcriber MA Ranz (Official), Telephone number 513.564.7626. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> NOTICE RE: REDACTION OF TRANSCRIPTS: Within 5 business days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of |

| | | the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ohsd.uscourts.gov (Forms - Electronic Availability of Transcripts). Please read this policy carefully.<br><br>For a complete copy of a transcript, please contact the Court Reporter or the Clerk's Office. Redaction Request due 8/7/2014. Redacted Transcript Deadline set for 8/18/2014. Release of Transcript Restriction set for 10/15/2014. (mb) (Entered: 07/17/2014) |
|---|---|---|
| 08/01/2014 | 376 | Joint MOTION for Entry of Judgment under Rule 54(b) *by Qualcomm, Inc. and* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Exhibit A: Hoffman Declaration, # 2 Text of Proposed Order : Proposed Agreed Final Entry) (Sineneng, Philip) (Entered: 08/01/2014) |
| 08/01/2014 | 377 | Joint MOTION for Order to *Extend Deadline to File Motion for Attorney's Fees by Qualcomm, Inc. and* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Text of Proposed Order : Proposed Order) (Sineneng, Philip) (Entered: 08/01/2014) |
| 08/01/2014 | 378 | Joint MOTION to Stay *Proceedings by Affiliated Computer Services, n/k/a Xerox Business Services, Inc., DriverTech LLC, FFE Transportation Services, Inc., Intermec Technologies Corp., Microdea, Inc., PeopleNet Communications Corp. and* by Plaintiff R&L Carriers, Inc.. (Attachments: # 1 Text of Proposed Order : Proposed Order Granting Stay) (Sineneng, Philip) (Entered: 08/01/2014) |
| 08/12/2014 | 379 | AGREED JUDGMENT. Plaintiff's claims against Qualcomm are dismissed with prejudice and judgment is entered in favor of Qualcomm on those claims; Judgment is entered in favor of defendant against plaintiff on defendant's counterclaim of non-infringement; Defendant's counterclaim seeking a declaratory judgment of invalidity of US Patent 6,401.078 is dismissed without prejudice as moot; Defendant's exceptional case counterclaim is dismissed without prejudice; All pending motions by defendant are denied as moot. Signed by Judge Sandra S Beckwith on 8/12/14. Case Terminated (mb) (mb) (Entered: 08/12/2014) |
| 08/12/2014 | 380 | ORDER granting 378 Motion to Stay case pending final resolution of any appeal of the Judgment of non-infringement, or the expiration of the time for filing any appeal. The parties will file a Joint Status Report every 6 months until the appeal is resolved. Signed by Judge Sandra S Beckwith on 8/12/14. (mb) (Entered: 08/12/2014) |
| 08/12/2014 | 381 | ORDER granting 377 Joint Motion: Deadline to file motion for costs, attorneys' fees, an exceptional case determination, etc., is EXTENDED to 14 days after either the mandate is issued or the time has expired for filing an appeal. Signed by Judge Sandra S Beckwith on 8/12/14. (mb) (Entered: 08/12/2014) |
| 08/12/2014 | 382 | NOTICE OF APPEAL as to 379 Judgment,, by Plaintiff R&L Carriers, Inc.. Filing fee $ 505, receipt number 0648-4685039. (Sineneng, Philip) (Entered: 08/12/2014) |

| 08/12/2014 | 383 | TRANSCRIPT REQUEST by Plaintiff R&L Carriers, Inc. (Attachments: # 1 Exhibit A) (Sineneng, Philip) (Entered: 08/12/2014) |
| 08/14/2014 | | USCA for the Federal Circuit Case Number 14-1718 for 382 Notice of Appeal filed by R&L Carriers, Inc. (sct1) (Entered: 08/14/2014) |

<table>
<tr><td colspan="5" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="5" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="5" align="center">08/28/2014 13:14:11</td></tr>
<tr><td>**PACER Login:**</td><td>lu0009:2591193:4016252</td><td>**Client Code:**</td><td></td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:09-md-02050-SSB-SKB</td></tr>
<tr><td>**Billable Pages:**</td><td>30</td><td>**Cost:**</td><td>3.00</td></tr>
</table>

A96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| § | |
| IN RE: Bill of Lading Transmission § | MDL Docket No. 1:09-md-02050-SSB |
| and Processing System Patent § | |
| Litigation § | Individual Docket No. |
| § | [to be assigned by MDL Clerk] |
| **This Document Relates to:** § | |
| § | |
| R+L CARRIERS, INC., § | **JUDGE SANDRA S. BECKWITH** |
|     Plaintiff, § | |
| v. § | **Demand for Jury Trial** |
| QUALCOMM, INC., § | |
|   Defendant. § | |
| § | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

85226507.7

Defendant Qualcomm Incorporated ("Qualcomm") submits this memorandum of law in support of its motion to dismiss the complaint for patent infringement ("Complaint") filed on June 25, 2009, by R+L Carriers, Inc. ("R+L") (Dkt. No. 1).

## INTRODUCTION

R+L's Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) because it fails to state a claim.

Even taking the vague allegations in the Complaint as true, Qualcomm cannot infringe U.S. Patent No. 6,401,078 ("the '078 Patent"). R+L does not allege that Qualcomm directly infringes the '078 Patent. In fact, R+L does not allege that any specific entity directly infringes the '078 Patent. A necessary predicate to a claim of indirect infringement is direct infringement. Absent a properly-plead allegation of direct infringement by a specific person or entity, the indirect infringement claims against Qualcomm fail as a matter of law.

Furthermore, the '078 Patent claims a method that requires the combined actions of more than one participant to perform the recited steps. Where multiple parties necessarily are required to perform the steps of a claimed method, a specific legal test must be alleged and met: a single party among the various actors must exercise "control or direction" over the others in performing the claimed method. No set of facts are or can properly be pled to meet that test with respect to Qualcomm.

R+L alleges that Qualcomm indirectly infringes the '078 Patent by marketing and selling certain products and unspecified services. *See* Complaint at ¶ 20, 27. Because of the vagueness of the Complaint, Qualcomm is left to guess: (1) what action it performs or service it provides that allegedly satisfies any step of the claimed method; (2) what motor carriers allegedly "remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility;" and (3) what entity allegedly operates a remote processing center that receives the

A114

# EXHIBIT 2



US006401078B1

(12) **United States Patent**
Roberts et al.

(10) Patent No.: **US 6,401,078 B1**
(45) Date of Patent: **Jun. 4, 2002**

(54) **BILL OF LADING TRANSMISSION AND PROCESSING SYSTEM FOR LESS THAN A LOAD CARRIERS**

(75) Inventors: **Ralph L. Roberts**, Reddick, FL (US); **Steve F. Naghshineh**, Cincinnati, OH (US)

(73) Assignee: **R & L Carriers**, Wilmington, OH (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/542,682**

(22) Filed: **Apr. 3, 2000**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/283,032, filed on Apr. 1, 1999.
(60) Provisional application No. 60/080,365, filed on Apr. 1, 1998.

(51) Int. Cl.[7] .............................................. G06F 17/60
(52) U.S. Cl. ..................................................... 705/28
(58) Field of Search ........................................... 705/28

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,711,862 A | 1/1973 | Story | 700/90 |
| 3,979,731 A | 9/1976 | Naplatanov et al. | 701/118 |
| 4,360,875 A | 11/1982 | Behnke | 455/456 |
| 4,799,156 A | 1/1989 | Shavit et al. | 705/26 |
| 4,832,204 A | 5/1989 | Handy et al. | 209/3.3 |
| 4,888,692 A | 12/1989 | Gupta et al. | 700/96 |
| 5,051,914 A | 9/1991 | Sansone et al. | 700/223 |
| 5,168,444 A | 12/1992 | Cukor et al. | 705/1 |
| 5,168,451 A | 12/1992 | Bolger | 701/117 |
| 5,265,006 A | 11/1993 | Asthana et al. | 705/8 |
| 5,272,324 A | * 12/1993 | Blevins | 235/462 |
| 5,278,750 A | 1/1994 | Kaneko et al. | 705/8 |
| 5,485,369 A | 1/1996 | Nicholls et al. | 705/9 |
| 5,528,489 A | 6/1996 | Asahara et al. | 705/9 |
| 5,539,810 A | * 7/1996 | Kennedy, III et al. | 379/59 |
| 6,154,658 A | * 11/2000 | Caci | 455/466 |

FOREIGN PATENT DOCUMENTS

DE          297 00 373       * 7/1997

OTHER PUBLICATIONS

"Telex speeds container information," Communicate for the Telecommunications User, Dec. 1986, vol. 6, No. 11, p. 38.*
"Portability means never being out of touch" by F. Donnelly, Marketing, May 23, 1991, p. 25, 28.*

* cited by examiner

*Primary Examiner*—Kenneth R. Rice
(74) *Attorney, Agent, or Firm*—Dinsmore & Shohl LLP

(57) **ABSTRACT**

The present invention automates the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control. Methods provide for receipt of the transportation documentation, initial preparation, and transmission of the documentation from on board a vehicle or while the vehicle is in transit. A remote processor receives the documentation, stores the documentation and feeds the documentation to a load planning software for generation of advance loading manifests from the remote processor and receive them on demand. Further, a mobile data transmission device is provided for use by a driver to communicate transportation documentation, and vehicle information to the remote processor, and, in some applications, can receive instructions for en route alterations of package pickup or delivery.

**9 Claims, 8 Drawing Sheets**



**U.S. Patent**    Jun. 4, 2002    Sheet 1 of 8    **US 6,401,078 B1**



FIG. 1A

**U.S. Patent**         Jun. 4, 2002         Sheet 2 of 8         US 6,401,078 B1



FIG. 1B

**U.S. Patent**       Jun. 4, 2002       Sheet 3 of 8       US 6,401,078 B1



FIG. 2A



FIG. 2B

**U.S. Patent**          Jun. 4, 2002          Sheet 4 of 8          US 6,401,078 B1



FIG. 3



FIG. 4



FIG. 5

A143

**U.S. Patent**    Jun. 4, 2002    Sheet 7 of 8    US 6,401,078 B1



FIG. 6



FIG. 7

US 6,401,078 B1

1

## BILL OF LADING TRANSMISSION AND PROCESSING SYSTEM FOR LESS THAN A LOAD CARRIERS

This application is a continuation-in-part of United States patent application Ser. No. 09/283,032 filed Apr. 1, 1999, the disclosure of which is incorporated herein by reference. United States patent application Ser. No. 09/283,032 claims the benefit of United States Provisional Patent Application Serial No. 60/080,365 filed Apr. 1, 1998.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates generally to methods of dynamic load planning and billing used by less-than-a-load (LTL) carriers and more particularly, to a method for transmitting shipping documents or bills of lading directly from the truck driver to a common point or terminal so that billing and load planning can be accomplished while the load is being delivered from the customer.

2. General Background

The shipping industry consists primarily of three types of carriers, each offering services that satisfy different customer needs. There are small package carriers like Federal Express, United Parcel Service and others who pick up small packages, consolidate these packages into large loads, move them close to their destination point and then deliver the packages. At the opposite end of the shipping business are the large customers which fill entire trucks or trailer loads and are considered to be truck load shippers. The category in between the truck load shippers and the small package shippers are less-than-a-load (LTL) carriers. Similar to the UPS driver who collects and delivers many small packages during a business day, the less-than-a-load (LTL) carrier picks up freight from upwards of 20 different customers. This freight is typically destined to many different locations around the country. The freight is brought back to a terminal where the shipments are unloaded from the truck, consolidated with other freight moving in the same direction and then reloaded on delivery trucks. The freight is sorted and consolidated into truck loads at the terminal to minimize the empty space on the truck that will transport the freight from the local terminal to either a local delivery or a distribution terminal in another city or state. At the distribution terminal the truck will be unloaded and its freight restored and reconsolidated for delivery to customers in the local area around the distribution terminal or shipment to another distribution terminal.

Each individual shipment is governed by a separate contract called a "bill of lading". Often, customers will have their own bill of lading form that they use for shipping. Thus, over the course of a day a truck driver may collect many different bill of lading forms, one for each shipment. As in any business, efficiency and speed are measuring sticks for customer service. As an internal matter, as with any other business, the faster payment is received, the better the cash flow. The speed and efficiency of these processes are what gives a trucking or other carrier a competitive edge. Typically, a truck driver will leave the truck terminal in the morning and return in the evening. When he returns he has a hand full of bill of lading forms and other paper work which is submitted to the corporate office where it is processed by billing clerks using data entry skills. After the information from each bill of lading is entered, the shipping information is transmitted to the loading dock at the terminal so that the freight moving to common points can be consolidated and the delivery schedule planned.

2

The goal of proper load planning is to deliver the freight on time with the delivery truck leaving the terminal with a full load. Unfortunately, both the truck used to pick up the freight and the truck used to deliver the freight are often sitting idle at the terminal while the data entry and load planning functions are being performed. Additionally, because the freight typically comes in one truck at a time the loading dock may not know in advance of the trucks' arrival at the terminal or the contents and the destination of the freight picked up on a given day. Consequently, a delivery truck will often leave the terminal only partially loaded. Many of these partially loaded trucks could have been fully loaded had the load planner known about unscheduled freight that had been picked up and would soon arrive at the terminal. This movement of freight as partial also results in decreased efficiency, increased costs and reduced profits for the trucking company.

Computer software has been developed to perform load and shipping planning functions. U.S. Pat. No. 5,265,006 titled "DEMAND SCHEDULED PARTIAL CARRIERS LOAD PLANNING SYSTEM FOR THE TRANSPORTATION INDUSTRY" is an example of this type of software. Load planning software, while reducing the time expended in planning shipments, is unable by itself to reduce the inefficiency caused by partial loads that could have been full loads due to unscheduled freight, since this freight would not have been entered into the computer program.

U.S. Pat. No. 5,168,444, (Cukor), titled "SHIPMENT SYSTEM INCLUDING PROCESSING OF DOCUMENT IMAGES", is the closest prior art to the present invention. Cukor illustrates a system where the bills of lading are faxed from local shipping terminals to the shipping company's headquarters. At headquarters, where the data entry clerks could be supervised, a data entry clerk views the image of the bill of lading and enters the appropriate information in to the billing and accounting database. This system while using a fax machine, still requires that the truck driver return to a terminal before the shipping documents are sent to the company headquarters. Thus, while this system may reduce the errors made by the data entry personnel, it does not reduce the inefficiencies caused by the data entry clerks waiting for a driver to arrive at a terminal with the bills of lading and fax the bills of lading to headquarters, or the inefficiency caused by the driver waiting for the load planning to be completed.

### SUMMARY OF THE INVENTION

The present invention has solved the problems described above and comprises broadly a system for transmitting bills of lading to a central facility so that billing and load planning may be accomplished while the freight is en route to a terminal, the equipment used to transmit the bill of lading from the driver to a terminal or central location, and the method for transmitting the bill of lading. There is a document input system that provides for scanning the paper bill of lading into an electronic data format or electronic bill of lading. Connected to the input system is a document transmitting system. The transmitting system transmits the electronic bill of lading to a document receiving system using a communications link. The document receiving system is connected to a document processing system. This processing system provides for the display and printing of the electronic bill of lading; for sharing the electronic bill of lading over a network; and for extracting load planning and billing information from the electronic bill of lading. The load planning data is sent to a load planner or to load planning software and the billing data is sent to a load planner or to load planning

US 6,401,078 B1

**3**

software and the billing data is sent to the billing clerk or accounting/billing software application. With this information in the computer system, the customer can now be billed as well as appropriate load planning can be accomplished, so that when the truck driver returns to the terminal the load planning is completed. Thus, each freight shipment can be unloaded from the truck and directly placed on the truck that will be carrying that load to its next destination. Having the load planning accomplished prior to the freight's arrival, reduces the freight turn-around time and freight handling. Additionally, since the load planner knows what freight is on its way to the terminal, fewer delivery trucks will depart with partial loads. Consequently, the trucking company would be able to move the same amount of freight at a lower cost.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1A** is a block diagram of a load planning and billing system setup in accordance with the present invention;

FIG. **1B** is a block diagram of an alternate embodiment of a system for load planning and billing similar to that shown in FIG. **1**;

FIG. **2A** is a functional block diagram of document scanning and transmission device using a personal computer setup in accordance with the present invention;

FIG. **2B** is a functional block diagram of an electronic bill of lading transmission system setup in accordance with he present invention;

FIG. **3** is a flow diagram depicting a preferred method of transmitting shipping documentation in accordance with the present invention;

FIG. **4** is a flow diagram depicting a preferred method of processing an image in accordance with the present invention;

FIG. **5** is a diagram depicting a preferred image processing by a remote processor in accordance with the present invention;

FIG. **6** is a preferred device capable of scanning and transmitting an image to a remote processor in accordance with the present invention; and

FIG. **7** is a diagram of a preferred remote processor which dynamically generates advance loading manifests in accordance with the present invention.

DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. **1A** illustrates a bill of lading transmission and processing system for less-than-a-load (LTL) carriers in accordance with the present invention. The bill of lading transmitting and processing system **10** comprises scanning a document using a scanning/input system **20**, initiating a document transmission using a communication system (transmitter) **30**, establishing a connection using a communications link **40**, receiving a document using a communications system (receiver) **50**, extracting the load planning and billing information **60** from a transmitted electronic bill of lading, transmitting or sharing the load planning information with a load planner or load planning software **70**, and transmitting or sharing the billing information extracted from the electronic bill of lading with a billing or accounting software module **90**. The illustrated system is designed so that a track driver, while en route, can transmit a bill of lading received from a customer to a central processing location where the billing and load planning information is extracted and used.

**4**

FIG. **1B** shows an alternative version of the system described above. The only difference is that the extraction of load planning and billing information is split into two blocks. The extraction of load planning data **60A** and the extraction of billing information **60B**. This information is used as described above.

The document scanning/input system **20** can take many different forms. The preferred method and system comprises a portable scanner connected to a notebook computer. This computer must be capable of being interfaced with the communication system (transmitter) **30** selected by the user. Alternatively, a portable fax machine capable of being either directly or through an interface circuit connected to a variety of communications systems including but not limited to cellular telephones, radio links, satellite communication systems and standard telephone systems. If a scanner connected to a personal computer system is used, the computer must have the appropriate software as well as the appropriate PCIMA card or a built in interface for connection to any of the above communication systems (transmitter) **30**. As an alternative to using a full notebook computer, a personal digital assistant (PDA) may be utilized if it has the appropriate interface capability between the scanner and the communication system **30** selected. Additionally, if customers agree to use a standard electronic form for a bill of lading or other shipping document, the form could be given to the driver on disk and then transmitted directly without the need for scanning. Furthermore, a PDA or personal computer could be programmed with an electronic form that the customer could fill out and sign while the driver was loading the shipment. After review and verification by the driver, the PDA or computer would then transmit the electronic form to the communication system. Thus, it can be readily seen that the document scanning/input system can be produced as a single unit or may be made up of several independent systems connected together.

The document communication system (transmitter) **30** and document communication system (receiver) **50** are comprised of similar equipment, such that both a transmitting device and a sending device will include a compatible software to interface with one another through transmission protocols such as TCP/IP, or any other transmission protocols. This communications equipment can be a stand alone system or can be provided as part of an integrated package with the document scanning or input system **20**. The preferred packaging would be to use separate systems so that the communication systems could be upgraded or changed as technology and the trucking company requirements change. Examples of communication systems that could easily be used to transmit a signal which contains the information from the bill of lading are the following broad categories: analogue telephones; digital telephones; high frequency (HF), very high frequency (VHF), or ultra-high frequency (UHF) radio transmitters; cellular telephone; or satellite communication systems. The distance over which the communications link **40** must be reliable will determine which communication system is selected by a specific user. For short distances (line of sight), cellular telephone and VHF/UHF radio links are preferred. Medium distance transmission (line of sight to 100 miles) would typically use cellular telephones if available or HF radio links. HF radio is the least preferred communication system due to signal propagation problems. Long distance communications could use cellular telephone if available or satellite communication systems.

The use of standard or plain old telephone systems (POTS) communication circuits could be accessed using an

US 6,401,078 B1

**5**

acoustic coupler and a modem so that a standard telephone handset could be utilized. If it is not necessary to utilize a standard telephone handset, then just a modem with a direct connection to the telephone system would be utilized. To utilize any of the HF, VHF or UHF radio systems, a radio frequency modem would be required to be a part of the communication or communication system **50**. To use cellular technology in either an analogue cellular phone or a digital cellular phone, the appropriate cabling and modems would also be required to be part of the communication systems **30** or **50**.

There is a fairly broad spectrum of satellite communication systems presently available and a host of satellite communication systems that are being developed or implemented that could be utilized in the future. All of these systems will require the use of some type of radio transceiver and antenna assembly for communicating between the satellite and the truck. Depending upon the type of satellite communication equipment utilized, a radio frequency (RF) modem or some other interface may be required to be a part of the communication systems **30, 50** in order for the digital information generated by the document scanning/input system **20** to be converted into a radio signal for transmission to the satellite. Additionally, some trucks already use a satellite communication system to track the vehicle's location and communicate with the driver. If such a system is already installed the document scanning/input system **20** could interfere directly with the installed equipment.

Communication link **40** can comprise any system or method of transmitting the information from the communication system **30** to communication system receiver **50**. These systems and methods include: 1) standard phones lines; 2) a combination of radio and telephone circuits, as used in a cellular telephone system; 3) a direct radio circuit, which would be employed in a situation using an HF, VHF or UHF radio link; 4) a combination of VHF or UHF radio link to a satellite with a return VHF, UHF link to a ground station, the ground station would link to a central processing facility over a telephone line, alternatively the ground station and telephone line could be replaced by a second radio link directly to the central processing facility, depending on how the satellite communication system was designed to be used.

In order to maximize the efficiency of the bill of lading transmission and processing system, the electronic bill of lading, received at the central processing facility for the trucking company must be processed to extract the load planning and billing information **60**. Alternatively, the load planning information **60A** and billing information **60B** may be separately extracted. To extract this information, the electronic bill of lading received by the document communication system **50** would be processed to remove the applicable information from the electronic bill of lading and transmit the required information to either the load planner **70** or to the billing and accounting software package **90**.

One method of extracting load planning and billing information would be to interface the document communication system **50** with a standard personal computer using the appropriate modem or interface box. The electronic bill of laden would be digitized and then processed with an optical character recognition (OCR) or intelligent character recognition (ICR) software package. The character based electronic bill of lading provided by the OCR program is then used in the load planning and billing processes. The load planning information would preferably then be transmitted to the load planner over a local area network. This infor-

**6**

mation could be printed and/or displayed at the load planner's terminal. As an additional time saver the load planning information **60** could be transmitted to a computer running on the local area network. This computer would run a load planning software package which would do the load consolidation and planning automatically.

A second method of extracting the load planning and billing information would be for a data entry clerk to view either a paper or electronic copy of the electronic bill of lading and manually enter the appropriate data into a computer system for load planning, billing, and accounting. If a computerized load planning system was riot utilized, a paper copy of the electronic bill of lading would be printed and given to the load planner.

The billing information extracted would be transmitted or inputted into a standard billing and accounting software package which could automatically invoice the shipper so that there would be a shorter time period between picking up a load and billing the shipper. Additionally, the load planning information extracted could be transmitted or input into a load planning software package that could automatically build a shipping and loading plan to minimize partial loads and keep the shipments on time. An additional value of having the load planning and billing information automatically extracted from the electronic bill of lading is expected that fewer errors in load planning and billing would be made. In practice, this system can range from a frilly automatic, electronic, paper less system to one which relies on paper and uses the system merely as a transmission device.

FIG. 2A is a functional block diagram of a document scanning transmission device **20** using a personal computer and a scanner. Furthermore, a document communications system **30** includes a modem for transmission. Alternatively, a document scanning transmission device **20** could be created by utilizing a PDA as shown in FIG. 2B.

FIG. **3** is a flow diagram depicting a method of transmitting shipping documentation enabling dynamic load planning in accordance with the present invention. Shipping documentation is often received in paper form by the driver of a truck from a customer at the time of pickup or otherwise while the driver is delivering his/her cargo. The documentation is generally associated with a package or item to be delivered given to the driver by a customer (or completed by the driver at the time of pickup). This documentation may be supplemented by the driver with remarks, weather conditions, corrections, additional details, and otherwise updated en route as applicable. Typically, such shipping documentation includes bills of lading, and the documentation may be one to several pages in length for each package or item to be separately delivered. The term "package" will be used herein to connote any item or cargo to be shipped. Preferably, a driver will have a number of unique bar coded self adhesive stickers and each unique bar code will be replicated on two identical stickers. The driver will place one of these stickers on the package or item provided by the customer and another corresponding sticker will be placed in the upper-right-hand corner of the first page of the shipping documentation. These bar codes are preferably encoded in a machine readable format and are marked in a structured manner such that a bar code reader equipped with compatible software can readily identify information from the bar code, such as, the identification of the truck driver receiving the package, date of receipt, general location of receipt, identification of the truck, route information, or the like.

Having identified the package and the documentation, the driver loads the package onto his truck in step **100** and scans

US 6,401,078 B1

7

an image of the documentation received creating an electronic representation of the documentation. This digital representation of the documentation is then transferred to an image processor where the image is prepared for transmission in step **110**. Many commercially available scanning devices are capable of creating an image of the documentation and capable of interfacing to a computing device such as a palm-top computer. In this exemplary embodiment, the palm-top computer includes an image processor which includes software logic capable of compressing the image into a smaller memory space. Compression techniques are well known in the art and any appropriate compression technique would be sufficient. The image processor also interfaces with a transmission device such as a cellular modem, wireless modem, and the like.

Prior to sending the compressed documentation, the software logic will preferably break the documentation into smaller units, or packets. These packets will generally be numbered and the total number of packets recorded as part of the processing. This will permit the computing device used by the driver, to reliably transmit to a remote processing center's computing device. Busting the documentation into smaller packets, which are then sent in Step **110**, will also decrease the expense associated with transmitting the documentation should an error in transmission occur, such as loss of communication with a cell tower after 50% of the documentation was sent. Particularly, if an error is encountered, both the computing device used by the driver and the remote processing's computing device will know what packets have been received and what still needs to be received by the remote processor. Initially, the transmission device of the driver's computing device makes contact with the remote processing center's computing device and transmits the total number of packets which are to be sent. As each packet is received, the packet's number is recorded by both the receiving computing device and the sending computing device. With this information, error recovery with failed transmissions can be readily resolved.

Once the documentation is successfully received (step **150**) at the selected remote processing site, the packets are ordered correctly and concatenated together to reform the document (or documents) sent, which is then decompressed. The decompressed documentation is stored on the remote processing center's computing device in step **160**.

Thereafter, load plans for a destination, which may include interim and final destinations for a package, can be dynamically preformatted and manipulated by using a computing device to request from the remote processing center's computing device an advance loading manifest. Advance loading manifests, are documents generated by the load planning software discussed above. These documents provide instructions to workers at a destination, informing the workers that a particular package or item needs to be placed on a particular truck for further shipment at a particular time. Since, the load planning software is receiving documentation regarding the packages dynamically throughout delivery day, whenever the load planning software is requested to generate an advance loading manifest, the loading efficiency of the trucks is fully maximized, at that point in time. As will be understood, the inventive system enables dynamic routing of items and packages as they are en route. Optimization of transportation resources and delivery times can thereby be accomplished on a dynamic and real time basis, and shipments can be redirected to accommodate changing conditions and needs of customers, vehicles and extraneous factors (e.g., weather and traffic).

When an advance loading manifest is requested, the remote processing center's computing device, utilizing a

8

software logic, will programmatically request an extract (step **180**) of all documentation relevant to generating an advance loading manifest for a requesting destination. These sets of documentation are pulled from the computing device's storage in step **170** and compared. In step **190**, the relevant information contained in these sets of documentation such as package weight, package dimension, package destination, package delivery requirements, package current location, etc. are fed to the load planning software to produce one or more advance loading manifests.

The generated advance loading manifest is then transmitted by the remote processing center's computing device to the requesting destination (e.g., steps **210**, **220**, and **230**). While it is contemplated that a single remote processing center for at least selected geographic regions, it should be understood that the processing center could also be located at a destination or interim destination, and that any number of processing centers might be utilized to service any particular geographic region. Reception of the advance loading manifest at the requesting destination may be by any acceptable electronic means such as facsimile, hand held computing devices, email, electronic bulletin boards, or direct transmission to the requesting destination's computing devices such as on a network. The requesting destinations may then view and use the generated advance loading manifests (or alternatively access the data to generate their own manifests) to optimize truck loading in steps **240**, **250**, and **260**.

FIG. **4** is a flow diagram depicting an exemplary method of processing an image in accordance herewith. This image might be shipping data in the form of documentation provided by a customer to a driver and associated with a customer's package. It may also include comments, remarks, details, error notations, and corrections which are electronically communicated by the driver and associated with the image. The driver may add this additional data to be associated with the image, through any electronic input device interfaced to a computing device or by writing the additional data on the customer's documentation. This may be accomplished by following instructions (generated from a software program developed to obtain standard comments from the driver) on a computer screen and selecting options with an attached mouse; using a keyboard to type additional data; using a wand to write in the information on a PDA; using a pen to make notations on the documentation which will then be scanned in with the documentation; speaking into an input device interfaced to a computing device and capable of performing voice recognition operations; and transferring the additional data from one computing device to another such as using infrared transmission from a driver's PDA to the driver's main computing device.

Once the customer documentation and package are received at a pickup point, the items are labeled with bar coded stickers as discussed above with FIG. **3**. Next, the driver may add additional information to the documentation itself or through the driver's computing device. The documentation is then scanned into the driver's computing device in step **270**. An electronic image is created of the documentation which includes any driver added information. This image is then compressed in step **280**, and preferably divided into smaller units or packets in step **290**. Each packet is then sent in step **300**, and if a remote processor indicates a packet was not received properly in step **320**, the packet in question is resent in step **300** until successful completion.

Simultaneously, the driver's main computing device is preferably capable of recording or receiving information

A149

US 6,401,078 B1

9

about the transportation vehicle in step **420**. This information might include, mechanical performance of the vehicle (e.g., engine temperature, oil pressure, fluid levels, tire pressure, and the like), location of the vehicle, weather conditions, speed of travel, direction of travel, and the like. This vehicle information is sent to the remote processor in step **430**.

Steps **270, 280, 290, 300, 420**, and **430** all occur while the driver is on board the transportation vehicle or while the truck is in transit. While the scanning step (**270**) may be undertaken prior to departing a pickup location (e.g., where there is only a single driver), this step might preferably be performed while en route by using an automatic feed/ scanning arrangement, or where another person on board can complete the scans en route. The phrase "on board" is intended to connote the fact that the equipment will travel with the driver and vehicle, and is not limited to any particular location. Therefore, the driver could transmit customer documentation or vehicle information from a PDA or device that can be carried with him outside of the truck cab, or could use the equipment to scan and transmit from physically being in the vehicle itself. Moreover, sending the customer documentation and vehicle information can occur while the driver is actually driving the transportation vehicle, as mentioned. Once all information is stored electronically, preferably no further actions are required by the driver to ensure the information is sent to the remote processor, since this can all be coordinated with executable instructions residing on the driver's computing device and the remote processor's computing device. This frees the driver to continue with his deliveries with minimal interruption and delay, and requires very minimal training of the driver.

The remote processor initially validates that all packets are received in step **310**. If packets are not fully received, the sending transportation vehicle will resend a missing packet in step **320**. Once all packets are received, they are assembled in the appropriate order in step **350** and decompressed in step **360**. Based on the bar coded label associated with the documentation, the documentation may be routed to different work processing queues. Work processing queues are electronic locations where certain operations are to be performed based upon the receipt of the documentation; For example, the loading information contained in the documentation may be electronically transmitted to another remote location so that the image of the documentation may be manually keyed into an electronic text format for use in load planning software discussed above. Moreover, billing information may be manually keyed into a software billing system.

The work processing queues need not be local to the processor sending the documentation. In this way, the documentation may be routed to work processing queues any where in the world, where for instance labor is less expensive and more abundant. For example, the documentation may be routed to India, China, Indonesia, or the Philippines so that the documentation can be manually keyed at a lower cost. Furthermore, this routing to different time zones permits documentation to be processed 24 hours a day, since many of the recited countries above are working while much of the United States sleeps.

Alternatively, image data which is well fielded or structured may have the loading data programmatically extracted out of the image in step **370** and then inputted to a load planning software for generation of an advance loading manifest in step **390**. Finally, in step **400** the generated advanced loading manifest can be directed to remote destinations upon request.

10

Moreover, as one skilled in the art will appreciate the load planning software need not reside exclusively on the remote processor, this software may reside on the computing device or devices of the remote facilities themselves. In these situations, the documentation may initially route through the remote processor but, the processing of the documentation and the generation of the advance loading manifest could occur at the requesting remote facility. Furthermore, if a particular set of documentation is rerouted to a new facility, it may be recalled from the remote facility's computing device by the remote processor and routed to the new facility appropriately. In this way, the remote facility provides a central dynamic routing of the documentation yet, the processing of the documentation occurs when and where it is need ed.

FIG. **5** a diagram depicting an exemplary image processing by a remote processor such as a central processing system. In step **450** an image is received by the remote processor and based on its bar code routed in step **460** to multiple work queue locations **510** and **520**. The image is also sorted for storage when received on the remote processor in step **470**. The image is classified in step **480**. Classification of the image is preferred so that the image received can be associated with other images which are relevant to a particular destination or a particular searchable characteistic (e.g. type of item, model of product, and the like). For example, if transportation vehicles **1** and **2** each receive documentation pertaining to packages received while the drivers are performing deliveries, and both vehicle **1** and vehicle **2** are arriving at a loading/unloading destin ation, the images from each of these transportation vehicles would be associated together by a classification means. In a common scenario, this classification means might use the bar code on the images to identify the tracks sending the images and then to store the images in a directory associated with the destination of these two transportation vehicles. The items or packages might also be classified as to the type of product, color, model number, etc., so that an individual item could be identified and (for example) redirected to an alternate destination while en route. Once the loading information from these images are appropriately extracted or manually keyed from these images, the inform ation is passed to a load planning software package for generation of an advance loading manifest.

Moreover, a received image (e.g. as in FIG. **5**) maybe programmatically enhanced by commercially available software, such as InputAccel, to provide for better image quality or resolution by performing operations such as despeckling, cropping, and improving image brightness. Improved image quality will permit more accurate automatic processing and/or manual keying of the information included on the image. Furthermore, the image may have an OCR process (step **500**) performed on it permitting automatic generation of electronic text associated with the image. This electronic text could then be programmatically inputted to a load planning software for generating advance loading manifests.

InputAccel also performs work flow processing of the image by monitoring directories contained on the computing device and identifying images when the images become available in the directories. For example, types of images can be identified by the image file name extension and automatic operations can be performed on the images based on the directory in which they appear and their file names. In this way, the images are programmatically processed upon receipt by the remote processor and the load planning information associated therewith is dynamically available

A150

US 6,401,078 B1

11

when an advance loading manifest is requested. This automation reduces the amount of personnel required to process loading documentation, reduces errors associated with manual processing, and substantially increases the efficiency of generating advance loading manifest.

FIG. 6 illustrates a schematic example of a device capable of scanning and transmitting an image to a remote processor in accordance with the present invention. Although FIG. 6 depicts a diagram as a single device, as one skilled in the art will appreciate, this arrangement need not be a single device but could be several devices which interface together to form a logical device depicted in FIG. 6. FIG. 6 depicts a field device 530 referred to as a mobile data transmission device ("MDT"). The MDT 530 has a processor 550 which includes a memory 560 and set of executable instructions residing on the processor 560 capable of receiving transportation documentation in 570 from an input device 600 which is interfaced to the processor 550. This input device 600 might preferably include a scanner which electronically converts transportation documentation into an electronic image. However, if the transportation document is already in image form and contained on a separate device such as a PDA, the input device could be an infrared transmission port which is capable of receiving the image from a device such as a PDA. After receipt of the image, the image is stored in the memory 560 and prepared for transmission in 580. Preparation for transmission includes establishing a communication with the transmission/receiving device 620, and, preferably, compressing the image. The transmission device 620 will then electronically send the image to a remote processor 640 by establishing a connection with the remote processor's 640 transmission/reception device 660.

Furthermore, the MDT 530 may include a global positioning satellite ("GPS") device 610 interfaced to the processor 550 for relaying location information to the remote processor's 640 GPS 650. Moreover, vehicle information 630 associated with the MDT 530 is communicated to the processor 550 and transmitted to the remote processor 640. Vehicle information can include any of a variety of performance, diagnostic, and status information as discussed above with FIG. 3 and is useful in creating better real time communication and planning of shipping manifests and loading and delivery schedules. The GPS will provide location information of the transportation vehicle (and the items and packages) and directions to the driver of the transportation vehicle. Additionally, the MDT 530 may contain a Radio Frequency Identification (RFID) tag, such that the MDT 530 can be continuously located with wireless transmission.

The MDT 530 may be built into the transportation vehicle itself, or it may be a separate device which can be removed from the transportation vehicle with or separate from the balance of the processing system. FIG. 6 depicts a securing device 540 which permit a removable MDT 530 to be attached to the transportation vehicle during transit, this may include an electronic connection similar to laptop computer docking stations, and would permit the MDT 530 to receive power. Power to the MDT may be supplied through a battery source, and can be connected to the transportation vehicle's battery utilizing the securing device 540.

The MDT's 530 transmission/receiving device 620 establishes a communication with a remote processor's 640 transmission/receiving device 660. Once this communication is established, the MDT 530 may transmit transportation documentation, vehicle information, and/or location information. Moreover, the MDT 530 may receive information from the remote processor 640, such as requests to resend

12

parts of the transportation documentation not successfully received by the remote processor 640, or for location updates and/or other vehicle information. Further, the remote processor may send electronic instructions to the driver via the MDT 530 utilizing the MDT's 530 GPS 610. Information received by the MDT 530 is processed in 590 by the MOT's 530 processor 550. Once received information is in a format understandable to the processor 550, it is available for use by the processor 550 and may be communicated to the driver if necessary, through a user display screen, paper print out, or by audio device. For example, additional pickups or rerouting instructions for one or more items to be delivered might be sent to allow redirecting of one or more items en route.

Transportation documentation sent by the MDT 530 is preferably received by the remote processor 640. A set of executable instructions residing on the remote processor 640 initially receives the transportation documentation in 680. If errors 690 are detected, a send 700 request is initiated causing an instruction to be sent from the remote processor's 640 transmission/receiving device 660 to the MDT's 530 transmission/receiving device 620. This instruction informs the MDT of the exact parts of the transportation document which need to be resent. Preferably, no driver intervention or action is required to effectuate the resending of the transportation documentation.

Once the remote processor 640 successfully receives a set of transportation documents, it may be electronically routed to perform a variety of operations such as classification 710, extracting 720 (loading or billing information), and enhancements 730 (e.g., improving image quality by varying brightness), and, of course, load planning and shipping manifests.

Whenever a request is made of the remote processor 640 for an advance loading manifest, the request will route to load planning software where an advance loading manifest 740 is produced for further electronic transmission or hard-copy output.

FIG. 7 is a schematic illustration of an exemplary remote processor 750 for dynamically generating advance loading manifests. FIG. 7 also depicts the overall process of the present invention. The remote processor 750 includes a set of executable instructions permitting it to interface with one or more remote facilities' (e.g. 760) computing device and a truck's (e.g. truck 770) computing device through a software communication layer 780. This software communication layer 780 might preferably include standard protocols available in the art which permit computing devices to interface with one another such as TCP/IP.

Initially, transportation documents are sent from the truck 770 (e.g. as shown at block 900) via communication layer 780. The remote processor 750 receives the documents in 830 and proceeds to route the documents in block 840 and store them to the memory of the processor in block 790. Routing the documents in this way can permit additional operations to occur on the documents such as manual keying, OCR, classification, and image enhancements. As previously discussed, commercially available software such as InputAccel provides this automated routing and operation execution on the received documentation. Moreover, as one skilled in the art will appreciate, information regarding the contents of the document could also be stored in a database and the contents of that database made available to the remote facilities and trucks on demand.

Throughout the actual pickup/delivery travel of the truck 770, an estimated time of arrival ("ETA") can be commu-

US 6,401,078 B1

13

nicated from the truck **770** to the remote facility **760** via the communication layer **780**. The remote facility **760** receives the ETA in **860** and makes a determination at some point to request a loading manifest **850** from the remote processor **750** via the communication layer **780**. Alternatively, such ETA can be determined by the remote processor as a result of updated vehicle information received from the truck **770**. The remote processor receives this request of the remote facility **760** in block **810** and causes an extraction of all the relevant load planning documents from the remote processor's **750** memory **790** in block **800**. This extracted load planning data is fed to a load planning software causing an advance loading manifest to be generated in block **820**. Once the advance loading manifest is generated, it is sent to the requesting remote facility **760** in block **870** via the communication layer **780** and used in **880** to load and unload (as appropriate) the arriving truck **770**.

As one skilled in the art will appreciate, the ability to bi-directionally and dynamically communicate with transportation vehicles and to remotely process transportation documentation, tremendously optimizes the performance of the transportation business, as well as allowing more freedom and control in optimizing delivery times and costs for products. Although specific examples and descriptions have been expressed as they might relate to the less-than-a-load freight business, the usefulness of the present invention is not intended to be limited thereto. Full load shipments of products might also be improved where redirection of the vehicle and/or portions of the load en route may be desirable to respond to customer needs or other factors.

The foregoing description of the preferred embodiment of the invention has been presented for purposes of illustration and description. It is not intended to be exhaustive nor to limit the invention to the precise form disclosed. Many alternatives, modifications, and variations will be apparent to those skilled in the art in light of the above teaching. Accordingly, this invention is intended to embrace all alternatives, modifications, and variations that fall within the spirit and broad scope of the amended claims.

What is claimed is:

1. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

placing a package on the transporting vehicle;

using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

14

providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

wirelessly sending the image to a remote processing center;

receiving the image at said remote processing center; and

prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

2. The method of claim **1**, further comprising the step of comparing and combining the documentation data received at said remote processing center with similar shipping documentation data of other packages to be delivered from an interim destination and other shipping data, and preparing loading manifests to optimize the loads to be shipped on at least one other transporting vehicle.

3. The method of claim **1**, wherein the image sending step is accomplished from onboard the transporting vehicle.

4. The method of claim **3**, wherein the image sending step can be undertaken while the transporting vehicle is in transit.

5. The method of claim **4**, further comprising the step of dynamically updating the documentation data sent while the transportation vehicle is in transit to provide more current data on the shipping status of the package.

6. The method of claim **1**, further comprising the step of routing certain portions of the shipping documentation data received at said remote processing center to an interim destination of said package for utilization in loading manifests.

7. The method of claim **1**, further comprising the step of sending vehicle information to said remote processing center at one or more times as said transporting vehicle is en route to a destination.

8. The method of claim **6**, wherein said vehicle information includes location data about said transportation vehicle for use in determining loads to be shipped on at least one other transportation vehicle to be loaded at an interim destination.

9. The method of claim **6**, wherein the method further comprises receiving instructions on board said transportation vehicle for altering the routing of a package on said transportation vehicle en route.

*  *  *  *  *

# EXHIBIT B



| Who We Are | Innovation | Products and Services | News and Media | Investor Relations | Global Citizenship | Careers | News and Events |
|---|---|---|---|---|---|---|---|
| Who We Are | Innovation | Products and Services | News and Media | Investor Relations | Global Citizenship | Careers | News and Events |
| Who We Are | Innovation | Products and Services | News and Media | Investor Relations | Global Citizenship | Careers | News and Events |

## In-Cab Scanning





Qualcomm's In-Cab Scanning service provides carriers a comprehensive document management solution that enables enhanced customer satisfaction, improves productivity and reduces operating expenses. No more wasted time making extra stops and paying fees to copy, scan, fax or mail documents. This end-to-end service enables drivers to scan and transmit documents from the cab of their truck directly into the customer's back-office system through web services integration and helps companies improve back-office efficiency. In-Cab Scanning helps improve customer and driver satisfaction by reducing manual errors associated with re-keying important information, including trip and mileage reports, bills of lading, timesheets, receipts and other critical customer information.

Features:

Compact, reliable and cost-efficient scanner

Easy-to-follow user interface for scanning critical documents

Seamless integration with your back-office system

High-standard viewing with image optimization

Eliminate truck stop wait time and scanning fees

Access scanned data one of the four convenient ways:

HTTP Portal

Email

FTP

Web-services integration--highly flexible allowing the user to build additional business

Resources

A426

# EXHIBIT

# C

**QUALCOMM**

Press Release Qualcomm Incorporated
www.qualcomm.com
5775 Morehouse Drive
San Diego, CA 92121-1714
(858) 587-1121

# Qualcomm Announces In-Cab Scanning Service

## In-Cab Scanning Increases Driver Productivity and Improves Billing Cycle

SAN DIEGO — 10-03-2008 — Qualcomm Incorporated (Nasdaq: QCOM), a leading provider of business-to-business wireless enterprise applications and services, today announced its In-Cab Scanning service, a new addition to the OmniVisionSM Transportation suite of services. This end-to-end service enables drivers to scan and transmit important documents such as trip and mileage reports, bills of lading, timesheets, receipts and other critical information. These activities can be performed immediately and from the cab of the truck, improving driver productivity by eliminating the need to search for truck stops with scanners. In-Cab Scanning also helps increase the pace of the business cycle for carriers. Data is received in minutes, rather than hours, which can speed up billing and other business processes for faster payment and improved operational performance. The time-consuming process of making extra stops to copy, scan, fax or mail documents is eliminated, which helps to improve productivity, profitability and drivers' quality of life. Qualcomm's mobile computing platform for the transportation industry is a purpose-built system designed for interoperability with leading-edge, third-party services to help customers reduce costs and improve their bottom line. The In-Cab Scanning service is supported by a scanner located inside the cab of the truck, which allows a driver to quickly scan documents and move on to his or her next stop. Drivers spend less time processing and keeping track of paperwork, thereby saving valuable time for both drivers and back-office staff. The In-Cab Scanning service also helps improve back-office productivity. Indexed documents can be automatically populated into key back-end processes, eliminating the need to re-key information and enabling faster dispatching of workloads and assignment of drivers.

"We always strive to bring additional value to our customers as the end-to-end wireless service provider for the transportation industry," said Norm Ellis, vice president of transportation and logistics sales and service for Qualcomm Enterprise Services. "OmniVision Transportation services include a broad range of critical applications that allow our customers to get critical business information faster, more efficiently and with less room for human errors."

Qualcomm Enterprise Services delivers integrated wireless systems and services that enable businesses around the world to operate at peak performance and improve quality of life across the value chain. Qualcomm's world-class technology infrastructure, customer focus and professional services help enable enterprise customers across a variety of industries to achieve their vision. Qualcomm provides comprehensive wireless solutions and services, including two-way data communications systems, productivity-enhancing applications, managed network services and enterprise-level consulting.

Qualcomm Incorporated (Nasdaq: QCOM) is a leader in developing and delivering innovative digital wireless communications products and services based on CDMA and other advanced technologies. Headquartered in San Diego, Calif., Qualcomm is included in the S&P 100 Index, the S&P 500 Index and is a 2008 FORTUNE

A429

# EXHIBIT

# F

## An innovative edge for operators & drivers



Hours of Service



Critical Event Reporting

### Services

Qualcomm is committed to providing services that improve the value of mobile computing. Our innovative services can be customized through operational profiles to maximize value based on the unique needs of your fleet.

### Circle of Service Workflow

Integrates with dispatch systems to drive operational efficiency for leading businesses worldwide. By automating functions such as load assignments, event triggers, and work process forms, Circle of Service Workflow helps to lower operational costs, reduce errors made by manual entry, and improve on-time fulfillment across entire fleets. The intuitive, easy-to-use design of the in-cab interface reduces driver training time, increases visibility, and improves compliance on both the Mobile Computing Platform 100 (MCP100) and 200 (MCP200) Series.

### Content Delivery

Provides a consistent, reliable, and secure way to use audio recordings to communicate critical information to your drivers. The service provides the ability to broadcast pre-recorded messages to the driver.

### Critical Event Reporting

A comprehensive, actionable view of safety oriented, event-driven data summarized by vehicle and driver.

### Driver Email

Offers drivers the ability to communicate with friends and family while on the road.

### Driver Notification Service

Allows important in-cab messages sent from dispatch to also be copied to the drivers' mobile phones.

### Hours of Service

An electronic on-board recording system that automatically creates driver logs which are fully compliant with the latest rules and regulations of the Federal Motor Carrier Safety Administration.

mcp100.qualcomm.com

# EXHIBIT H

A445

Case: 1:09-md-02050-SSB-SKB Doc #: 123-8 Filed: 04/06/10 Page: 3 of 5  PAGEID #: 1659

## An innovative edge for operators & drivers



Hours of Service



Critical Event Reporting

### Services

Qualcomm is committed to providing services that improve the value of mobile computing. Our innovative services can be customized through operational profiles to maximize value based on the unique needs of your fleet.

### Circle of Service Workflow

Integrates with dispatch systems to drive operational efficiency for leading businesses worldwide. By automating functions such as load assignments, event triggers, and work process forms, Circle of Service Workflow helps to lower operational costs, reduce errors made by manual entry, and improve on-time fulfillment across entire fleets. The intuitive, easy-to-use design of the in-cab interface reduces driver training time, increases visibility, and improves compliance on both the Mobile Computing Platform 100 (MCP100) and 200 (MCP200) Series.

### Content Delivery

Provides a consistent, reliable, and secure way to use audio recordings to communicate critical information to your drivers. The service provides the ability to broadcast pre-recorded messages to the driver.

### Critical Event Reporting

A comprehensive, actionable view of safety oriented, event-driven data summarized by vehicle and driver.

### Driver Notification Service

Allows important in-cab messages sent from dispatch to also be copied to the drivers' mobile phones.

### Hours of Service

An electronic on-board recording system that automatically creates driver logs which are fully compliant with the latest rules and regulations of the Federal Motor Carrier Safety Administration.

### In-Cab Scanning

Provides drivers a way to send documents to their home office for back-office processing without having to leave their truck.

A447

# EXHIBIT

# J



**Hours of Service**
A system that automatically creates driver logs which are fully compliant with the Federal Motor Carrier Safety Administration.



**In-Cab Fuel Services**
Empowers drivers to make the smartest fuel purchases by providing the latest, most accurate and complete pricing information.



**JTRACS Pro® vehicle monitoring service**
Enabling continuous and reliable vehicle diagnostics reporting.



**Performance Monitoring Service featuring Fuel Manager**
Tracks vehicle and driver performance via direct interface with the vehicle's sensor inputs or onboard data bus.



**QTRACS® fleet management system**
Provides dynamic fleet and driver management through messaging, vehicle tracking, and mapping. The QTRACS service is a Qualcomm-hosted Web solution which combines efficiency with the simplicity of a Web browser.



**Trailer Tracks**
Works in conjunction with the Mobile Computing Platform series to help fleets that require monitoring of tethered or untethered trailers.



**Vehicle Command & Control**
Works with MAGTEC's MIK on board security device to offer the perfect combination of on-board security and over-the-air (OTA) management.
Vehicle Command & Control brochure

Top

Print    Send    Feedback



NTTC
NATIONAL TANK TRUCK CARRIERS

*Congratulations*
to this year's winner of the
National Tank Truck Carriers
Outstanding Performance
Trophy for Safety:

2008 – Jack B. Kelley

And to the previous winners,
all of whom use Qualcomm
technology.

2007 – Trimac
Transportation Inc.

Connect With Us          Legal    Privacy Policy    Contact Us    Corporate Information    Worldwide Locations    Mobile          Choose Your Country

© 2010 QUALCOMM Incorporated. All Rights Reserved.

# EXHIBIT
# K

OmniTRACS SYSTEM

QUALCOMM WIRELESS BUSINESS SystemS®



**MOBILE COMMUNICATIONS SYSTEM**

# OmniTRACS® SYSTEM
## FOR TRANSPORTATION

For trucking and construction equipment fleets, the OmniTRACS system offers a powerful set of communication and position-tracking features that can help reduce operating costs, and enhance productivity and security.

### MANAGING TRANSPORTATION FLEETS AND CONSTRUCTION EQUIPMENT

**STANDARD FEATURES**

- Automatic satellite vehicle positioning
- Two-way text and data communications
- QTRACS® fleet management system to display data from OmniTRACS system
- Customizable reports
- AS/400 server, Windows® server, or Web-hosted operation
- Reliable message delivery
- QUALCOMM Network Operations Centers (NOCs)
- QUALCOMM Professional Services support seamless data integration with:
  - Back-office applications
  - SensorTRACS® performance monitoring service
  - Vehicle maintenance service
  - Tethered trailer tracking service
  - T2 Untethered TrailerTRACS™ asset management system

The OmniTRACS system goes beyond merely promoting efficiency and provides the tools needed for a proactive approach to fleet and service/delivery vehicle management. Fleet data, for example, can help enable customers to identify routes that yield a greater revenue stream. This is important for trucking because one of the keys to profitability is billable miles.

For service and delivery vehicles, the OmniTRACS system helps increase the productivity of support teams by streamlining their communications, tracking, and dispatch.

The OmniTRACS system also helps increase the security and safety of vehicles and their operators. Tamper-alert systems, panic alarms, and satellite-tracking capabilities help minimize the risk of loss due to tampering and theft, and help facilitate quick recovery by providing timely location information for law-enforcement agencies.



**YOUR BUSINESS. UNBOUND.**     **QUALCOMM**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **IN RE: Bill of Lading Transmission and Processing System Patent Litigation.** §§§§§ | |
| **R+L CARRIERS, INC.,** §§§ | |
| PLAINTIFF, §§ | **Case No. 1:09-md-2050-SSB** |
| V. §§ | |
| **AFFILIATED COMPUTER SERVICES, INC., ET AL.,** §§§§ | |
| DEFENDANTS. § | |

## DEFENDANTS' JOINT MOTIONS TO DISMISS
## WITH MEMORANDUM IN SUPPORT

Pursuant to FEDERAL RULE OF CIVIL PROCEDURES 12(b)(6), Affiliated Computer Services, Inc. ("ACS"), DriverTech, LLC ("DriverTech"), Intermec Technologies Corp. ("Intermec"), Microdea, Inc. ("Microdea"), PeopleNet Communications Corporation ("PeopleNet"), and Qualcomm Incorporated ("Qualcomm") (collectively, "Defendants") ("R+L's Amended Claims") move to dismiss R+L Carriers, Inc.'s ("R+L") amended claims of contributory and active inducement of patent infringement and new claim of "declaratory judgment of justiciable controversy."[1]

---

[1] *See* First Amended Complaint Against ACS (Doc. 124); First Amended Complaint Against DriverTech (Doc. 121); First Amended Complaint Against Intermec (Doc 126); First Amended Complaint Against Microdea (Doc. 122); First Amended Complaint Against PeopleNet (Doc. 125); First Amended Complaint Against Qualcomm (Doc. 123).

A529

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| | : | MDL  Docket No. 1:09-md-2050 |
| IN RE: Bill of Lading Transmission and | : | |
| Processing System Patent Litigation. | : | |
| _____ | : | |
| | : | Case No. 1:09-cv-818 |
| THIS DOCUMENT APPLIES TO: | : | Case No. 2:08-cv-862 (D. Utah) |
| | : | Case No. 1:09-cv-532 |
| R&L Carriers, Inc., | : | Case No. 1:09-cv-179 |
| | : | Case No. 09-cv-144 (D. Minn.) |
| Plaintiff, | : | Case No. 1:09-cv-445 |
| | : | |
| v. | : | |
| | : | |
| Affiliated Computer Services, Inc., DriverTech | : | |
| LLC, Intermec Technologies Corp., Microdea, | : | |
| Inc., PeopleNet Communications Corp. and | : | |
| Qualcomm, Inc., | : | |
| | : | |
| Moving Defendants. | : | |

## ORDER

Six of the Defendants have moved to dismiss R&L's amended claims and counterclaims for patent infringement.  R&L filed its amended claims after this Court granted motions to dismiss R&L's original infringement pleadings.  Defendants generally contend that the amended pleadings fail to plausibly state a claim for infringement of R&L's '078 method patent. The Court had the benefit of oral argument on May 25, 2010, and has considered all of the pleadings, motions and exhibits filed by these parties.

## BACKGROUND

-1-

A850

The '078 patent was issued on June 4, 2002, and is entitled "Bill of Lading Transmission and Processing System for Less Than a Load Carriers."  The patent has one independent claim:

1.  A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

> placing a package on the transporting vehicle;

> using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

> providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

> wirelessly sending the image to a remote processing center;

> receiving the image at said remote processing center; and

> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

R&L is a major less-than-a-load ("LTL") truck carrier; it owns all rights to the '078 patent and practices the patented method in its LTL business.

R&L sent cease and desist letters to DriverTech and to PeopleNet in 2008 and 2009, respectively, informing them of R&L's patent and seeking information about their products which R&L suspected of infringement.  DriverTech and PeopleNet then filed declaratory judgment actions in their home districts, seeking judgments of patent invalidity and of non-infringement.  R&L answered and filed infringement counterclaims against those two defendants in those home districts.  R&L then initiated lawsuits in this district against a number of companies, three of whom (Pitt Ohio Express, Berry & Smith Trucking and Interstate Distributor Co.) are allegedly  directly infringing R&L's patent by practicing the claimed method.

-2-

The moving Defendants are not trucking companies, but are manufacturers of a variety of products that R&L alleges are contributing to or inducing infringement by the direct infringers, trucking company customers of the moving Defendants.

<u>Original Complaints and Motions to Dismiss</u>.

Ten of the alleged indirect infringers filed motions to dismiss or motions for judgment on the pleadings directed at R&L's original claims.  After extensive briefing and oral argument, this Court granted all of those motions to dismiss.  (See February 23, 2010 Order, Doc. 113.) The Court concluded that R&L's complaints failed to plausibly allege contributory infringement by the moving Defendants, and failed to plausibly allege any intent to induce infringement through the sale and/or offer for sale of Defendants' various products. The Court granted R&L leave to amend its claims, and R&L elected to do so with respect to the six moving Defendants.[1]

R&L's amended pleadings each follow a similar format. R&L alleges certain facts about Defendants' products and services which are largely taken from Defendants' publicly-available websites, product advertising, and various industry publications.  These materials are attached to R&L's complaints, which include selected quotations from the attachments.  Following the factual product allegations, R&L then alleges a series of "reasonable inferences" it contends arise from those facts.  Based on the facts and the series of reasonable inferences, R&L ultimately alleges that each Defendant is contributing to infringement and is actively inducing infringement by customers who buy their products.  As the factual allegations are critical to determining the motions to dismiss, those allegations for each Defendant are reviewed at some

---

[1] R&L has reached joint stipulations for dismissal with five of the original Defendants: EIS (Doc. 118), Pegasus TransTech (Doc. 132), Profit Tools (Doc. 130), EBE Technologies (Doc. 129), and SMARTLogix (Doc. 158).

A852

length below.

<u>DriverTech LLC Counterclaim (Doc. 121)</u>:

DriverTech's DT4000 truck computer provides "next-generation mobile communications" by offering "on-board intelligence with a full range of services and state-of the-art applications for the transportation industry. The DriverTech system provides "access to key information that improves driver quality of life and trucking efficiency metrics." (¶10)  The DT4000 TruckPC is a Microsoft Windows XP embedded secure, onboard computer with three modes of communication and provides trucking customers with in-cab scanning. (¶12)  The product drives "communications costs down," and it improves "asset utilization and fleet maintenance, driver productivity and customer satisfaction," and provides "increased bottom line" to trucking customers. (¶16)  DriverTech's "DTScan In-Cab Scanning Solution" product advertises the "ability to perform in-cab scanning of critical Proof of Delivery (POD) and other driver documents...". (¶24)  Immediate (in-cab) document scanning eliminates drivers' need "to spend valuable hours of service using time-consuming truck stop services to scan documents." (¶27)

DriverTech promotes its partnership with McLeod Software, a leading provider of dispatch, accounting and imaging software to the trucking industry. (¶28)  R&L alleges that DriverTech promotes its partnership with McLeod to enable customers "to route and handle bills of lading to speed processing of advance loading manifests." (¶29) R&L quotes from DriverTech's press release announcing integrated in-cab scanning and document management to support this allegation; that press release actually states: "[w]ith the combination of DriverTech's DTScan and McLeod's Forms Recognition drivers scan delivery, settlement and

-4-

other documents in the cab, and images are sent seamlessly via open WiFi or cellular communications." (¶29, quoting from Exhibit H)

R&L alleges that these facts give rise to reasonable inferences that DriverTech's customers are wirelessly transmitting data, including bills of lading, to remote processing centers in order to prepare advance loading manifests as part of a customer's dispatch operations. (¶¶30-32)

DriverTech has engaged "business partners" to provide wi-fi, cellular, and satellite networks for its truck computers, including ORBCOMM, a global satellite data company. This partnership allows trucking fleets to save money while increasing driver productivity. (¶¶35-39) DriverTech's partnership with McLeod Imaging Software, allowing full integration of the products, benefits carriers by reducing "DSO (day sales outstanding) and costs associated with overhead and business processes." (¶48)  DriverTech's CEO stated that scanning "proof of delivery (POD) documents ... in the cab, transmitting images and invoicing customers as the vehicle departs can result in a dramatic reduction in DSO." It also eliminates delays due to the necessity of using truckstop scanning services. (¶50)

DriverTech announced in July 2008 that Interstate Distributor, a trucking company, was integrating DriverTech's DTScan in-cab scanning systems throughout its fleet. DriverTech described the benefits to Interstate from using its systems:

> "- offset rapid fuel price increases by speeding up the billing process and accelerating cash flow;
>
> - eliminate wait time—paperwork is delivered within minutes versus hours or days. The company doesn't have to wait for the documents to be scanned or mailed;
>
> – Provide driver convenience—drivers can scan at the time of load

delivery.

–    Eliminate transactional scanning charges.

–    Increase customer satisfaction—customers can bill faster with
instant proof of delivery."

(¶59)  Interstate's CEO stated that the system gave its drivers  "... the ability to scan documents,

e-mail, watch movies, search the Internet, complete online safety training, communicate with

management in what are now considered 'dead' zones, and utilize highly proficient street-level

mapping."  (¶60)   From these facts, R&L alleges a series of "reasonable inferences" that

Interstate is performing every step of the patent, particularly in-cab scanning of bills of lading to

the back office where advance loading manifests are prepared before the truck arrives at a

terminal.  (¶¶61-62)

DriverTech also has a partnership with Affiliated Computer Services (ACS), a business

process and information technology service provider that sells the "TripPak" products.  (¶¶63-

69)  ACS provides comprehensive "... business process outsourcing services to the global

integrated freight delivery industry, as well as LTL carriers..." in North America.  TripPak in-cab

scanning  allows drivers to send in paperwork so that it can be "processed quickly and

efficiently."  This innovation boosts "convenience, accessibility and affordability for all users."

(¶67)  R&L alleges that, to the extent it may be required, a reasonable inference arises that

DriverTech is the "mastermind" of the DriverTech/ACS "collaboration" and that both are

actively encouraging customers to infringe. (¶73-75)

Following  factual allegations concerning R&L's September 2008 cease and desist letter

to DriverTech, R&L asserts a reasonable inference arises from DriverTech's lack of response to

that letter that it is infringing R&L's patent.         Count I (¶¶ 90-120) alleges contributory

-6-

infringement.  DriverTech's products are alleged to be material parts of the patented process, as without in-cab scanning and wireless transmission, the driver could not transmit bill of lading documentation from the cab in order to prepare advance loading manifests.  DriverTech's products and processes allegedly have no substantial non-infringing uses.  Count II (¶¶ 121-163) alleges DriverTech's active inducement of infringement by, inter alia, its product advertising, participation in industry events and trade shows, and maintenance of its public website.

    <u>Microdea Complaint (Doc. 122).</u>

    Microdea sells fully integrated technology solutions to many industries, including the transportation industry.  Microdea's platform, Synergize, includes "OnRamp In-Cab Scanning" available to trucking companies.  Microdea touts in-cab scanning as "enabling the driver to scan POD and BOL documents and send them through the existing mobile communications system directly to your billing center for immediate processing." (¶14)   Synergize can scan, encode and submit document images to a mobile communications system which sends them to the Synergize decode program at the customer's site, all directly from the truck.  (¶16)  As documents directly affect customer profits, Synergize harmonizes document management in an accurate and cost-effective manner.  (¶19)   Microdea markets Synergize to truckload and LTL carriers, offering to LTL carriers  "reliable, flexible and integrated document automation solutions" that "include scanning, imaging, workflow, process management and print rendition billing..."  to increase productivity, reduce operation costs, improve customer service and cost savings. (¶31) Synergize permits automatic scanning of "all LTL freight bills directly into the system.  Freight bills are instantly available and can be viewed online by employees at different locations, eliminating valuable time spent on manually searching for freight bills and supporting

A856

documents." (¶32)  Synergize integrates with "today's leading transportation management systems" and provides "advance handling - with machine-readable bar codes and data retrieval from the dispatch solution." (¶33)

Berry & Smith Trucking announced in September 2007 that it was "looking to [Microdea's] in-cab scanning" in partnership with PeopleNet Communications, "... to improve driver efficiency by expediting document flow to and from the vehicle, whether that be customer required documents, documents to assist cross-border travel or vehicle documents." (¶41)  Berry & Smith stated that in-cab scanning "enables drivers to scan and transmit critical transportation documents, such as bills of lading and signed delivery receipts, immediately from virtually anywhere."  In addition, "dispatch will be able to more quickly and surely dispatch loads and assign drivers." (¶44)  Microdea's system also allows Berry & Smith "to transmit cargo manifests, billing orders and other documents directly to drivers on the road." (¶45, quoting from Exhibit E to the complaint)  Berry & Smith installed two prototype in-cab scanners in its trucks in October 2007.

Pitt Ohio Express is an LTL trucking company.  R&L alleges that a February 2009 meeting occurred between representatives of PeopleNet and Paramount Transportation Logistics Services.  During that meeting, PeopleNet told Paramount Logistics that PeopleNet works with Microdea and EBE Technologies to provide scanning capability to PeopleNet's g3 onboard computers installed in some of Pitt Ohio's truck fleet.  Pitt Ohio allegedly uses Fujitsu scanners with PeopleNet's computers, Microdea's imaging handling and EBE's management software, to process and use the scanned images. (¶50)

R&L alleges that PeopleNet is the alleged "mastermind" of the collaboration between

-8-

A857

PeopleNet and Microdea, and that Microdea has "actively collaborated" with PeopleNet to infringe the patent.  (¶55)  Microdea has a strategic partnership with PeopleNet to market PeopleNet's g3 onboard computers with Microdea's in-cab document scanning system.  (¶¶56-62)  According to PeopleNet, drivers can use the system to scan documents, including bills of lading, immediately, which speeds the business cycle.  (¶¶63-64)

Count I (¶¶73-102) alleges contributory infringement.  R&L alleges that Microdea's customers, like Berry & Smith and Pitt Ohio, "use Synergize OnRamp solutions to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests."  (¶77)  R&L alleges that Microdea's product is a material part of the patent's process, specifically adapted for use in practicing the patent, and has no substantial non-infringing use.  Count II (¶¶103-148) alleges Microdea's active inducement to infringe, based upon Microdea's website statements, press releases, participation in trade shows and conferences, and its "strategic partnerships" with PeopleNet and with TMW Systems, "a leading supplier of solutions covering the transportation services sector."  (¶126)

<u>PeopleNet Counterclaim (Doc. 125)</u>

PeopleNet's g3 Onboard Computing System provides customers with mobile communications, onboard computing, and fleet management "in one powerful platform." (¶11) The g3 is offered in a portable, handheld configuration and can be used with nearly 100 different wireless digital and analog carriers.  PeopleNet also offers a bar code scanning device which permits a user to "capture bill of lading form information, cargo bar code information or other [sic] through an in-cab tethered option or Blue Tooth enabled mobile option that can extend outside the cab."  (¶15)  R&L emphasizes PeopleNet's own description of "handheld computing

-9-

A858

options" for the g3:

> PeopleNet has partnered with a leading company to offer an advanced handheld solution that works in conjunction with your g3 Onboard Computer. This application allows for portable signature capture, bar coding, paperless form completion, and digital photographs and turns the mobile device into a multimedia clipboard.  This automation and faster process translates into improved service and financial results.

(¶16, quoting from Exhibit D)  The g3 works with PeopleNet's wireless network to transmit data from truck cabs to PeopleNet's "network operations center" where data is processed and transmitted to the customer or the customer's back office provider.  (¶26)  PeopleNet also partners with McLeod software, a leading provider of dispatch and account management software for the trucking industry.  (¶31)

PeopleNet's "PACOS" system is a geofencing and automated messaging solution that increases efficiency of stops and improves supply chain communications.[2]  Combined with the g3, PACOS permits "more efficient pickups/drop offs, higher compliance and lower communication costs with automated messaging."  (¶40)  PACOS also can "increase efficiency of automated paper-based manifest processes.  Through PACOS, load and route information is automatically delivered to the driver upon arrival through an automated manifest that is integrated with [the trucking company's] dispatch system."  (¶42, quoting from Exhibit G)

Berry & Smith Trucking, PeopleNet's customer, announced in September 2007 that it was "looking forward" to using PeopleNet's in-cab scanning with Microdea's Synergize system.

---

[2] A "geofence" is described in an article attached to the PeopleNet complaint as "essentially an electronic perimeter barrier around a truck's route on a digital map.  Reaching certain points within a geofence - such as a yard gate - can trigger alerts for carriers, shippers and receivers.  Geofencing can also be used as a security tool by alerting carriers when a truck leaves its assigned route."  (Doc. 125, Exhibit CC)

(¶49)  Berry & Smith's press release stated that in-cab scanning "is designed to enable drivers to scan and transmit critical transportation documents, such as bills-of-lading and signed delivery receipts, immediately from virtually anywhere. ... [W]ith documents in hand, dispatch will be able to more quickly and surely dispatch loads and assign drivers."  (¶52)  R&L alleges that a reasonable inference arises that PeopleNet actively induced Berry & Smith to infringe its patent, and that PeopleNet is contributing to Berry & Smith's infringement.  (¶¶54-55)

R&L alleges (as it did in the Microdea complaint) that a PeopleNet representative told a Paramount Transportation Logistics representative that Pitt Ohio was using on-board Fujitsu scanners in conjunction with PeopleNet's g3 and Microdea's image handling services.  (¶57) PeopleNet published a "whitepaper" about Pitt Ohio Express and its adoption of PeopleNet's g3 onboard computer which provides specialized, integrated services to Pitt Ohio.  (See Doc. 125, Exhibit J)  According to that white paper, Pitt Ohio wanted to "capture returns" in yard productivity, "to determine the number of trucks waiting for dock doors and to figure out how long it takes the drivers to log out after arriving in the yard." (Id. at 4)  It also needed to analyze man hour per "PRO processed to come up with a big picture ROI savings" and make sure its drivers were responding to dispatch messages.  The PeopleNet system "has become the standard for GPS-based location tracking, two-way voice and data communications, electronic driver logs, and Internet-based fleet business tools to provide consistent, reliable communication between business owners, dispatchers, drivers and shippers."  (Id. p. 6)

PeopleNet's white paper described how Pitt Ohio uses the new system.  A "pick-up manifest is created before orders are sent to the truck through the PeopleNet system.  Drivers can read the dispatch information from the screen in their truck, and the dispatcher can send the

-11-

information to the truck as to which driver will be loading the order.  The manifest can be printed prior to driver arrival thereby speeding check-in and unloading process.  Destination codes will be populated automatically on the manifest based upon zip code information provided by the driver for a more accurate cross-docking procedure."  A truck driver "sends a message that includes load information - PRO number, pieces, weight, destination zip, and any miscellaneous remarks - at the time of loading.  This information is used to populate the dispatch assistant program for linehaul planning purposes."  (Id. p. 7)  Additional improvements include automating driver's logs, vehicle inspection reports, and linehaul driver pay sheets; automatic notification systems for linehaul dispatch and destination terminals; automated fuel taxes and improved fuel economy; capturing sales leads from drivers; improved dock planning, outbound and inbound planning; and better customer service.  (Id. p. 8)

PeopleNet sold its BLU in-cab computers and communications systems, coupled with ACS TripPak in-cab scanning systems, to Frozen Food Express Industries, a truck carrier with significant LTL operations.  (¶66)  According to Frozen Food Express' 2008 annual report (Exhibit DD), the anticipated use of in-cab computers with TripPak in-cab scanning "is to assist in the important pre-planning and routing of LTL shipments - helping us to make our LTL operation more productive and more responsive to our customer needs."  The technology "will revolutionize our LTL operation, enabling us to track not just our trucks, but also the shipments that they are carrying."  (¶67)  R&L then asserts that the reasonable inference arises that PeopleNet sold the system to Frozen Food, and Frozen Food is using the system for scanning and wirelessly transmitting shipping documentation data "for the purpose of pre-planning and routing LTL shipments, i.e. creating advance loading manifests."  (¶70)

-12-

A861

PeopleNet has a strategic partnership with Microdea to cross-sell their respective products, particularly in-cab scanning using the g3's open interface.  (¶¶72-80)  PeopleNet has also partnered with ACS to combine its products with the ACS TripPak line of products, especially "new mobile in-cab scanning solutions."  (¶91)  This combination, according to PeopleNet, "offers fleet an additional way to reduce operating costs and improve fleet productivity through in-cab scanning solutions."  (¶93)  From these facts, R&L alleges reasonable inferences that PeopleNet's customers are sending "trip documents" and "mission critical documents" to remote processing centers, and are "reduc[ing] operating costs" and "improv[ing] fleet productivity" by preparing loading manifests from the scanned and transmitted bills-of-lading.  (¶¶96-98)  PeopleNet is the alleged "mastermind" of the collaborations with Microdea and with ACS.  (¶¶85, 99)

R&L sent PeopleNet a cease and desist letter in January 2009, to which PeopleNet responded by filing a declaratory judgment action.  This response, according to R&L, gives rise to the reasonable inference that PeopleNet is infringing the patent.  (¶111)

Count I (¶¶116-146) alleges contributory infringement.  PeopleNet sells the g3 in combination with Microdea's and ACS' products that permit customers to infringe the patent. The g3 is a material part of the patented process, specifically adapted for infringing use, and lacks substantial noninfringing uses.  Count II (¶¶147-216) alleges PeopleNet's active inducement of infringement.  PeopleNet's advertising, product descriptions, press releases, trade show and industry conference participation, and its public website are intended to actively encourage trucking customers to infringe R&L's patent.  PeopleNet knew of R&L's patent at least by January 2009, when it received the cease and desist letter, but continued to market its

-13-

A862

products and cross-sell the g3 with intent to induce infringement.

<u>Affiliated Computer Services (ACS) Complaint (Doc. 124).</u>

ACS sells "TripPak Services" to transportation businesses such as package delivery or freight haulers. TripPak includes TripPak Scanning, Capture ANYWARE, Mobile Scanning, and In-Cab Solution.  (¶17)  ACS provides software and an in-cab scanner, and imaging services through TripPak Enterprise and FreightForm Express. The key features of Capture ANYWARE (a remote processing solution) are in-cab scanning, remote document capture from a variety of sources, capturing trip documents, driver logs, and accounts payable documents; it may be used as a standalone solution or combined with TripPak ONLINE.  (¶30)  Capture ANYWARE benefits include decreased billing and agent settlement time, reduced shipping costs, paperless processing, and increased driver and fleet choice.  (¶31)  TripPak Mobile SCANNING permits paperwork scanning from "virtually anywhere" including in-cab and remote office locations. (¶34, quoting from Exhibit L)

ACS partners with PeopleNet and its PACOS system to produce an in-cab scanning solution delivering "driver convenience and a better bottom line for carriers."  (¶35)  PACOS permits "increased efficiency of stops and improve[d] supply chain communication through PACOS messages, which are generated automatically based on a geo-fence that is created around a location or event."  (¶36, quoting from Exhibit N, a PeopleNet website excerpt.)  ACS' website includes a flow chart demonstrating this technology:

-14-

A863



(¶37)   The advantages of Mobile SCANNING include reduced billing cycles, showing "proof of delivery instantly," convenience, reducing out-of-route miles, and to "get paid faster."  (¶38)   It provides "seamless back office integration," and "eliminates manual sorting or filing of bills of lading, delivery receipts, etc." resulting in "improved data integrity."  (¶39)   The TripPak SCANNING Model 467 in-cab scanner provides an additional method to submit documents for the Capture ANYWARE system.  (¶45)   TripPak ENTERPRISE is a "robust, cost-effective imaging and workflow system" that integrates with all major dispatch systems and with ACS' products and services.  (¶¶53-54)   ENTERPRISE is internet-based so that all users, "regardless of location, may be linked together and collaborate" and provides integration with TripPak ONLINE for indexing, "data validation and image enhancement."  (¶55)   It allows trucking customers to "supply orders, customer, driver and invoice data directly from dispatch and accounting systems."  (¶56)   Frozen Food Express announced that it would be using ACS TripPak in-cab scanning systems with PeopleNet's in-cab computers to "assist in the important pre-planning and routing of LTL shipments - helping us to make our LTL operation more

-15-

productive and more responsive to customer needs."  (¶63)[3]

ACS has a "strategic partnership" with PeopleNet and with DriverTech, and is actively collaborating with these Defendants to infringe R&L's patent.  PeopleNet is the alleged "mastermind" of the ACS/PeopleNet collaboration (¶81), and DriverTech is the alleged "mastermind" of the ACS/DriverTech collaboration.  (¶95)

Count I alleges that ACS is contributing to infringement of R&L's patent by its customers.  (¶¶98-127).  Count II alleges that ACS is actively inducing infringement through its product descriptions, press releases, strategic partnerships, and participation in trade and industry conferences.  (¶¶128-186).  ACS was aware of R&L's patent at least by November 2009 when R&L filed its complaint, yet ACS continues to advertise and offer its products for sale to the trucking industry.

Qualcomm Complaint (Doc. 123).

Qualcomm offers mobile communications and onboard computing solutions to trucking and transportation customers, including In-Cab Scanning, a comprehensive document management solution.  In-Cab Scanning permits drivers to scan and transmit documents from truck cab directly to the customer's back office systems.  Key features include a cost-efficient scanner, easy to use interface, seamless integration with back office systems, and multiple access routes to scanned data.  (¶¶16-18)  Qualcomm partners with Document Capture Technologies,

---

[3] The entire paragraph from which this quotation is taken, contained in Frozen Foods' 2008 annual report's "Chairman's Letter," states: "We are in the process of implementing a computer-based system that will revolutionize our less-than-truckload (LTL) operation, enabling us to track not just our trucks, but also the shipments they are carrying.  This technology will provide our customers with the ability to track their shipments while in route.  It also assists in the important pre-planning and routing of LTL shipments  -  helping us to make our LTL operation more productive and more responsive to our customer needs."

-16-

Inc., to provide scanners that can transmit "mileage reports, bills of lading and other critical information." (¶20)  Qualcomm markets its service to help "transportation companies close the loop on paperwork associated with pick-ups and deliveries.  This end-to-end service enables drivers to scan and transmit important documents from the cab of their truck." (¶21, quoting from Exhibit E)  Scanned documents are transmitted using a Qualcomm portal, giving "access to a suite of web-based fleet management services, including satellite mapping.  The services portal leverages web services and XML-based standards to securely deliver data that can be integrated to your enterprise systems." (¶24)  In-cab scanning improves back office efficiency and "speeds up the billing cycle for faster payment." (¶25)  Indexed documents "can be automatically populated onto key back-end processes, eliminating the need to re-key information and enabling faster dispatching of workloads and assignment of drivers." (¶26, quoting from Exhibit C)

Qualcomm also offers a Mobile Computing Platform (MCP) that optimizes transportation operations.  The MCP 100 series includes truck location data, geo-fencing, in-cab navigation, content delivery, automated arrival and departure and critical event reporting.  (¶37)  The MCP 200 is an "end-to-end solution that enables transportation companies to transform the cab into a mobile operations center and fleets into a network of terminals." (¶38, quoting from Exhibit H) The MCP 100 and 200 series provide "Circle of Service Workflow" which "integrates with dispatch systems to drive operational efficiency for leading business worldwide.  By automating functions such as load assignments, event triggers, and work process forms, Circle of Service Workflow helps to lower operational costs, reduce errors made by manual entry, and improve on-time fulfillment across entire fleets." (¶43, quoting from Exhibit F)  FedEx Custom Critical

-17-

A866

publicly announced its adoption of the MCP 200 series, to integrate the system with its back office operations.  (¶44)

OmniTRACS is another Qualcomm platform that provides a two-way satellite link permitting rapid location of and contact with trucks, which helps "increase the productivity of support teams by streamlining their communications, tracking, and dispatch."  (¶52, quoting from  Exhibit J)   OmniTRACS can include automated arrival and departure information, and easily integrates with back office systems and third-party fleet management software.  It will support "selected third-party scanners and signature-capture devices to help sidestep the errors and delays of paper-based systems."  (¶55, quoting from Exhibit K)

Cargo Transporters, a truckload dry van freight company, uses Qualcomm's mobile computers in its fleet.  In December 2009, it announced it was testing Qualcomm's in-cab scanning solution, which permits scanning and transfer of documents via wi-fi systems.  Cargo stated that Qualcomm's system "... allows us to provide our customers with up to the minute information regarding the status of their shipments. Use of these systems from Qualcomm help us achieve complete customer satisfaction with our services."  (¶68, quoting from Exhibit N) Based upon these statements, R&L alleges that a reasonable inference arises that Qualcomm actively induced Cargo Transporters to directly infringe the patent by use of in-cab scanning to transmit bills of lading from the cab to the back office.  (¶69)   Another reasonable inference is that Qualcomm is contributing to Cargo's infringement by selling in-cab scanning knowing that it is especially made or especially adapted for infringing use by Cargo.  (¶70)

Count I (¶¶71-102) alleges contributory infringement, and Count II (¶¶103-156) alleges active inducement to infringe.  Qualcomm was aware of R&L's patent at least by June 2009

when R&L served its complaint, but Qualcomm continues to market its products and services.

Intermec Complaint (Doc. 126).

Intermec designs rugged, reliable and versatile equipment that permits efficient use of automated information and data capture, and mobile computing systems.  Its products serve a variety of industries, including retail, healthcare, industrial, consumer and transportation. (¶¶11-12)  Intermec advertises that its "mobile computers, RFID systems, and barcode scanners and imagers deliver real-time information exactly where it's needed so companies have complete and timely visibility of their goods at all times."  (¶14, quoting from Exhibit C)  Its products include fixed vehicle computers, the CV30 and CV60, which deliver real-time wireless supply chain management capabilities.  The CV60 is a vehicle mount computer that  "puts wireless supply chain management right where the data is - at the dock, on the warehouse floor, in the trailer or in the yard...".  (¶21, quoting from Exhibit F)

Intermec's Wireless mobile scanners, such as the SR61B,  pair with the fix-mount computers, so that "multiple people [can] scan items for inventory management, picking, shipping and receiving, cross-docking, work-in-process, tool crib, and pallet tracking, all with ease." (¶27, quoting from Exhibit H)   The SR61B scanner has multiple scan options including reading barcodes, and utilizing "image capture for proof of delivery and point of service applications."  (¶28, quoting from Exhibit H)

Intermec offers its Transportation and Logistics Solutions to the transportation and trucking industry to improve performance and increase workflow.  Real-time information availability "means faster invoicing, more accurate route planning, scheduling and dispatching and less time in the cab for drivers."  (¶29, quoting from Exhibit I)   Intermec's Solutions

provide services that include pick up and delivery options that "improve load and route planning, eliminate shipment issues, streamline the dispatcher and driver relationship with real-time wireless communications." (¶30, quoting from Exhibit J)  The automated pickup/delivery system "allows drivers to scan tracking numbers for verification, plus collect signatures on a handheld mobile computer.  That information can then be date/time and location stamped and sent instantaneously via wide area wireless network." (¶31)  Its applications include "dispatch/route optimization; asset tracking and optimized utilization; load management; pickup and delivery status; current location and history (bread crumb trail); driver automation and productivity; overage, shortage or damage management; inventory control/mobile inventory; value added services; regulatory and customer compliance; and compliance labeling." (¶32, quoting from Exhibit J)

Another Intermec service, In-Transit Visibility, permits drivers to "record deliveries, maintain a running status of delivery activity and communicate that information to their back office systems in real time." (¶33, quoting from Exhibit K)  Using Intermec's complete line of products, including the wireless scanners, these "asset tracking solutions can be integrated into existing systems or installed as part of a total supply chain solution." (¶34)  Intermec provides an illustration in its product brochure, demonstrating the communication of information in real-time to the trucking customer's back office by using its products:

A869



(¶36, illustration from Exhibit I)

Intermec's Cross Dock and Logistics solutions "integrate dock workers and freight management systems, allowing companies to significantly reduce the number of times operators handle the shipments."  (¶38, quoting Exhibit L)  Its systems "completely automate the crossdocking process, eliminating the need for manual, error-prone processes."  (¶39)  These applications can be used for "asset tracking/trailer tracking; compliance labeling; customer

-21-

A870

compliance; load management; overage/shortage/damage documentation and management; weight and inspection (100% of shipments); asset utilization; cross dock supervision; labor productivity; loading/unloading; value added service; and yard management."  (¶40, quoting from Exhibit L)

R&L alleges that all of these statements give rise to reasonable inferences that Intermec is actively encouraging its trucking customers to infringe, and that Intermec is contributing to that infringement by selling its products to those direct infringers.  R&L does not identify any Intermec customer that is allegedly infringing its patent.  Count I alleges Intermec is contributing to infringement, and Count II alleges that Intermec is inducing infringement by its unidentified trucking customers.

                                        ***

As noted previously, R&L alleges in each of its complaints several series of reasonable inferences arising from the facts and representations about Defendants' products and services. For example, R&L alleges the reasonable inferences arising from DriverTech's product descriptions are:

  - that its trucking customers use DriverTech's product's wireless functions;

  - that they use the product "in-cab" (in a truck);

  - that they use the product to "capture critical transportation documents, such as bills of lading;"

  - that they wirelessly transmit bills of lading in order to "improve performance and boost profitability" (as DriverTech's publications advertise);  and

  - that DriverTech's customers wirelessly transmit bill of lading information to a remote processing facility to "improve performance and boost profitability" by preparing advance loading manifests from the scanned bills of lading. (¶¶17-21)

                                        -22-

R&L alleges that DriverTech's statements, together with these "reasonable inferences," plausibly establish R&L's claim that DriverTech is actively inducing and contributing to infringement by its customers.  (¶¶22-23)

Similarly, in the PeopleNet complaint, R&L alleges that the facts in Paragraphs 9-16 about PeopleNet's products give rise to the following series of reasonable inferences:

- that PeopleNet's customers use the g3's wireless functions;

- they use the g3 "in-cab;"

- they use the g3 to "capture bill-of-lading information;"

- they use the g3 to wirelessly transmit bill-of-lading information to achieve what PeopleNet touts as "improved service and financial results;" and, therefore,

- they transmit the bill-of-lading information to a remote processing facility to achieve the promised  "improved service and financial results" by preparing loading manifests from the scanned and transmitted bills-of-lading.  (¶¶17-21)

The same pattern  -  facts about the products, followed by a similar set of "reasonable inferences" that the products are used to perform some steps of the method, and ultimately that Defendants are thereby inducing infringement - appears in each of R&L's complaints.  Each of R&L's amended pleadings also includes a claim for declaratory and injunctive relief under 28 U.S.C. §§2201 and 2202, alleging that a justiciable controversy exists between the parties over whether or not the Defendants are infringing or have infringed R&L's patent.

Defendants' Motions to Dismiss.   The six moving Defendants filed a joint motion, accompanied by individual submissions responding to the specific allegations against each of them.  (Doc. 142, Exhibits 1 through 7)   They jointly argue that R&L has realleged "offer for

sale" liability that this Court concluded was insufficient in its order dismissing R&L's original complaints. They contend that R&L has not plausibly alleged that any of their customers are directly infringing the patent. Without a factually-supported allegation that an entity is practicing each and every step of the method, the claims for indirect infringement must be dismissed. While R&L has identified several customers that use Defendants' products (in-cab scanners, wireless transmission networks, and so forth), R&L has not specifically alleged that these customers are actually infringing its patent, and its "reasonable inference" that direct infringement has occurred is not reasonable. Defendants further argue that all of Defendants' accused products have substantial, non-infringing uses that are clearly documented by R&L's own allegations, and by the product brochures and documents attached to R&L's complaints. R&L's allegations of "reasonable inferences" that the products lack such uses are belied by its own allegations. Moreover, R&L has not alleged facts to plausibly suggest that any of the Defendants have a specific intent to induce infringement by anyone, including any of their customers who are using their products. Defendants identify what they contend are serious deficiencies in R&L's "reasonable" inferences, suggesting that R&L simply repackaged its previous "information and belief" allegations into "reasonable inferences" which Defendants argue are unreasonable and need not be accepted by the Court.

## STANDARD OF REVIEW

As noted in the Court's previous dismissal order, a complaint will survive a Rule 12 challenge if its well-pleaded factual allegations are "... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550

-24-

U.S.544 (2007).  <u>Twombly</u> retired the permissive "no-set-of-facts" pleading standard under Rule 8, as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), because literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges.

The <u>Twombly</u> court cautioned that the decision should not be interpreted as imposing a "probability requirement" or a "heightened pleading standard."  550 U.S. at 594 n. 14.  A well-pleaded complaint must be permitted to proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely."  <u>Id</u>. at 556 (internal quotations omitted).

In <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), the Court applied <u>Twombly</u> to hold that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is **plausible** on its face.  Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct.  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> at 1949, quoting <u>Twombly</u>, 550 U.S. at 556-557.

### DISCUSSION

In dismissing R&L's original claims, the Court held that R&L must plead specific facts plausibly establishing that direct infringement has occurred or is occurring in order to proceed on its indirect infringement claims. Direct infringement of a method patent requires evidence that some entity is performing each and every step of the method.  An "offer to sell" a product, without any factual allegations that the product was or is actually being used by someone to practice the patented method, is insufficient.

-25-

A874

R&L readily admits that its amended complaint against Intermec does not identify any entity that is using an Intermec product to directly infringe its patent.  Intermec argues this deficiency alone requires dismissal of R&L's claims.  The other Defendants attack R&L for repleading offer-to-sell liability claims, which R&L defends out of a reasoned fear of waiving its appellate rights.  Defendants also argue that R&L has not plausibly alleged that any of their identified customers are actually infringing its patent by performing each step of the method.

R&L argues that, despite its inability to identify a direct infringer for Intermec and the Defendants' attacks, its "reasonable inferences" that Defendants' customers are infringing the patent are sufficient, as they are based upon Defendants' own advertising and touting of their products to trucking customers.  R&L contends that Defendants' pleading standard  would require R&L to **prove** its case in its complaints in order to avoid dismissal.  Twombly and Iqbal do not require that level of factual detail nor impose a probability requirement.  R&L notes that an "inference" is a  "deduction or conclusion that reason and common sense lead one to draw from facts established by evidence" (citing Fed. Jury Prac. & Inst. §104.20).  An inference may arise from circumstantial as well as direct evidence, and the Court must construe all reasonable inferences in R&L's favor.

There is no question that Rule 12 requires this Court to construe the well-pleaded facts and **reasonable** inferences arising from those facts in R&L's favor.  But before the Supreme Court's decisions in Twombly and Iqbal, review of a Rule 12(b)(6) motion did not require the court to indulge any and all "inferences" in favor of the non-moving party.  As noted in Wright and Miller, the district courts have employed various phrases to describe the types of allegations that need not be accepted as true.  These phrases include "legal conclusions, unsupported

-26-

conclusions, unwarranted inferences, unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations."[4]  This Court is not bound by R&L's argument that all of its alleged inferences are "reasonable."

With regard to Intermec, the Court adheres to its prior conclusion that R&L must allege "specific facts plausibly establishing that direct infringement of the '078 patent has occurred, i.e., that a third party has actually performed each step of the patented method."  (Doc. 113 at p. 13) Those facts are missing from the amended complaint against Intermec, and on that basis alone Intermec's motion to dismiss should be granted.

With regard to the other five Defendants, the issue is whether R&L's inferences of direct infringement, and of the inferences of Defendants' inducement and contributory infringement, are **reasonable**.

<u>Direct Infringement</u>

R&L has identified five companies that it infers are directly infringing its patent. Interstate Distributor, a customer of DriverTech, announced that it was integrating DriverTech's in-cab scanning into its trucks.  DriverTech touted several benefits Interstate achieves from in-cab scanning, cited in Paragraphs 59 and 60 of the DriverTech complaint (and quoted <u>infra</u> at pp. 5-6).  From those claimed benefits, R&L infers Interstate is performing each step of the claimed method.  Cargo Transporters uses Qualcomm's mobile computing systems and in-cab scanning in order to "stay in constant communication with our drivers.  In turn, this allows us to provide our customers with up to the minute information regarding the status of their shipments.  Use of these systems from Qualcomm help us achieve complete customer satisfaction with our

---

[4] Wright & Miller, Federal Practice & Procedure 1357 (3rd Ed. 2004).

-27-

services."  (Qualcomm complaint ¶68)

DriverTech and Qualcomm argue that these inferences of direct infringement are unreasonable, because the touted benefits do not factually suggest that either company is performing the claimed method.  The Court must agree.  None of Interstate's identified uses of in-cab scanning (e.g., to speed up billing, eliminate wait time, provide driver convenience, online safety training, etc.) mention or suggest that Interstate is creating "advance loading manifests" from bills of lading information scanned from the truck cab.  Cargo's stated desire to "stay in constant communication with drivers" and to keep customers informed on shipment status, does not reasonably suggest that Cargo is performing the entire claimed method.  Moreover, Defendants note that neither Cargo nor Interstate is alleged to be an LTL carrier.  The fact that these customers are using in-cab scanning or wirelessly transmitting data does not support R&L's inference that they are doing so in order to create advance loading manifests, or R&L's further inference that the companies are performing each and every step of the claimed method.

Berry & Smith bought PeopleNet's truck-mounted computers equipped with Microdea's in-cab scanning capabilities.  R&L relies on Berry & Smith press releases to support its infringement inferences against Microdea (Doc. 122, ¶¶40-46) and against PeopleNet (Doc. 125, ¶¶49-53).  Those press releases state that Berry & Smith was looking to use in-cab scanners to achieve "improve[d] driver efficiency by expediting document flow," and to transmit critical documents including bills of lading, signed delivery receipts, cargo manifests, and billing orders.  Berry & Smith's goal was to maintain better communication with drivers, and more "quickly and surely dispatch loads and assign drivers."   Microdea and PeopleNet argue that these goals and product uses do not support the inference that Berry & Smith is scanning bill of lading

-28-

information from the truck to a remote processing center where, (1) prior to the package being removed from the truck, (2) an advance loading manifest is prepared (3) which includes the package (4) for further transport on another truck.

Pitt Ohio Express, an LTL carrier, uses PeopleNet's g3 computers in its trucks. The allegations against PeopleNet are largely based on PeopleNet's October 2005 "white paper" (Doc. 125, Exhibit J) concerning its Pitt Ohio project. The white paper discusses Pitt Ohio's adoption and use of on-board computing to, inter alia, "improve load planning" by determining the number of trucks waiting for dock doors...". Drivers can send "load information - PRO number, pieces, weight, destination zip, and any miscellaneous remarks - at the time of loading. This information is used to populate the dispatch assistant program for linehaul planning purposes." Pitt Ohio can also print manifests "prior to delivery arrival thereby speeding check-in and unloading process." (¶61) R&L argues that all of these statements directly describe the patented method, the goal of which is faster and more efficient loading and unloading of trucks (e.g., "improved load planning"). Black's Law Dictionary (6th Ed.) defines an "inference" as a "process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts...". While the ultimate goals Pitt Ohio wished to achieve may be goals that R&L is able to achieve through its patented method, it is not reasonable to infer that Pitt Ohio could achieve those goals **only** by infringing the patent while using PeopleNet's computers.

Moreover, PeopleNet's 2005 white paper does not refer to any use of a "portable document scanner to scan an image of the documentation data" as the patent specifically claims. R&L implicitly recognizes this because it ties the 2005 white paper to an allegation about a

A878

February 2009 representation by PeopleNet, that it worked with Microdea to provide "scanning capability to PeopleNet's g3 across certain of Pitt Ohio's fleet...".  (¶57)  R&L infers that because Pitt Ohio began using scanners in 2009, it must be using those scanners as a "portable document scanner to scan an image of the documentation data," and thus infringing the patent.

Frozen Food Express ("FFE") is also a customer of PeopleNet. PeopleNet partnered with ACS to sell computers and in-cab scanning systems to FFE.  R&L cites FFE's 2008 annual report, and an April 2010 PeopleNet press release, announcing product sales to FFE.  (ACS complaint at ¶¶62-63; PeopleNet complaint at ¶¶66-67)  The quoted statements from the 2008 annual report are taken from the "Chairman's Letter" to stockholders, and states that the company is "**in the process** of implementing a computer-based system that will revolutionize our less-than-truckload (LTL) operation..." (emphasis added).  No mention is made of PeopleNet, ACS, or of any particular technology or computer-based system.  Nothing in this forward-looking statement gives rise to any inference that FFE was or would be infringing the patent.  The April 2010 PeopleNet press release states that FFE ordered PeopleNet's computers with in-cab scanning from ACS. R&L contends that FFE's 2008 announced goal of adopting technology to "revolutionize our LTL operation" combined with its 2010 decision to utilize computers and scanners, support a reasonable inference that FFE is now infringing the patent. As with the other identified companies, the Court cannot accept as reasonable R&L's inference that because a company wants to increase efficiency and profits or improve customer service, and that company is using products that are capable of performing a step of the claimed method, the company is infringing the patent by performing every step.

R&L argues that it has sued Interstate, Pitt Ohio and Berry & Smith for direct

-30-

infringement, and those companies have not moved to dismiss its complaints under Rule 12.  A defendant may have a myriad of economic or strategic reasons not to do so, and that decision by another party is not binding nor particularly germane to reviewing R&L's allegations against the moving Defendants.

The Court finds that R&L's inferences that any of these five companies is directly infringing its patent are at best tenuous, and are not reasonable for purposes of reviewing Defendants' motions.  Assuming, however, that a more generous standard of indulging such ultimate inferences should be applied after Twombly/Iqbal, the Court will review Defendants' challenges to R&L's indirect infringement claims.

Induced Infringement

A claim of inducement to infringe under 35 U.S.C. §271(b) requires a plaintiff to demonstrate "... that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.  The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent."  DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (internal quotations and citations omitted).  A defendant's "...mere  knowledge of possible infringement by others does not amount to inducement; **specific intent and action to induce infringement** must be proven."  Id. at 1305 (internal citations and quotations omitted; emphasis added).

To prove a specific intent to induce, a plaintiff must come forward with evidence of "active steps ... taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, [or] show an affirmative intent that the product be

used to infringe ...". Such evidence "overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." Id. In Golden Blount v. Peterson, 438 F.3d 1354 (Fed. Cir. 2006), for example, defendant separately sold two products, a primary and a secondary gas log fireplace burner. Defendant's instruction sheet packaged with the secondary burner specifically instructed end users how to configure the two burners into an infringing assembly. The instruction sheet was included with the product after Defendant learned about plaintiff's patent, and directed customers how to assemble the burners in the manner expressly claimed in that patent. This evidence was sufficient to support a claim of intent to induce infringement. See also, Metro-Goldwin-Mayer Studios v. Grokster, 545 U.S. 913 (2005), involving copyright infringement claim but applying analogous patent law principles to a claim of intent to infringe plaintiffs' copyrights. After Napster (the now infamous peer-to-peer file sharing service) was shut down by court order, Grokster and Streamcast specifically targeted their free download software programs "to former Napster users, [who were] deprived of a mechanism to copy and distribute what were overwhelmingly infringing files...." These explicit efforts to distribute software to former Napster users "indicate a principal, if not exclusive, intent on the part of each to bring about infringement." Id. at 939.

R&L argues here that its factual allegations clearly support a reasonable inference that all of the Defendants are actively inducing infringement by trucking company customers, just as Grokster was specifically targeting former Napster users. PeopleNet advertises its on-board computer's capability to capture "bill of lading information" for "improved service and financial results; " PeopleNet tells its customers that a primary use for this system is "increased dispatcher effectiveness" by creating "automated manifests integrated with the company's dispatch

-32-

A881

operations." In the LTL business, R&L argues these statements effectively describe the method claimed in the '078 patent: scanning bill of lading information from a truck while en route, transmitting that information to a remote processing center, where an advance loading manifest that includes the package covered by that bill of lading is created, all of which "streamlines dispatch operations" at an LTL terminal. PeopleNet also touts McLeod software's compatibility with its computers to process that scanned information. According to R&L, PeopleNet is therefore selling the g3 computer with specific software adaptations for the LTL trucking industry. R&L contends that it makes no difference that the phrase "advance loading manifest" is not used nor alluded to by PeopleNet in any of its advertising, because PeopleNet's description of what its products can do when joined with McLeod's software or Microdea's In-Cab Scanning, or with ACS' TripPak products, is encouraging its customers to perform the claimed method in order to create an "advance loading manifest."

Similarly, Qualcomm promotes its in-cab scanning service as allowing "a driver to quickly scan documents and move on to his or her next stop." Qualcomm informs customers that "In-Cab Scanning service also helps improve back-office productivity. Indexed documents can be automatically populated into key back-end processes, eliminating the need to re-key information and enabling faster dispatching of workloads and assignment of drivers." (Doc. 123, Exhibit C, Qualcomm's October 3, 2008 press release.) "Dispatching workloads" and "assigning drivers," according to R&L, is just another way to describe the preparation of an "advance loading manifest" - it allows the company to "assign" the "[work]load" (e.g., the "package") to the proper outbound truck ("assigning the driver"). Qualcomm also touts its MCP 200 computer as "an end-to-end solution that enables transportation companies to transform the

-33-

cab into a mobile operations center and fleets into a network of terminals.  Working with your

drivers becomes transparent and efficient giving you increased productivity, better customer

service, and more loaded miles."  (Doc. 123, Exhibit H, Qualcomm's product brochure.)  These

statements, according to R&L, amount to inducement because its patent achieves an "end-to-end

solution" that can "transform the cab into a mobile operations center" resulting in "increased

productivity, better customer service, and more loaded miles."

 Based on these statements, and the product descriptions of the other Defendants, R&L

insists whether any particular statement, advertisement or product brochure demonstrates a

specific intent to induce infringement cannot be determined under Rule 12, as it would require

the Court to construe R&L's reasonable inferences against R&L.  R&L notes that leading

opinions from inducement cases involve appellate review of summary judgment orders or trial

verdicts, not Rule 12 orders.  See, e.g., i4i LP v. Microsoft Corp, 598 F.3d 831 (Fed. Cir. 2010)

(review of jury verdict); MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp., 420 F.3d

1369 (Fed. Cir. 2005) (review of summary judgment); Vita-Mix Corp. v. Basic Holding, Inc.,

581 F.3d 1317 (Fed. Cir. 2009)  (review of summary judgment).  While that is true, it is also the

case that both  Twombly and Iqbal involved intentional misconduct claims (in Twombly, intent

to engage in price-fixing, and in Iqbal, a Bivens claim alleging willful and malicious intent to

discriminate based on national origin).  The Supreme Court clearly held that claims requiring

pleading and proof of intentional conduct should be dismissed if the complaint fails to plead

facts making the claim facially plausible.  Subsequent applications of Twombly and Iqbal make

this clear.  See, e.g., Jones v. Bull Moose Tube Co., 2010 U.S. Dist. LEXIS 42641 (N.D. Ill.,

April 26, 2010), dismissing plaintiff's hybrid Section 301 claim against his employer and union

because facts alleged did not support a plausible claim of discriminatory or bad faith conduct.

See also <u>Bailey Lumber & Supply Co. v. Georgia-Pacific Co.</u>, 2010 U.S. Dist. LEXIS 17088 at

*10 (S.D. Miss., February 25, 2010), dismissing price-fixing conspiracy claim when facts did not

permit a reasonable inference of "more than the mere possibility of misconduct" by the

defendant.  This Court sees no basis upon which to exclude induced infringement claims from

the <u>Twombly/Iqbal</u> requirements.

      R&L also argues that its facts and inferences exceed <u>Iqbal</u>'s plausibility standard, based

on its extensive quotations from Defendants' comprehensive public websites, and their detailed

product descriptions specifically geared to trucking customers.  (See, e.g., PeopleNet complaint

at ¶¶148-152; Qualcomm complaint at ¶¶104-108; Microdea complaint at ¶¶ 104-107.)  R&L

asserts a reasonable inference arises from these activities that Defendants intend to encourage

customers to buy and use their products (e.g., PeopleNet complaint at ¶153; Qualcomm

complaint at ¶109; Microdea complaint at ¶108), an inference the Court readily accepts.  But

then, R&L goes further and infers from that intent that Defendants also have acted with the

intent  "to encourage customers to practice the process taught in the '078 patent."  (PeopleNet

¶154; Qualcomm ¶ 110; Microdea ¶109)  The pattern repeats in each complaint with respect to

Defendants' press releases (PeopleNet ¶¶156-160; Qualcomm ¶¶112-115; Microdea ¶¶111-114

), participation in various trade and industry events (PeopleNet ¶¶164-172; Qualcomm ¶¶119-

123; Microdea ¶¶118-120), and the various "strategic partnerships" (PeopleNet ¶¶176-185;

Qualcomm ¶¶127-132; Microdea ¶¶124-127).  These are followed by inferences that Defendants

are encouraging customers to buy their products, followed by the ultimate inference of intent to

induce infringement.  These ultimate inferences require what the Court believes is an implausible

-35-

A884

and unreasonable deduction that by touting a product's ability to "improve efficiency," giving customers an "end-to-end solution" that will "improve their bottom line," or a product that will "increase productivity," Defendants are intending to induce those customers to perform each step of the claimed method.  These assertions that are akin to puffery are not enough to plausibly suggest that Defendants are actively inducing or instructing anyone on how to infringe the claimed method.   And participation in trade and industry conferences do not give rise to a **reasonable** inference of intent to engage in misconduct.  See, e.g., Tam Travel, Inc. v. Delta Airlines, 583 F.3d 896, 910-911 (6th Cir. 2009), rejecting argument that defendants' participation in regular trade association meetings during a period of alleged price fixing plausibly suggested an illegal agreement, because their presence at trade meetings "is more likely explained by their lawful, free-market behavior." (internal citation omitted)

The same framework and analysis applies to the rest of R&L's complaints.   DriverTech maintains a comprehensive website (DriverTech complaint ¶¶122-126), advertises its products and partnership by issuing press releases and publishing in trade magazines (¶¶130-132), participates in industry and trade events (¶¶136-138), and partners with other corporations such as McLeod Software "who share [DriverTech's] vision, dedication and commitment to customers."  (¶¶140-143)   All of these activities give rise to the reasonable inference that DriverTech intends to promote and cross-sell its products and services.  But those activities, combined with the intent to market and sell products, do not support the ultimate inference that DriverTech is actively inducing anyone to practice all the steps of the patent.  The same result applies to ACS, who is allegedly engaging in the same kinds of conduct and activities.  Even if R&L had identified an Intermec customer who purchased an Intermec accused product, the

Court would reach the same conclusion regarding the Intermec complaint.

After fully considering R&L's arguments and pleadings, the Court concludes that R&L's factual allegations do not plausibly allege a claim of active inducement to infringe against any of the moving Defendants.

Contributory Infringement.

35 U.S.C. §271(c) defines the elements of a claim for contributory infringement:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

The Court previously held that R&L must allege facts supporting each element of this claim, in particular that the accused products are **not** staple articles suitable for substantial noninfringing uses. Defendants argue that R&L's amended complaints fail to satisfy these requirements. Granting that the products may be used to perform a step of the patented method (e.g., in-cab scanners are capable of scanning "an image of the documentation data for the package"), Defendants argue that their products are not especially made nor adapted for infringing use. This is made clear by the obvious non-infringing uses described in R&L's own pleadings.

Contributory infringement is generally intended to ensure that a product maker does not escape all liability because its infringing product is itself incorporated into another product that does not infringe because it has a substantial non-infringing use. See, e.g., Lucent Technologies

v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009), cert. den. sub nom. Microsoft Corp. v. Lucent Technologies, 2010 U.S. LEXIS 4203 (May 24, 2010), affirming a verdict that Microsoft contributorily infringed a method patent by selling its Outlook program incorporating a date-picker tool.  It was not disputed that the tool, if sold by itself, was suitable **only** to infringe the patent.  The inclusion of that tool within the Outlook program, which clearly had substantial non-infringing uses, did not insulate Microsoft from contributory infringement liability. Microsoft argued that the court should focus on the Outlook program as a whole as the product Microsoft sold, and not focus only on the incorporated date-picker tool.  The court rejected this argument by posing an example:

> Consider a software program comprising five - and only five - features.  Each of the five features is separately and distinctly patented using a method claim.  That is, the first feature infringes a method claim in a first patent, the second feature infringes a method claim in a second patent, and so forth.  Assume also that the company selling the software doesn't provide specific instructions on how to use the five features, thus taking potential liability outside the realm of Section 271(b).  In this scenario, under Microsoft's position, the software seller can never be liable for contributory infringement of any one of the method patents because the entire software program is capable of substantial noninfringing use.  This seems both untenable as a practical outcome and inconsistent with both the statute and governing precedent.

Id. at 1320.[5]  The court also noted that an infringer cannot escape liability "merely by embedding [the infringing apparatus] in a larger product with some additional, separable feature before importing and selling it."  Id., quoting from Ricoh Co., Ltd. v. Quanta Computer Inc., 550 F.3d 1325, 1337 (Fed. Cir. 2008).

Here, R&L argues that the accused "products" cannot be narrowly viewed as scanners,

---

[5] The court's statement concerning Section 271(b) liability as premised on providing "specific instructions" also supports the Court's conclusions with respect to R&L's active inducement claims.

A887

computers, or software programs, all of which R&L concedes have non-infringing uses. Rather, R&L focuses on Defendants' partnerships and pairing of their products (e.g., in-cab scanners combined with wireless transmission capability platformed on a truck-mounted computer). It is the combination, and not the individual pieces of the combination, that must be the focus of the substantial non-infringing use inquiry. R&L relies on Hodosh v. Block Drug Co., 833 F.2d 1575 (Fed. Cir. 1987), which involved a method patent for desensitizing teeth using a composition containing an alkali metal nitrate. Defendant sold "Sensodyne" toothpaste containing potassium nitrate (an alkali metal nitrate). The toothpaste was not patented, and defendant argued that the sale of the toothpaste was not contributory infringement because potassium nitrate had many substantial non-infringing uses. The Federal Circuit rejected that argument because Defendant did not sell potassium nitrate, it sold the toothpaste that was marketed for and suitable **only** to infringe the patent when used by Defendant's customers to brush their sensitive teeth. R&L compares the potassium nitrate in the toothpaste to DriverTech's on-board computers, to Microdea's Synergize OnRamp scanning service, or ACS' TripPak software and hardware solutions, and argues that Hodosh precludes dismissal of its claims.

R&L's analogy does not hold. The accused product sold by the defendant in Hodosh - the toothpaste - was especially designed and adapted to infringe and **only** to infringe, as it was clearly intended for the specific use of desensitizing teeth by practicing the patent. Here, the combined products marketed by the Defendants, such as PeopleNet's computers partnered with an ACS TripPak scanner and using McLeod integrated management software, are not especially made nor especially adapted for use by any customer for the sole purpose of practicing the claimed method. This is made abundantly clear by R&L's factual allegations concerning the

-39-

A888

myriad uses that are advertised for the products. DriverTech tells customers that its system is

capable of providing "faster cash cycles by enabling a 'quicker revenue return with real-time

transmission of [proof of **delivery**] documents.' "  (Doc. 121, ¶26; emphasis added)  Tracking

truck locations, monitoring truck conditions, or obtaining better quality document images than

those obtained by using truck-stop fax machines are further examples of the general uses for the

products, uses that belie R&L's allegations that the products are "especially adapted for use"

only to infringe.

Recent cases applying <u>Hodosh</u> also demonstrate that R&L's reliance on that case is

misplaced.  <u>Ricoh Co., Ltd. v. Quanta Computer Inc.</u>, 550 F.3d 1325, 1337 (Fed. Cir. 2008)

involved two method patents directed at aspects of recordable optical discs and disc drives, one

of which concerned data writing to discs over multiple sessions.  Quanta manufactured optical

disc drives that Ricoh alleged both directly and indirectly infringed its patents.  The Federal

Circuit affirmed a summary judgment granted to Quanta on Ricoh's direct infringement claims,

finding that a "... party that sells or offers to sell software containing instructions to perform a

patented method... " does not directly infringe the patent.  The Court reversed the summary

judgment on contributory infringement, noting that Ricoh had submitted evidence that Quanta's

disc drives contained "some distinct and separate components used **only** to perform the allegedly

infringing write methods."  550 F.3d at 1336 (emphasis added).  Quanta would be liable if it sold

a "... bare component (say, a microcontroller containing routines to execute the patented

methods) that had no use other than practicing the methods of the [patents in issue].  Such a

component, specifically adapted for use in the patented process and with no substantial non-

infringing use, would plainly be 'good for nothing else' but infringement...".  <u>Id</u>. at 1337,

-40-

A889

quoting  Metro-Goldwin-Mayer Studios v. Grokster, 545 U.S. 913, 932 (2005).  Quanta could

not avoid contributory liability by embedding that infringing microcontroller into a larger

product like a disc drive or a notebook computer.  "If we were to hold otherwise, then so long as

the resulting product, as a whole, has a substantial non-infringing use **based solely on the**

**additional feature**, no contributory liability would exist despite the presence of a component

that, if sold alone, would plainly incur liability."  Id. (emphasis in original).  The court cited

Hodosh and noted that the proper focus must be on the product actually sold, rejecting the

argument that was also rejected in Hodosh that "an otherwise **infringing** product may

automatically escape liability merely because it contains a **noninfringing** staple ingredient."  Id.

at 1339 (emphasis in original).

Defendants' products are not like Quanta's optical disc drives that contained a separable

infringing component.  Nor are they comparable to Sensodyne toothpaste, whose **only** use was to

infringe the patent.  Rather, based on R&L's factual allegations, Defendants' accused products

are comparable to the VCRs that were at issue in Sony Corp. of America v. Universal City

Studios, Inc., 464 U.S. 417 (1984).  Those VCRs could be and likely were used to infringe

Sony's copyrights when home viewers used them to copy protected movies.  But the VCRs

could also be used to simply record uncopyrighted material or a televised program for viewing at

a later time.  As the court noted in Ricoh, "Critically, the same tuner and recording features of

the VCR would be employed for **either** the infringing or the noninfringing use. ... [The] VCRs

did not have recording components that could **only** be used to infringe and separable, distinct

playback components that did not infringe."  550 F.3d at 1339 (emphasis in original).  The same

observation applies to R&L's allegations about Defendants' products.  Assuming all of those

-41-

A890

allegations are true, those products - standing alone **and** in the various combinations R&L

identifies  - not only have non-infringing uses, but uses that are unquestionably substantial

within the meaning of Section 271(c).  DriverTech tells its customers that the DT4000 can

reduce a driver's "wait time" by letting the driver scan "proofs of delivery" which speeds up

invoicing and billing.  PeopleNet's g3 handheld options "allows for portable signature capture,

bar coding, paperless form completion, and digital photographs and turns the mobile device into

a multimedia clipboard.  This automation and faster process translates into improved service and

financial results." (Doc. 125 ¶16)  PeopleNet's "white paper" describing Pitt Ohio's use of

PeopleNet's products (Doc. 125 Exhibit J) plainly identifies Pitt Ohio's non-infringing uses such

as automating driver's logs, vehicle inspection reports, linehaul driver pay sheets, and automatic

fuel tax calculation.  Frozen Food includes PeopleNet's electronic onboard recorders in advance

of a pending government regulation that apparently will require such recorders.  Qualcomm

promotes in-cab scanning to "improve customer and driver satisfaction by reducing manual

errors associated with re-keying important information, such as trip and mileage reports, bills of

lading, time sheets, receipts and other critical customer information." (Doc. 123, ¶22)  Its

computers provide in-cab navigation, vehicle location data, content delivery service and critical

event reporting, as well as automated arrival and departure.  (¶37)

    R&L also argues that the question of whether any of these uses are "substantial" must be

determined by the ultimate fact-finder, and not by the Court on a Rule 12 motion.  A substantial

non-infringing use is one that is "not unusual, far-fetched, illusory, impractical, occasional,

aberrant, or experimental." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1327 (Fed.

Cir. 2009).  In that case, the accused blender came equipped with a 'stir stick' inserted in the top

that was useful to the blender's proper functioning when used in a non-infringing way.  The court held that the stir stick's use in that fashion was substantial, and affirmed the district court's summary judgment on contributory infringement.  The court distinguished Ricoh because the microcontroller involved in that case could not be used in any way other than to infringe, whereas defendant's stir stick had an obvious and substantial use that did not infringe.  Here, the accused products' uses specifically identified in R&L's pleadings are undoubtedly "substantial," as they cannot plausibly be called "far-fetched, illusory, impractical, occasional, aberrant or experimental."

R&L contends that even if a single product (a scanner, a wireless processor, or a software program) has a substantial non-infringing use, Defendants' strategic partnerships and cross-selling of their products are all especially designed and intended  to actively induce their customers to infringe.  This argument blurs the distinctions between  liability under Section 271(b) and under Section 271(c).  It is not the case, as R&L suggests, that Defendants can escape all indirect infringement liability "even if they knowingly adapt their products through combination and actively encourage their customers to practice the '078 patent" (Doc. 146, R&L's Response Memorandum at p. 33), simply by demonstrating a non-infringing use.  Section 271(b) forbids actively encouraging another's direct infringement, "such as advertising an infringing use or instructing how to engage in an infringing use, [or] show an affirmative intent that the product be used to infringe ..." .  DSU Med. Corp. v. JMS Co., 471 F.3d at 1305.  As discussed above, to plausibly allege a claim for active inducement, R&L must allege facts going "... beyond a product's characteristics or the knowledge that it may be put to infringing uses, and show statements or actions directed to promoting infringement."  Ricoh, 550 F.3d at 1341

-43-

A892

(quoting Grokster, 545 U.S. 913, 935 n. 10 (2005)).  The Court already concluded that R&L's allegations fail to meet this test.

R&L also argues that the question of whether a product use is substantial and non-infringing cannot be determined before claim construction.  R&L's factual allegations identifying the accused products' non-infringing uses do not implicate any disputed claim term that the Court can discern.  In the prior dismissal order, the Court agreed with R&L that the question of whether the patented method can be performed by one entity is properly reserved for claim construction.  But the existence of substantial non-infringing uses that are clearly revealed by R&L's allegations does not require construction of any disputed claim term that R&L has identified.

For these reasons, the Court concludes that based on R&L's factual allegations, R&L has not nudged its contributory infringement claims into the realm of the facially plausible, as Iqbal requires.

<u>R&L's Declaratory Judgment Claims</u>

The Declaratory Judgment Act, 28 U.S.C. §2201, grants jurisdiction to the district courts to "declare the rights and other legal relations of any interested party seeking such declaration...".  This Court is under no compulsion to exercise that jurisdiction, and has broad discretion to refrain from doing so.  Scottsdale Ins. Co. v. Flowers, 513 F.3d 546 (6th Cir. 2008) (internal citation omitted).  The Court is dismissing R&L's claims of indirect infringement against the six moving Defendants, mooting any justiciable controversy as to R&L's allegations and the Defendants' denials of infringing conduct.  Exercising jurisdiction over the declaratory judgment indirect infringement claims at this point would serve no useful purpose that the Court

-44-

A893

can discern.

## CONCLUSION

For all of the foregoing reasons, the Court grants the joint motions to dismiss R&L's

amended complaints and counterclaims filed by Affiliated Computer Services, Inc., DriverTech

LLC, Intermec Technologies Corp., Microdea, Inc., PeopleNet Communications Corp., and

Qualcomm, Inc.  (Doc. 142)  Those amended complaints and counterclaims, Docs. 121, 122,

123, 124, 125, and 126, are hereby dismissed with prejudice.

SO ORDERED.

Dated: July 15, 2010                        s/Sandra S. Beckwith
                                            Sandra S. Beckwith
                                            Senior United States District Judge

-45-

A894

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE:  Bill of Lading Transmission and Processing System Patent Litigation | ) ) ) | MDL Docket No. 1:09-md-2050 |
| _____ | ) ) | JUDGE BECKWITH |
| R+L CARRIERS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:10-cv-00090 |
| PITT OHIO EXPRESS, INC., | ) ) | |
| Defendant. | ) | |

_____

**DEFENDANT PITT OHIO EXPRESS, INC.'S**
**MOTION FOR CLAIM CONSTRUCTION WITH MEMORANDUM IN SUPPORT**

Pursuant to Pat L. R. 105.4 and this Court's Case Management Order (Doc. 203), Pitt Ohio Express, Inc. ("Pitt Ohio") respectfully moves that the court adopt its proposed claim constructions for the 10 terms of U.S. Patent No. 6,401,078 ("the '078 Patent") identified for construction by the Parties pursuant to Pat L. R. 105.2(d).  In accordance with L.R. 7.2, Pitt Ohio has contemporaneously filed its Memorandum in Support of Claim Construction Under Pat. L. R. 105.4.

A898

term "data transmission information," and it is unclear how R+L intends to differentiate such data from "said documentation data" as required in the claim. It is equally unclear how a "physical location" receives and processes the undefined "data transmission information."

By contrast, Pitt Ohio's construction is in accord with what R+L described as its invention: "The present invention has solved the problems described above and comprises broadly a system for transmitting bills of lading to a central facility so that billing and load planning may be accomplished while the freight is en route to a terminal." *Id.* at 2:48-52. That is, the central processing location is where the billing and load planning information is received and used. *Id.* 3:63-67.

Because R+L's construction raises more questions than it answers and the intrinsic record supports Pitt Ohio's proposed construction, the Court should adopt Pitt Ohio's construction.

### F.    Loading Manifest

| TERM | PITT OHIO CONSTRUCTION | R+L CONSTRUCTION |
|------|------------------------|------------------|
| Loading Manifest | Documents generated by load planning software that provide instructions to workers at a destination, informing the workers in advance that a particular package or item will need to be removed from a first and placed on a second truck for further shipment at a particular time to a particular destination. | The document(s) or instructions to workers at a destination, informing the workers that a particular "package" (as defined above) needs to be placed on a particular "transporting vehicle" (as defined above) for further shipment. |

The term "loading manifest" was added as part of the new matter. Specifically, the '078 Patent defined the term as follows:

> ***Advance loading manifests, are documents generated by the load planning software discussed above.*** These documents provide instructions to workers at a destination, informing the workers that

A922

> a particular package or item needs to be placed on a particular
> truck for further shipment at a particular time . . . .

7:48-53 (emphasis added). Thus, Pitt Ohio's proposed construction tracks same. By contrast, R+L's construction is contrary to the teaching of the '078 Patent. Indeed, its proposed construction – "document(s) or instructions" – is so broad that it would cover human speech. This is neither a reasonable read of the term nor supported by the intrinsic record.

Accordingly, the Court should adopt Pitt Ohio's proposed construction.

## II.   **CONCLUSION**

Pitt Ohio's proposed claim constructions are (1) fully supported by precedent and the intrinsic record, (2) helpful in clarifying actual disputes, and (3) consistent when applied to the same term in the same claim. Accordingly, the Court should adopt Pitt Ohio constructions for the reasons discussed above.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) |  |
| **IN RE:  Bill of Lading Transmission and** | ) | MDL Docket No. 1:09-md-2050 |
| **Processing System Patent Litigation** | ) |  |
|  | ) | JUDGE BECKWITH |
|  | ) |  |
|  | ) | ALL CASES |
| _____ | ) |  |

---

**R+L CARRIERS, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**
**PURSUANT TO LOCAL PATENT RULE 105.4(B)**

---

Anthony C. White          (0062146)
    *Trial Attorney*
O. Judson Scheaf, III      (0040285)
Philip B. Sineneng        (0083406)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101
Tel:    (614) 469-3200
Fax:    (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com

Megan D. Dortenzo        (0079047)
Troy S. Prince            (0077443)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Tel:    (216) 566-5500
Fax:    (216) 566-5800
Megan.Dortenzo@ThompsonHine.com
Troy.Prince@ThompsonHine.com

*Attorneys for Plaintiff R+L Carriers, Inc.*

A953

*The remote processing center can be located anywhere so long as it is remote from the truck*. Finally, as understood by a POSITA, the *remote processing center* could be operated by the trucking company or a third party without departing from the teachings of the specification and within normal operating procedures of a trucking company at the time of the patent. *See* Clair Report at p. 3, ¶ 28 (Dkt. No. 235-152, Page ID # 7095). It is understood that trucking companies are not typically vertically integrated and will outsource many functions to third parties, including the maintenance of wireless transmission capabilities.

**Proper construction of the term *Remote Processing Facility***, based entirely on the intrinsic evidence, namely the specification of the '078 Patent as read and understood by a POSITA means: *A physical location, other than the "transporting vehicle" (as defined above), that receives and processes data transmission information. This can be a trucking company location or a third-party location.*

### C. Proper Construction Of "Loading Manifest"

The proper construction of the term *loading manifest* as used in claims 1, 2 and 6 of the '078 Patent is:

> *The document(s) or instructions to workers at a destination, informing the workers that a particular "package" (as defined above) needs to be placed on a particular "transporting vehicle" (as defined above) for further shipment.*

Based upon the intrinsic evidence, namely the '078 Patent itself, the term *loading manifest* is directed toward the document that, "provides instructions to workers at a destination, informing the workers that a particular package or item needs to be placed on a particular truck for further shipment at a particular time." '078 Patent, col. 7, ll. 50-54 (Dkt. No. 235-2, Page ID # 6160). The term is used consistently throughout the '078 Patent and even during prosecution[2]

---

[2] *See, e.g.*, '078 Patent File Wrapper, p. 105 (Dkt. No. 235-4, Page ID # 6270).

14

A972

to describe the instructions that are provided or generated to provide instructions to workers who are unloading an incoming truck containing a *package* (as defined above) and loading an outgoing truck with that same package to reach its ultimate destination. *Id*. As understood by a POSITA, the instructions tell the persons who are handling the package carried by the transporting vehicle where to place the package for further transport. Clair Report at p. 4, ¶ 31 (Dkt. No. 235-15, Page ID # 7096).

*Proper construction of claim terms does not import limitations that are present in other parts of the claim*. Claim 1 plainly states, "prior to the package being removed from the transporting vehicle" the remote processing center utilizes the documentation to prepare a *loading manifest*. The temporal element is provided in the other portions of the claim language and duplication in the definition of the term *loading manifest* is plain error. Thus, the proper construction of the term *loading manifest* should not include temporal elements, such as providing information at a certain time, since those elements are present in other parts of claim 1.

**Proper construction of the term *Loading Manifest*** based entirely on the intrinsic evidence, namely the specification of the '078 Patent as read and understood by a POSITA means: *The document(s) or instructions to workers at a destination, informing the workers that a particular "package" (as defined above) needs to be placed on a particular "transporting vehicle" (as defined above) for further shipment.* It does not include other limitations present in the claim language surrounding the term.

### D. Proper Construction Of The Terms Related To "Data": "Documentation Data," "Shipping Documentation Data," and "Shipping Details"

#### 1. Overview Of Types Of Data

Three of the '078 Patent's terms pertain to data or information used in the '078 patented process: *documentation data*, *shipping documentation data*, and *shipping details*. Each of these

A973

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| **IN RE: Bill of Lading Transmission and** | ) | MDL Docket No. 1:09-md-2050 |
| **Processing System Patent Litigation** | ) | |
| | ) | JUDGE BECKWITH |
| | ) | |
| _____ | ) | ALL CASES |
| | ) | |

_____

**R+L CARRIERS, INC.'S RESPONSE TO PITT OHIO EXPRESS, INC.'S**
**OPENING CLAIM CONSTRUCTION BRIEF**
**PURSUANT TO LOCAL PATENT RULE 105.4(B)**
_____

## I. THE '078 PATENTED TECHNOLOGY.

The proposed claim construction, indeed the sheer number of terms that are 'disputed' by Pitt Ohio Express, Inc., ("Pitt Ohio"), Pitt Ohio's attempt to incorporate other limitations from the patent into the disputed terms, and Pitt Ohio's improper reliance on extrinsic evidence and unsupported 'facts' that are wholly unrelated to the proper interpretation of the claims of U.S. Patent No. 6,401,078 ("the '078 Patent") belie Pitt Ohio's desire to avoid infringement by befuddling and confusing the trier of fact. Pitt Ohio seems to conveniently forget that the purpose of claim construction is to assist the trier of fact in understanding the proper scope of the claims. As explained more fully below, when it suits its purposes, Pitt Ohio:

- Changes and disputes terms without providing any proposed claim construction;[1]

- Impermissibly cites to extrinsic evidence that is not related to the patent or the prosecution history, or is even properly admitted into evidence;

_____

[1] In doing so, Pitt Ohio has violated both the clear meaning of the Local Patent Rules as well as the intent of the Rules to eliminate late stage gamesmanship by changing and withholding claim construction

1

A1130

"Remote Processing Center": "wirelessly received" (derived from claim 1, elements 3, 4), "load planning information" (unknown term and not disclosed in '078 Patent, possibly derived from claim 1, element 6), and "in response to a request" (unknown step not disclosed in '078 Patent). Pitt Ohio also attacks R+L's construction in stating that it is unclear how to differentiate R+L's construction from another portion of the claim, *i.e.*, "documentation data." Given these liberties that Pitt Ohio has taken, its proposed construction creates more ambiguity.

R+L's construction stays true to the '078 Patent in that the patent itself clearly uses both words "remote" and "central" when describing a processing facility. In fact, there are numerous uses in the '078 Patent of both "remote" and "central," resulting in a clear description of each. *See* R+L Brief at pp. 11-14 (Dkt. No. 238, Page ID # 7454-57). Further, although Pitt Ohio wants to make an issue as to when the word "remote" was introduced into the '078 Patent, that argument is a red herring in that the construction of this term does not depend in any way on *when* the term was introduced to the '078 Patent. The fact remains that the term is used within the '078 Patent and its construction depends on how that term is used and what meaning a POSITA would reasonably give to it.

Under this analysis, R+L's construction is proper in that it relies on the '078 Patent, and is further supported by the declaration of trucking expert, Lee Clair, who opined on a POSITA's reasonable understanding of the plain and ordinary meaning of "remote processing center." Joint Submission, Exhibit RL-D, Dkt. No. 235-15, Page ID # 7095).

### E. "Loading Manifest"

Pitt Ohio does not provide any support for its proposed construction of "loading manifest." Instead, Pitt Ohio cites <u>one</u> excerpt from the '078 Patent and makes a bald statement that its proposed construction *tracks* the same. Pitt Ohio does not provide any explanation of how its construction *tracks* the '078 Patent, nor does Pitt Ohio take into account a POSITA's

12

A1141

meaning of a "loading manifest." Pitt Ohio simply states that it is right. Pitt Ohio continues in stating that R+L's proposed construction is so broad that it would cover human speech, which is neither reasonable nor supported by the intrinsic evidence.

Upon review of the '078 Patent, the term "loading manifest" occurs 25 times in the specification[2] and one time in the figures, Fig. 6 – all of which taken as a whole support R+L's proposed construction. R+L asserts that a "loading manifest" is "document(s) or instructions to workers at a destination, informing the workers that a particular 'package' needs to be placed on a particular 'transporting vehicle' for further shipment." R+L described in its Opening Brief that its proposed definition is consistent with how this term is used throughout the '078 Patent (all 26 uses) and even during prosecution. R+L Brief at p. 14 (Dkt. No. 238, Page ID # 7457). To rely on only one use of the term in the patent, as Pitt Ohio would have this Court do, leads to an erroneous claim construction.

For these reasons, R+L's claim construction for the term "loading manifest" as set forth in its Opening Brief is proper.

## V.    R+L'S STATEMENT REGARDING PITT OHIO'S OFFER OF EXTRINSIC EVIDENCE

Pursuant to Local Pat. R. 105.4(b), R+L provides this statement regarding Pitt Ohio's offer of extrinsic evidence as set forth in its opening brief on claim construction. As discussed in detail above, Pitt Ohio's Opening Brief merely relies on bald assertions and conclusions that its claim construction is proper simply because it "is in accord with what R+L described as its invention." *See, e.g.*, Pitt Ohio Brief at p. 20 (Dkt. No. 237, Page ID # 7407). Pitt Ohio improperly buttresses their '078 Patent construction with irrelevant documents and still fails to

---

[2] *See* '078 Patent Abstract (two occurrences); '078 Patent col. 3, ln. 45; col. 7, ll 48, 49, 57, 66; col. 8, ll 3, 10, 11, 20, 25-26; col. 9, ll 64-65, 66; col. 10, ll 7, 44, 57; col. 11, ll 1, 5; col. 12, ll 35, 36, 40-41; and col. 13, ll 4, 13, 14 (Dkt. No. 235-2, Page ID # 6160-63).

A1142

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| | : | MDL  Docket No. 1:09-md-2050 |
| IN RE: Bill of Lading Transmission and | : | |
| Processing System Patent Litigation. | : | |
| _____ | : | |
| | : | Case No. 2:10-cv-90 |
| THIS DOCUMENT APPLIES TO: | : | |
| | : | |
| R&L Carriers, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Pitt Ohio Express, Inc., | : | |
| | : | |
| Defendant. | : | |

**ORDER**

This matter is before the Court on Defendant Pitt Ohio Express, Inc.'s motion for

summary judgment (Doc. No. 239).  For the reasons that follow, Defendant's motion for

summary judgment is well-taken and is **GRANTED.**

**I. Background**

Plaintiff R&L Carriers, Inc. ("R&L") is the owner of U.S. Patent No. 6,401,078 ("the

'078 Patent").  The '078 Patent claims a method for improving the efficiency of operations for

less-than-a-load ("LTL") carriers[1] centered on scanning and transmitting bills of lading from the

_____

[1]     The specification explains in general how LTL carriers operate.  '078 Patent
(Doc. No. 1-1), col. 1, ll. 32-48.  Essentially a local driver picks up many individual packages
from a number of customers and returns them to a distribution center.  There, the packages are
unloaded from the truck and grouped with other packages heading in the same general direction

-1-

A1181

cab of a truck.  The claimed method has six steps, which the Court paraphrases here for purposes of the instant motion: 1) placing a package on a transporting vehicle; 2) scanning an image of the package's documentation data with a portable document scanner; 3) providing a portable image processor capable of wirelessly transmitting the image of the documentation data image, 4) wirelessly sending an image of the documentation data to a remote processing center; 5) receiving an image of the documentation data at a remote processing center; and 6) prior to the package being removed from the transporting vehicle, using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle.  '078 Patent col. 13, ll. 40-48, col. 14, ll. 1-13.  The gist of the claimed method is to "automate[] the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control."  '078 Patent, Abstract.

R&L has sued Defendant Pitt Ohio Express, Inc. ("Pitt Ohio"), another LTL carrier, for direct infringement of the '078 Patent.  To prevail on a claim for direct infringement of a method patent, the patentee must prove that the defendant practiced each step of the claimed method. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim occurs when a party performs all of the steps of the process[.]") (internal quotation marks omitted).  Pitt-Ohio argues that it is entitled to summary judgment because there is no evidence that it has practiced the last step of the '078 Patent, i.e., using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle.

_____

and re-loaded on a different truck for transportation and ultimately delivery.

The Court described Pitt-Ohio's normal method of operation in its recent order denying

R&L's motion to defer ruling on the motion for summary judgment:

> The record reflects that Pitt Ohio uses Peoplenet g3 onboard computers in its trucks. When a Pitt Ohio driver picks up a package from a customer, he keys the relevant shipping data into the computer and a message is transmitted to the distribution center. Based on the message, the distribution center prepares a "stripping sheet" which the dock workers use to plan the next movement of the package. When the driver arrives at the distribution center, he scans the bill of lading into Pitt Ohio's imaging system. The image is then transmitted to the billing department where an invoice is prepared and sent to the customer. Sullivan Dep. at 28-31. As described, this process does not infringe the '078 Patent because it does not practice several of the claimed steps. The shipping data is keyed into the computer system, not scanned, and thus there is no scanning, processing, and transmitting of images of the documentation data to the remote processing center.

Doc. No. 255, at 2-3. The Court then described what is essentially is the only infringing activity

alleged on the part of Pitt Ohio:

> It is not disputed that in February and March 2009 Pitt Ohio explored the feasibility of using in-cab scanners in its operations. According to Scott Sullivan, Pitt Ohio's Rule 30(b)(6) witness, Pitt Ohio obtained a Microdea in-cab scanner from Peoplenet. Pitt Ohio first set up the scanner in an office cubicle and scanned some bills of lading into a test database. The purpose of this test was to evaluate image quality. Sullivan Dep. at 34. On March 26, 2009, Pitt Ohio conducted what might be called a "live test" of in-cab scanning. While a Pitt Ohio driver was going about his normal route, another Pitt Ohio employee rode along with the Microdea scanner in his lap. This employee scanned bills of lading in the cab and transmitted them to another Pitt Ohio employee in the IT department, Brendan Piovesan. Sullivan Aff. (Doc. No. 239-1) ¶¶ 3-5. According to Sullivan, the purpose of this test was to determine the feasibility of transmitting bills of lading to the billing department. *Id.* ¶ 4; Sullivan Dep. at 34. Otherwise, the Pitt Ohio driver followed the normal procedures and Sullivan avers that Pitt Ohio did not use the scanned images to create loading manifests. Sullivan Dep. at 33; Sullivan Aff. (Doc. No. 239-1) ¶ 5. Pitt Ohio then prepared a feasibility report which indicated that image quality from scanning was acceptable and recognized some advantages that could accrue from implementing in-cab scanning. Doc. No. 243-1. In June 2009, however, Pitt Ohio decided not to implement in-cab scanning and returned the Microdea scanner to Peoplenet. Sullivan Aff. (Doc. No. 239-1) ¶ 6. According to R&L's own evidence, Pitt Ohio scanned a total of 140 pages of documents during the entire period it was evaluating in-cab scanning. Ruskin Aff. (Doc. No. 253-6) ¶ 16. Pitt Ohio has provided the Court and R&L with affidavits swearing that it never has used in-cab scanning in its regular operations and has no future intention of implementing in-cab scanning. Sullivan Aff.

-3-

(Doc. No. 239-1) ¶¶ 8-12.

*Id.* at 3-4.  In summary, Pitt Ohio's evidence shows that it explored using in-cab scanning of bills of lading in a discrete and limited fashion.  Pitt Ohio actually scanned and transmitted bills of lading to a remote processing center, but it did not use the documentation data from the transmitted bills of lading to prepare a loading manifest.  Pitt Ohio's evidence shows, therefore, that it did not perform the final step of the '078 Patent.  As the Court explains further in Part V, *infra*, R&L has not adduced any evidence which creates a genuine issue of fact whether Pitt Ohio has ever performed the final step of the claimed method.

## II. <u>Summary Judgment Process in a Patent Infringement Case</u>

Patent infringement analysis comprises of two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation of the claims.  *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000).

## III. <u>Claim Construction</u>

This case has not proceeded through completion of the formal claim construction process.  Pitt Ohio argues, however, that R&L cannot prove that it has performed the last step of the claimed method under *any* construction of the '078 Patent.  In ruling on Pitt Ohio's motion for summary judgment, therefore, it is appropriate for the Court to adopt the definitions of the terms at issue proposed by R&L in its opening claim construction brief.  *See* Doc. No. 255 at 5 ("Thus, if in ruling on the motion for summary judgment, the Court utilizes R&L's proposed construction of the claims or terms at issue, it cannot be prejudiced if the ruling on the motion

-4-

A1184

precedes the completion of the formal claim construction process.") (citing *Cybersource Corp. v. Retail Decision, Inc.*, 620 F. Supp.2d 1068, 1073 (N.D. Cal. 2009)).

> The last step of the claimed method states:
>
> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

'078 Patent, col. 14, ll. 7-11.  The relevant terms in this claim are "package," "transporting vehicle," "documentation data," "remote processing center," and "loading manifest."  R&L's definitions for these terms, which the Court adopts for purposes of Pitt Ohio's motion for summary judgment,  are as follows:

"**package**" - any item or cargo to be shipped, including an individual item or group of items that together constitute a shipment with a bill of lading or shipping contract.

"**transporting vehicle**" - any truck, trailer, container, vessel or craft used for the movement of the shipment.

"**documentation data**" - the information pertaining to the shipment (whether in paper or electronic form), including but not limited to the "**shipping documentation data**."  R&L defines "**shipping documentation data**" as "the information contained in the shipment paperwork (whether in paper or electronic form), including but not limited to the bill of lading."

"**remote processing center**" - A physical location, other than the "**transporting vehicle,**" that receives and processes data transmission information. This can be a trucking company location or a third-party location.

"**loading manifest**" - The document(s) or instructions to workers at a destination, informing the workers that a particular "**package**" needs to be placed on a particular "**transporting vehicle**"

-5-

for further shipment.  *See* Doc. No. 238, at 4-5.

IV. <u>Summary Judgment Standard of Review</u>

The law of the regional circuit applies to motions for summary judgment in a patent infringement case.  *Arthur A. Collins, Inc. v. Northern Telecom, Inc.*, 216 F.3d 1042, 1047-48 (Fed. Cir. 2000).

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers.   The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  *Anderson,* 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  *United States v. Diebold Inc.*, 369

-6-

A1186

U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.  "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." *Anderson,* 477 U.S. at 249-50 (citations omitted).

V. <u>Analysis</u>

It is plain that when Pitt Ohio follows its normal operating procedures it does not literally infringe the '078 Patent, most obviously because Pitt Ohio uses the PeopleNet g3 computer to send typed messages containing the package's shipping data to the remote processing center instead of scanning and transmited an image of the documentation data to the remote processing center.  R&L concedes as much in its memorandum in opposition.  *See* Doc. No. 241, at 13 ("[B]efore implementing in-cab scanning, Pitt Ohio was using PeopleNet's g3 to practice *most* of the steps of the '078 Patent, *with the exception of in-cab scanning*.") (emphasis added).  It is further evident that, absent sufficient rebuttal evidence from R&L, Pitt Ohio did not literally infringe the '078 Patent during its in-cab scanning tests in February and March 2009.  Pitt Ohio scanned and transmitting images of shipping documentation data and transmitted said images to a remote processing center during the test, but Pitt Ohio did not in turn use the shipping documentation data to create a loading manifest.  Sullivan Dep. at 33; Sullivan Aff. (Doc. No. 239-1) ¶ 5.  Thus, the in-cab scanning test did not perform the last step of the claimed method.

-7-

A1187

While the test was carried out using real bills of lading collected when Pitt Ohio's driver was going about his actual pickup and delivery route, the driver followed Pitt Ohio's normal procedures in transmitting the package's shipping information to the remote processing center. *See id.* As already stated, in Pitt Ohio's normal or standard operating procedure, the driver keys the shipping data into the on-board computer and a message with the information is transmitted to the remote processing center. Sullivan Dep. at 28-31. Thus, Pitt Ohio's evidence shows that it has not infringed the '078 Patent because it has not performed each step of the claimed method.

None of the evidence proffered by R&L creates a genuine issue of material fact whether Pitt Ohio performed the last step of the claimed method. The Court takes up this evidence seriatim.

### A. The White Paper

At some time in or around 2007, PeopleNet published a white paper touting Pitt Ohio's conversion to PeopleNet's g3 on-board computer to improve the efficiency of its trucking operations. Doc. No. 243, at 38-45. A "sidebar" to the white paper notes the "process improvement steps" for Pitt Ohio by using the g3 system. R&L calls this white paper a "road map to Pitt Ohio's efforts to practice the '078 Patented Process." Doc. No. 241, at 7. The white paper, however, is not literally a road map to practicing the '078 Patent and, moreover, it cannot even be reasonably construed as a road map to practicing the patent.

The first problem that R&L has, however, is that the white paper is hearsay as to Pitt Ohio. R&L is offering the white paper as evidence that Pitt Ohio has practiced the claimed method. Pitt Ohio, however, did not author the white paper, and there is no evidence that Pitt

-8-

A1188

Ohio adopted the white paper as being true, so it cannot be considered the statement of a party-opponent.  Fed. R. Evid. 801(d)(2).  The white paper, therefore, is hearsay, Fed. R. Evid. 801(c), and the Court is unaware of any exception to the hearsay rule that might make the white paper admissible as substantive evidence that Pitt Ohio practiced the claimed method.  R&L cannot withstand Pitt Ohio's motion for summary judgment by relying on hearsay.  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (in ruling on a motion for summary judgment "hearsay evidence . . . must be disregarded.").

Even if the white paper could clear the hearsay hurdle, it does not remotely suggest that Pitt Ohio used or uses the g3 computer to practice the '078 Patent.  Indeed, the sidebar specifically states that a Pitt Ohio driver "*sends a message* that contains load information - PRO number, pieces, weight, destination, zip, and any miscellaneous remarks at the time of loading.  This information is used to populate the dispatch assistant program for linehaul planning purposes."  Doc. No. 243, at 44 (emphasis added).   In other words, the white paper indicates, consistent with Scott Sullivan's testimony, that Pitt Ohio creates loading manifests based on messages keyed into the on-board computer by the driver.  Similarly, in his deposition, PeopleNet CEO Ron Konezny confirmed that the white paper does not address on-board scanning of bills of lading.  Konezny Dep. at 60 (Doc. No. 241-4, at 10).  The claimed method, however, requires both scanning an image of the documentation data and transmitting the image of the documentation data to the remote processing center.  '078 Patent, col. 13, ll. 46-48, col. 14, ll. 4-5.  According to R&L's proposed claim construction, "scanning an image" requires "convert[ing] a physical document, in whole or in part, into an electronic reproduction of the document."  *See* Doc. No. 238, at 5.  R&L has not produced any evidence that "sending a

-9-

message" with the shipping documentation data included in the message is the same as converting a physical document into an electronic reproduction of the document itself or that it otherwise falls within the claim construction proposed by R&L. Thus, the white paper does not describe practicing the claimed method.

## B. The Paramount Meeting

R&L has submitted the affidavit of Paramount Transportation Logistics Services, L.L.C. Vice President Robert A. Bowman as evidence that Pitt Ohio has infringed the '078 Patent. According to Bowman, in February 2009, he attended a sales meeting with PeopleNet CEO Ron Konezny and PeopleNet regional sales manager Rich Kurtz in which they were promoting using the Microdea in-cab scanner in combination with the PeopleNet g3 on-board computer to Paramount. Bowman Aff. (Doc. No. 241-1) ¶ 7. Bowman claims that during this meeting Kurtz and Konezny identified Pitt Ohio as a PeopleNet client who was using the g3 computer and the Microdea scanner to scan documents, including bills of lading. *Id.* Bowman's affidavit, which R&L offers to prove that Pitt Ohio practiced in-cab scanning, is classic hearsay and not admissible to prove that Pitt Ohio infringed the '078 Patent. Fed. R. Evid. 801(c); *U.S. Structures*, 130 F.3d at 1189.

## C. The Power Point Presentation

Scott Sullivan, Pitt Ohio's CFO, created some power point presentations. One of the slides of the presentation shows a circular flow chart depicting what could be called core elements of Pitt Ohio's business. *See e.g.*, Doc. No. 249-1, at 76. These core elements are represented by symbols within balloons denominated "Strategy," "Technology," "Organization," and "Business Processes." The symbol for the "Technology" balloon is a computer. Sullivan

-10-

and Pitt Ohio state that the computer symbol is nothing more than a clip art representation of a laptop computer that comes standard in the Microsoft Office 1997 software package. R&L is persuaded, however, that this computer icon is actually a photograph of its Mobile Data Terminal ("MDT"), which its drivers use for in-cab scanning.  According to R&L's computer expert, Microsoft Office 1997 does not include this computer image.  R&L contends further that there are a number of points of comparison between the clip art image and its MDT which indicate that the clip art image is really a photograph of its MDT. *See* Crandall Dec.  (Doc. No. 241-6).  Pitt Ohio counters that Sullivan's use of this clip art image predates his employment with Pitt Ohio, going back in fact to 2001 when he was employed by Kellogg Company. Sullivan Dec. (Doc. No. 239-3) ¶¶ 22-26.

The idea that Sullivan somehow obtained a photograph of R&L's MDT and decided to use it in a number of Power Point presentations is fanciful at best, particularly in light of Pitt Ohio's evidence that Sullivan has been using the same image for many years, and in fact prior to his employment with Pitt Ohio.  The theory raises a number of unanswered questions, not the least of which is where would Sullivan have obtained a photograph of R&L's MDT in the first place?  It is, frankly, a highly implausible scenario.

The Court, nevertheless, will credit R&L's theory that the image in Sullivan's Power Point presentation is R&L's MDT. Giving R&L the benefit of the doubt on this point, however, does not save it from summary judgment.  As Crandall's declaration indicates, R&L's MDT is used to execute the scanning and transmitting steps of the '078 Patent.  Crandall Dec. (Doc. No. 241-6) ¶ 5.  Pitt Ohio's motion for summary judgment, however, is addressed to the final step of the patented process, using the scanned image of the bill of lading to prepare a loading manifest.

-11-

The fact that Pitt Ohio depicted a scanner and transmitter in a Power Point presentation does not create a reasonable inference that Pitt Ohio created loading manifests as claimed by the last step of the method, particularly in light of Pitt Ohio's undisputed evidence that, except for brief testing in 2009, it has never used in-cab scanning in its operations.  Indeed, it would take an impermissible stacking of inferences to conclude that Pitt Ohio performed the last step of the process based on the image of the MDT.  A factfinder would have to infer that because Pitt Ohio used an image of the MDT in Power Point presentations, it therefore - despite all evidence to the contrary - employed in-cab scanning in its operations.  The factfinder would have to then infer further that because Pitt Ohio used in-cab scanning it also used the scanned images to create loading manifests.  These leaps of logic are simply too great.  *Gregg v. Ohio Dept. of Youth Serv.*, 661 F. Supp.2d 842, 859 (S.D. Ohio 2009) ("While courts are required to draw every reasonable inference in favor of the party opposing summary judgment, they are not permitted to stack inference upon inference to preserve an issue for the jury.").  A reasonable factfinder could not conclude, nor would it be permitted to conclude, that Pitt Ohio practiced the final step of the method based on Pitt Ohio's alleged use of the image of the MDT in Power Point presentations.

## D. The Expert's Report

R&L has submitted the affidavit of its transportation and logistics expert, Lee Clair, in opposition to Pitt Ohio's motion for summary judgment.  Doc. No. 243, at 2-11.  After reviewing Mr. Clair's affidavit, the Court concludes that it fails to create any issue of material fact as to whether Pitt Ohio practiced the last step of the claimed method.  Clair's affidavit for the most part is simply a recitation of facts and the contents of documents not really in dispute in this case. Clair also unreasonably interprets the white paper as describing in-cab scanning.  The

-12-

A1192

primary flaw with Clair's affidavit, however, is that he just speculates that Pitt Ohio practiced

the final step of the method.  Indeed, his overall opinion is only that Pitt Ohio "may" have

practiced the claimed method.  Clair Aff. ¶ 105.  Frankly, there is nothing helpful to the trier of

fact in this affidavit.  Fed. R. Evid. 702; *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir.

2010)("No matter how good 'experts' 'credentials' may be, they are not permitted to speculate."

) (quoting in part *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th

Cir.2000) (internal brackets and some quotation marks omitted); *Taylor v. Consolidated Rail*

*Corp.*, No. 96-3579, 1997 WL 321142 at *6 (6th Cir. June 11, 1997) (holding that an expert must

state his opinion as a probability, not a mere possibility in order for it to be admissible); *Soldo v.*

*Sandoz Pharm. Corp.*, 244 F. Supp.2d 434, 526 (W.D.Pa. 2003)("Opinions merely expressing

'possibilities' do not suffice to support the admissibility of expert testimony.").

<u>Conclusion</u>

The record rather convincingly demonstrates that Pitt Ohio has never created loading

manifests from scanned images of shipping documentation data.  R&L has not shown a genuine

issue of material fact whether Pitt Ohio has performed the last step of the '078 Patent.   Pitt

Ohio, therefore cannot be held liable for infringing the '078 Patent.  Pitt Ohio is entitled to

summary judgment.

Accordingly, Pitt Ohio's motion for summary judgment is well-taken and is

**GRANTED.**

**IT IS SO ORDERED**

Dated: December 13, 2011                    _____s/Sandra S. Beckwith_____
                                                                    Sandra S. Beckwith
                                                        Senior United States District Judge

-13-

A1193

DISTRICT JUDGE'S COPY

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

OPINION ANNOUNCING
JUDGMENT OF THE COURT

RECEIVED

JUN 1 1 2012

JAMES BONINI, Clerk
CINCINNATI, OHIO

OPINION FILED AND JUDGMENT ENTERED: 06/07/12

      The attached opinion announcing the judgment of the court in your case was filed today.  The judgment was entered pursuant to Rule 36.  The mandate will be issued in due course.

      Information is also provided about petitions for rehearing and suggestions for rehearing en banc.  The questions and answers are those frequently asked and answered by the Clerk's Office.

      Each side shall bear its own costs.

      Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them.  (The Clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

JAN HORBALY
Clerk

cc:    Anthony C. White
       All Appellees Counsel

R&L CARRIERS V DRIVERTECH, 2010-1493
DCT - SD/OH, 09-CV-532;09-MD-2050

A1194

P3651



Docket No.: 23189-2

**CERTIFICATE OF MAILING**
I hereby certify that this paper is being deposited with the
United States Postal Service with sufficient postage as first
class mail in an envelope addressed to: Box Non-Fee Amendment;
Assistant Commissioner for Patents, Washington, DC 20231
on 06-28-00

*Bonnie S. Gerue*

**PATENT**

**IN THE UNITED STATES PATENT & TRADEMARK OFFICE**

| Applicants: | Ralph L. Roberts<br>Steve F. Naghshineh | : Attorney Docket No. 23189-2 |
| --- | --- | --- |
| Serial No.: | 09/542,682 | : Group Art Unit 3661 2765 |
| Filing Date: | April 3, 2000 | : |

For:    **Bill Of Lading Transmission And Processing System For Less Than A Load Carriers**

Box Non-Fee Amendment
Assistant Commissioner for Patents
Washington, D. C. 20231

Dear Sir:

Transmitted herewith is a Preliminary Amendment and Remarks in the above-identified application.
[X]     No additional fee is required.
[X]     Also attached:    Copies of originally filed Transmittal, Declaration and Power of Attorney.

The fee has been calculated as shown below:

| | NO. OF CLAIMS | HIGHEST PREVIOUS PAID FOR | EXTRA CLAIMS | RATE | FEE |
| --- | --- | --- | --- | --- | --- |
| Total Claims | 25 | 25 | 0 | x $18 ≈ | $0 |
| Independent Claims | 5 | 5 | 0 | x $78 ≈ | $0 |
| | | | | **TOTAL FEE DUE** | $0.00 |

[X]     The Commissioner is hereby authorized to charge payment of any additional fees associated with this
communication or credit any overpayment, to Deposit Account No. 04-1133, including any filing fees under 37
CFR 1.16 for presentation of extra claims and any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

*Joseph P. Mehrle*

Joseph P. Mehrle
Registration No. 45,535
Attorney for Applicants
DINSMORE & SHOHL
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 977-8176

**Date: June 28, 2000**

CINTI;576949;1

JA000076

A1409

**PATENT**

Attorney Docket No. 23189-2

**CERTIFICATE OF MAILING**

I hereby certify that this paper is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Box Non-Fee Amendment; Assistant Commissioner for Patents; Washington, DC 20231 on September 12, 2001.

Stephanie Berlepsch

#10/B
A. Cutten
9/18/01

**IN THE UNITED STATES PATENT & TRADEMARK OFFICE**

| Applicants: | Ralph L. Roberts; Steve F. Naghshineh | Paper No.: | |
| Serial No.: | 09/542,682 | Group Art Unit: | 2167 |
| Filed: | April 3, 2000 | Examiner: | K. Rice |
| For: | Bill Of Lading Transmission And Processing System For Less Than A Load Carriers | | |

**AMENDMENT AND RESPONSE**

RECEIVED
SEP 1 8 2001
Technology Center 2100

BOX NON-FEE AMENDMENT
Assistant Commissioner for Patents
Washington, DC 20231

Dear Sir:

In response to the Official Action dated June 12, 2001, please amend the present application as follows:

**In the Specification:**

Please replace the first paragraph on page 1 with the following rewritten paragraph:

This application is a continuation-in-part of United States Patent Application Serial No. 09/283,032 filed April 1, 1999, the disclosure of which is incorporated herein by reference. United States Patent Application Serial No. 09/283,032 claims the benefit of United States Provisional Patent Application Serial No. 60/080,365 filed April 1, 1998.

JA000101

A1434

Please replace the paragraph beginning at line 1 of page 4 with the following rewritten paragraph:

U.S. Patent No. 5,168,444, (Cukor), titled "SHIPMENT SYSTEM INCLUDING PROCESSING OF DOCUMENT IMAGES", is the closest prior art to the present invention. Cukor illustrates a system where the bills of lading are faxed from local shipping terminals to the shipping company's headquarters. At headquarters, where the data entry clerks could be supervised, a data entry clerk views the image of the bill of lading and enters the appropriate information in to the billing and accounting database. This system while using a fax machine, still requires that the truck driver return to a terminal before the shipping documents are sent to the company headquarters. Thus, while this system may reduce the errors made by the data entry personnel, it does not reduce the inefficiencies caused by the data entry clerks waiting for a driver to arrive at a terminal with the bills of lading and fax the bills of lading to headquarters, or the inefficiency caused by the driver waiting for the load planning to be completed.

**In the Claims:**

Please amend claim 1 to read as follows:

1. (Amended) A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

   placing a package on the transporting vehicle;

   using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

   providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

   wirelessly sending the image to a remote processing center;

   receiving the image at said remote processing center; and

2

JA000102

A1435

prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

Please amend claim 7 to read as follows:

7. (Amended)   The method of claim 1, further comprising the step of sending vehicle information to said remote processing center at one or more times as said transporting vehicle is en route to a destination.

3

JA000103

A1436

## REMARKS

The Official Action dated June 12, 2001 has been carefully considered. The changes presented herewith, taken with the following remarks, are believed sufficient to place the present application in condition for allowance. Reconsideration is respectfully requested.

Claims 1-25 remain in the present application, and, of these, claims 10-25 have been withdrawn from consideration by the Examiner. By the present amendment, claim 1 has been amended for clarification purposes. Support for the amendments can be found in the specification, claims, and drawings as originally filed. For example, support may be found at page 7, line 7 through page 10, line 15 and at page 14, lines 3-17. Claim 7 has been amended for clarification to insert the word "of." Moreover, the first paragraph of the specification has been amended to clarify the relationship of the related applications, and the first paragraph on page 4 has been amended to insert the correct patent number of the reference mentioned. Accordingly, since these changes do not involve any introduction of new matter, entry is believed to be in order and is respectfully requested. Attached hereto is a marked-up version of the changes made by the current amendments. The attached page is captioned "VERSION WITH MARKINGS TO SHOW CHANGES MADE".

In the Office Action, claims 1-9 were rejected as being unpatentable over Caci (US 6,154,658) in view of Cukor et al (US 5,168,444). It was argued that Caci discloses the invention substantially as claimed. However, it is admitted in the Office Action that Caci does not disclose the use of its "pick-up data" for use in planning loading manifests and further routing of the package, nor the use of a scanner to scan the shipping documentation as part of the "pick-up data."

The Office Action further states that Cukor also discloses the invention substantially as claimed, and that the reference discloses telefaxing the shipping document from where the shipment is picked up and using that data for load planning. It is also stated in the Office Action that it would have been obvious to use the load planning and documentation scanning

4

of Cukor with the communication system of Caci in order to track and plan the routing of the packages being shipped.

Applicants respectfully traverse the rejection. Claim 1 recites a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center. The claim recites placing a package on the transporting vehicle, and using a portable document scanner to scan an image of the documentation data for the package, the image including shipping details of the package. The claim further recites providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle, and wirelessly sending the image to a remote processing center. Finally, the claim recites receiving the image at said remote processing center, and, prior to the package being removed from the transporting vehicle, utilizing the documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

The claim recites various elements which are not taught or suggested by <u>either</u> the Caci or the Cukor references, even if they were considered, for the sake of argument, to be properly combinable. For example, the claim recites "using a portable document scanner to scan an image of the documentation data for the package." Applicants find no teaching or suggestion at all in Caci of imaging documents. As for the Cukor reference, while it does disclose scanning documents, Applicants find no teaching or suggestion of using a portable document scanner. Rather, the reference requires using scanners "at a plurality of remote stations" which "are disposed at local freight terminals or regional consolidation centers." Col. 5, lines 31-42. Such a system requires the drivers of the vehicles to go out of their way to drive to the remote stations in order to transmit the documents. Accordingly, valuable time and resources are wasted in reaching the remote stations.

Claim 1 further recites wirelessly sending the scanned image to the remote processing center. As mentioned above, Caci does not disclose or suggest any use of document image

5



data.  With respect to Cukor, the reference does not appear to contemplate the transmission of images by anything other than hard wired connections.  Applicants find no teaching or suggestion in Cukor of using wireless transmission of document image data, and there would be no need for such a transmission since the drivers in Cokur are to bring the documents to the remote stations 10 to be scanned and such stations would typically have telephone or other wired data connections to the central image processing facility 12.  As such, the cited art cannot provide these distinctive structures or functions, and cannot address the inefficiencies of transportation systems heretofore available.

Furthermore, claim 1 recites, prior to the package being removed from the transporting vehicle, utilizing the documentation data at the remote processing center to prepare a loading manifest which includes the package for further transport of the package on another transporting vehicle.  Neither the Caci nor the Cokur reference provides any teaching or suggestion of preparing a *loading manifest* for further transport of the package on another transporting vehicle, prior to the package being removed from the present transporting vehicle.  In fact, neither the Caci nor the Cokur reference has any mention of a manifest or of a loading manifest.  While Cokur has a very vague reference to determining "transhipments," there is no teaching or suggestion in the reference as to what that might mean or entail, nor whether it would include the preparation of a loading manifest as claimed in claim 1.

In contrast, by preparing the loading manifest in advance of the arrival of the package according to claim 1, the package can be immediately queued for placement or placed directly  on the transporting vehicle that will carry it to its next destination as soon as it arrives.  Having the manifest accomplished prior to the freight's arrival and/or easily revised up until actual arrival, reduces the freight turn-around time and freight handling, and enables unprecedented flexibility and efficiency.

6



A1439

Accordingly, there are several elements of claim 1 which are not taught or suggested by *either* Caci or Cokur. For the Patent Office to establish a prima facie case of obviousness, the prior art references must teach or suggest *all* of the claim limitations. MPEP § 2143.

In addition, there would be no suggestion or motivation to combine the Caci and Cokur references, even if between them they had taught or suggested all the claim limitations. Even if, for the sake of argument, the two references could be combined, that mere fact would not render the resultant combination obvious unless the prior art also suggested the desirability of the combination. MPEP § 2143.01 (citing In re Mills, 16 USPQ2d 1430 (Fed. Cir. 1990)).  As Caci already discloses a touchscreen and "speech-to-signal converters" for data input, the system in the reference would seem to have no need for the scanners of Cokur. Likewise, as Cokur includes an elaborate system of remote scanning stations 10 for scanning documents, it would have no need for the communications of Caci.  Thus, apart from improper hindsighted use of Applicants' invention as a guide, there is no suggestion or motivation for combining the two references.  "Before the PTO may combine the disclosures of two or more prior art references in order to establish *prima facie* obviousness, there must be some suggestion for doing so."  In re Jones, 21 USPQ 2d 1941, 1943-44 (Fed. Cir. 1992). It is impermissible to engage in a hindsight reconstruction of the claimed invention, using the Applicants' invention as a template for selecting elements from references to fill gaps in other references.  In re Gorman, 18 USPQ 2d 1885, 1888 (Fed. Cir. 1991).

Accordingly, it is respectfully requested that the rejection of independent claim 1, as well as the rejection of dependent claims 2-9, be reconsidered and withdrawn.

7

JA000107

A1440

It is believed that the above represents a complete response to the Examiner's rejections and places the present application in condition for allowance. Reconsideration is respectfully requested.

Respectfully submitted,

By: John V. Harmeyer
John V. Harmeyer
Registration No. 41,815
Attorney for Applicants
DINSMORE & SHOHL, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 977-8649

#711524

8

JA000108

A1441

Application No. 09/542,682

**VERSION WITH MARKINGS TO SHOW CHANGES MADE**

**In the Specification:**

The first paragraph of page 1 has been amended as follows:

This application [claims priority from] is a continuation-in-part of United States
Patent Application Serial No. 09/283,032 filed April 1, 1999, the disclosure of which is
incorporated herein by reference[,], United States Patent Application Serial No. [09/283/032]
09/283,032 claims [priority from] the benefit of United States Provisional Patent Application
Serial No. 60/080,365 filed April 1, 1998 [now abandoned].

The paragraph beginning at line 1 of page 4 has been amended as follows:

U.S. Patent No. [5] 5,168,444, (Cukor), titled "SHIPMENT SYSTEM INCLUDING
PROCESSING OF DOCUMENT IMAGES", is the closest prior art to the present invention.
Cukor illustrates a system where the bills of lading are faxed from local shipping terminals to
the shipping company's headquarters. At headquarters, where the data entry clerks could be
supervised, a data entry clerk views the image of the bill of lading and enters the appropriate
information in to the billing and accounting database. This system while using a fax
machine, still requires that the truck driver return to a terminal before the shipping documents
are sent to the company headquarters. Thus, while this system may reduce the errors made
by the data entry personnel, it does not reduce the inefficiencies caused by the data entry
clerks waiting for a driver to arrive at a terminal with the bills of lading and fax the bills of
lading to headquarters, or the inefficiency caused by the driver waiting for the load planning
to be completed.

9



JA000109

A1442

**In the Claims:**

Claim 1 has been amended as follows:

1. (Amended) A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

    placing a package on the transporting vehicle;

    [scanning] using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

    providing [an] a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

    wirelessly sending the image to a remote processing center;

    receiving the image at said remote processing center; and

    prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to [include said package in] prepare a loading [manifests] manifest which includes said package for further transport of the package on another transporting vehicle.


Claim 7 has been amended as follows:

7. (Amended)  The method of claim 1, further comprising the step of sending vehicle information to said remote processing center at one or more times as said transporting vehicle is en route to a destination.

JA000110

A1443

# BLACK'S
# LAW DICTIONARY®

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

HENRY CAMPBELL BLACK, M. A.

## SIXTH EDITION
### BY
### THE PUBLISHER'S EDITORIAL STAFF

Coauthors

**JOSEPH R. NOLAN**

Associate Justice, Massachusetts Supreme Judicial Court

and

**JACQUELINE M. NOLAN–HALEY**

Associate Clinical Professor,
Fordham University School of Law

———

Contributing Authors

**M. J. CONNOLLY**
Associate Professor (Linguistics),
College of Arts & Sciences, Boston College

**STEPHEN C. HICKS**
Professor of Law, Suffolk University
Law School, Boston, MA

**MARTINA N. ALIBRANDI**
Certified Public Accountant, Bolton, MA

ST. PAUL, MINN.
WEST PUBLISHING CO.
1990

JA001440

A2773

"BLACK'S LAW DICTIONARY" is a registered trademark of West
Publishing Co.  Registered in U.S. Patent and Trademark Office.

COPYRIGHT © 1891, 1910, 1933, 1951, 1957, 1968, 1979 WEST PUBLISHING CO.
COPYRIGHT © 1990 By WEST PUBLISHING CO.
                    50 West Kellogg Boulevard
                    P.O. Box 64526
                    St. Paul, Mn 55164-0526

All rights reserved
Printed in the United States of America

**Library of Congress Cataloging-in-Publication Data**

Black, Henry Campbell,  1850–1927.
    [Law dictionary]
    Black's law dictionary / by Henry Campbell Black. — 6th ed. / by
    the publisher's editorial staff ; contributing authors, Joseph R.
    Nolan ... [et al.]
        p.    cm.
    ISBN 0-314-76271-X
    1. Law—United States—Dictionaries.  2. Law—Dictionaries.
    I. Nolan, Joseph R.  II. Title.
    KF156.B53  1990
    340'.03—dc20                                90-36225
                                                CIP

**ISBN 0-314-76271-X**

**ISBN 0-314-77165-4 deluxe**

Black's Law Dictionary 6th Ed.
5th Reprint—1991



**MANDATARY**                                                                962

**Mandatary** /mǽndətèhriy/. He to whom a mandate, charge, or commandment is given; also, he that obtains a benefice by *mandamus*. Briggs v. Spaulding, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662.

**Mandate.** A command, order, or direction, written or oral, which court is authorized to give and person is bound to obey. Silverman v. Seneca Realty Co., 154 Misc. 35, 276 N.Y.S. 466. A judicial command or precept proceeding from a court or judicial officer, directing the proper officer to enforce a judgment, sentence, or decree. A precept or order issued upon the decision of an appeal or writ of error, directing action to be taken, or disposition to be made of case, by inferior court. Official mode of communicating judgment of appellate court to lower court, directing action to be taken or disposition to be made of cause by trial court. Tierney v. Tierney, Fla.App., 290 So.2d 136, 137. *See also* Decree; Order.

A bailment of property in regard to which the bailee engages to do some act without payment. Agreement to perform services for another without pay.

A contract by which a lawful business is committed to the management of another, and by him undertaken to be performed gratuitously. The mandatary is bound to the exercise of slight diligence, and is responsible for gross neglect. Williams v. Conger, 125 U.S. 397, 8 S.Ct. 933, 31 L.Ed. 778.

A mandate, procuration, or letter of attorney is an act by which one person gives power to another to transact for him and in his name one or several affairs. *See also* Power of attorney.

**Mandato** /mandátow/. In Spanish law, the contract of mandate.

**Mandator** /mændéytər/. The person employing another to perform a mandate.

**Mandatory** /mǽndət(ə)riy/. *adj.* Containing a command; preceptive; imperative; peremptory; obligatory.

**Mandatory injunction** /mǽndət(ə)riy injóŋkshən/. *See* Injunction.

**Mandatory instructions.** *See* Jury instructions.

**Mandatory presumption.** *See* Presumption.

**Mandatory sentencing.** *See* Sentence.

**Mandatory statutes.** Generic term describing statutes which require and not merely permit a course of action. They are characterized by such directives as "shall" and not "may."

A "mandatory" provision in a statute is one the omission to follow which renders the proceedings to which it relates void, while a "directory" provision is one the observance of which is not necessary to validity of the proceeding. It is also said that when the provision of a statute is the essence of the thing required to be done, it is mandatory, Kavanaugh v. Fash, C.C.A.Okl., 74 F.2d 435, 437; otherwise, when it relates to form and manner, and where an act is incident, or after jurisdiction acquired, it is directory merely.

Mandatory statutory provision is one which must be observed, as distinguished from "directory" provision, which leaves it optional with department or officer to which addressed to obey it or not. State ex rel. Dworken v. Court of Common Pleas of Cuyahoga County, 131 Ohio St. 23, 1 N.E.2d 138, 139, 5 O.O. 291.

**Mandatum** /mændéytəm/. Lat. In the civil law, the contract of mandate *(q.v.)*.

**Mandatum nisi gratuitum nullum est** /mændéytəm náysay grətyúwətəm nóləm èst/. Unless a mandate is gratuitous, it is not a mandate.

**Mandavi ballivo** /mændévvay bǽləvow/. (I have commanded or made my mandate to the bailiff.) In English practice, the return made by a sheriff, where the bailiff of a liberty has the execution of a writ, that he has commanded the bailiff to execute it.

**Manerium** /məníriyəm/. In old English law, a manor.

**Manerium dicitur a manendo, secundum excellentiam, sedes magna, fixa, et stabilis** /məníriyəm disətər èy mənéndow, səkándəm èksəlénsh(iy)əm, síydiyz mǽgnə, fíksəm, èt stéybələs/. A manor is so called from *manendo*, according to its excellence, a seat, great, fixed, and firm.

**Mangonare** /mæŋgənériy/. In old English law, to buy in a market.

**Manhood.** The status of one who has reached his legal majority which in most jurisdictions is 18. Formerly, it was the age of 21. When this status is achieved, a person may act sui juris. *See also* Legal age; Majority.

In feudal law, a term denoting the ceremony of doing homage by the vassal to his lord. The formula used was, *"Devenio vester homo",* I become your man. 2 Bl.Comm. 54.

**Mania** /méyniyə/. *See* Insanity.

**Manic.** Phase of manic-depressive psychosis in which the mood of the patient is overactive and expansive; characterized by excessive ego valuation and over-estimation of personal importance. Manic mood may include boisterousness, joviality, anger, joyousness.

**Manifest.** Evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, that which is clear and requires no proof; that which is notorious. Houston v. Leyden Motor Coach Co., 102 Ill.App.2d 348, 243 N.E.2d 293, 296; Graf v. Ford Motor Co., 102 Ill.App.2d 390, 243 N.E.2d 337, 341.

Document used in shipping and warehousing containing a list of the contents, value, origin, carrier and destination of the goods to be shipped or warehoused. A written document required to be carried by merchant vessels, containing an account of the cargo, with other particulars, for the facility of the customs officers. The Sylvia II, D.C.Mass., 28 F.2d 215, 216. See 19 U.S.C.A. § 1431 et seq. List of passengers and cargo kept by vessel and aircraft.

JA001442

A2775

LLP Limited
Legal & Business Publishing Division
27 Swinton Street
London WC1X 9NW

USA AND CANADA
LLP Inc.
Suite 308, 611 Broadway
New York, NY 10012, USA

SOUTH EAST ASIA
LLP Asia Limited
Room 1101, Hollywood Centre
233 Hollywood Road
Hong Kong

© Peter R. Brodie 1991, 1996

First edition, 1991
Second edition, 1996

*British Library Cataloguing in Publication Data*
A catalogue record for this book is available from the British Library

ISBN 1–85978–042–3

All rights reserved. No part of this publication may be reproduced,
stored in a retrieval system, or transmitted, in any form or by any
means, electronic, mechanical, photocopying, recording or
otherwise, without the prior written permission of
LLP Limited.

Text set 11 on 13pt Palatino by
Mendip Communications Ltd
Frome, Somerset.
Printed in Great Britain by
WBC Print Ltd, Bridgend, Mid-Glamorgan.

JA001444

Case: 1:09-md-02050-SSB-SKB Doc #: 325-41 Filed: 06/07/13 Page: 5 of 7  PAGEID #: 11286

**Luffing\*** The vertical movement of the jib of a crane. In some cases, the whole of the jib is luffed, while in others a small part of the jib at the top is moved vertically.

**Lumber load line** One of the lines painted on the sides of a ship which shows the maximum depths to which that ship's hull may be immersed when arriving at, sailing through or putting to sea in the different load line zones with a deck cargo of timber. The positioning of these lines is determined by the rules agreed at the International Conference on Load Lines which have been ratified by many maritime countries. Also known as the **timber load line**.

**MacGregor hatch** Proprietary hatch cover widely used on dry cargo ships. These are a means of closing hatchways, and made of steel sections which are designed and operated in different ways depending on the type of ship. *For various examples, see* **Folding hatch cover, Liftaway hatch cover, Piggy-back hatch cover, Rolling hatch cover, Sliding hatch cover** *and* **Stacking hatch cover**.

**Magnet** Device attached to a crane which is used for lifting scrap iron.

**Malt terminal** Terminal in a port dedicated to the handling and storage of malt. This type of terminal is similar to one handling grain but has specialised silo equipment because of the sensitivity to crushing. Distribution is effected by chute for lorries, barges or outward-bound ships. There may also be a bagging plant. Malt is also carried in general purpose containers fitted with liner bags. Malt is a product of barley used in brewing beer.

**Manifest** Document containing a full list of a ship's cargo, extracted from the bills of lading. A copy, known as the *outward manifest* is lodged with the Customs authorities at the port of loading. A further copy, known as the *inward manifest*, is similarly lodged at the discharge port, with one copy going to the ship's agent so that the unloading of the ship may be planned in advance.

**Marks and numbers** Markings distinctly displayed on goods being shipped, or on their packaging, for ease of identification. These include the port or place of destination and a package number, if there is more than one.

**Mechanical ventilation** System of ventilating the holds of a ship whereby ventilators on deck are closed off and air is circulated mechanically through the holds, being dried, if necessary, by dehu-

103

JA001445

World Trade Press
1505 Fifth Avenue
San Rafael, California 94901 USA
Tel: (415) 454-9934
Fax: (415) 453-7980
Order Line (800) 833-8586

Dictionary of International Trade
Copyright © 1994 by Edward G. Hinkelman. All Rights Reserved.

Reproduction or translation of any part of this work beyond that permitted by Section 107 or 108 of the United States Copyright Act without the express written permission of the copyright holder is unlawful. Requests for permission or further information should be addressed to World Trade Press at the address above.

Cover design by Gail Weisman
Maps by Gracie Artemis and Dave Baker

Portions copyright:
*Foreign Exchange and Money Market Operations*, and *Documentary Credits*. Copyright © Swiss Bank Corporation. Used with permission. *Glossary of Finance and Debt*. Copyright © World Bank. Used with permission. *Distribution Magazine* article: Import-Export International Glossary, Francine A. Ciotti. Copyright © *Distribution Magazine*. Used with permission. *Marine Insurance, Notes and Comments*. Copyright © CIGNA Worldwide. Used with permission. ICC No. 460, *INCOTERMS 1990*. Copyright © 1990 by ICC Publishing S.A. All rights reserved. Reprinted with the permission of the International Chamber of Commerce through ICC Publishing, Inc. in New York. All Rights Reserved. *Dictionary of Banking and Finance*, Jerry Rosenberg, Ph.D. Copyright © 1982. Reprinted by permission of John Wiley & Sons, Inc. All Rights Reserved. *A World Bank Glossary*, International Bank for Reconstruction and Development/ The World Bank. Copyright © 1991. All Rights Reserved. Used with permission. *Glossary of Air Cargo Terms*. Copyright © Air Transport Association. Used with permission.

This publication is designed to provide information concerning international trade and the industries that support international trade. It is sold with the understanding that the publisher is not engaged in rendering legal or any other professional services. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

**Library of Congress Cataloging-in-Publication Data:**

Dictionary of International Trade / Edward G. Hinkelman, editor,
        p. cm.

        Includes bibliographical references.
        ISBN 0-9631864-8-5 : $16.50
        1. International trade—Dictionaries. 2. United States—Commerce—
Dictionaries. I. Hinkelman, Edward G., 1947-
        HF1373.D53        1994
        382´.03—dc20                                        93-50661
                                                                                    CIP

Printed in the United States of America

JA001447

Case: 1:09-md-02050-SSB-SKB Doc #: 325-41 Filed: 06/07/13 Page: 7 of 7 PAGEID #: 11288



## Maastricht

The popular name for the European treaty for economic union. Named for the Dutch city in which it was signed. *See* European Community.

## Maatschappij (Mij.)

(Netherlands) Designation for a combination of two or more persons who enter into a joint arrangement to conduct certain business activities.

## macroeconomics

(economics) (a) The study of statistics (e.g., total consumption, total employment) of the economy as a whole rather than as single economic units. (b) Synonymous with aggregate economics. *See also* microeconomics.

## mail entry

(U.S. Customs) A means of shipping and entering goods into the Customs Territory of the United States. Mail entry has several advantages as well as several limitations.

(1) Duties on parcels valued at US$1,200 or less are collected by the letter carrier delivering the parcel to the addressee.

(2) No formal entry paperwork is required on duty-free merchandise not exceeding US$1,200 in value.

(3) There is no need to clear shipments personally if under US$1,200 in value.

Joint Customs and postal regulations provide that all international parcel post packages must have a Customs declaration securely attached giving an accurate description and the value of the contents. This declaration is obtained at post offices. Commercial shipments must also be accompanied by a commercial invoice enclosed in the parcel bearing the declaration.

Parcels and packages not labeled or endorsed properly and found to contain merchandise subject to duty or taxes are subject to forfeiture.

If the value of a mail importation exceeds US$1,250, the addressee is notified to prepare and file a formal Customs entry (consumption entry) for it at the nearest Customs port.

A mail entry limit of US$250 has been set for a number of articles classified in sub-chapters III and IV, chapter 99, of the Harmonized Tariff Schedule of the U.S. as an exception to the above US$1,250 limit. Items on this list include billfolds, feathers, flowers, footwear, fur, gloves, handbags, headwear, leather, luggage, millinery, pillows, plastics, skins, rubber, textiles, toys, games, sports equipment and trimmings.

Unaccompanied shipments of made-to-measure suits from Hong Kong require a formal entry regardless of value.

*See* entry; consumption entry.

## mala fide

(law) In bad faith. A seller's representation that goods are usable for a particular purpose when in fact the seller knows that the goods are not is a representation made mala fide.

## manifest

(shipping) A document giving the description of a ship's cargo or the contents of a car or truck.

## Manufactured Imports Promotion Organization (MIPRO)

(Japan) A non-profit organization, established in 1978 by the joint efforts of the Japanese Government and the private sector to promote imports of foreign manufactured products by hosting exhibitions and providing a wide range of market information. MIPRO's activities are broadly classified into three categories: (1) holding imported product trade exhibitions for buyers and the general public; (2) disseminating information regarding imported products and the Japanese market; and (3) promoting sales of foreign products to Japanese consumers to promote recognition of the quality of imported goods. Address: Manufactured Imports Promotion Organization, 1-3, Higashi Ikebukuro 3-chome, Toshima-ku, Tokyo 170, Japan; Tel: (03) 3988-2791; Fax: (03) 3988-1629.

## maquiladora

(Mexico) A program which allows foreign manufacturers to ship components into Mexico duty-free for assembly and subsequent reexport. Industry established under the maquiladora program is Mexico's second largest source of foreign revenue (following oil exports).

In December 1989, the Mexican government liberalized the maquiladora program to make it a more attractive and dynamic sector of the economy. As a result, maquiladora operations may import, duty and import license free, products not directly involved in production, but that support production, including computers and other administrative materials and transportation equipment.

JA001448

Case: 1:09-md-02050-SSB-SKB Doc #: 325-42 Filed: 06/07/13 Page: 1 of 1 PAGEID #: 11289



# ILLUSTRATED DICTIONARY OF CARGO HANDLING

## SECOND EDITION

## PETER R. BRODIE

LLP

JA001443

Case: 1:09-md-02050-SSB-SKB Doc #: 325-43 Filed: 06/07/13 Page: 1 of 1  PAGEID #: 11290

# DICTIONARY

## OF

# INTERNATIONAL

# TRADE



*4,071 International Trade,
Economic, Banking,
Legal & Shipping Terms*

*Plus Trade Organizations,
Addresses, Maps & Tables*



## Edward G. Hinkelman



JA001446

**EXHIBIT A**

**JOINT DISPUTED CLAIM TERMS CHART**

**IN RE:  Bill of Lading Transmission and Processing System Patent Litigation**

**MDL Docket No. 1:09-md-2050**

| Disputed Claim Term | Plaintiff Proposed Construction | Plaintiff Citation To Intrinsic Evidence | Plaintiff Citation To Extrinsic Evidence[1] | Defendants Proposed Construction | Defendants Citation To Intrinsic Evidence | Defendants Citation To Extrinsic Evidence[1] |
|---|---|---|---|---|---|---|
| 1. loading manifest | Plain and ordinary meaning.  To the extent that a definition is required, this term should be defined as "a document that identifies the cargo of a vehicle." | '078 Patent, Abstract; Figs. 1B, 3, 4, 6, 7; 6:19-23; 7:44-65; 8:1-10, 24-28. (JA000001) | Black's Law Dictionary at 962 (6th ed. 1990). (JA001440)  Illustrated Dictionary of Cargo Handling at 103 (2nd ed. 1996. (JA001443  Dictionary of | A document that identifies all [packages][2] that must be on another [transporting vehicle] prior to further shipment | '078 Patent at 7:48-58; 7:66-8:10; 13:8-17. (JA000001)  U.S. Patent Application No. 09/542,682 ("'682 Application"), 9/12/2001 Amendment and Response | U.S. Patent No. 6,879,962. (JA001091)  Black's Law Dictionary at 962 (6th ed. 1990). (JA001440)  Illustrated Dictionary of Cargo Handling at 103 |

-i-

---

[1] All references to the Joint Appendix (JA) are to the first page of the cited document.
[2] Defendants' footnote – Terms in brackets have the meaning identified elsewhere in Defendants' Proposed Construction(s) as a proposed construction for the bracketed term.

11744149.3

A2787

# EXHIBIT

# A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,903 | 06/28/2013 | 6,401,078 B1 | 23189-101 | 3859 |

24256         7590         12/12/2013

DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
CINCINNATI, OH 45202

| EXAMINER |
|---|
| PATEL, HETUL B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/12/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

A2920

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/012,903 | Patent Under Reexamination<br>6,401,078 B1 E | |
|---|---|---|---|
| | Examiner<br>Hetul Patel | Art Unit<br>3992 | AIA (First Inventor to File) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a.☒ Responsive to the communication(s) filed on <u>10/07/2013</u> .
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b.☐ This action is made FINAL.

c.☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I     THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.     3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.     4. ☐ _____.

Part II     SUMMARY OF ACTION

1a. ☒ Claims <u>1-9</u> are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims <u>1-9</u> are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c)☐ None     of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____.

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

A2921

Application/Control Number: 90/012,903                                    Page 2
Art Unit: 3992

### *EX PARTE* REEXAMINATION – NON-FINAL REJECTION

## Table of Contents

1.0    SUMMARY ........................................................................................ 3

2.0    REFERENCES ................................................................................... 3

　2.1   References Cited by the Requester ............................................... 3

　2.2   IDS ................................................................................................. 4

3.0    CLAIM REJECTIONS – 35 USC § 102 ............................................ 4

　3.1   N&M (Claims 1, 3-4 and 6) ........................................................... 5

4.0    CLAIM REJECTIONS – 35 USC § 103 ............................................ 8

　4.1   N&M in view of Rosenbaum (Claims 1-4 and 6) ........................... 8

　4.2   HighwayMaster in view of Rosenbaum (Claims 1-9) ................... 13

　4.3   Quiet in view of Rosenbaum (Claims 1-5 and 7-9) ..................... 20

　4.4   Scapinakis in view of Rosenbaum (Claims 1-2 and 6-9) ............ 21

　4.5   Cukor in view of Rosenbaum (Claims 1-2) ................................. 23

5.0    CONCLUSION ................................................................................ 26

A2922

Application/Control Number: 90/012,903                                      Page 3
Art Unit: 3992

## 1.0    SUMMARY

This Office Action addresses claims 1-9 (that is all claims) of U.S. Patent
6,401,078 (hereafter '078 patent) issued June 4, 2002 to Roberts et al. of R & L
Carriers for which it has been determined in the 90/012,903 reexamination, regarding
the Order mailed on August 6, 2013 granting *ex parte* reexamination, that at least one
substantial new question (hereinafter "SNQ") of patentability was raised in the request
for *ex parte* reexamination, filed June 28, 2013 (hereinafter "the Request").

<u>NOTE</u>: The current *ex parte* reexamination is requested by the Patent Owner.  Hence,
both the "Requester" and the "Patent Owner" referred to herein are the same
entity.

## 2.0    REFERENCES

### *2.1    References Cited by the Requester*

The requester alleges that at least one substantial new question of patentability
(SNQ) has been raised by at least the following prior art references:

1. The N&M Transfer Co. Prior Art (comprising advertising flyer for Datajack from
   Cellabs, Ricoh PF-1 Operating Instructions and Manual, and N&M Transfer Co.
   Driver Fax Orientation Manual) (hereinafter "N&M")

2. U.S. Patent No. 5,031,223 to Rosenbaum et al. (hereinafter "Rosenbaum")

3. HighwayMaster 10K Report of March 1997 (hereinafter "HighwayMaster")

Application/Control Number: 90/012,903                                    Page 4
Art Unit: 3992

4. The "Quiet Revolution in Trucking Services" article in Purchasing dated March 4, 1993 (hereinafter "Quiet")

5. The Scapinakis and Garrison Publication entitled "Communications and Positioning Systems in the Motor Carrier Industry" published 1991-1992 (hereinafter " Scapinakis")

6. U.S. Patent No. 5,168,444 to Cukor[1] et al. (hereinafter "Cukor")

### *2.2    IDS*

With respect to the Information Disclosure Statements (PTO/SB/08A and 08B or its equivalent) filed on August 12, 2013 and considered with this action, the information cited has been considered as described in the MPEP. Note that MPEP 2256 indicate that degree of consideration to be given to such information will be normally limited by the degree to which the party filing the information citation has explained the content and relevance of the information.

## 3.0   CLAIM REJECTIONS – 35 USC § 102

The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

---

[1] Cukor was considered during the prosecution of the '078 patent.

Application/Control Number: 90/012,903                                        Page 5
Art Unit: 3992

### 3.1    N&M (Claims 1, 3-4 and 6)

Claims 1, 3-4 and 6 are rejected under pre-AIA 35 U.S.C. 102(b) as being

anticipated by N&M.

As per claim 1, N&M teaches a method for transferring shipping documentation

data for a package from a transporting vehicle to a remote processing center:

- placing a package on the transporting vehicle (this is an inherent step

  in the method taught by N&M);

- using a portable document scanner to scan an image of the documentation data

  for the package, said image including shipping details of the package (i.e.

  using a Ricoh PF-1 portable facsimile unit to fax the

  documentation data for the package as disclosed in the "PF-

  1 INSTRUCTIONS" of N&M. NOTE: The function of scanning an

  image of the documentation data is a part of the fax

  process taught by N&M);

- providing a portable image processor capable of wirelessly transferring the image

  from the transporting vehicle (by disclosing "The PF-1 can be

  connected via an interface unit to a mobile phone network

  for use in your car, making it a truly mobile fax machine."

  in the "Connecting to a Mobile Phone Network" section of

  N&M);

- wirelessly sending the image to a remote processing center (by disclosing

  "Each bill of lading must be faxed immediately after as

Application/Control Number: 90/012,903                                                    Page 6
Art Unit: 3992

pick is made!!!" in the "Fax Machine Instruction" section
of N&M.  N&M also teaches about dialing a fax number from a
cellular handset connected via the datajack and then faxing
the document to the N&M Transfer billing clerks; see "PF-1
INSTRUCTION" of N&M);

- receiving the image at said remote processing center (N&M discloses that
the faxes are received and processed - "Before the last
bill of the day is faxed in write on the bill so the girls
know that your file is compete and a manifest can be
printed as soon as all the bills are entered."; see "FAX
MACHINE INSTRUCTIONS" of N&M); and

- prior to the package being removed from the transporting vehicle, utilizing said
documentation data at said remote processing center to prepare a loading
manifest which includes said package for further transport of the package on
another transporting vehicle (by disclosing "Before the last bill of
the day is faxed in write on the bill so the girls know
that your file is compete and a manifest can be printed as
soon as all the bills are entered."; see "FAX MACHINE
INSTRUCTIONS" of N&M.  In other words, as soon as the last
bill of the day is faxed in from a first transporting
vehicle, the girls will prepare and print a loading
manifest, while the package is still in the first vehicle

Application/Control Number: 90/012,903                                    Page 7
Art Unit: 3992

en route to interim destination, for further transport of
the package on a second transporting vehicle.).

As per claim 3, N&M teaches the claimed invention as described above and
furthermore, N&M teaches that the image sending step is accomplished from onboard
the transporting vehicle (by disclosing "The PF-1 can be connected via
an interface unit to a mobile phone network for use in your car,
making it a truly mobile fax machine." in the "Connecting to a
Mobile Phone Network" section; and "Imagine the power of being
able to send or receive a fax from anywhere in the world fight
in your vehicle." in the "Products for the Mobile Office;
Cellabs" of N&M).

As per claim 4, N&M teaches the claimed invention as described above and
furthermore, N&M teaches that the image sending step can be undertaken while the
transporting vehicle is in transit (by disclosing "Imagine the power of being
able to send or receive a fax from anywhere in the world fight
in your vehicle. Think of time you could save by getting that
important document or sending that order to the office on your
way to your next business appointment." in the "Products for the
Mobile Office; Cellabs" of N&M).

As per claim 6, N&M teaches the claimed invention as described above and
furthermore, N&M teaches the step of routing certain portions of the shipping
documentation data received at said remote processing center to an interim destination

Application/Control Number: 90/012,903                                   Page 8
Art Unit: 3992

of said package for utilization in loading manifests (`i.e. once the system is`
`perfected, drivers will be routing their own loads to`
`appropriate interim or final destinations; see "II. Fax`
`Communication will relieve the companies growth related to`
`problems in routing and billing"` section under `"DRIVER FAX`
`ORIENTATION"` `of N&M`).

## 4.0   CLAIM REJECTIONS – 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

### 4.1     N&M in view of Rosenbaum (Claims 1-4 and 6)

Claims 1-4 and 6 are rejected under 35 U.S.C. 103(a) as being unpatentable
over N&M in view of Rosenbaum.

As per claim 1, N&M teaches a method for transferring shipping documentation
data for a package from a transporting vehicle to a remote processing center:

-   placing a package on the transporting vehicle (`this is an inherent step`
    `in the method taught by N&M`);

-   using a portable document scanner to scan an image of the documentation data
    for the package, said image including shipping details of the package (`i.e.`

Application/Control Number: 90/012,903                                    Page 9
Art Unit: 3992

using a Ricoh PF-1 portable facsimile unit to fax the documentation data for the package as disclosed in the "PF-1 INSTRUCTIONS" of N&M. NOTE: The function of scanning an image of the documentation data is a part of the fax process taught by N&M);

- providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle (by disclosing "The PF-1 can be connected via an interface unit to a mobile phone network for use in your car, making it a truly mobile fax machine." in the "Connecting to a Mobile Phone Network" section of N&M);

- wirelessly sending the image to a remote processing center (by disclosing "Each bill of lading must be faxed immediately after as pick is made!!!" in the "Fax Machine Instruction" section of N&M. N&M also teaches about dialing a fax number from a cellular handset connected via the datajack and then faxing the document to the N&M Transfer billing clerks; see "PF-1 INSTRUCTION" of N&M); and

- receiving the image at said remote processing center (N&M discloses that the faxes are received and processed - "Before the last bill of the day is faxed in write on the bill so the girls know that your file is compete and a manifest can be

Application/Control Number: 90/012,903                                    Page 10
Art Unit: 3992

printed as soon as all the bills are entered."; see "FAX
MACHINE INSTRUCTIONS" of N&M).

N&M further teaches the limitation of "prior to the package being removed from
the transporting vehicle, utilizing said documentation data at said remote processing
center to prepare a loading manifest which includes said package for further transport of
the package on another transporting vehicle" by disclosing about instructing
drivers to write on the bill indicating the last bill of the
day, before the last bill of the day is faxed in, so the girls
know that your file is compete and a manifest can be printed as
soon as all the bills are entered (see "FAX MACHINE
INSTRUCTIONS").  In other words, as soon as the last bill of the
day is faxed in from a first transporting vehicle, the girls
will prepare and print a loading manifest, while the package is
still in the first vehicle en route to interim destination, for
further transport of the package on a second transporting
vehicle.

Examiner submits that if, for the sake of argument, it is assumed that the above
interpretation of N&M teachings (i.e. before the package being removed
from the first transporting vehicle, the girls will prepare and
print a loading manifest as soon as the last bill of the day is
faxed in for further transport of the package on a second
transporting vehicle) is improper, Rosenbaum discloses that "while the

Application/Control Number: 90/012,903                                    Page 11
Art Unit: 3992

mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee." (Abstract). "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time that the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location.", see Col. 8, lines 42-48). It would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of N&M so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As per claim 2, the combination of N&M and Rosenbaum teaches the claimed invention as described above and furthermore, Rosenbaum teaches the step of comparing and combining the documentation data received at said remote processing center with similar shipping documentation data of other packages to be delivered from an interim destination and other shipping data, and preparing loading manifests to optimize the loads to be shipped on at least one other transporting vehicle (by

Application/Control Number: 90/012,903                    Page 12
Art Unit: 3992

disclosing "A sortation program 140 and a resource allocation program 142 are present in memory 19' at the receiving location 28 in Fig. 5, to carry out the sortation of the mail pieces down to the delivery sequence and to carry out the provision of resource allocation information to enable local postal management to have advance warning of a need for additional resources to handle the physical mail pieces to be delivered to the receiving location.", see Col. 12, lines 51- 59).

As per claim 3, the combination of N&M and Rosenbaum teaches the claimed invention as described above and furthermore, N&M teaches that the image sending step is accomplished from onboard the transporting vehicle (by disclosing "The PF-1 can be connected via an interface unit to a mobile phone network for use in your car, making it a truly mobile fax machine." in the "Connecting to a Mobile Phone Network" section; and "Imagine the power of being able to send or receive a fax from anywhere in the world fight in your vehicle." in the "Products for the Mobile Office; Cellabs" of N&M).

As per claim 4, the combination of N&M and Rosenbaum teaches the claimed invention as described above and furthermore, N&M teaches that the image sending step can be undertaken while the transporting vehicle is in transit (by disclosing "Imagine the power of being able to send or receive a fax from anywhere in the world fight in your vehicle. Think of time you

Application/Control Number: 90/012,903                                    Page 13
Art Unit: 3992

could save by getting that important document or sending that
order to the office on your way to your next business
appointment." in the "Products for the Mobile Office; Cellabs"
of N&M).

As per claim 6, the combination of N&M and Rosenbaum teaches the claimed invention as described above and furthermore, N&M teaches the step of routing certain portions of the shipping documentation data received at said remote processing center to an interim destination of said package for utilization in loading manifests (i.e. once the system is perfected, drivers will be routing their own loads to appropriate interim or final destinations; see "II. Fax Communication will relieve the companies growth related to problems in routing and billing" section under "DRIVER FAX ORIENTATION" of N&M).

### *4.2    HighwayMaster in view of Rosenbaum (Claims 1-9)*

Claims 1-9 are rejected under 35 U.S.C. 103(a) as being unpatentable over HighwayMaster in view of Rosenbaum.

As per claim 1, HighwayMaster teaches a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center (i.e. the HighwayMaster system includes a Mobile Communication Unit … The Mobile Communication Unit transmits and receives voice and data communication to and from long-haul

Application/Control Number: 90/012,903                                    Page 14
Art Unit: 3992

trucks through the company's private network; see 2nd paragraph
on page 5):

- placing a package on the transporting vehicle (HighwayMaster provides a
  communication system to be used in the long-haul trucks.
  Hence, this step is considered inherent);

- using a portable document scanner to scan an image of the documentation data
  for the package, said image including shipping details of the package; providing a
  portable image processor capable of wirelessly transferring the image from the
  transporting vehicle; wirelessly sending the image to a remote processing center
  (HighwayMaster equipment includes a computerized system
  module in the vehicle, the module provides ports to allow
  for incorporation of equipment, such as a fax machine,
  scanner; see paragraph bridging pages 7-8. Fax Interface
  assists customers in transmission and receipt of documents
  such as bills of lading, permits and detailed instructions
  that a truck driver might need on an immediate basis; see
  "FACSIMILE TRANSMISSION" on page 8); and

- receiving the image at said remote processing center (The Mobile
  Communication Unit transmits and receives voice and data
  communication to and from long-haul trucks through the
  Company's private network. The Company's dispatch software
  package enables a trucking company to optimize the use of

Application/Control Number: 90/012,903                                    Page 15
Art Unit: 3992

> its fleet by processing data transmitted by the Mobile
> Communication Units and performing a variety of fleet
> management functions; see 2nd paragraph on page 5).

HighwayMaster does not teach the further limitation of "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle".  Rosenbaum, however, teaches it by disclosing that "while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee." (Abstract). "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time that the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location.", see Col. 8, lines 42-48)  It would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of HighwayMaster so the package can be directly

Application/Control Number: 90/012,903                              Page 16
Art Unit: 3992

transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As per claim 2, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, Rosenbaum teaches the step of comparing and combining the documentation data received at said remote processing center with similar shipping documentation data of other packages to be delivered from an interim destination and other shipping data, and preparing loading manifests to optimize the loads to be shipped on at least one other transporting vehicle (by disclosing "A sortation program 140 and a resource allocation program 142 are present in memory 19' at the receiving location 28 in Fig. 5, to carry out the sortation of the mail pieces down to the delivery sequence and to carry out the provision of resource allocation information to enable local postal management to have advance warning of a need for additional resources to handle the physical mail pieces to be delivered to the receiving location.", see Col. 12, lines 51- 59).

As per claim 3, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, HighwayMaster teaches that the image sending step is accomplished from onboard the transporting vehicle (HighwayMaster equipment includes a computerized system module in the vehicle, the module provides ports to allow for incorporation of equipment, such as a fax machine, scanner; see

Application/Control Number: 90/012,903                          Page 17
Art Unit: 3992

paragraph bridging pages 7-8. Fax Interface assists customers in transmission and receipt of documents such as bills of lading, permits and detailed instructions that a truck driver might need on an immediate basis; see "FACSIMILE TRANSMISSION" on page 8. The HighwayMaster system enables the driver to communicate while traveling in his vehicle; see 1st paragraph on page 7).

As per claim 4, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, HighwayMaster teaches that the image sending step can be undertaken while the transporting vehicle is in transit (HighwayMaster equipment includes a computerized system module in the vehicle, the module provides ports to allow for incorporation of equipment, such as a fax machine, scanner; see paragraph bridging pages 7-8. Fax Interface assists customers in transmission and receipt of documents such as bills of lading, permits and detailed instructions that a truck driver might need on an immediate basis; see "FACSIMILE TRANSMISSION" on page 8. The HighwayMaster system enables the driver to communicate while traveling in his vehicle; see 1st paragraph on page 7).

As per claim 5, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, HighwayMaster teaches the

Application/Control Number: 90/012,903                                      Page 18
Art Unit: 3992

step of dynamically updating the documentation data sent while the transportation
vehicle is in transit to provide more current data on the shipping status of the package
(The Rolling ETA-TM- instructs system's microprocessor mounted
inside the truck to calculate the estimated arrival time based
upon average speed, hours per day and delivery parameters and
alerts the driver and dispatcher automatically if the truck is
going to miss an arrival time; see 3rd paragraph on page 9).

As per claim 6, the combination of HighwayMaster and Rosenbaum teaches the
claimed invention as described above and furthermore, Rosenbaum teaches the step of
routing certain portions of the shipping documentation data received at said remote
processing center to an interim destination of said package for utilization in loading
manifests (by disclosing "While the mail piece is in transit on the
truck, the knowledge processor completes its analysis and is
able to transmit by electronic communications link to the
destination location, the information that the mail piece is on
its way and the second stage routing information needed to
automatically sort and deliver the mail piece to its corporate
addressee"; see Col. 2, lines 62-68).

As per claim 7, the combination of HighwayMaster and Rosenbaum teaches the
claimed invention as described above and furthermore, HighwayMaster teaches the
step of sending vehicle information to said remote processing center at one or more
times as said transporting vehicle is en route to a destination (the HighwayMaster

Application/Control Number: 90/012,903                              Page 19
Art Unit: 3992

equipment mounted in each truck includes a computerized system
module in the vehicle which contains the positional reporting
device, the cellular transceiver and the on-board computer; see
the paragraph bridging pages 7-8. The positional reporting
device considered as periodically sending at least the current
vehicle location information to the dispatcher/the remote
processing center).

As per claim 8, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, HighwayMaster teaches that said vehicle information includes location data about said transportation vehicle for use in determining loads to be shipped on at least one other transportation vehicle to be loaded at an interim destination (the HighwayMaster equipment mounted in each truck includes a computerized system module in the vehicle which contains the positional reporting device, the cellular transceiver and the on-board computer; see the paragraph bridging pages 7-8. The positional reporting device considered as periodically sending at least the current vehicle location information to the dispatcher/the remote processing center. The Mobile Communication Unit contains a sophisticated navigational tracking device that enables dispatchers to obtain accurate positions reports for trucks located anywhere in the United States and Canada, see 2nd paragraph on page 5).

Application/Control Number: 90/012,903                                    Page 20
Art Unit: 3992

As per claim 9, the combination of HighwayMaster and Rosenbaum teaches the claimed invention as described above and furthermore, HighwayMaster teaches about receiving instructions on board said transportation vehicle for altering the routing of a package on said transportation vehicle en route (The integrated fleet management software enables a trucking company to optimize the use of its fleet by processing data transmitted by its Mobile Communication Units, managing dispatch records, driver logs, state fuel tax calculations, route planning and other functions, see 2nd paragraph on page 9).

### 4.3    Quiet in view of Rosenbaum (Claims 1-5 and 7-9)

Claims 1-5 and 7-9 are rejected under 35 U.S.C. 103(a) as being unpatentable over Quiet in view of Rosenbaum.

This rejection was adopted as proposed in the claim chart submitted by the Requester in the request for reexamination in Section (V)(A)(4) (pages 22-25) which is herein incorporated by reference with additional clarifications provided by the examiner as follows:

With respect to claim 1, as disclosed in the claim chart, Quiet failed but Rosenbaum teaches following limitations: "wirelessly sending the image to a remote processing center; receiving the image at said remote processing center; and prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said

Application/Control Number: 90/012,903                              Page 21
Art Unit: 3992

package for further transport of the package on another transporting vehicle". It would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method taught by Quiet so based on the image of the documentation data of the package received at the remote processing center, the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

### 4.4    *Scapinakis in view of Rosenbaum (Claims 1-2 and 6-9)*

Claims 1-2 and 6-9 are rejected under 35 U.S.C. 103(a) as being unpatentable over Scapinakis in view of Rosenbaum.

This rejection was adopted as proposed in the claim chart submitted by the Requester in the request for reexamination in Section (V)(A)(5) (pages 25-30) which is herein incorporated by reference with additional clarifications provided by the examiner as follows:

With respect to claim 1, as disclosed in the claim chart, Scapinakis teaches every limitation of claim 1 except it does not specifically teach about utilizing, *prior to the package being removed from the transporting vehicle*, said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle. In other words, although Scapinakis, at page 45, discloses that when a package is picked up all relevant information (e.g., origin, destination, names of consignor and consignee, value,

Application/Control Number: 90/012,903　　　　　　　　　　　　Page 22
Art Unit: 3992

weight) is transmitted through a hierarchical computer network to the courier company offices at the destination which enables load planning at intermediate transfer points, as well as at the destination, Scapinakis does not specifically recite about load planning at intermediate transfer points *before the package being removed from the transporting vehicle*.  Rosenbaum, however, teaches it by disclosing that "`while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee.`" (Abstract). "`Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time that the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location.`", see Col. 8, lines 42-48).  It would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of Scapinakis so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

Application/Control Number: 90/012,903                                    Page 23
Art Unit: 3992

### 4.5     Cukor in view of Rosenbaum (Claims 1-2)

Claims 1 and 2 are rejected under 35 U.S.C. 103(a) as being unpatentable over Cukor in view of Rosenbaum.

As per claim 1, Cukor teaches a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center (`i.e. the images of shipping transaction documents are captured by scanners and telefaxed directly to the processing facility; see abstract`):

- placing a package on the transporting vehicle (`by disclosing, "A party desiring to make a shipment may bring the goods to a local terminal, or may call upon the services of a local transportation company to pick up the shipment and deliver it to the carrier's local terminal, or the carrier itself may pick up the shipment at the shipper's facility. The various packages dropped off at the terminal are loaded onto a truck either for local delivery or for transportation to the regional consolidation center", see Col. 1, lines 47-54`);

- using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package (`i.e. at the remote stations, the electronic images of the shipping`

Application/Control Number: 90/012,903                          Page 24
Art Unit: 3992

transaction documents are captured; see Col. 5, lines 33-42);

- providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle; and wirelessly sending the image to a remote processing center (by disclosing, "The remote stations also include means 26 for communicating document images and related information back and forth with the central processing site. As will be explained more fully below, images with their associated header files are transmitted to the central processing station for processing and archiving", see Col. 7, lines 16-21); and

- receiving the image at said remote processing center (by disclosing, "The central processing station will generally receive large numbers of images and associated header records with identifying information from the remote stations", see Col. 10, lines 55-57).

Cukor does not teach the further limitation of "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle". Rosenbaum, however, teaches it by disclosing that "while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is

Application/Control Number: 90/012,903                    Page 25
Art Unit: 3992

able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee." (Abstract). "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time that the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location.", see Col. 8, lines 42-48). It would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of Cukor so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As per claim 2, the combination of Cukor and Rosenbaum teaches the claimed invention as described above and furthermore, Rosenbaum teaches the step of comparing and combining the documentation data received at said remote processing center with similar shipping documentation data of other packages to be delivered from an interim destination and other shipping data, and preparing loading manifests to optimize the loads to be shipped on at least one other transporting vehicle (by disclosing "A sortation program 140 and a resource allocation

Application/Control Number: 90/012,903                                    Page 26
Art Unit: 3992

program 142 are present in memory 19' at the receiving location
28 in Fig. 5, to carry out the sortation of the mail pieces down
to the delivery sequence and to carry out the provision of
resource allocation information to enable local postal
management to have advance warning of a need for additional
resources to handle the physical mail pieces to be delivered to
the receiving location.", see Col. 12, lines 51- 59).


## 5.0    CONCLUSION

➢ Claims 1-9 are rejected.


### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).


### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be

Application/Control Number: 90/012,903                          Page 27
Art Unit: 3992

formally presented pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c).  See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

*37 CFR § 1.530* under "Statement by patent owner in ex parte reexamination; amendment by patent owner in ex parte or inter partes reexamination" states:

*"(e) Status of claims and support for claim changes.  Whenever there is an amendment to the claims pursuant to paragraph (d) of this section, there must also be supplied, on pages separate from the pages containing the changes, the status (i.e., pending or canceled), as of the date of the amendment, of all patent claims and of all added claims, and an explanation of the support in the disclosure of the patent for the changes to the claims made by the amendment paper."*

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action.

Submissions

If the patent owner fails to file a timely and appropriate response to any Office action or any written statement of an interview required under 37 CFR § 1.560(b), the *ex parte* reexamination proceeding will be terminated, and the Director will proceed to issue a certificate under 37 CFR §1.570 in accordance with the last Office action.

Application/Control Number: 90/012,903                                    Page 28
Art Unit: 3992

*Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

*Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 6,401,078 throughout the course of this reexamination proceeding.  The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

**Correspondence relating to this *ex parte* reexamination**

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

    By Mail to:   Mail Stop *Ex Parte* Reexam
                  Central Reexamination Unit
                  Commissioner for Patents
                  United States Patent & Trademark Office
                  P.O. Box 1450
                  Alexandria, VA 22313-1450

Application/Control Number: 90/012,903                                    Page 29
Art Unit: 3992


By FAX to:  (571) 273-9900
            Central Reexamination Unit

By hand:    Customer Service Window
            Randolph Building
            401 Dulany Street
            Alexandria, VA 22314

Registered users of EFS-Web may alternatively submit such correspondence via the

electronic         filing         system         EFS-Web,         at

https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html. EFS-Web offers the

benefit of quick submission to the particular area of the Office that needs to act on the

correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically

uploaded) directly into the official file for the reexamination proceeding, which offers

parties the opportunity to review the content of their submissions after the "soft

scanning" process is complete.

Any inquiry concerning this communication should be directed to Hetul Patel at

telephone number 571-272-4184.


/HETUL PATEL/
Primary Examiner, Art Unit 3992


**Conferees:**

/JAMES MENEFEE/
Primary Examiner, Art Unit 3992

/JENNIFER MCNEIL/
Supervisory Patent Examiner, Art Unit 3992

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. | : | MDL Docket No. 1:09-md-2050 |
| | : | |
| ———————————————— | : | Case No. 1:09-cv-532 |
| | : | Case No. 1:09-cv-179 |
| THIS DOCUMENT APPLIES TO:      : | | Case No. 1:09-cv-445 |
| | : | Case No. 1:09-cv-818 |
| R+L Carriers, Inc., | : | Case No. 1:09-cv-472 |
| | : | Case No. 1:09-cv-502 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Affiliated Computer Services, Inc., | : | |
| DriverTech, LLC, | : | |
| Intermec Technologies Corp., | : | |
| Microdea, Inc., | : | |
| PeopleNetCommunications Corp., and | : | |
| Qualcomm, Inc., | : | |
| | : | |
| Defendants. | : | |

## ORDER ON CLAIM CONSTRUCTION

### Introduction

This a patent infringement case in which Plaintiff R+L Carriers, Inc. alleges that

Defendants Affiliated Computer Services, Inc., DriverTech, LLC, Intermec Technologies

Corp., Microdea, Inc., PeopleNetCommunications Corp., and Qualcomm, Inc. have

induced the infringement of U.S. Patent 6,401,078.  This matter is now before the Court

for claim construction as required by Markman v. Westview Investments, 52 F.3d 967

(1995), aff'd, 517 U.S. 370 (1996).  The parties have filed their respective claim

construction memoranda and on November 12, 2013 the Court held a Markman hearing

during which counsel for the parties presented arguments in support of their respective

A2950

constructions of the claims at issue.

## I. The '078 Patent

U.S. Patent 6,401,078 ("the '078 Patent") claims a method for improving the efficiency of operations for less-than-a-load ("LTL") carriers centered on scanning and transmitting bills of lading from the cab of a truck.  The sole independent claim of the '078 Patent claims the following method:  1) placing a package on the transporting vehicle; 2) using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package; 3) providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle, 4) wirelessly sending the image to a remote processing center; 5) receiving the image at a remote processing center; and 6) prior to the package being removed from the transporting vehicle, utilizing the documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another vehicle.  '078 Patent col. 13, ll. 40-48, col. 14, ll. 1-13.  The gist of the claimed method is to "automate[] the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control."  '078 Patent, Abstract.

## II. Claim Construction Principles

In Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit set forth at length the proper claim construction procedure, including proper use of the specification to interpret claims, consideration of the patent's prosecution history, resort to extrinsic evidence, such as expert testimony, treatises, and dictionaries, and

2

A2951

reiterating that there is a line of demarcation between using the specification to interpret the claims and improperly importing limitations into the claims.  The Court will not recite all of those principles here.  Phillips, however, will be the Court's primary authority in this claim construction exercise.

### III. The Court's Constructions of the Claims

### A. Claims 1, 2, and 6 - "loading manifest"

The sixth step of the claimed method involves using an image of the documentation data at the remote processing center to prepare a "loading manifest" for further shipment of the package. '078 Patent, col. 14, ll .8-12.  Dependent claim 2 teaches combining the documentation data for the package with other packages having similar documentation data in order to create "loading manifests" to optimize the load to be shipped on at least one other transporting vehicle. Id., col. 14, ll. 13-19.  Dependent claim 6 teaches routing the documentation data received at the remote processing center to an interim destination of the package for utilization in "loading manifests."  Id., col. 14, ll. 29-33.

R+L argues that the Court should give "loading manifest" its plain and ordinary meaning - "a document that identifies the cargo of a vehicle."  Defendants propose that this term means "a document that identifies all packages that must be on another transporting vehicle for further shipment."

A person skilled in the art would understand that a "loading manifest" serves two purposes.  First, it identifies the particular cargo or packages the loading dock workers must load into a specific truck for further shipment.  The specification makes this clear. For instance, the specification notes that load planning software can "automatically build

3

a shipping and loading plan to minimize partial loads and keep the shipments on time."
'078 Patent, Col. 6, ll.21-23.  The specification also recites that an "advance loading
manifest" "provide[s] instructions to workers at a destination, informing the workers that
a particular package or item needs to be placed on a particular truck for further shipping
at a particular time."  Id. col. 7, ll. 51-53.  Later, the specification states that a loading
manifest is used to "load and unload (as appropriate) the arriving truck."  Id. col. 13, ll.
16-17.  So, again, the loading manifest tells the dock workers which packages must go
on which trucks.

Second, however, a loading manifest also identifies the specific cargo on a
specific truck.  Indeed, logically it must.  Once the workers load each package identified
on the loading manifest onto the truck, the manifest obviously transforms into a
document that identifies all of the packages or cargo on the truck.  This conclusion is
supported by extrinsic evidence as well.  For instance, Black's Law Dictionary defines
"manifest" as a "[d]ocument used in shipping and warehousing containing a list of the
contents, value, origin, carrier and destination of the goods to be shipped or
warehoused."  BLACK'S LAW DICTIONARY 962 (6th ed. 1990) (emphasis added); Altiris,
Inc. v. Symantec Corp., 318 F.3d 1363, 1369 (Fed. Cir. 2003) ("[D]ictionary definitions
may be consulted in establishing a claim term's ordinary meaning.").

Accordingly, the Court concludes that the proper construction of "loading
manifest" incorporates both parties' definitions of the term.  The Court concludes that
the proper meaning of the term "loading manifest" is "a document that both identifies the
cargo of a vehicle and all the packages that must be on another transporting vehicle for
further shipment."

4

A2953

Claim 1 - "package"

The goal of the claimed method is to increase the efficiency of shipping "packages."  The parties dispute what "package" means.  Although the specification defines "package" as "any item or cargo to be shipped," '078 Patent, col. 6, ll. 52, Defendants want to add a further limitation that "package" refers only to less-than-a-truckload packages because the claimed method is allegedly limited to less-than-a-load applications.

Generally, however, the preamble and stated purpose of an invention are not limitations on the claimed invention.  Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006).  Thus, the fact that the specification states that the purpose of the claimed method is to solve shipping problems in the less-than-a-load trucking industry does not compel a conclusion that the claimed method is limited to less-than-a-load packages.  See Boehringer Ingelheim Vet-Medica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1345 (Fed Cir. 2003) ("An intended use or purpose usually will not limit the scope of a claim because such statements usually do no more than define a context in which the invention operates.").

Moreover, even if the specification describes only a single embodiment, the claim will not be limited to that embodiment unless the specification indicates that the claim is to be so limited.  Warsaw Orthopedic, Inc. v. Globus Med., Inc., 416 Fed. Appx. 67, 70 (Fed. Cir. 2011).  In this case, the specification of the '078 Patent states that it is not intended to be limited to less-than-a-truckload applications, noting specifically that it might be useful in full load shipments where redirection of the load is required.  '078 Patent col. 13 ll. 24-30.  This statement indicates that R+L did not disclaim use of the

5

A2954

claimed method in all but less-than-a-load applications.  See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 909 (Fed. Cir. 2004) ("Absent a clear disclaimer of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context.")(internal brackets omitted).

Accordingly the Court concludes that "package" has the meaning given in the specification - "any item or cargo to be shipped."

### Claims 1, 5 - "transporting vehicle" and "transportation vehicle"

Claim 1 requires the package to be shipped on a "transporting vehicle." Dependent claim 5 refers to "dynamically updating the documentation data" on the "transportation vehicle."

The parties essentially agree on the meaning of these terms.  Defendants, however, again propose to limit the definition of "transporting vehicle" or "transportation vehicle" to less-than-a-load trucks.  This argument is rejected for the reasons just set forth with regard to the term "package."

Accordingly, the Court concludes that "transporting vehicle" and "transportation vehicle" means "a vehicle upon which a package is placed for transportation."

### Claim 1 - "shipping documentation data," "the documentation data," "said documentation data," or "the shipping documentation data"

The parties essentially agree that "shipping documentation data" refers to information about the package being shipped.  R+L proposes a plain and ordinary meaning for this term but proposes an alternative definition that refers to what information "the shipping documentation data" could contain, "such as package

6

A2955

identifier, package weight, package dimension, package destination, delivery requirements, or package current location."  Defendants, on the other hand, propose that "the shipping documentation data must include "package identifier, package weight, package dimension, package destination, delivery requirements, and package current location."  Defendants also contend that the definition of "shipping documentation data" must make clear that it refers to information in a document that the driver receives from the customer.  Defendants argue that the preamble acts as a limitation to this claim term.  Hence, Defendants propose that this term means "information in shipping documents received by the driver of a transporting vehicle from a customer including package weight, package dimension, package destination, package delivery requirements, and package current location."

As an initial matter, the Court disagrees that this term includes a limitation that the shipping documentation data must come from a document provided by the customer to the driver.  In other words, the claim is broad enough to cover a situation - to give one example - where the customer orally gives the shipping information to the driver, who then enters it into his own standard bill of lading form, and which is then transmitted to the remote processing center.  Indeed, the specification indicates that shipping documentation may be "completed by the driver at the time of pickup."  '078 Patent, col. 6, ll. 44-45.  Moreover, the specification indicates that the driver may supplement the shipping information provided by the customer with other information, such as by making notations on the customer's documentation.  Id. col. 8, ll. 29-51, passim.  Clearly then, "documentation data" is not limited to just the information provided to the driver by the customer on a shipping document.

7

Moreover, the specification does not indicate that any particular information <u>must</u> be included in the "shipping documentation data."  The specification states that the documentation data contains "relevant information . . . <u>such as</u> package weight, package dimension, package destination, package delivery requirements, package current location, etc."  '078 Patent, col. 8, ll. 6-9 (emphasis added).  By use of the phrase "such as," the specification clearly sets forth only an exemplary list of items that <u>could be</u> included in the shipping documentation data.  <u>Catalina Mktg Int'l, Inc. v. Coolsavings.com, Inc.</u>, 289 F.3d 801, 811 (Fed. Cir. 2002) ("'Such as' introduces an example of a broader genus rather than limiting the genus to the exemplary species.").  Contrary to Defendants' assertion, this interpretation does not render the claim invalid for indefiniteness because a person skilled in the art would readily understand that the shipping documentation data can include any and all information needed to ship a package from Point A to Point B.

Accordingly, the Court concludes that "shipping documentation data" means "information contained in shipping documents, which may include package identifier, package weight, package dimension, package destination, delivery requirements, or package current location."

<u>Claim 1 - "Wirelessly sending to a remote processing center"</u>

The parties propose similar definitions for this term but R+L contends that Defendants have improperly imported additional limitations into their construction of it.  R+L proposes a plain and ordinary definition for this term, or in the alternative, that it means "transmitting without a fixed or hardwire connection (i.e. in the absence of a communications connection using hard wires) to a facility that processes the

communication and that is remote or sited away from a transporting vehicle."
Defendants' propose that this term means "transmitting without a fixed or hardwire
connection (i.e. in the absence of a communications connection using hard wires) to a
facility at which the shipping documentation data is wirelessly received, loading planning
information is utilized in response to a request, and advance loading manifests are
prepared."  R+L argues that Defendants are adding limitations, most notably what the
remote processing center does with the shipping documentation data, that are
addressed elsewhere in the claims.  The Court agrees.

The doctrine of claim differentiation indicates that one claim should not be
construed to render another claim superfluous.  Comark Comm., Inc. v. Harris Corp.,
156 F.3d 1182, 1187 (Fed. Cir. 1998).  Defendants' proposed definition violates this
principle.  Here, the term under consideration addresses how the shipping
documentation data is transmitted to the remote processing center - that is all.
Defendants, however, want to add into the definition of this term what is done with the
data at the remote processing center - receiving the transmission and performing the
steps necessary to prepare a loading manifest.  Those functions, however, are
addressed in the two steps that follow this term. '078 Patent, col. 14, ll. 6-12.
Defendants' definition renders superfluous the last two steps of the claimed method,
and therefore, must be rejected.

Defendants also propose that the definition of "wirelessly sending" must exclude
use of cellular communications as a means to transmit the image of the documentation
data to the remote processing center.  Defendants first contend that R+L surrendered
cellular communications during the prosecution history of the '078 Patent in order to

9

A2958

overcome the examiner's rejection of the claim as being obvious in view of Caci. Defendants also contend that "wirelessly" must exclude cellular communications because the image of the documentation data will travel on a wire to the remote processing center once the signal from the truck reaches the cell phone tower.  The Court, however, disagrees with both arguments.

First, the Court concludes that R+L did not surrender cellular phone communications during the prosecution history of the patent.  It is true, as Defendants note, that the patent examiner initially rejected claim 1 on the grounds that it would have been obvious to combine the communications system of Caci with the document scanning system of Cukor in order to track and plan the routing of packages being shipped.  See Doc. No. 325-2, at 24.  R+L, however, did not surrender cellular communications in order to overcome the rejection based on Caci.  R+L, rather, distinguished Caci from the claimed method on several grounds, most notably that Caci does not teach imaging documents or preparing loading manifests.  Doc. No. 325-2, at 31-32.  The examiner then allowed claim 1 because the prior art "does not teach using a portable document scanner on a transporting vehicle to scan the shipping documentation data for a package, and then sending that data wirelessly to a remote processing center where the data is used to prepare a loading manifest for further transport of the package.  Doc. No. 325-2, at 38.  Although R+L admittedly amended claim 1 from "sending an image" to "wirelessly sending an image," nothing in this sequence demonstrates an express disclaimer of cellular communications in order to obtain allowance of the claim.  Epistar Corp. v. International Trade Comm'n, 566 F.3d 1321, 1334 (Fed. Cir. 2009) ("A heavy presumption exists that claim terms carry their

10

A2959

full ordinary and customary meaning, <u>unless it can be shown the patentee expressly</u> <u>relinquished claim scope</u>.") (emphasis added)); <u>Schwing GmbH v. Putzmeister</u> <u>Aktiengesellschaft</u>, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002) ("[P]rosecution history . . . cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.").

Moreover, the specification of the '078 Patent is replete with references to using a cellular system as a communications link between the transporting vehicle and the remote processing center.  Column 4 notes that a portable fax machine can be "connected to a variety of communications systems including but not limited to cellular telephones[.]" '078 Patent, col. 4, ll.12-15.  Later in the same column, the specification states that a cellular telephone is one of several systems that could be used to transmit a signal containing information from the bill of lading.  <u>Id.</u>, col. 4, ll. 49-55.  Still later, the specification indicates that cellular phones are preferred for short (line of sight) distances and indicated for medium (line of sight to 100 miles) distances or even for long distances.  <u>Id.</u>  col. 4, ll. 58-65.  Column 5 again identifies a cell phone system as an appropriate communications system.  <u>Id.</u>, col. 5, ll.30-34.  Column 7 states that an image processor can interface with a transmission device, "such as a cellular modem," to transmit an image of the shipping documentation.  <u>Id.</u> col. 7, ll. 12-14.  These references also indicate that R+L did not surrender cellular communications during the prosecution of the patent.  <u>See</u> <u>Anchor Wall Sys., Inc. v. Rockwood Retaining Walls,</u> <u>Inc.</u>, 340 F.3d 1298, 1306 (Fed. Cir. 2003) ("[T]he examination of the written description and drawings is necessary to determine whether the patentee has disclaimed subject

11

A2960

matter or otherwise limited the scope of his claims."); <u>Bowers v. Baystate Tech., Inc.</u>, 320 F.3d 1317, 1328 (Fed. Cir. 2003)("A claim construction that excludes from its scope a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.")(quoting in part <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir.1996)).

        Since the preferred embodiments indicate that the claimed method can utilize cellular communications, the foregoing discussion also illustrates that Defendants' literal construction of "wirelessly sending," in which the image of the documentation data can never travel through a wire must be rejected.  More reasonably understood, "wirelessly sending" only requires that the initial transmission of the image of the documentation data from the transporting vehicle to the communications link occur wirelessly. Thereafter, the claimed method is indifferent to the means by which the image ultimately reaches the remote the processing center.  The specification supports this conclusion. One of the claimed advantages of the patented method is that it liberates the driver from having to make an interim stop to fax shipping documents to the remote processing center - the very point that distinguishes the invention from the method taught by Cukor. <u>See</u> '078 Patent, col. 2, ll. 28-45.  This is also confirmed by Figure 4, which indicates that the scanning and transmitting of the bills of lading "occur while the driver is on board the transportation vehicle or while the truck is in transit."  <u>Id.</u> col. 9, ll. 8-10.  In other words, the point of "wirelessly sending an image to the remote processing center" is to make the scanning and transmission process portable with the truck and/or driver and not to avoid having the image ever travel through a wire.  <u>See</u>, <u>e.g.</u>, col. 9, ll. 14-17 ("The phrase 'on board' is intended to connote the fact that the equipment will travel

with driver and vehicle, and is not limited to any particular location.").

Accordingly, the Court concludes that "wirelessly sending to a remote processing center" means "transmitting without a fixed or hardwire connection (i.e., in the absence of a communications connection using hard wires) to a facility that processes the communication and that is remote or sited away from a transporting vehicle."

Claim 1 - <u>"shipping details of the package"</u>

The second step of the claimed method recites that a portable document scanner will be used to scan an image of the documentation data, "said image including shipping details of the package."  '078 Patent, col. 13, ll. 46-47.  The specification states that the documentation data provided by the customer "may be supplemented by the driver with remarks, weather conditions, corrections, additional details, and otherwise updated en route as applicable."  '078 Patent, col. 6, ll. 45-48.  Defendants contend that "shipping details of the package" <u>must</u> include this information with every package to be shipped; R+L contends that this information <u>may</u> be included with the package to be shipped.

The parties' dispute over this term is the same as their dispute over what information must be included in "documentation data" and should be resolved the same way.  The specification's use of the word "may" clearly signals an exemplary or non-mandatory list of items that could be included in "the shipping details of the package."  BLACK'S LAW DICTIONARY 979 (6th ed. 1990) ("Word 'may' usually is employed to imply permissive, optional, or discretional, and not mandatory action or conduct.").

Accordingly, the Court concludes that "shipping details of the package" means "information about a package, which could include remarks, weather conditions, corrections, and/or error notations."

13

A2962

Claim 1 - "Scan an image of the documentation data"

R+L proposes a plain and ordinary definition for this term, i.e., that it means "to convert a document or picture associated with a package into digital form."  Stated another way, R+L proposes a common sense definition which indicates that the bill of lading or similar documentation that accompanies the package is converted into a digital form or image.

Defendants, on the other hand, contend that this term cannot be construed and, therefore, is invalid due to indefiniteness.  Defendants' position is that because the patent claims use of a portable document scanner "to scan an image of the documentation data," this claim recites a two-step procedure in which an image of the shipping document is created and then the image of the documentation data from the first scan is re-scanned and transmitted.  Defendants argue further that R+L is attempting to overcome this "nonsensical" term by eliminating the requirement to "scan an image" and simply equating this term with "scanning the document."  Defendants contend, however, that the Court cannot construe the term this way because it would not give effect to "scan an image" and because R+L surrendered the scanning of documents during the prosecution of the '078 Patent.

The Court is not persuaded that R+L surrendered document scanning in the prosecution history of the patent.

In its original application, R+L recited a method in claim 7 which, in pertinent part, required shipping documents to be transmitted by "converting a bill of lading into an electronic bill of lading[.]" Doc. No. 325-25, at 18.  The patent examiner rejected claim 7 (as well as Claims 1-4) as being anticipated by the Cukor patent, which disclosed

14

A2963

"telefaxing the shipping document from where the shipment is picked up[.]" Doc. No. 325-26, at 3.

R+L then filed a continuation-in-part application in which claim 1 recited the step of "scanning of an image of the documentation data for the package, said image including shipping details of the package[.]" Doc. No. 325-1, at 50. The patent examiner also rejected this claim as being anticipated by Cukor because Cukor disclosed telefaxing the shipping document at the place where the package is picked up. Doc. No. 325-2, at 23-24. In response to the examiner's rejection, R+L amended claim 1 to read, "using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package[.]" Doc. No. 325-2, at 27. In its remarks to the amendments, R+L conceded that Cukor "does disclose scanning documents," but that it could "find no teaching or suggestion of using a portable document scanner." Doc. No. 325-2, at 30. The examiner subsequently allowed this claim, stating in part that "the prior art of record does not show or teach using a portable document scanner on a transporting vehicle to scan the shipping documentation data for a package[.]" Doc. No. 352-2, at 38.

The Court finds that this sequence does not demonstrate that R+L surrendered scanning documents in the prosecution history. It is accurate that the patent examiner rejected original claim 7 on the grounds that it recited scanning documents. However, there is no indication that R+L recited "scanning an image of the documentation data" in new claim 1 in order to avoid Cukor's reference to telefaxing shipping documents. Indeed, the examiner initially rejected Claim 1 on the grounds that it was anticipated by Cukor, which strongly suggests that the examiner equated "scanning an image of the

15

A2964

documentation data" with "telefaxing the shipping document."  In other words, the patent examiner concluded that "the documentation data" was synonymous with "the shipping document."  Stated another way, the patent examiner essentially concluded that Claim 1 was the same as previously-rejected Claim 7.

The patent examiner, however, ultimately allowed Claim 1 because it was amended to require the use of a portable scanner to scan the documentation data for the package.  Indeed, the patent examiner specifically concluded that the point which distinguished amended Claim 1 from Cukor was the use of a portable document scanner to scan the documentation data.  The amended claim, therefore, was not allowed simply because R+L surrendered scanning and transmitting images of actual documents.  If "documentation data" meant something different from "shipping documents," the patent examiner should have allowed Claim 1 before R+L amended it to include use of a portable document scanner.

Moreover, as R+L correctly argues, the specification of the '078 Patent has numerous references to scanning and transmitting images of actual documents and, thus, supports its definition of this term.  The Summary of the Invention states that "[t]here is a document input system that provides for scanning the paper bill of lading into an electronic data format or electronic bill of lading." '078 Patent, col. 2, ll. 54-57. Figure 1A and the written description of this preferred embodiment state in part that the invention "comprises scanning a document using a scanning/input system[.]" Id., col. 3, ll. 52-53.  Figure 3 is a flow chart depicting the invention.  The specification describing the flow chart states that "[h]aving identified the package and the documentation, the driver loads the package into his truck in step 100 and scans an image of the

16

documentation received creating an electronic representation of the documentation."  Id. col. 6, ll. 66-67, col. 1, ll. 1-2.  Regarding Figure 4, another flow chart, the specification states, "The documentation is scanned into the driver's computing device in step 270." Id. col. 8, ll. 56-58.  In explaining Figure 6, the specification states that "[t]his input device 600 might preferably include a scanner which electronically converts transportation documentation into a electronic image."  Id. col. 11, ll.18-21.  Figure 7 indicates that "transportation documents are sent from the truck[.]"  Id. col. 12, l. 50.  As the Court stated earlier, "a claim construction that excludes from its scope a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support."

Defendants also argue that because R+L claimed scanning shipping documents in subsequent continuation-in-part applications of the '078 Patent, "scanning an image of the documentation data" must have a meaning different from "scanning a shipping document."  The Court is reminded, however, that the doctrine of claim differentiation is not absolute and that sometimes "two claims which read differently can cover the same subject matter."  Tandon Corp. v. U.S. Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987); see also Kraft Foods, Inc. v. International Trading Co., 203 F.3d 1362, 1368 (Fed. Cir. 2000) ("That the patentee chose several words in drafting a particular limitation of one claim, but fewer (though similar) words in drafting the corresponding limitation in another, does not mandate different interpretations of the two limitations, since defining a state of affairs with multiple terms should help, rather than hinder, understanding.")(internal quotation marks omitted).  Here, the specification indicates that "documentation data" is synonymous with the bill of lading or the shipping

17

document itself.  Thus, when the invention recites that the step "scans an image of the documentation data," it really means to "scan an image of the shipping document."

The Court, therefore, concludes that to "scan an image of the documentation data" means "to convert a document or picture associated with a package into digital form."

<u>Dependent Claim 2 - "optimize"</u>

Dependent Claim 2 of the '078 Patent continues the method recited in Claim 1 by adding a limitation "further comprising the step of comparing and combining the documentation data received at said remote processing center with similar shipping documentation data of other packages to be delivered from an interim destination and other shipping data, and preparing loading manifests to optimize the loads to be shipped on at least one other transporting vehicle."  '078 Patent. col. 14, ll.13-19. Defendants argue that the term "optimize" is indefinite and cannot be construed as written in the claims.  Defendants contend that "optimize" provides no objective standard to determine when a load to be shipped falls within the scope of the claim. Defendants argue that, as claimed, whether a shipping load has been optimized depends entirely on R+L's subjective opinion.  R+L, on the other hand, proposes the plain and ordinary meaning of ordinary meaning of "optimize" - "to make the best or most effective use of."   R+L also disputes that the term "optimize" is indefinite because it lacks objective standards.  R+L points out the specification indicates that a truck load is optimized when it leaves the terminal fully loaded.

A claim term is indefinite if it fails to "delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."

Datamize, Inc. v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005).

However, '[o]nly claims not amenable to construction or insolubly ambiguous are

indefinite." Id. (internal quotation marks omitted).  A claim will not be indefinite if it can

be given any reasonable meaning. Id. Defendants are correct that the definition of a

term cannot depend on undefined standards or completely subjective opinions. Id. at

1350, 1352.  Nevertheless, "[i]ntrinsic evidence in the form of the patent specification

and the file history should guide a court toward an acceptable claim construction." Id. at

1348.  In this case, the Court concludes that the specification provides a reasonably

acceptable objective standard for the term "optimize."

The Background of the Invention and the Summary of the Invention indicate two

problems that the claim method is directed to solving - the problems of speeding up the

turn around time for packages at the terminal and having delivery trucks leave the

terminal only partially loaded.  The Background discussion states that the "goal of load

planning is to deliver the freight with the delivery truck leaving the terminal with a full

load." '078 Patent, col. 2, ll.1-3.  The Background also notes that oftentimes, trucks sit

at the terminal idling while load-planning functions are being carried out. Id., col. 2, ll. 3-

6.  Then, there is the problem that freight usually comes to the terminal one truck at a

time, and, because it is unknown what each truck is carrying and the destination of its

contents, trucks often leave the terminal partially loaded. Id. col. 2, ll. 6-11.  The

Background notes that "[m]any of these trucks could have been fully loaded had the

load planner known about unscheduled freight[.]" Id. col. 2, ll.12-14.  The Summary of

the Invention states that by employing the claimed method, "fewer delivery trucks will

depart with partial loads." Id. col. 3, ll. 12-13.

Collectively then, the Background of the Invention and the Summary of the Invention teach that a load is "optimized" when the transportation vehicle leaves the terminal with as full a load as possible at the time of departure and that, on an organizational level, load optimization occurs when as few trucks as possible leave the terminal with partial loads.  Thus, the specification provides a reasonably objective standard for "optimize" since one can readily determine when a delivery truck is as fully loaded as it can be at the time of departure and when it is not.

Defendants also argue that this claim is indefinite because a person skilled in the art would have to make individual subjective choices as to when a load is "optimized" in order to avoid infringement.  During the Markman hearing, Defendants noted that a person skilled in the art would have to continually balance between "fully loaded" and "on time" to determine when a load is "optimized."  In the Court's opinion, however, Defendants have set up a false dilemma. The specification indicates that as between "on time" and "fully loaded" a person of ordinary skill in the art of shipping packages will choose to have the transportation vehicle leave "on time" rather than "fully loaded."  The specification states that "[t]he goal of load planning is to deliver the freight on time with the delivery truck leaving the terminal with a full load."  '078 Patent, col. 2, ll. 1-3.  The specification then goes on to explain the problem of trucks leaving the terminal with partial loads.  This indicates to the Court that when faced with the choice, a person skilled in the art will always choose "on time" over 'fully loaded" otherwise there would never be a problem with trucks leaving the terminal partially loaded.

The Court, therefore, accepts R+L's definition of "optimize" - "making the best or most effective use of."

A2969

<u>Claim 5 - "dynamically updating the documentation data sent"</u>

Dependent claim 5 of the '078 Patent indicates that the shipping documentation data can be "dynamically updated" while "the transportation vehicle is in transit to provide more current data on the shipping status of the package."  Defendants argue that this term cannot be defined and is invalid as indefinite.  Defendants contend that the specification does not indicate how information about a package can be "dynamically updated."  R+L argues that this term simply means that information about the package can be changed in real time - "changes made to the documentation data in real time."

R+L's definition is supported by the specification.  Specifically, columns 12 and 13 describe how the status and estimated time of arrival of the package can be continuously updated through a remote processor on the truck.  The specification also indicates that the remote processor can be used for location updates.  '078 Patent, col. 7, ll. 66-67, col. 1-3.  Moreover, this claim indicates that its purpose is to dynamically update the transit status of the package rather than to dynamically update the documentation data about the package itself.  Stated in full, the claim recites "dynamically updating the documentation data sent while the transportation vehicle is in transit <u>to provide more current data on the shipping status of the package</u>" (emphasis added). '078 Patent, col. 14 ll. 25-28.  The definition of "dynamic" includes "active" and "characterized by continuous change".  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 711 (1971).  Thus, the '078 Patent's use of the word "dynamically" conveys the concept that information about the package can be actively or continuously changed.  R+L's proposed definition captures this concept as well.

Accordingly, the Court concludes that "dynamically updated" means "changes made to the documentation data in real time."

**IT IS SO ORDERED**

Dated: December 31, 2013                    _____s/Sandra S. Beckwith_____
                                            Sandra S. Beckwith
                                            Senior United States District Judge

22

A2971

# EXHIBIT A

Application/Control Number: 90/012,903                                   Page 5
Art Unit: 3992

*vehicle* which includes said package for further transport of the package on another transporting vehicle" (Emphasis added).

While N&M discloses that faxes are received and processed - "Before the last bill of the day is faxed in write on [on] the bill so the girls know that your file is complete and a manifest can be printed as soon as all the bills are entered", the manifest discussed by N&M is a manifest for the **current** shipping vehicle and not an advance loading manifest document for **another** transporting vehicle (See, Fax Machine Instructions – Items 4 & 5 and Driver Fax Orientation – Item V, of N&M).

Rosenbaum discusses, at Abstract and Col. 8, lines 42-48, generating resolved (sorted) address data block before the physical mail pieces arrives at the receiving location, but failed to teach about preparing an advance loading manifest document for another transporting vehicle, as required by the independent claim 1.   Each of HighwayMaster, Quiet, Scapinakis and Cukor fails to cure the deficiency.

Therefore, N&M, Rosenbaum, HighwayMaster, Quiet, Scapinakis and Cukor, whether taken alone or in combination, failed to teach "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare *an advance loading manifest document for another transporting vehicle* which includes said package for further transport of the package on another transporting vehicle" as recited in claim 1.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: Bill of Lading Transmission and | : | MDL  Docket No. 1:09-md-2050 |
| Processing System Patent Litigation. | : |  |
| _____ | : |  |

**O R D E R**

Plaintiff R+L Carriers, Inc. has filed a notice (Doc. No. 358) indicating that the

Patent & Trademark Office intends to allow amended claim 1 upon conclusion of the re-

examination of the patent-in-suit.  The parties shall include in their briefs to be filed

pursuant to the Court's order of February 26, 2014 (Doc. No. 357) their analysis of the

effect on this case, if any, of the PTO's re-examination determination.


Dated: February 27, 2014                    _____s/Sandra S. Beckwith_____
                                                              Sandra S. Beckwith
                                                 Senior United States District Judge

A3091

# EXHIBIT 6

Control No.: 90/012,903
Docket No.:  23189-101

## SUMMARY OF EXAMINER INTERVIEW

The Patent Owner would like to thank Examiners Hetul Patel, James Menefee and Jennifer McNeil for the courtesies extended during the personal interview of February 6th, 2014, to Geoffrey Oberhaus of Dinsmore & Shohl LLP.

After introductions, Mr. Oberhaus discussed a proposed claim amendment to independent claim 1.  The first proposed claim amendment would add the phrase "comprising the steps of" to the claim preamble of claim 1.  The second proposed claim amendment to claim 1 would add the phrase "for another transporting vehicle" after the loading manifest to clarify that the loading manifest is for another transporting vehicle.  Support for the proposed claim amendments were discussed.

After discussing the proposed claim amendment, the claim term "loading manifest for another transporting vehicle" was discussed.  Mr. Oberhaus differentiated a vehicle manifest for the current vehicle from a loading manifest for another transporting vehicle.

Then Mr. Oberhaus and the Examiners discussed the N&M Transfer Co. Prior Art (comprising advertising flyer for Datajack from Cellabs, Ricoh PF-1 Operating Instructions and Manual, and N&M Transfer Co. Driver Fax Orientation Manual)  (hereafter the "N&M").  Mr. Oberhaus noted that N&M only discloses and deals with a manifest for the current vehicle and fails to disclose or suggest a loading manifest for another transporting vehicle.  After reviewing sections of N&M, agreement was reached that N&M does not teach or suggest a loading manifest for another transporting vehicle and that the claim rejection under 35 USC §102  as being anticipated by N&M would be overcome by the proposed claim amendment.

Mr. Oberhaus then discuss Rosenbaum (U.S. Patent No. 5,031,223) (hereafter "Rosenbaum") with the Examiners.  Mr. Oberhaus noted that Rosenbaum is directed to resource allocation and error correction for OCR scans of addresses of postal mail.  Rosenbaum provides for resource allocation for sorting mail, particularly in very high demand times.  Mr. Oberhaus noted that Rosenbaum fails to teach or suggest a loading manifest for another transporting vehicle.  After discussing Rosenbaum further, Mr. Oberhaus and the Examiners discussed an additional amendment to the proposed claim amendments for the phrase "loading manifest for another transporting vehicle", to add the word "document" after "loading manifest".  Tentative Agreement was reached that the proposed claim amendment including the phrase "loading manifest document for another transporting vehicle" would overcome the claim rejection of 35 USC §103 involving N&M in combination with Rosenbaum.  Mr. Oberhaus then noted that all

4

A3194

Case: 1:09-md-02050-SSB-SKB Doc #: 361-6 Filed: 03/03/14 Page: 3 of 3  PAGEID #: 13022

Control No.: 90/012,903
Docket No.: 23189-101

of the remaining rejections under 35 USC §103 should be overcome as the Examiner's rejections all relied on Rosenbaum for the same showing in each of the combinations.  Tentative agreement was reached that all of the rejections under 35 USC §103 would be overcome by the proposed claim amendment discussed in the Interview.

The Examiners and Mr. Oberhaus then discussed whether the word "advance" should be added to "loading manifest" in independent claim 1 for further clarity.  Examiner Patel noted that the '078 Patent Specification refers multiple times to "advance loading manifest".  Tentative Agreement was reached that the proposed claim amendments including the phrase "advance loading manifest document for another transporting vehicle" would overcome all of the claim rejections in the Office Action.

5

A3195

# EXHIBIT 7

| *Ex Parte Reexamination Interview Summary* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/012,903 | 6,401,078  B1 E |
| | Examiner | Art Unit |
| | Hetul Patel | 3992 |

All participants (USPTO personnel, patent owner, patent owner's representative):

| (1) _Hetul Patel_ | (3) _Sudhanshu Pathak_ |
|---|---|
| (2) _Jennifer McNeil_ | (4) _Geoffrey Oberhaus (Reg. No: 42,955)_ |

Date of Interview: _06 February 2014_

Type :  a)☐  Telephonic    b)☐  Video Conference
        c)☒  Personal (copy given to: 1)☐ patent owner    2)☐ patent owner's representative)

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒  No.
   If Yes, brief description: _____

Agreement with respect to the claims  f)☒  was reached.   g)☐  was not reached.   h)☐  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to…"

Claim(s) discussed: _1_.

Identification of prior art discussed: _N&M; and Rosenbaum_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MEPEP § 2281). IF A RESPONSE TO THE LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW (37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED.
**EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

| /Hetul Patel/ Primary Examiner, Art Unit 3992 | /JENNIFER MCNEIL/ Supervisory Patent Examiner, Art Unit 3992 | |
|---|---|---|

cc: Requester (if third party requester)

A3197

**Continuation Sheet (PTOL-474)**                                    **Reexam Control No.  90/012,903**

 Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
During the interview, Mr. Oberhaus discussed the invention of the '078 patent.

Mr. Oberhaus also presented proposed amendment to claim 1.  The proposed amendment to claim 1 included specifically (i) the phrase "comprising the steps of" is added at the end of preamble; (ii) replacing the last limitation "prior to … a loading manifest … on another transporting vehicle." with "prior to … a loading manifest FOR ANOTHER TRANSPORTING VEHICLE… on another transporting vehicle."

Mr. Oberhaus also agreed to possible further amendment of claim 1 such as the following: Replace the term "a loading manifest" in the last limitation with "a ADVANCE loading manifest DOCUMENT".

Mr. Oberhaus pointed out that in paragraph 4 on page "PR00002207" of N&M, it is stated that the manifest can be printed as soon as all the bills are entered.  This manifest simply lists all lading currently on vehicle.  It does not include the instructions to workers at a destination, informing the workers that a particular package or item needs to be placed on another vehicle as required by the proposed claim amendment.
Examiner Patel agreed with Mr. Oberhaus.

Mr. Oberhaus further explained that the Rosenbaum prior art discusses generating resolved (sorted) address data block before the physical mail pieces arrives at the receiving location.  It does not generate an advance loading manifest document, as required by the proposed claim amendment, which will be used for another transporting vehicle.
Examiner Patel responded that he would need to review the Rosenbaum prior art again to determine if the Rosenbaum prior art fails to teach the proposed amended limitation.

No agreement with regards to claim confirmation was reached.

# EXHIBIT 9

Control No.: 90/012,903
Docket No.:  23189-101

## REMARKS

Patent Number 6,401,078 ("the '078 Patent") is subject to this Reexamination and Pending Claims 1 – 9 are currently under reexamination.  Claim 1 has been amended by the present amendment.

### *Claim Rejections Under 35 USC §102*

In the Office Action, the Examiner rejected claims 1, 3-4 and 6 under pre-AIA 35 USC §102(b) as being anticipated by the N&M Transfer Co. Prior Art (comprising advertising flyer for Datajack from Cellabs, Ricoh PF-1 Operating Instructions and Manual, and N&M Transfer Co. Driver Fax Orientation Manual)  (hereafter "N&M"). The Examiner asserted that N&M teaches all the claim limitations for the claimed method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center.[1]

However, as will be set forth in detail below, Patent Owner submits that the methods recited in claims 1-9 as presently amended are not anticipated by N&M.  Accordingly, the rejection is traversed and reconsideration is respectfully requested.

More particularly, claim 1 as presently amended, recites a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: placing a package on the transporting vehicle; using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package; providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle; wirelessly sending the image to a remote processing center; receiving the image at said remote processing center; and prior to the

--------------------------------

[1] The Office Action contains a number of statements reflecting characterizations of the related art and the claims.  Regardless of whether any such statement is identified in this Response, Patent Owner declines to automatically subscribe to any statement or characterization in the Office Action.

7

A3208

Control No.: 90/012,903
Docket No.: 23189-101

package being removed from the transporting vehicle, utilizing said documentation data at said

remote processing center to prepare **an advance loading manifest document for another**

**transporting vehicle** which includes said package for further transport of the package on

another transporting vehicle.

For a prior art reference to anticipate a claim "[t]he identical invention must be shown [in

the prior art reference] in as complete detail as is contained in the . . . claim." *See* MPEP 2131

(quoting *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989)).  A claim may

be anticipated by a prior art reference "only if each and every element as set forth in the claim is

found, either expressly or inherently described, in a single prior art reference." *Id.* (quoting

*Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987)).

N&M discloses a portable fax machine and instructions for drivers of a trucking company

to fax in each bill of lading after a pick up is made ("Fax Machine Instructions – Item 1").  While

N&M disclose that faxes are received and processed – "Before the last bill of the day is faxed in

write on [on] the bill so the girls know that your file is complete and a manifest can be printed as

soon as all the bills are entered", the manifest discussed by N&M is a manifest for the current

shipping vehicle and not an advance loading manifest document for another transporting vehicle.

*See* "Fax Machine Instructions – Items 4 & 5 and Driver Fax Orientation – V." reproduced

below.

```
4.  Before the last bill of the day is faxed in write final on
    on the bill so the girls know that your file is complete and
    a manifest can be printed as soon as all the bills are
    entered.

5.  For the first week you will have to fill out a hand written
    manifest along with faxing in your bills.  This is to make
    sure there are no problems with the computer generated
    manifests and if there are so we can correct them before we
    rely on these manifests only.
```

A3209

Control No.: 90/012,903
Docket No.: 23189-101

> V.    FAX COMMUNICATIONS ADVANTAGES FOR THE DRIVER.
>
> A.    WILL ELIMINATE DRIVER PAPERWORK. HAND WRITTEN MANIFESTS
>        WILL BE ELIMINATED AFTER THE FIRST WEEK OF OPERATION.
>
> B.    FORESIGHT IN TO THIS PROGRAM INCLUDES DRIVERS ROUTING
>        BILLS.

N&M fails to teach, disclose or suggest a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: *inter alia*, prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare **an advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.  Accordingly the methods of claims 1-9, as presently amended, are not anticipated by N&M.  Reconsideration is respectfully requested.

*Claim Rejections Under 35 USC §103*

**N&M in view of Rosenbaum**

In the Official Action, the Examiner rejected Claims 1-4 and 6 under 35 USC § 103(a) as being unpatentable over N&M in view of Rosenbaum (U.S. Patent No. 5,031,223) (hereafter "Rosenbaum").

However, as will be set forth in detail below, Patent Owner submits that the methods recited in claims 1-9, as presently amended, are non-obvious and patentably distinguishable from N&M in view of Rosenbaum.  Accordingly, the rejection is traversed and reconsideration is respectfully requested.

The Examiner has asserted that Rosenbaum discloses "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote

A3210

Control No.: 90/012,903
Docket No.: 23189-101

processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle ("while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee" and "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time than the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location).  The Examiner asserted it would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of N&M so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

    As presently amended, claim 1 recites a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: placing a package on the transporting vehicle; using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package; providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle; wirelessly sending the image to a remote processing center; receiving the image at said remote processing center; and prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare **an advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

10

A3211

Control No.: 90/012,903
Docket No.: 23189-101

To establish prima facie obviousness of a claimed invention, all of the claim limitations must be taught or suggested by the prior art, *In re Royka*, 490 F.2d 981, 180 U.S.P.Q. 580 (CCPA 1971). It is well settled that to support a rejection under 35 U.S.C. § 103(a), a reference must provide an enabling public disclosure, i.e., it must place the claimed invention in the possession of the public, *In re Payne*, 203 U.S.P.Q. 245 (CCPA 1979).

Rosenbaum fails to teach or suggest that prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare **an advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

Moreover, N&M, alone or in combination with Rosenbaum fail to teach, disclose or suggest a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: *inter alia*, prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare **an advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

Accordingly, the methods of claims 1-9 are non-obvious over N&M in view of Rosenbaum. Reconsideration is respectfully requested.

### *HighwayMaster in view of Rosenbaum*

In the Official Action, the Examiner rejected Claims 1-9 under 35 USC § 103(a) as being unpatentable over HighwayMaster 10K Report of March 1997 (hereafter "HighwayMaster") in view of Rosenbaum.

However, as will be set forth in detail below, Patent Owner submits that the methods recited in claims 1-9, as presently amended, are non-obvious and patentably distinguishable from

A3212

Control No.: 90/012,903
Docket No.: 23189-101

HighwayMaster in view of Rosenbaum.    Accordingly, the rejection is traversed and reconsideration is respectfully requested.

In the Office Action, the Examiner conceded that HighwayMaster does not teach or suggest the limitation of "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle." (Page 15 of Office Action dated December 12, 2013).

The Examiner asserted that Rosenbaum discloses "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle ("while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee" and "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time than the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location).  The Examiner asserted it would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of HighwayMaster so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As noted above, Rosenbaum fails to teach or suggest that prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote

A3213

Control No.: 90/012,903
Docket No.: 23189-101

processing center to prepare an advance loading manifest document for another transporting

vehicle which includes said package for further transport of the package on another transporting

vehicle.

The deficiencies of Rosenbaum are not overcome by the combination with

HighwayMaster.  HighwayMaster, alone or in combination with Rosenbaum fail to teach,

disclose or suggest a method for transferring shipping documentation data for a package from a

transporting vehicle to a remote processing center comprising the steps of: *inter alia*, prior to the

package being removed from the transporting vehicle, utilizing said documentation data at said

remote processing center to prepare **an advance loading manifest document for another**

**transporting vehicle** which includes said package for further transport of the package on

another transporting vehicle.

Accordingly, the methods of claims 1-9, as presently amended, are non-obvious over

HighwayMaster in view of Rosenbaum.  Reconsideration is respectfully requested.

### *Quiet in view of Rosenbaum*

In the Official Action, the Examiner rejected Claims 1-5 and 7-9 under 35 USC § 103(a)

as being unpatentable over "The Quiet Revolution in Trucking Services" article in Purchasing

dated March 4, 1993 (hereafter "Quiet") in view of Rosenbaum.

However, as will be set forth in detail below, Patent Owner submits that the methods

recited in claims 1-9, as presently amended, are non-obvious and patentably distinguishable from

Quiet in view of Rosenbaum.  Accordingly, the rejection is traversed and reconsideration is

respectfully requested.

In the Office Action, the Examiner conceded that Quiet does not teach or suggest the

following limitations: "wirelessly sending the image to a remote processing center; receiving the

image at said remote processing center and; prior to the package being removed from the

13

A3214

Control No.: 90/012,903
Docket No.: 23189-101

transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle." (Pages 20-21 of Office Action dated December 12, 2013).

The Examiner repeated the assertion that Rosenbaum discloses "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle ("while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee" and "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time than the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location).  The Examiner asserted it would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of Quiet so based on the image of the documentation data of the package received at the remote processing center, the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As noted above, Rosenbaum fails to teach or suggest that prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare an a**dvance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

14

A3215

Control No.: 90/012,903
Docket No.: 23189-101

The deficiencies of Rosenbaum are not overcome by the combination with Quiet. Quiet, alone or in combination with Rosenbaum fail to teach, disclose or suggest a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: *inter alia*, prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare **an advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

Accordingly, the methods of claims 1-9, as presently amended, are non-obvious over Quiet in view of Rosenbaum. Reconsideration is respectfully requested.

### *Scapinakis in view of Rosenbaum*

In the Official Action, the Examiner rejected Claims 1-2 and 6-9 under 35 USC § 103(a) as being unpatentable over The Scapinakis and Garrison Publication entitled "Communications and Positioning Systems in the Motor Carrier Industry" published 1991-1992 (hereafter "Scapinakis") in view of Rosenbaum.

However, as will be set forth in detail below, Patent Owner submits that the methods recited in claims 1-9, as presently amended, are non-obvious and patentably distinguishable from Scapinakis in view of Rosenbaum. Accordingly, the rejection is traversed and reconsideration is respectfully requested.

In the Office Action, the Examiner conceded that Scapinakis does not teach the following limitation of: "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle." (Pages 21-22 of Office Action dated December 12, 2013).

15

A3216

Control No.: 90/012,903
Docket No.: 23189-101

The Examiner asserted that Rosenbaum discloses "prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle ("while the mail piece is in transit on the truck, the knowledge processor completes its analysis and is able to transmit by electronic communications link to the destination location, the information that the mail piece is on its way and the second stage routing information needed to automatically sort and deliver the mail piece to its corporate addressee" and "Since the resolved address data block 40 can be transmitted over the communication link 29 at an earlier time than the expected time of arrival of the physical mail piece 22 at the receiving location 28, the information contained in the resolved address data block 40 can be used at the receiving location 28 to allocate resources at the destination location).  The Examiner asserted it would have been obvious to one of ordinary skill in the art at the time of the current invention was made to implement the teachings of Rosenbaum into the method of Scapinakis so the package can be directly transferred to another vehicle based on the new loading manifest without temporarily unloading at the interim destination.

As noted above, Rosenbaum fails to teach or suggest that prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare an **advance loading manifest document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

The deficiencies of Rosenbaum are not overcome by the combination with Scapinakis. Scapinakis, alone or in combination with Rosenbaum fail to teach, disclose or suggest a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center comprising the steps of: *inter alia*, prior to the package being removed

16

A3217

Control No.: 90/012,903
Docket No.: 23189-101

from the transporting vehicle, utilizing said documentation data at said remote processing center

to prepare **an advance loading manifest document for another transporting vehicle** which

includes said package for further transport of the package on another transporting vehicle.

Accordingly, the methods of claims 1-9, as presently amended, are non-obvious over

Scapinakis in view of Rosenbaum.  Reconsideration is respectfully requested.

### *Cukor in view of Rosenbaum*

In the Official Action, the Examiner rejected Claims 1 and 2 under 35 USC § 103(a) as

being unpatentable over Cukor (U.S. Patent No. 5,168,444 (hereafter "Cukor") in view of

Rosenbaum.

However, as will be set forth in detail below, Patent Owner submits that the methods

recited in claims 1-9, as presently amended, are non-obvious and patentably distinguishable from

Cukor in view of Rosenbaum.  Accordingly, the rejection is traversed and reconsideration is

respectfully requested.

In the Office Action, the Examiner conceded that Cukor does not teach or suggest the

following limitation of: "prior to the package being removed from the transporting vehicle,

utilizing said documentation data at said remote processing center to prepare a loading manifest

which includes said package for further transport of the package on another transporting

vehicle." (Page 24 of Office Action dated December 12, 2013).

The Examiner asserted that Rosenbaum discloses "prior to the package being removed

from the transporting vehicle, utilizing said documentation data at said remote processing center

to prepare a loading manifest which includes said package for further transport of the package on

another transporting vehicle ("while the mail piece is in transit on the truck, the knowledge

processor completes its analysis and is able to transmit by electronic communications link to the

destination location, the information that the mail piece is on its way and the second stage

17

Control No.: 90/012,903
Docket No.: 23189-101

routing information needed to automatically sort and deliver the mail piece to its corporate

addressee" and "Since the resolved address data block 40 can be transmitted over the

communication link 29 at an earlier time than the expected time of arrival of the physical mail

piece 22 at the receiving location 28, the information contained in the resolved address data

block 40 can be used at the receiving location 28 to allocate resources at the destination

location).  The Examiner asserted it would have been obvious to one of ordinary skill in the art at

the time of the current invention was made to implement the teachings of Rosenbaum into the

method of Cukor so the package can be directly transferred to another vehicle based on the new

loading manifest without temporarily unloading at the interim destination.

As noted above, Rosenbaum fails to teach or suggest that prior to the package being

removed from the transporting vehicle, utilizing said documentation data at said remote

processing center to prepare an **advance loading manifest document for another transporting

vehicle** which includes said package for further transport of the package on another transporting

vehicle.

The deficiencies of Rosenbaum are not overcome by the combination with Cukor.

Cukor, alone or in combination with Rosenbaum fail to teach, disclose or suggest a method for

transferring shipping documentation data for a package from a transporting vehicle to a remote

processing center comprising the steps of: *inter alia*, prior to the package being removed from

the transporting vehicle, utilizing said documentation data at said remote processing center to

prepare **an advance loading manifest document for another transporting vehicle** which

includes said package for further transport of the package on another transporting vehicle.

Accordingly, the methods of claims 1-9, as presently amended, are non-obvious over

Cukor in view of Rosenbaum.  Reconsideration is respectfully requested.

*__No Disclaimers or Disavowals__*

A3219

Control No.: 90/012,903
Docket No.:  23189-101

Although the present communication may include alteration to the claims, or characterizations of claim scope or referenced art, Patent Owner is not conceding in this application that previously granted claims are not patentable over the cited references.  Rather, any alterations or characterizations are being made solely to clarify the previously granted claims and, for convenience, to facilitate expeditious prosecution of this application.  Patent Owner reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution.  Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Patent Owner has made any disclaimers or disavowals of any subject matter supported by the present application or of any purported claim scope.

### *Conclusion*

It is believed the above represents a complete response to the rejections of the claims under 35 U.S.C. §§102 and 103, and places the present application in condition for allowance.

Should the Examiner have any remaining concerns that might prevent the prompt indication of allowability of all pending claims, the Examiner is respectfully invited to contact the undersigned at the telephone number below. Please charge any additional fees required in connection with the present communication, or credit any overpayment, to Deposit Account No. 04-1133.

Respectfully submitted,

/Geoffrey L. Oberhaus/
Geoffrey L. Oberhaus
Registration No. 42,955
Attorney for Patent Owner
DINSMORE & SHOHL LLP
255 East Fifth Street
Suite 1900
Cincinnati, Ohio 45202
(513) 977-8623

19

A3220

# EXHIBIT
# C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | MDL Docket No. 1:09-md-2050 |
| **IN RE:  Bill of Lading Transmission and** | ) | |
| **Processing System Patent Litigation** | ) | JUDGE BECKWITH |
| | ) | |
| | ) | **ALL CASES** |
| | ) | |

## DEFENDANTS' AND DECLARATORY JUDGMENT PLAINTIFFS' BRIEF REGARDING THE SUBSTANTIVE CHANGES TO AND IMPERMISSIBLE AMENDMENT OF THE ASSERTED CLAIMS

**TABLE OF CONTENTS**

Page

Introduction _____ 1

Argument _____ 5

   I.   R+L Admits that It Amended Claim 1 for an Impermissible Purpose _____ 5

   II.  R+L Impermissibly Broadened Claim 1 by the Addition of an "Open" Transitional Phrase, Thereby Invalidating the Claims _____ 6

   III. R+L's Substantive Narrowing Amendments Preclude Any Finding of Induced Infringement and Any Award of Past Damages _____ 11

Conclusion _____ 16

A3274

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013) (Plager, J., concurring).........................................8

*In re Abele*,
  684 F.2d 902 (CCPA 1982) ....................................................................................6

*AFG Industries, Inc. v. Cardinal IG Company, Inc.*,
  239 F.3d 1239 (Fed. Cir. 2001)..............................................................................6

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)................................................................................8

*Autogiro Co. of Am. v. United States*,
  384 F.2d 391, 181 Ct.Cl. 55, 155 USPQ 697 (1967)...........................................10

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006)..............................................................................10

*Biovail Labs. Int'l v. Impax Labs., Inc.*,
  433 F. Supp. 2d 501 (E.D. Pa. 2006) .....................................................................7

*Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*,
  129 F.3d 1247 (Fed. Cir. 1997)...............................................................2, 3, 11, 12

*Carman Indus., Inc. v. Wahl*,
  724 F.2d 932, 220 USPQ 481 (Fed. Cir. 1983) ....................................................10

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)................................................................................7

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002)............................................................................15

*Commil USA, LLC v. Cisco Sys., Inc.*,
  720 F.3d 1361 (Fed. Cir. 2013).............................................................................11

*eBay Inc. v. PartsRiver, Inc.*,
  2011 WL 1754083 ..................................................................................................4

*Ernie Ball, Inc. v. Earvana, LLC*,
  502 F. App'x 971 (Fed. Cir. 2013) .........................................................................4

A3275

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994).........................................................................1

*Function Media L.L.C. v. Google, Inc.*,
   2009 WL 3260566 (E.D.Tex. Oct. 9, 2009) *aff'd* 708 F.3d 1310 (Fed. Cir.
   2013) ..............................................................................................................4

*Genentech, Inc., v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997)........................................................................6

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
   195 F.3d 1322 (Fed. Cir. 1999)......................................................................6

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)......................................................................8

*Kim v. Earthgrains Co.*,
   451 F. App'x 922 (Fed. Cir. 2011) ............................................................4, 10

*Laitram Corp. v. NEC Corp.*,
   163 F.3d 1342 (Fed. Cir. 1998).................................................................12, 14

*Merck & Co. v. Teva Pharms. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)....................................................................10

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004)....................................................................15

*Momentus Golf, Inc. v. Swingrite Golf Corp.*,
   312 F. Supp. 2d 1134 (S.D. Iowa 2004) ........................................................9

*PPG Indus. v. Guardian Indus.*,
   156 F.3d 1351 (Fed. Cir. 1998)...............................................................7, 9, 10

*Porto Tech. Co. v. Cellco P'ship*,
   2013 WL 6571844 (E.D. Va. Dec. 13, 2013) ................................................4

*Quantum Corp. v. Rodime*,
   PLC, 65 F.3d 1577 (Fed. Cir. 1995) .........................................................4, 11

*Senju Pharm. Co. v. Apotex Inc*.,
   2014 WL 1272839 (Fed. Cir. Mar. 31, 2014).................................................1

*Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*,
   279 F. App'x 989 (Fed. Cir. 2008) ................................................................5

A3276

*Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*,
    464 F. Supp. 2d 588 (N.D. Tex. 2006), *aff'd* 279 F. App'x 989 (Fed. Cir.
    2008) ...................................................................................................................5

*Thermalloy Inc. v. Aavid Eng'g, Inc.*,
    935 F. Supp. 55 (D.N.H. 1996), *aff'd*, 121 F.3d 691 (Fed. Cir. 1997) ...............................3, 11

*Thermalloy, Inc. v. Aavid Engineering, Inc.*,
    121 F.3d 691 (Fed. Cir. 1997).....................................................................................4

*Total Containment, Inc. v. Environ Prods., Inc.*,
    921 F. Supp. 1355 (E.D. Pa. 1995) ...........................................................................5

**Rules and Statutes**

35 U.S.C. § 102 ...........................................................................................................12

35 U.S.C. § 112 ......................................................................................................8, 12

35 U.S.C. §§ 252, 307(b) ......................................................................................2, 4, 12

35 U.S.C. § 305 ...............................................................................1, 3, 4, 5, 6, 10, 11

35 USC §103 .........................................................................................................12, 13

Fed. R. Civ. P. 56 ....................................................................................................4, 16

**Other Authorities**

37 CFR 1.133(b) ........................................................................................................13

MOY'S WALKER ON PATENTS § 4.96.............................................................................6

WILLISTON ON CONTRACTS § 32:12 (4th ed.) ...............................................................8

A3277

Pursuant to the Court's March 31, 2014 Order (Doc. 365), Defendants Intermec Technologies Corp. ("Intermec"), FFE Transportation Services, Inc. ("FFE"), Microdea, Inc. ("Microdea"), Qualcomm Incorporated ("Qualcomm"), and Xerox Business Services, LLC f/k/a Affiliated Computer Services, Inc. ("XBS") and Declaratory Judgment Plaintiffs DriverTech, LLC ("DriverTech") and PeopleNet Communications Corporation ("PeopleNet") (collectively, "Defendants") respectfully submit this brief addressing whether the amendments to U.S. Patent No. 6,401,078 (the "'078 Patent") made during the recently-concluded reexamination proceedings resulted in substantive changes to Claim 1 and/or impermissibly broadened the scope of Claim 1.

## INTRODUCTION

A patent owner's ability to amend claims during reexamination is statutorily constrained. *Senju Pharm. Co. v. Apotex Inc.*, 2014 WL 1272839, at *7 (Fed. Cir. Mar. 31, 2014). Specifically, the patent owner can propose a claim amendment only: (1) "to distinguish the invention as claimed from the prior art"; or (2) "in response to a decision adverse to the patentability of a claim." 35 U.S.C. § 305; *see also In re Freeman*, 30 F.3d 1459, 1468 (Fed. Cir. 1994) (citations omitted) ("[A]mendment of claims during reexamination is limited to amendment in light of prior art raising a substantial new question of patentability."). Furthermore, the Federal Circuit has "strictly interpreted § 305 to prohibit any broadening amendments. The reexamined claim cannot be broader in any respect, even if it is narrowed in other respects. Therefore, while reexamination allows certain changes in the patent, such changes are strictly circumscribed by the original patent's disclosure and claim scope." *Senju Pharm.*, 2014 WL 1272839, at *7 (citation omitted).

- 1 -

In addition, while the patent owner can narrow a claim during reexamination, this has two important effects.  First, it creates an irrebuttable presumption that the original claims are invalid. *See Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc*., 129 F.3d 1247, 1249 (Fed. Cir. 1997).  Second, the patent owner cannot recover for infringement of the broader claims as they existed prior to amendment.  *See* 35 U.S.C. §§ 252, 307(b); *Bloom*, 129 F.3d at 1250 (Fed. Cir. 1997).

R+L sought *ex parte* reexamination, asserting that six prior art references presented five substantial new questions of patentability ("SNQs") regarding the claims of the '078 Patent.[1] The United States Patent and Trademark Office ("USPTO") agreed that these references raised SNQs, and it rejected R+L's arguments that the claims should not be rejected in light of this prior art.  Ultimately, R+L made two amendments to Claim 1 of the '078 Patent as follows:

> 1. (Amended) A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center **comprising the steps of**:
>
> * * *
>
> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare [a] **an advance** loading manifest **document for another transporting vehicle** which includes said package for further transport of the package on another transporting vehicle.

Exhibit 1, 2/12/2014 Amendment and Response ("Amendment") at 2 (underlining indicating additions, brackets indicating deletions).  The first amendment was an impermissible broadening amendment unrelated to either the prior art or any rejection made by the USPTO, which renders

---

[1]  Specifically, R+L's petition requested consideration of the following issues:  (1) whether claims 1, 3, 4, and 6 are anticipated by the N&M Printed Publications; (2) whether claims 1-4 and 6 are obvious in view of the N&M Printed Publications and Rosenbaum '223; (3) whether claims 1-9 are obvious in view of the HighwayMaster 10K Publication and Rosenbaum '223; (4) whether claims 1-5 and 7-9 are obvious in view of the Quiet Revolution Article and Rosenbaum '223; whether claims 1-2 and 6-9 are obvious in view of the Scapinakis Publication and Rosenbaum '223; and (5) whether claims 1 and 2 are obvious in view of Cukor '444 and Rosenbaum '223.

all claims invalid.  *See Thermalloy Inc. v. Aavid Eng'g, Inc.*, 935 F. Supp. 55, 60 & n.5 (D.N.H. 1996) (invalidating dependent claims because independent claim was impermissibly broadened during reexamination), *aff'd*, 121 F.3d 691 (Fed. Cir. 1997).  The second amendment was a permissible, but substantively narrowing amendment to overcome a prior art rejection that defeats R+L's inducement claim, or, at a minimum, severely limits any damages that could be recovered.  *See Bloom*, 129 F.3d at 1249-50.

As to the first amendment, Claim 1 is invalid because R+L impermissibly added the transitional phrase "comprising the steps of."  First, R+L has already admitted that this amendment was not for one of the two allowable purposes in reexamination – *i.e.*, "to distinguish the invention as claimed from the prior art" or "in response to a decision adverse to the patentability of a claim."  *See* 35 U.S.C. § 305.  Instead, R+L stated that the purpose of the amendment was "to clarify and make the original transitional claim language express and consistent with the dependent claims."  R+L Carriers, Inc.'s Reply to Defendant's Supplemental Briefing Filed on March 3, 2014 (Doc. 362) ("R+L Supplement") at 5, n.2.  Second, this amendment broadened the claims of the '078 Patent by converting the "body" of the claim to a "preamble" and by transforming Claim 1 to an "open" claim.

At the same time, R+L substantively narrowed the "loading manifest" term to overcome the prior art by, among other amendments, adding the term "advance."  The narrowing nature of the amendment is confirmed by the file history of the reexamination, the '078 Patent's specification, and the prosecution history of related applications.  That amendment defeats R+L's claim of induced infringement – the only theory of infringement remaining in this case – because it creates an irrebuttable presumption that the original claims are invalid and thus precludes any finding that Defendants had the requisite intent to induce infringement.  At a minimum, the

- 3 -

A3280

amendment precludes recovery for any damages prior to the date of issuance of the reexamined claims.

In resolving claim construction disputes, courts routinely address related dispositive issues of invalidity. *See., e.g., Ernie Ball, Inc. v. Earvana, LLC,* 502 F. App'x 971, 978-79 (Fed. Cir. 2013) (reversing judgment of infringement and holding the claims at issue invalid for failure to satisfy the definiteness standard); *Porto Tech. Co. v. Cellco P'ship,* 2013 WL 6571844, at *8 (E.D. Va. Dec. 13, 2013) (invalidating claims in a Markman order); *Function Media L.L.C. v. Google, Inc*., 2009 WL 3260566, at * 6 (E.D.Tex. Oct. 9, 2009) (same) *aff'd* 708 F.3d 1310, 1329 (Fed. Cir. 2013).  Whether claims have been enlarged or narrowed is a matter of claim construction, which is a question of law.  *See Thermalloy, Inc. v. Aavid Engineering, Inc.,* 121 F.3d 691, 692 (Fed. Cir. 1997) (affirming summary judgment of invalidity for improper broadening); *Quantum Corp. v. Rodime,* PLC, 65 F.3d 1577, 1580 (Fed. Cir. 1995) (same); *Kim v. Earthgrains Co*., 451 F. App'x 922, 925 (Fed. Cir. 2011) (affirming summary judgment that patentee narrowed claims in reexamination by replacing "consisting essentially of" with the more narrow "consisting of" transitional phrase); *eBay Inc. v. PartsRiver, Inc.,* 2011 WL 1754083 N.D. Cal. May 9, 2011) (holding that a plain reading of the amended claims shows that they are substantively different and summarily adjudicating that patentee may not seek damages for infringement before the date of the reexamination certificate).  Because R+L's amendments render the claims invalid and moot the factual and legal bases for its infringement claims as a matter of law, in resolving the parties' claim construction disputes related to the amendments, a final judgment of invalidity and non-infringement should be entered in Defendants' favor under Fed. R. Civ. P. 56.  *See* 35 U.S.C. § 305; 35 U.S.C. §§ 252, 307(b).

## ARGUMENT

### I.  R+L ADMITS THAT IT AMENDED CLAIM 1 FOR AN IMPERMISSIBLE PURPOSE

By admitting that it amended Claim 1 to include "comprising the steps of" to "clarify and make the original transitional claim language express and consistent with the dependent claims," instead of in response to an adverse decision as to the patentability of the claims, R+L has also admitted that the amendment violates § 305.  R+L Supplement at 5, n.2.  Under 35 U.S.C. § 305, a patent owner may propose an amendment only to distinguish the claimed invention from the prior art or to respond to an adverse decision as to the patentability of one of the claims.  *Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc*., 279 F. App'x 989, 992 (Fed. Cir. 2008) (affirming summary judgment of invalidity for improper claim amendment under 35 U.S.C. § 305) (quotation omitted).  Amendment on any other grounds is improper and renders the amended claim invalid.  *See, e.g., Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*, 464 F. Supp. 2d 588, 596 (N.D. Tex. 2006) ("Collins's own 'Patent Owner's Statement Under 37 C.F.R. § 1.530(b)' reveals that Collins added claims 4–14 'to preclude any interpretation of the claims in accordance with the district court's opinions . . . in the litigation with Nortel.' . . . Because preclusion of the application of a prior claim construction is not a proper purpose for amendment under 35 U.S.C. § 305, claims 4–14 of the '589 patent are invalid and summary judgment is granted in favor of Plaintiffs on this issue."), *aff'd* 279 F. App'x 989 (Fed. Cir. 2008); *Total Containment, Inc. v. Environ Prods., Inc.,* 921 F. Supp. 1355, 1383 (E.D. Pa. 1995) ("[New] Claim 19 does not comply with the statute.  It was submitted because of a potentially infringing apparatus, not because it distinguished the invention from prior art raising a substantial new question of patentability.  It violates 35 U.S.C. § 305 and is, therefore, invalid."); *aff'd in part on other grounds*, 106 F.3d 427 (Fed. Cir. 1997).

In view of R+L's candid admission that it did not add "comprising the steps of" to distinguish the prior art or in response to an adverse decision on patentability, the Court should determine that R+L violated § 305 and that Claim 1 is therefore invalid.  Because the dependent claims necessarily include the language of Claim 1, *see, e.g.*, *In re Abele*, 684 F.2d 902, 907 (CCPA 1982), they are invalid under § 305 for the same reasons as Claim 1.  Thus, the Court should determine that all claims of the '078 Patent are invalid.

## II.     R+L Impermissibly Broadened Claim 1 by the Addition of an "Open" Transitional Phrase, Thereby Invalidating the Claims

In addition to being for an improper purpose, the addition of the phrase "comprising the steps of" to Claim 1 improperly added a new "open" and broadening transitional phrase to the claim.  Patent claims are typically organized into three sub-parts: preamble, transitional phrase, and body, in that order.  *See* Moy's Walker on Patents § 4.96.  A claim's transitional phrase "describes the degree to which the statements set-out in the body should be understood as either inclusive or exclusive."  *Id.* at § 4.98.  Generally, there are three categories of transitional phrases – open-ended, closed-ended, and intermediary – and the scope of the claim will depend on which category of transition is used.  *See, e.g., Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) (discussing the impact on claim scope of different transitional phrases).  Use of the transitional term "comprising" means the claim is "open-ended," such "that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."  *Genentech, Inc., v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).  "'[C]losed' transition phrases such as 'consisting of' are understood to exclude any elements . . . not specified in the claim."  *AFG Industries, Inc. v. Cardinal IG Company, Inc.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001).  And, "consisting essentially of" is an "intermediary" transitional term by which "the drafter signals that the invention necessarily

- 6 -

A3283

includes the listed [elements] and is open to unlisted [elements] that do not materially affect the basic and novel properties of the invention." *PPG Indus. v. Guardian Indus.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998); *see also id.* ("A 'consisting essentially of' claim occupies a middle ground between closed claims that are written in a 'consisting of' format and fully open claims that are drafted in a 'comprising' format.")

Original Claim 1 of the '078 Patent lacked any transitional phrase. By adding a transition by amendment, R+L changed the scope of its claims in two ways. First, R+L moved language that was in the body of the claim into the preamble. And, second, R+L changed the claim from being either closed-ended or intermediary to open-ended. Both changes were improper.

First, when a claim lacks a transitional phrase, all of the claim language is considered a part of the "body" that recites substantive limitations. *See, e.g., Biovail Labs. Int'l v. Impax Labs., Inc.*, 433 F. Supp. 2d 501, 507 (E.D. Pa. 2006). Thus, in original Claim 1, all of the language in the claim was a part of the substantive body of the claim. When R+L amended the claim, however, it moved language from the body into the preamble. The position of the language within the claim structure can have an effect on the scope of a claim. *See Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 810–11 (Fed. Cir. 2002) (holding a term found in the preamble of one claim and in both the preamble and body of another was a limitation on the claim of which it formed part of the body but not just in the preamble). By moving language from the body of the claim into the preamble, R+L converted that language from clearly limiting (because it was in the body of the claim) to language that could, depending on the circumstances, be interpreted as non-limiting (because it was moved into the preamble). Therefore, R+L improperly changed the scope of its claim.

Moreover, the amendment also changed claim scope by adding an "open" transition where one previously did not exist.  At best, whether original Claim 1 was intended to be open-ended, closed-ended, or intermediary is ambiguous.  R+L admits as much by stating that the amendment was meant "to ***clarify*** and make the original transitional claim language express." R+L Supplement at 5, n.2 (emphasis added).  Such ambiguity is resolved in favor of a narrower interpretation because, as the party drafting the claims, R+L bore the "claim drafting burden[] . . . [of] pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  *Athletic Alternatives, Inc. v. Prince Mfg., Inc*., 73 F.3d 1573, 1581 (Fed. Cir. 1996) (emphasis in original).  "Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, . . . the notice function of the claim [is] best served by adopting the narrower meaning."  *Id.*; *see also 3M Innovative Props. Co. v. Tredegar Corp.,* 725 F.3d 1315, 1336 (Fed. Cir. 2013) (Plager, J., concurring) ("Cases like this—claim construction issues such as this one—may well deserve application of a principle analogous to the contract doctrine of *contra proferentem.  See* WILLISTON ON CONTRACTS § 32:12 (4th ed.). . . . Without labeling it as such, we have already used this principle to construe claims for compliance with 35 U.S.C. § 112." (citations omitted)).   Resolving the ambiguity as R+L proposes, in a way that gives the original claim "the broadest possible construction . . . would undermine the notice function of the claims because it would allow [R+L] to benefit from the ambiguity, rather than requiring [R+L] to give proper notice of the scope of the claims to competitors."  *Halliburton Energy Servs., Inc. v. M-I LLC,* 514 F.3d 1244, 1254 (Fed. Cir. 2008).

The open transitional phrases in dependent Claims 2, 5-7, and 9,[2] do not dictate a different result.  Dependent claims are not required to use the same transitional phrase as the claim from which they depend.  *See, e.g., Momentus Golf, Inc. v. Swingrite Golf Corp.,* 312 F. Supp. 2d 1134, 1144 (S.D. Iowa 2004) (dependent claims recited "comprising" while independent claims recited "consisting essentially of").  Moreover, an open transition in dependent Claims 2, 5-7, and 9 is consistent with the conclusion that Claim 1 is partially closed, *i.e.*, as if the claim used the transition "consisting essentially of."[3]  *See id.* (holding claim using "consisting essentially of" partially open, despite dependent claims using "comprising").  The dependent claims do not "materially affect the basic and novel properties of the invention" such

---

[2] R+L also argues that Defendant's Invalidity Contentions support an "open" construction.  This argument is wrong and misleading because Defendants specifically explain:

> [I]n preparing these Invalidity Contentions, Defendants have relied, to the extent possible, on their current interpretation of the Asserted Claims and Plaintiff's apparent constructions as set forth in Plaintiff's Infringement Contentions, Amended Complaints, and Amended Counter-Claims…. Should the claims be construed or asserted differently than Defendants' current understanding of the claims or Plaintiff's apparent constructions, Defendants reserve the right to modify, amend, or supplement these Invalidity Contentions as provided by the Local Rules and the Federal Rules of Civil Procedure.
>
> ***Defendants' Invalidity Contentions should not be construed as a suggestion or an admission that Plaintiff's apparent claim constructions are correct***.  Indeed, in many instances, if not all, ***Defendants object and disagree with the apparent claim constructions Plaintiff has offered in Plaintiff's Infringement Contentions as such constructions (1) are unsupported or contradicted by the intrinsic and extrinsic record relating to the '078 Patent and applications related thereto and (2) would impermissibly read-out one or more limitations of the Asserted Claims.…***

R+L Supplement at Exhibit C at 2-3.

[3] "By using the term 'consisting essentially of,' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention.  A 'consisting essentially of' claim occupies a middle ground between closed claims that are written in a 'consisting of' format and fully open claims that are drafted in a 'comprising' format."  *PPG Indus.*, 156 F.3d at 1354.

that original Claim 1 is unambiguously "open." *PPG Indus.*, 156 F.3d at 1354.  Instead, at best, there is an equal choice between the broader open interpretation and the narrower partially open interpretation.  In that situation, the narrower interpretation is the correct one.  *See supra* at 8.

On the other hand, R+L's contention that its claims have not substantively changed violates the well-established rule that "claims are interpreted with an eye toward giving effect to all terms in the claim."  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).  The word "comprising" was added to the claims, and a "claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."  *Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005).  R+L's proposal violates this principle and asks the court to give no meaning to this claim amendment.

Finally, R+L can offer no cogent reason why an amendment to add an open transition phrase, when none previously existed, does not broaden the scope of the claim.  *Cf. Kim v. Earthgrains Co.,* 451 F. App'x 922, 925 (Fed. Cir. 2011) ("Kim fails to offer any cogent reason why the phrases 'consisting of' and 'consisting essentially of,' in her patent, are of identical scope.").  Such an argument would defy logic.  "Why, if the claims are of identical scope, did [R+L] amend them?  Nothing in the intrinsic record indicates that these terms, contrary to general convention, are identical in substance."  *Id.*

Because R+L impermissibly amended and impermissibly broadened Claim 1, the claim is invalid under 35 U.S.C. § 305.[4]  Because the amendment also necessarily broadened the claims

---

[4] The court should not attempt to construe the claims so as to avoid invalidity under § 305.  As the Federal Circuit has explained:

> Although we construe claims, if possible, so as to sustain their validity, *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 937 n. 5, 220 USPQ 481, 485 n. 5 (Fed. Cir. 1983), it is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims. *Autogiro Co. of Am. v. United States*,

- 10 -

A3287

dependent on Claim 1, those claims are invalid as well.  *See Thermalloy*, 935 F. Supp. at 60 & n.5.  Thus, the Court should determine that all claims are invalid under 35 U.S.C. § 305 and dismiss R+L's claims with prejudice.

### III.  R+L'S SUBSTANTIVE NARROWING AMENDMENTS PRECLUDE ANY FINDING OF INDUCED INFRINGEMENT AND ANY AWARD OF PAST DAMAGES

Aside from its improper and broadening amendments, R+L also substantively narrowed its claims in a manner that warrants judgment of non-infringement on the present claims and cuts off past damages.   First, R+L's amendments negate any potential finding of induced infringement, which is the only theory of infringement that remains in this case.  That is because "an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013).  Defendants in this case have more than a mere good faith belief that the asserted claims are invalid; there is an irrebuttable presumption that the original claims are invalid on account of R+L's own reexamination petition and its amendments based upon a subset of Defendants' prior art.  *See Bloom*, 129 F.3d at 1249 ("[T]he making of substantive changes in the claims is treated as an irrebuttable presumption that the original claims were materially flawed.").  Thus, R+L cannot succeed on its only theory of infringement.

Second, even if R+L did have a viable theory of induced infringement (and it does not), R+L's amendments prevent it from recovering any damages for "the period between the date of issuance of the original claims and the date of issuance of the reexamined claims [unless] the

---

384 F.2d 391, 395-96, 181 Ct.Cl. 55, 155 USPQ 697, 701 (1967).  Moreover, even if we could consider equities, they do not favor Rodime; they broadened their claims during reexamination despite the explicit prohibition against doing so in section 305.

*Quantum Corp.*, 65 F.3d at 1584.

- 11 -

A3288

original and reexamined claims are 'identical.'" *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (citing 35 U.S.C. §§ 252, 307(b) (1994)). "Reexamined claims are 'identical' to their original counterparts if they are 'without substantive change.'" *Id.* "If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." *Id.*

"There is no absolute rule for determining whether an amended claim is legally identical to an original claim." *Bloom*, 129 F.3d at 1250. However, amendments that affect claim scope create a claim that is ***not*** identical to the original claim. *See id.* "Determination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information." *Id.* Whether amended claims are identical in scope to the original claims is a question of law. *Laitram*, 163 F.3d at 1346-47.

Here, the intrinsic record establishes that the amended claims are not identical to the original claims. Initially, the USPTO rejected certain claims of the '078 Patent as anticipated under 35 U.S.C. § 102 and rejected all claims of the '078 Patent as obvious under 35 U.S.C. § 103.[5] In response, R+L requested an in-person interview with the Examiner and, after the interview, narrowed all claims by amendment to overcome the Patent Office's rejections. *See* Exhibit 1, Amendment at 2. To overcome the anticipation rejections, R+L first proposed amending the final step of Claim 1 to include portions of this Court's construction of the term

---

[5] Of note, the USPTO did not reject any of the claims under 35 U.S.C. § 112, such that a "clarifying" amendment would be needed.

"loading manifest."[6]   *See* <u>Exhibit 1</u>, Summary of Examiner Interview[7] at 4 ("Tentative Agreement was reached that the proposed claim amendment including the phrase 'loading manifest document for another transporting vehicle' would overcome the claim rejection of 35 USC §103 involving N&M in combination with Rosenbaum."); *but see* <u>Exhibit 2</u>, 2/13/2014 Examiner Interview Summary at 2 ("No agreement with regards to claim confirmation was reached").   The Examiner, however, required an additional amendment to overcome all rejections – namely the addition of the requirement that the "loading manifest" be an "***advance*** loading manifest." <u>Exhibit 1</u>, Summary of Examiner Interview at 5 ("The Examiners and Mr. Oberhaus then discussed whether the word 'advance' should be added to 'loading manifest' in independent Claim 1 for further clarity.  Examiner Patel noted that the '078 Patent Specification refers multiple times to 'advance loading manifest'.").   R+L characterized this additional amendment as resulting in a tentative agreement "that the proposed claim amendments including the phrase 'advance loading manifest document for another transporting vehicle' would overcome all of the claim rejections in the Office Action."  *Id.; but see* <u>Exhibit 2</u>, 2/13/2014 Examiner Interview Summary at 2 ("No agreement with regards to claim confirmation was reached.").

In its formal response, R+L repeatedly argued that "the methods recited in claims 1-9 as ***presently amended*** are not" anticipated or obvious.  <u>Exhibit 1</u>, Applicant Remarks at 7, 9, 11-12,

---

[6] R+L does not appear to have disclosed this Court's claim construction ruling to the Examiner.

[7] USPTO rules permit an Applicant to request an interview with the Examiner for the discussion of the patentability of a pending application.  "In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant."  37 CFR 1.133(b).  Thus, the Applicant's Interview Summary is the Applicant's recounting of the interview.

13, 15, 17, 18 (emphasis added).  Based upon both the addition of "document for another transporting vehicle" and that the loading manifest be an "advance" loading manifest, the Examiner indicated that the amended claims were allowable.  Exhibit 3, Notice of Intent to Issue *Ex Parte* Reexamination Certificate at 5 (emphasizing that the addition of "another transporting vehicle" overcame anticipation rejection based on N&M and combined additions overcame obviousness rejections).

When an amendment results in the claim being allowable over prior art, the amendment is generally considered to be substantive, such that the amended claim is ***not*** identical to the original claim.  Indeed, the Federal Circuit has recognized that "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment."  *Laitram Corp.*, 163 F.3d at 1348.  Thus, based upon the reexamination prosecution history alone, the amendments and arguments establish that R+L substantively amended the claims.

Independently, the specification of the '078 Patent and prosecution history of a related application confirm that R+L substantively amended the claims.  This Court construed "loading manifest" to mean "a document that both identifies the cargo of a vehicle and all the packages that must be on another transporting vehicle for further shipment." (Dkt. No. 348 at 4).  But the intrinsic evidence requires a narrower construction for the term "***advance*** loading manifest," namely that the loading manifest must also be generated (1) by load planning software, and (2) before the vehicle's arrival.

For example, the specification defines "advance loading manifests" as "documents generated by the load planning software discussed above." '078 Patent at 7:48-50. Through this unequivocal statement, R+L acted as its own lexicographer and defined the term "advance

A3291

loading manifest" to require generation by load planning software.  *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

Similarly, in the prosecution of U.S. Patent Application No. 11/950,529 ("'529 Application"), which claims priority to the '078 Patent, R+L reaffirmed the required generation by load planning software.  *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application.").  In the '529 Application, as it did in the reexamination, R+L amended a rejected claim to include the "advance" requirement language:  "dynamically calculate the <u>advance</u> loading manifest and transmit the <u>advance</u> loading manifest to a remote facility."  <u>Exhibit 4</u>, June 8, 2009 Response to Office Action at 2 (underlining denoting added claim terms).  In doing so, R+L reiterated that advance loading manifests are generated by load planning software and explained:

> As noted in the present Specification, ***advance loading manifests are documents generated by load planning software.***  The load planning software utilizes the extracted packing data and dynamically calculates and then transmits the advance loading manifest to a remote facility . . . .

*Id.* at 10 (emphasis added).

Additionally, the prosecution history and plain meaning of "advance" add an additional timing requirement not found in the original claim language.  Now, a loading manifest must be generated before a vehicle's arrival, and R+L relied upon this timing requirement in related applications.  For example, in the '529 Application, R+L explained that "[t]he load planning software utilizes the extracted packing data and dynamically calculates and then transmits the advance loading manifest to a remote facility ***in advance of the arrival of the transportation vehicle*** at the remote facility."  June 8, 2009 Response to Office Action at 10 (emphasis added).  In a subsequent filing, R+L reemphasized this timing requirement, explaining that the prior art

- 15 -

failed "to disclose or even suggest dynamically creating an advance loading manifest during the time period that a package is picked up and when the vehicle carrying the package arrives at a remote facility and transmitting the advance loading manifest to a remote facility in advance of the arrival of a transportation vehicle at the remote facility."[8]  Exhibit 5, April 7, 2010 Response to Office Action at 6.

Because the originally-claimed loading manifest could be generated by a human without the use of load planning software and lacked a specific temporal requirement, R+L's reexamination amendment is a substantive narrowing of the claim scope, such that R+L cannot recover for infringement of the broader claims as they existed prior to amendment.[9]

## CONCLUSION

Because R+L's amendments render the claims invalid and moot the factual and legal bases for its infringement claims as a matter of law, a final judgment of invalidity and non-infringement should be entered in Defendants' favor under Rule 56.

Date:  April 14, 2014

*/s/  Richard S. Zembek*
Richard S. Zembek
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651 5151 / Fax:  (713) 651 5246

Laura J. Borst

---

[8] R+L's arguments are consistent with extrinsic evidence defining the term "advance" to mean "to bring forward in time; esp: to make earlier."  Exhibit 6, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 18 (11th ed. 2003).

[9] R+L cannot recover any damages from Qualcomm.  Qualcomm sold the business accused of infringement to a third party prior to issuance of the reexamined claims.  *See* Doc. 361 at Exhibit 3.

FULBRIGHT & JAWORSKI LLP
2100 IDS CENTER
80 S. Eighth Street
Minneapolis, Minnesota 55402-2112
Tel:  (612) 321-2800 / Fax:  (612) 321-2288

Douglas J. Williams
CARLSON CASPERS
Capella Tower, Suite 4200
225 South Sixth Street
Minneapolis, MN 55402
Tel:  (612) 436-9633 / Fax:  (612) 436-9605

James E. Burke (0032731)
KEATING MUETHING & KLEKAMP LLP
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel:  (513) 579-6400 / Fax: (513) 579-6457

**COUNSEL FOR DEFENDANTS QUALCOMM
INCORPORATED, MICRODEA, INC., AND
PEOPLENET COMMUNICATIONS CORPORATION**


*/s/  Thomas H. Shunk*
Thomas H. Shunk (0025793)
tshunk@bakerlaw.com
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114-3485
Tel: (216) 621-0200 / Fax:  (216) 696-Facsimile:
216.696.0740

**COUNSEL FOR DEFENDANT, XEROX BUSINESS
SERVICES, LLC F/K/A AFFILIATED COMPUTER
SERVICES, INC., FFE TRANSPORTATION
SERVICES, INC.**


*/s/  Scott M. Petersen*
Scott M. Petersen
spetersen@fabianlaw.com
Phillip D. Dracht
pdracht@fabianlaw.com
FABIAN & CLENDENIN
215 S. State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:  (801) 531-8900

- 17 -

A3294

Facsimile:  (801) 596-2814

**COUNSEL FOR DEFENDANT DRIVERTECH, LLC**

*/s/  Carson P. Veach*
Carson P. Veach
cveach@freebornpeters.com
David S. Becker
Jacob D. Koering
Matthew J. Kramer
FREEBORN & PETERS
311 South Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 360-6382
Facsimile:  (312) 360-6995

Kara A. Czanik (0075165)
GRAYDON HEAD &RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202
Phone: (513) 629-2746
Fax: (513) 651-3836

**COUNSEL FOR DEFENDANT INTERMEC
TECHNOLOGIES CORP.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 14, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.

*/s/  Richard S. Zembek*
Richard S. Zembek

- 18 -

A3295

# EXHIBIT 4

Application No. 11/950,529
Amendment Dated June 8, 2009
Reply to Office Action of March 9, 2009

Examiner noted: "[i]t would be obvious that the information can be requested and transmitted at any time from the vehicle to the remote facility, during transit."   However, as noted above, the claims of the present invention require **a set of executable instructions residing on the processor capable of *inter alia*, transmitting the <u>advance loading manifest</u> to a remote facility in <u>advance of the arrival of a transportation vehicle</u> at the remote facility.** As noted in the present Specification, advance loading manifests are documents generated by load planning software.  The load planning software utilizes the extracted packing data and dynamically calculates and then transmits the advance loading manifest to a remote facility in advance of the arrival of transportation vehicle at the remote facility.  Based on the Examiner's note that the information (of Spaur) can be requested and transmitted at any time from the vehicle to the remote facility, it would appear that the Examiner has misinterpreted the present claims.  Spaur discloses the ability to transmit data from a vehicle to a remote facility via a wireless link.  However, the Examiner's assertion that Spaur discloses a set of executable instructions on the processor capable of transmitting the advance loading manifest is illogical. As the Examiner concedes Spaur does not teach, disclose or suggest the ability to extract data and generate an advance loading manifest, thus it is illogical to assume that Spaur can transmit something that it cannot generate.

Accordingly, the systems of claims 1-8 are non-obvious over Spaur et al. in view of Cukor et al.  Reconsideration is respectfully requested.

It is believed the above represents a complete response to the rejection of the claims under 35 U.S.C. §103, and places the present application in condition for allowance.  Reconsideration and an allowance are requested.

10

A3306

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | ) ) ) ) ) | MDL Docket No. 1:09-md-2050<br><br>JUDGE BECKWITH<br><br>**ALL CASES** |

## R+L CARRIERS, INC.'S BRIEF ON CLAIM AMENDMENTS TO U.S. PATENT 6,401,078 PURSUANT TO *EX PARTE* REEXAMINATION CERTIFICATE

Anthony C. White          (0062146)
*Trial Attorney*
Philip B. Sineneng         (0083406)
Stephanie M. Chmiel       (0087555)
41 South High Street, Suite 1700
Columbus, OH  43215-6101
Tel:  (614) 469-3200
Fax: (614) 469-3361
*Tony.White@ThompsonHine.com*
*Philip.Sineneng@ThompsonHine.com*
*Stephanie.Chmiel@ThompsonHine.com*

Stephen J. Butler          (0010401)
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel: (513) 352-6700
Fax: (513) 241-4771
*Stephen.Butler@ThompsonHine.com*

Megan D. Dortenzo        (0079047)
Arthur P. Licygiewicz      (0068458)
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Tel: (216) 566-5500
Fax: (216) 566-5800
*Megan.Dortenzo@ThompsonHine.com*
*Art.Licygiewicz@ThompsonHine.com*

John W. Ryan               (*pro hac vice*)
Thomas A. Haas             (*pro hac vice*)
1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Tel:    (202) 331-8800
Fax:    (202) 331-8330
*John.Ryan@ThompsonHine.com*
*Thomas.Haas@ThompsonHine.com*

*ATTORNEYS FOR R+L CARRIERS, INC.*

A3327

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS AND PROCEEDINGS ......................................... 1

III.  LAW AND ARGUMENT ............................................................................... 4

      A.  Standard For Determining Whether A Substantive Change Was Made During Re-examination .................................................................................................... 4

      B.  R+L Did Not Broaden Its Claims During Reexamination Of The '078 Patent. .............. 6

      C.  R+L Did Not Narrow The Original Claims During Reexamination. ............................ 9

IV.   CONCLUSION ............................................................................................... 13

A3328

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dart Indus., Inc. v. E.I. du Pont de Nemours & Co.*,
    348 F. Supp. 1338 (N.D. Ill. 1972), *rev'd on other grounds*, 489 F.2d 1359
    (7th Cir. 1973)........................................................................................................9

*Engineered Data Prods. v. GBS Corp.*,
    506 F. Supp. 2d 461 (D. Colo. 2007)......................................................................5

*Kaufman Co., Inc. v. Lantech, Inc.*,
    807 F.2d 970 (Fed. Cir. 1986)................................................................................5

*Laitram Corp. v. NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998)..............................................................................5

*Laitram Corp. v. NEC Corp.*,
    952 F.2d 1357 (Fed. Cir. 1991)............................................................................5,6

*Loral Corp. v. B.F. Goodrich Co.*,
    No. C-3-86-216, 1989 U.S. Dist. LEXIS 16865 (S.D. Ohio Jan. 27, 1989)............4

*Ohio Willow Wood Co. v. Alps South, LLC*,
    No. 2:05-cv-1039, 2012 U.S. Dist. LEXIS 134439 (S.D. Ohio Sept. 20, 2012) ......4

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
    544 F.3d 1298 (Fed. Cir. 2008)...........................................................................4, 5

*Rhine v. Casio, Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999)..............................................................................9

*Seattle Box Co. v. Indus. Crating & Packaging, Inc.*,
    731 F.2d 818 (Fed. Cir. 1984)................................................................................4

*Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*,
    810 F.2d 1113 (Fed. Cir. 1987)..............................................................................8

*Tennant Co. v. Hako Minuteman, Inc.*,
    878 F.2d 1413 (Fed. Cir. 1989)...........................................................................4, 5

*Westvaco Corp. v. International Paper Co.*,
    991 F.2d 735 (Fed. Cir. 1993)................................................................................6

A3329

## I.     INTRODUCTION

Defendants'[1] contention that the amendments to claim 1 of U.S. Patent 6,401,078 ("the

'078 Patent") are substantial changes is not only unsupported, it is thoroughly contradicted by

this Court's claim construction Order and the intrinsic evidence.  All of the changes to original

claim 1 that were submitted by R+L Carriers, Inc. ("R+L"), and accepted by the U.S. Patent and

Trademark Office ("PTO"), merely clarify the claim by making explicit what was always

implicit.  Defendants' arguments to the contrary cannot stand in the face of this Court's

established construction of the claims, the written description of this invention found in the

specification, and the prosecution history of the '078 Patent.

## II.     STATEMENT OF FACTS AND PROCEEDINGS

The '078 Patent was filed on April 3, 2000, with a priority filing date of April 1, 1998,

and issued on June 4, 2002.  The patent has nine claims and R+L has asserted all of them against

Defendants:  independent claim 1 and dependent claims 2 through 9.

On June 28, 2013, R+L filed a Request for *Ex Parte* Reexamination of the '078 Patent

with the PTO, which was granted on August 6, 2013.  On December 12, 2013, the PTO issued a

first office action in which it rejected the claims of the '078 Patent under 35 U.S.C. § 102(b) as

being anticipated by the N&M Transfer Co. Prior Art (comprising advertising flyer for Datajack

from Cellabs, Ricoh PF-1 Operating Instructions and Manual, and N&M Transfer Co. Driver Fax

Orientation Manual)  (hereinafter, "N&M"), and under 35 U.S.C. § 103 as being unpatentable

over N&M in view of U.S. Patent No. 5,031,223 (hereinafter, "Rosenbaum"), HighwayMaster in

view of Rosenbaum, Quiet in view of Rosenbaum, Scapinakis in view of Rosenbaum, and Cukor

---

[1] "Defendants" refers to Affiliated Computer Services, Inc., (n/k/a Xerox Business Services, Inc.); DriverTech LLC;
FFE Transportation Services, Inc.; Intermec Technologies Corp.; Microdea, Inc.; PeopleNet Communications Corp.;
and Qualcomm, Inc.

in view of Rosenbaum.  (A copy of the PTO's First Office Action is attached hereto as Exhibit A).

On February 6, 2014, counsel for R+L had a personal interview with the PTO Examiners, as permitted by the rules, to discuss certain prior art as well as three potential claim amendments. During the interview, R+L's counsel and the Examiners specifically discussed the N&M and Rosenbaum prior art.  R+L's counsel observed that N&M only discloses and pertains to a manifest for the current vehicle, and fails to disclose or suggest a loading manifest for another transporting vehicle.  After reviewing sections of N&M, the Examiners agreed that N&M does not teach or suggest a loading manifest for another transporting vehicle.

R+L's counsel also observed that Rosenbaum is directed to resource allocation and error correction for OCR (optical character recognition) scans of addresses of postal mail.  Rosenbaum provides for resource allocation for sorting mail, particularly in very high demand times.  R+L's counsel observed that Rosenbaum fails to teach or suggest a loading manifest for any vehicle, including another transporting vehicle.   The Examiners agreed.

From the points of agreement between R+L's counsel and the Examiners, R+L proposed three changes designed to clarify the '078 Patent and emphasize these already-present distinctions from the prior art.  The first amendment would add the transitional phrase "comprising the steps of" between the preamble and body of claim 1, in order to correct a typographical error that had left these words out of the original claim 1.  The second amendment would change the phrase "a loading manifest…on another transporting vehicle" to read "a loading manifest for another transporting vehicle . . . on another transporting vehicle."  The third amendment would replace the term "a loading manifest" with "an advance loading manifest document."  During the interview, R+L's counsel and the Examiners discussed support for the

2

A3331

proposed claim amendments, how the amendments clarify the original claim language, and how

the amendments are supported by the original claim language.  As a result, R+L's counsel and

the Examiners tentatively agreed that all of the rejections under 35 U.S.C. §§ 102 and 103 should

be withdrawn.  R+L filed its response to the office action, and an interview summary, with the

PTO that included the previously discussed claim amendments and prior art.  *See* R+L's

Amendment and Response, dated Feb. 12, 2014 (attached hereto as Exhibit B).

The PTO entered an *Ex Parte* Reexamination Certificate Issued Under 35 U.S.C. § 307

for the '078 Patent on March 21, 2014 with all nine claims found to be valid and patentable

under the cited prior art, and claim 1 being amended as follows:

> 1. A method for transferring shipping documentation data for a package from a
>    transporting vehicle to a remote processing center *comprising the steps of*:
>
>    placing a package on the transporting vehicle;
>
>    using a portable document scanner to scan an image of the documentation
>    data for the package, said image including shipping details of the package;
>
>    providing a portable image processor capable of wirelessly transferring the
>    image from the transporting vehicle;
>
>    wirelessly sending the image to a remote processing center;
>
>    receiving the image at said remote processing center; and
>
>    prior to the package being removed from the transporting vehicle, utilizing
>    said documentation data at said remote processing center to prepare **[a]** *an
>    advance* loading manifest *document for another transporting vehicle* which
>    includes said package for further transport of the package on another
>    transporting vehicle.

(A copy of the *Ex Parte* Reexamination Certificate is attached hereto as Exhibit C).

Defendants now urge the Court to conclude that these amendments somehow constitute a

substantial change to the '078 Patent, with all of the attendant consequences following

therefrom.  For a whole host of reasons, Defendants arguments fail.

3

A3332

III.    **LAW AND ARGUMENT**

A.    **Standard For Determining Whether A Substantive Change Was Made During Re-examination**

In analyzing the scope of a claim before and after amendment during re-examination, a district court applies the same test used for determining whether an amended or new claim made during a reissue proceeding is broader than the original claim. *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1303 (Fed. Cir. 2008). The question is not whether the claim has undergone *any* change. Rather, the question to be answered by the district court is whether a substantive change has been made to the claims. *See, e.g., Seattle Box Co. v. Indus. Crating & Packaging, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984) (holding "it is clear, though, that 'identical' means, at most, 'without substantive change.'"). A claim has undergone a "substantive change" when it has been modified to the point that its scope is either narrower or broader than the original claim. *Id.* "[A] matter of mere clarification of language to make specific what was always implicit or inherent" is not a substantive change. *Loral Corp. v. B.F. Goodrich Co.*, No. C-3-86-216, 1989 U.S. Dist. LEXIS 16865, at *137 (S.D. Ohio Jan. 27, 1989); *see also Predicate Logic, Inc.,* 544 F.3d at 1305 (Fed. Cir. 2008) ("'Identical' does not mean verbatim, but means at most without substantive change . . . An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical . . . .") (quoting *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989); *Ohio Willow Wood Co. v. Alps South, LLC*, No. 2:05-cv-1039, 2012 U.S. Dist. LEXIS 134439, at *31 (S.D. Ohio Sept. 20, 2012).

The fact that the '078 Patent was amended following rejections based on prior art in the first office action does not establish that a substantive change was made on re-examination.

4

A3333

Indeed, the Federal Circuit has consistently and unambiguously rejected such a *per se* rule, in both name and practice.  *Predicate Logic*, 544 F.3d at 1305 (Fed. Cir. 2008) (reversing a district court's finding that the patentee had substantively changed the patent scope through an amendment); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346-47 (Fed. Cir. 1998) (holding that "[a] patentee of a reexamined patent is entitled to infringement damages[…] for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are 'identical,'" and noting that "reexamined claims are 'identical' to their original counterparts if they are 'without substantive change'") (internal citations omitted) (hereinafter *Laitram II*); *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 975-77 (Fed. Cir. 1986) (affirming district court's ruling that the reexamined patent merely clarified the original, and so the plaintiff could claim damages for infringement that predated the issuance of the reexamination certificate).  Rather than an in-artful *per se* rule that fails to consider the intrinsic evidence of the patent, the test for determining whether a substantive change was made requires an evaluation "in light of an overall examination of the written description, the prosecution history and the language of the respective claims."  *Laitram II*, 163 F.3d at 1348.   Numerous courts have evaluated the intrinsic evidence of a patent to find that an amendment made after a rejection by the PTO based on prior art was not substantive.  *See Tennant Co.*, 878 F.2d at 1417; *Kaufman Co.*, 807 F.2d at 978; *Engineered Data Prods. v. GBS Corp.*, 506 F. Supp. 2d 461, 472-73 (D. Colo. 2007).

While the question of whether a substantive change was made to a claim during re-examination is a question of law, it undoubtedly requires the interpretation of the patent claims, and in that analysis "when it is necessary to resolve disputed issues of fact in the course of interpreting the claims, summary disposition is improper."  *Laitram Corp. v. NEC Corp.*, 952

F.2d 1357, 1364 (Fed. Cir. 1991) (hereinafter *Laitram I*); *see also Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 742 (Fed. Cir. 1993).

**B.     R+L Did Not Broaden Its Claims During Reexamination Of The '078 Patent.**

Defendants assert that the amendment to clarify claim 1 that added the phrase "comprising the steps of" impermissibly broadened the claim.  To reach this conclusion, Defendants must offer their own, newly minted *per se* rule, one that holds that whenever a claim is missing a transitional phrase, it must be construed as closed.  Yet, there is no authority for such a rule, and Defendants offer none.  The Defendants *per se* rule, like the one addressed above, must be disregarded in this analysis.

Instead, we must look to the language of the respective claims, the written description, and the prosecution history to determine whether the absence of a transitional phrase in claim 1 was intended by the patentee, or whether its absence was a drafting mistake that can be rectified without substantively changing the scope of the disclosed invention.  *See generally Laitram I*, 952 F.2d at 1361-62.  In other words, if the original claim 1 is properly construed as open, then the amendment of claim 1 by adding the transitional phrase "comprising the steps of" makes no substantive change as a matter of law.

A simple review of the express claim language overwhelmingly demonstrates that the originally issued claim 1 of the '078 Patent was "open."  *See* Appendix A.  Dependent claims 2, 5, 6, 7, and 9 all depend directly or indirectly from claim 1.  Each of these dependent claims uses the transitional phrase "further comprising" or "further comprises."  It is a matter of plain, common sense that if a dependent claim "further comprises" or is "further comprising," the independent claim from which the dependent claim depends is properly construed as also containing the transitional phrase "comprising."   Thus, there is no "equal choice between a broader and a narrower meaning" of claim 1 that Defendants previously suggested would support

6

A3335

the adoption of the narrower meaning.  *See* Defendants' Supplemental Briefing, dated March 3, 2014 (Docket No. 361), at pp. 5-6.  Rather, the express language of the claims establishes that there is only one choice:  original claim 1 was an "open" claim into which a person of ordinary skill would read the word "comprising."

That claim 1 has always been open is the only conclusion supported by the specification to the '078 Patent.  The specification repeatedly demonstrates that the entire patent and its claims are "open" in scope and were always construed as including the transitional phase "comprising."  As representative examples, the patent specification states:

> The present invention has solved the problems described above and **comprises** broadly a system for transmitting bills of lading to a central facility so that billing and load planning may be accomplished while the freight is en route to a terminal, the equipment used to transmit the bill of lading from the driver to a terminal or central location, and the method for transmitting the bill of lading. '078 Patent, col. 2, ll. 48-54 (emphasis added);

> The bill of lading transmitting and processing system 10 **comprises** scanning a document using a scanning/input system 20, initiating a document transmission using a communication system (transmitter) 30, establishing a connection using a communications link 40, receiving a document using a communications system (receiver) 50, extracting the load planning and billing information 60 from a transmitted electronic bill of lading, transmitting or sharing the load planning information with a load planner or load planning software 70, and transmitting or sharing the billing information extracted from the electronic bill of lading with a billing or accounting software package 90. '078 Patent, col. 3, ll. 51-63 (emphasis added).

*See* Appendix A.  These are just 2 of multiple locations in the '078 Patent specification where the transitional phrase "comprises" is used to describe the scope of the disclosed invention.  (*See* Appendix A for a full list of where "comprises" is used throughout the '078 Patent).  At the same time, the "closed" language that Defendants now want to be read into original claim 1 does not appear even a single time in the specification of the '078 Patent.  The specification only supports the necessary conclusion that we must draw from the claim language that original claim 1 is properly construed as open.

7

A3336

The prior applications from which the '078 Patent claims priority also support the "open" scope of original claim 1. As shown in Appendix A, the prior provisional application (serial no. 60/080,365) and non-provisional application (09/283,032) repeatedly use the transitional phrases "comprises," "comprised," "comprising the steps of," "comprising," and "further comprising" when disclosing the invention. In fact, originally filed claim 1 of both the '365 provisional and '032 non-provisional applications include the "open" transitional phrases "comprising" and "comprising the steps of" respectively. *Id.* Therefore, the addition of the transitional phrase "comprising the steps of" to claim 1 during reexamination is simply clarifying the already known scope of the claim, as is evident in the prosecution history.

Moreover, during re-examination, the Examiners did not reject amended claim 1 as a "broadening" of the original claim as Defendants now request. The logical inference from the absence of such a rejection is that the Examiners recognized during re-examination that original claim 1 was an "open" claim just like the claims that depend from it, and agreed to the inclusion of the phrase "comprising the steps of" to clarify that fact. To conclude otherwise, we must assume that the Examiners either knowingly agreed to an amended claim that impermissibly broadened the claim, or were simply ignorant of the law. There is no basis for either of those assumptions.

The addition of claim language that was always present by implication to correct a drafting error is nothing unusual in the law, and certainly does not constitute a substantive change alone. *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116 (Fed. Cir. 1987) (noting that "whether the antecedent was already there by implication depend[s] on the facts of the case, and . . . the 'patentee should be allowed to correct an error or ambiguity without having to rely on implication or litigation.'") (*citing In re Altepohl*, 500 F.2d 1151, 1156 (CCPA

8

A3337

1974))*; Accord Dart Indus., Inc. v. E.I. du Pont de Nemours & Co.*, 348 F. Supp. 1338, 1343

(N.D. Ill. 1972), *rev'd on other grounds*, 489 F.2d 1359 (7th Cir. 1973) (an amendment to

provide an antecedent held to correct a formal defect without a change in scope).  This result

furthers the axiomatic rule that claims should be construed, if possible, as to sustain their

validity.  *Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345 (Fed. Cir. 1999).

It is readily apparent from the intrinsic evidence that the amendment to claim 1 to include

the transitional phrase "comprising the steps of" is not an impermissible broadening of claim 1.

The original claim 1 was always an "open" scope claim from the filing of the '365 provisional

application through the grant of the '078 Patent and its reexamination.  Defendants' arguments to

the contrary should be rejected.

**C.     R+L Did Not Narrow The Original Claims During Reexamination.**

Nor can Defendants make any credible assertion that R+L's amendments narrowed

original claim 1.  The amendments here at issue are R+L's additions of the term "*advance*" to

modify "loading manifest," and "*document for another transporting vehicle*" immediately after

"loading manifest."  Neither of these amendments result in a substantive change to original claim

1.

It is preposterous for the Defendants to assert that "*advance* loading manifest"

substantively changes claim 1.  The purpose of claim 1, original and amended, is to generate a

loading manifest "prior to the package being removed from the transporting vehicle."  In other

words, the loading manifest of original and amended claim 1 is generated *in advance* of the

package being removed from the transporting vehicle, which is a limitation that has been

contained in claim 1 since the patent issued.  Defendants essentially admitted to this point during

claim construction when they acknowledged that their proposed construction "also construes the

term 'loading manifest' in the context of claim 1, which requires that the loading manifest

identify packages that must be on another transporting vehicle (i.e., loaded) <u>prior to further</u> <u>shipment</u>."  Defendants' Opening Claim Construction Brief, dated Aug. 30, 2013 (Docket No. 333) at p. 26 (emphasis added).  Adding the word "*advance*" to modify "loading manifest" only makes explicit what was already implicit in the original claim.

The specification supports this conclusion, and is replete with references to the concept that the loading manifest of claim 1 is generated in advance of the package being removed from the transporting vehicle.  *See* Appendix B.  The specification contains no less than <u>*twenty-two*</u> separate references to the term "advance loading manifest" when describing the loading manifest generated in claim 1.  The Examiners expressly relied on that fact when they required that amendment.  *See* Ex. B, Applicant Interview Summary at 5 ("The Examiners and Mr. Oberhaus then discussed whether the word 'advance' should be added to 'loading manifest' in independent claim 1 for further clarity.  Examiner Patel noted that the '078 Patent Specification refers multiple times to 'advance loading manifest'.")  There can be no question that adding the term "*advance*" to "loading manifest" was not a substantive change to original claim 1.

The addition of the words "*document for another transporting vehicle*" immediately after "loading manifest" also does not constitute a substantive change to original claim 1.  There are two aspects to this addition:  "*document*" and "*for another transporting vehicle*".  Both were implicitly contained in the original claim 1, and are only made explicit in amended claim 1.

To establish this, we need look no further than this Court's Order on claim construction. After an examination of the intrinsic evidence and consideration of certain extrinsic evidence, the Court construed the term "loading manifest" to be "a <u>document</u> that both identifies the cargo of a vehicle and all the packages that must be on <u>another transporting vehicle</u> for further shipment.'" *See* Claim Construction Order, dated Dec. 31, 2013 (Docket No. 348) at p. 4 (emphasis added).

A3339

Thus, this Court has already ruled that both "*document*" and "*another transporting vehicle*" are implicitly contained in claim 1's use of the term "loading manifest."  *See also id.* at p. 3 ("Dependent claim 2 teaches combining the documentation data for the package with other packages having similar documentation data in order to create 'loading manifests' to optimize the load to be shipped on at least one other transporting vehicle.") (emphasis added).   The addition of the exact words the Court found to be implicit in original claim 1 does not constitute a substantive change.

Defendants themselves acknowledged during claim construction argument that both "*document*" and "*another transporting vehicle*" were implicit in original claim 1.  In their proposed constructions, Defendants argued that the intrinsic evidence coupled with relevant extrinsic evidence established that "loading manifest" means "a document that identifies all packages that must be on another transporting vehicle for further shipment."  Docket No. 333 at p. 26 (emphasis added).  These are the exact terms found by the Court to be implicit in original claim 1, and the exact terms added by R+L on re-examination.  Defendants cannot now reverse course and assert that the express addition of the terms that they argued were implicit in original claim 1 somehow substantively changes that claim.

The intrinsic evidence supports both the Court's claim construction and Defendants' admission that "*document*" and "*for another transporting vehicle*" are implicitly contained in original claim 1 through the use of the term "loading manifest."  The specification defines an advance loading manifest as "documents generated by the load planning software" discussed therein.  *See* '078 Patent, at col. 7, ll. 48-50 (attached hereto as Exhibit D).  The file wrapper provides further support for this construction.  *See* Appendix B.

11

A3340

And, the specification teaches a process that clearly implicates a loading manifest for another transporting vehicle. The '078 Patent is directed to improving the shipment of packages on trucks by automating the process of receiving transportation documentation and producing advance loading manifests to optimize load planning and dynamic product shipment and delivery control. *See* Ex. D. at Abstract. The product shipment process of the '078 Patent involves: picking up packages from customers, placing the packages on vehicles for shipment, taking the packages to terminals, consolidating the packages with other packages, and loading the consolidated packages onto other vehicles for further shipment. *Id.* at col. 1, ll. 22-48. Such a process requires transporting or transportation vehicles (*e.g.*, trucks) to transport the packages to the various destinations. This supports the Court's determination that the term "loading manifest" implicitly means a loading manifest "*for another transporting vehicle*".

The Court's claim construction order, the Defendants' admissions, and the intrinsic evidence all refute the notion that amended claim 1 substantively changed original claim 1 by narrowing it.

12

A3341

## IV.    CONCLUSION

R+L respectfully requests that Court find that the changes made by R+L to the claims of the '078 Patent during re-examination are not substantive changes.

Respectfully submitted,

_____/s/ Anthony C. White_____
Anthony C. White              (0062146)
*Trial Attorney*
Philip B. Sineneng             (0083406)
Stephanie M. Chmiel            (0087555)
41 South High Street, Suite 1700
Columbus, OH  43215-6101
Tel:  (614) 469-3200; Fax:  (614) 469-3361
*Tony.White@ThompsonHine.com*
*Philip.Sineneng@ThompsonHine.com*
*Stephanie.Chmiel@ThompsonHine.com*


Megan D. Dortenzo             (0079047)
Arthur P. Licygiewicz         (0068458)
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Tel:  (216) 566-5500; Fax:  (216) 566-5800
*Megan.Dortenzo@ThompsonHine.com*
*Art.Licygiewicz@ThompsonHine.com*


Stephen J. Butler             (0010401)
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel:  (513) 352-6700; Fax: (513) 241-4771
*Stephen.Butler@ThompsonHine.com*


John W. Ryan                  (*pro hac vice*)
Thomas A. Haas                (*pro hac vice*)
 1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Tel: (202) 331-8800; Fax: (202) 331-8330
*John.Ryan@ThompsonHine.com*
*Thomas.Haas@ThompsonHine.com*


*Attorneys for R+L Carriers, Inc.*

13

A3342

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2014, a true and correct copy of the foregoing *R+L Carriers, Inc.'s Brief on Claim Amendments To U.S. Patent 6,401,078 Pursuant to Ex Parte Reexamination Certificate* was filed with the Clerk of Court using the CM/ECF system which will provide an electronic copy to all counsel of record.


_____/s/ Philip B. Sineneng_____
Philip B. Sineneng

A3343

# EXHIBIT
# C

US006401078C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (10081st)

# United States Patent
Roberts et al.

(10) **Number:** US 6,401,078 C1
(45) **Certificate Issued:** Mar. 21, 2014

(54) **BILL OF LADING TRANSMISSION AND PROCESSING SYSTEM FOR LESS THAN A LOAD CARRIERS**

(75) Inventors: **Ralph L. Roberts**, Reddick, FL (US);
**Steve F. Naghshineh**, Cincinnati, OH (US)

(73) Assignee: **JPMorgan Chase Bank, National Association**, Chicago, IL (US)

**Reexamination Request:**
No. 90/012,903, Jun. 28, 2013

**Reexamination Certificate for:**
Patent No.: **6,401,078**
Issued: **Jun. 4, 2002**
Appl. No.: **09/542,682**
Filed: **Apr. 3, 2000**

Certificate of Correction issued Mar. 30, 2010

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/283,032, filed on Apr. 1, 1999, now abandoned.

(60) Provisional application No. 60/080,365, filed on Apr. 1, 1998.

(51) **Int. Cl.**
*G06Q 10/00*     (2012.01)
(52) **U.S. Cl.**
USPC ........................................... **705/28**

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/012,903, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Hetul Patel

(57) **ABSTRACT**

The present invention automates the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control. Methods provide for receipt of the transportation documentation, initial preparation, and transmission of the documentation from on board a vehicle or while the vehicle is in transit. A remote processor receives the documentation, stores the documentation and feeds the documentation to a load planning software for generation of advance loading manifests from the remote processor and receive them on demand. Further, a mobile data transmission device is provided for use by a driver to communicate transportation documentation, and vehicle information to the remote processor, and, in some applications, can receive instructions for en route alterations of package pickup or delivery.



US 6,401,078 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claim **1** is determined to be patentable as amended.

Claims **2-9**, dependent on an amended claim, are determined to be patentable.

**2**

**1**. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center *comprising the steps of*:

placing a package on the transporting vehicle;

using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

wirelessly sending the image to a remote processing center;

receiving the image at said remote processing center; and

prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare [a] *an advance* loading manifest *document for another transporting vehicle* which includes said package for further transport of the package on another transporting vehicle.

\*    \*    \*    \*    \*

# APPENDIX

# B

**Appendix B:**  **Intrinsic Support for '078 Claim 1 Amendment:** *Advanced + Document + On Another Transporting Vehicle*

| '078 Patent Claim 1 Amendment: <u>Advanced + Document + On Another Transporting Vehicle</u> | |
|---|---|
| **Document** | **Intrinsic Support for '078 Patent claim amendments in *Ex Parte* Reexamination** |
| '078 Patent Abstract; col. 3, l. 44; col. 7, ll. 48-49, 57, 66; col. 8, ll. 3, 10, 11, 25-26; col. 9, ll. 64-65; col. 10, ll. 7, 43-44, 56-57; col. 11, ll. 1, 5; col. 12, ll. 36, 37, 41-42; col. 13, ll. 13, 14 (JA000016, 18-21)[1] | Locations in the specification for the phrase "advance loading manifest" or "advance loading manifests." |
| '078 Patent col. 7, ll. 50-60 (JA000018) | These documents provide instructions to workers at a destination, informing the workers that a particular package or item needs to be placed on a particular truck for further shipment at a particular time. Since, the load planning software is receiving documentation regarding the packages dynamically throughout delivery day, whenever the load planning software is requested to generate an **advance loading manifest**, the loading efficiency of the trucks is fully maximized, at that point in time. As will be understood, **the inventive system enables dynamic routing of items and packages as they are en route.** |
| '078 Patent col. 7, ln. 66 – col. 8, ln. 3 (JA000018) | When an **advance loading manifest** is requested, the remote processing center's computing device, utilizing a software logic, will programmatically request an extract (step 180) of all documentation relevant to generating an advance loading manifest for a requesting destination. |
| '078 Patent col. 8, ll. 24-28 (JA000018) | The requesting destinations may then view and use the generated **advance loading manifests** (or alternatively access the data to generate their own manifests) to optimize truck loading in steps 240, 250, and 260. |
| '078 Patent col. 13, ll. 11-17 (JA000021) | This extracted load planning data is fed to a load planning software causing an advance loading manifest to be generated in block 820. Once the **advance loading manifest** is generated, it is sent to the requesting remote facility 760 in block 870 via the communication layer and used in 880 **to load and unload (as appropriate)** |

_____

[1] All "JA" references are to the Parties' Joint Appendix, dated June 7, 2013 (Docket No. 325).

| '078 Patent Claim 1 Amendment: <u>Advanced + Document + On Another Transporting Vehicle</u> | |
|---|---|
| **Document** | **Intrinsic Support for '078 Patent claim amendments in *Ex Parte* Reexamination** |
| | **the arriving truck** 770. |
| OA Response, 9/18/01 (JA000106) | Amendment to Claim 1 made in Office Action Response:<br><br>    Prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.<br><br>Applicant Remarks Pg. 6:<br>    Furthermore, claim 1 recites, prior to the package being removed from the transporting vehicle, utilizing the documentation data at the remote processing center to prepare a loading manifest which includes the package for further transport of the package on another transporting vehicle. Neither the Caci nor the Cokur reference provides any teaching or suggestion of preparing a *loading manifest* for further transport of the package on another transporting vehicle, prior to the package being removed from the present transporting vehicle. In fact, neither the Caci nor the Cokur reference has any mention of a manifest or of a loading manifest. While Cokur has a very vague reference to determining "transhipments," there is no teaching or suggestion in the reference as to what that might mean or entail, nor whether it would include the preparation of a loading manifest as claimed in claim 1.<br>    In contrast, by preparing the **loading manifest in advance of the arrival** of the package according to claim 1, **the package can be immediately queued for placement or placed directly on the transporting vehicle that will carry it to its next destination as soon as it arrives**. Having the **manifest accomplished prior to the freight's arrival** and/or easily revised up until actual arrival, reduces the freight turn-around time and freight handling, and enables unprecedented flexibility and efficiency. |
| Notice of Allowability,<br><br>9/27/01<br>(JA000113) | The following is an Examiner's Statement of Reasons for Allowance: The claims are allowable over the prior art of record because the prior art of record does not show or teach using a portable document scanner on a transporting vehicle to scan the shipping documentation data for a package, and then sending that data wirelessly to a remote processing center where **the data is used to prepare a loading manifest for further transport of the package**. |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | MDL Docket No. 1:09-md-2050 |
| **IN RE:  Bill of Lading Transmission and** | ) | |
| **Processing System Patent Litigation** | ) | JUDGE BECKWITH |
| | ) | |
| | ) | **ALL CASES** |
| | ) | |

**DEFENDANTS' AND DECLARATORY JUDGMENT PLAINTIFFS' REPLY BRIEF
REGARDING THE SUBSTANTIVE CHANGES TO AND IMPERMISSIBLE
AMENDMENT OF THE ASSERTED CLAIMS**

87263613.8

A3355

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

    I.    R+L's Addition of a Transitional Phrase Invalidates the Asserted Claims ........... 2

        A.    The Claims Are Invalid Because R+L Added the "Comprising" Language for an Impermissible Purpose .................................................... 2

        B.    R+L Impermissibly Broadened Claim 1 by the Addition of an "Open" Transitional Phrase, Thereby Invalidating the Claims ................. 8

    II.    R+L's Narrowing Amendments Substantively Amended the Claims ................. 11

CONCLUSION ................................................................................................ 13

-i-

## TABLE OF AUTHORITIES

**Page**

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003).................................................................................11

*Acumed LLC v. Stryker Corp.*
    483 F.3d 800 (Fed. Cir. 2007)...................................................................................10

*Anderson v. Int'l Eng'g & Mfg., Inc.*,
    160 F.3d 1345 (Fed. Cir. 1998).................................................................................10

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002)....................................................................3, 4

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
    73 F.3d 1573 (Fed. Cir. 1996)....................................................................................9

*Biovail Labs. Int'l v. Impax Labs., Inc.*,
    433 F. Supp. 2d 501 (E.D. Pa. 2006) ...............................................................3, 4, 5

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
    129 F.3d 1247 (Fed. Cir. 1997).................................................................................12

*Certain Polyimide Films, Prods. Containing Same, and Related Methods*,
    Inv. No. 337-TA-772, USITC Pub. 4402 (July 2013) .......................................3, 5

*Dart Indus., Inc. v. E.I. du Pont de Nemours & Co.*,
    348 F. Supp. 1338 (N.D. Ill. 1972) ............................................................................4

*Eon-Net L.P. v. Flagstar Bancorp*,
    No. 2:05-cv-02129-RSM, slip op. (W.D. Wash. Nov. 4, 2008) ................................6

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994).....................................................................................3

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)....................................................................................9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)..................................................................................11

*Kara Tech. Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009)....................................................................................9

-ii-

A3357

# TABLE OF AUTHORITIES
(continued)

**Page**

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)................................................................................12

*Momentus Golf, Inc. v. Swingrite Golf Corp.*,
312 F. Supp. 2d 1134 (S.D. Iowa 2004) ..................................................................8

*PPG Indus. v. Guardian Indus. Corp.*,
156 F.3d 1351 (Fed. Cir. 1998)................................................................................8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)...........................................................9, 10

*Quantum Corp. v. Rodime, PLC*,
65 F.3d 1577 (Fed. Cir 1995)..............................................................................7, 10

*Senju Pharm. Co. v. Apotex Inc.*,
-- F.3d --, 2014 WL 1272839 (Fed. Cir. 2014) ......................................................5

*Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*,
810 F.2d 1113 (Fed. Cir. 1987)................................................................................4

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001).........................................................................4, 5, 6

*Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*,
279 F. App'x 989 (Fed. Cir. 2008) ..........................................................................3

*Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*,
464 F. Supp. 2d 588 (N.D. Tex. 2006) ....................................................................3

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*,
121 F.3d 691 (Fed. Cir. 1997)................................................................................10

*Thermalloy Inc. v. Aavid Eng'g, Inc.*,
935 F. Supp. 55 (D.N.H. 1996)..............................................................................11

*Total Containment, Inc. v. Environ Prods., Inc.*,
921 F. Supp. 1355 (E.D. Pa. 1995) ..........................................................................3

**Rules and Statutes**

35 U.S.C. § 103................................................................................................................12

35 U.S.C. § 112..................................................................................................................4

A3358

### TABLE OF AUTHORITIES
(continued)

**Page**

35 U.S.C. § 251(a) ...................................................................................................5

35 U.S.C. § 255 .......................................................................................................6

35 U.S.C. § 305 .............................................................................1, 2, 3, 4, 7, 8, 10, 11

Fed. R. Civ. P. 56 ..................................................................................................2, 13

A3359

## <u>INTRODUCTION</u>

In arguing that its claims were not substantively changed during the reexamination, R+L makes numerous factual concessions, and then draws the wrong legal conclusions from the admitted facts.  First, R+L admits that its addition of an open transitional phrase to Claim 1 was not for any of the permissible reasons for which claims may be amended during reexamination.  Thus, Claim 1 and its dependent claims are invalid because R+L's amendment violated 35 U.S.C. § 305.

Second, R+L points to its repeated use of "comprising" language in the '078 Patent and related patents in hopes of demonstrating that the addition of such language to Claim 1 corrected what R+L claims was an obvious typographical error.  But the Federal Circuit has recognized that such intrinsic evidence actually shows that when R+L wanted to use open-ended language, it certainly knew how to do so, and original Claim 1 was therefore not open-ended.  Further, R+L made corrections to the '078 Patent on multiple occasions during prosecution—even seeking a Certificate of Correction to remedy a typographical error in a dependent claim after the patent issued (and after R+L filed this lawsuit).  Thus, R+L knew the appropriate mechanisms for correcting an alleged typographical error, which indicates that the lack of a transitional phrase in original Claim 1 was not an obvious typographical error.  The Federal Circuit's definition of "typographical error" further confirms that Claim 1's lack of "comprising" language was not such an error.

Third, R+L admits that the lack of a transitional phrase rendered original Claim 1 ambiguous, and that it sought to clarify that ambiguity through amendment.  Where there is an equal choice between a broader and a narrower meaning of a claim, the Federal Circuit has instructed that the narrower construction is appropriate—not the broader as urged by R+L. Because original Claim 1 was either closed or partially closed, while amended Claim 1 is open-

ended, R+L's amendment impermissibly broadened Claim 1.  That amendment also necessarily broadened the claims dependent on Claim 1, and all claims are thus invalid under 35 U.S.C. § 305.

Fourth, R+L admits that it acted as its own lexicographer in defining an "advance loading manifest" to require load planning software.  The Federal Circuit has repeatedly held that such a definition in the intrinsic record controls.  Importantly, the Court's construction of "loading manifest" does ***not*** require load planning software, and R+L's admission thus demonstrates that replacing "loading manifest" with "advance loading manifest" substantively narrowed the claims' scope.  The consequences for R+L's substantive amendments are that: (1) it cannot succeed on its induced infringement claims in light of the irrebuttable presumption that the claims were invalid, which negates the required intent to infringe; and (2) at a minimum, it cannot recover damages for any alleged pre-suit infringement by Defendants.

Because R+L's amendments render the claims invalid, and moot the factual and legal bases for its infringement claims as a matter of law, in resolving the parties' claim construction disputes related to the amendments, a final judgment of invalidity and non-infringement should be entered in Defendants' favor under Fed. R. Civ. P. 56.  *See* Doc. 366 ("Defendants' Br.") at 4.

## ARGUMENT

### I.    R+L'S ADDITION OF A TRANSITIONAL PHRASE INVALIDATES THE ASSERTED CLAIMS

#### A.    The Claims Are Invalid Because R+L Added the "Comprising" Language for an Impermissible Purpose

According to R+L, its addition of the "comprising" language to Claim 1 was either to "clarify" the claim language or "to correct a typographical error."  R+L Supplement (Doc. 362) at 5, n.2; Doc. 367 ("R+L Br.") at 2.  That is, R+L did ***not*** amend for one of the two permissible

A3361

purposes under 35 U.S.C. § 305: (1) "to distinguish the invention as claimed from the prior art"; or (2) "in response to a decision adverse to the patentability of a claim."

"[T]he ability of a patentee to amend claims during reexamination must be seen in light of the fundamental purpose of reexamination—the determination of validity in light of a substantial new question of patentability." *In re Freeman*, 30 F.3d 1459, 1468 (Fed. Cir. 1994). "[A]mendment of claims during reexamination is limited to amendment in light of prior art raising a substantial new question of patentability." *Id.* Thus, R+L's admitted purpose was improper and contrary to "the fundamental purpose of reexamination—the determination of validity in light of a substantial new question of patentability." *See id.* Accordingly, the claims are invalid. *See Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*, 279 F. App'x 989, 992 (Fed. Cir. 2008); *Sw. Bell Tel., L.P. v. Arthur A. Collins, Inc.*, 464 F. Supp. 2d 588, 596 (N.D. Tex. 2006), *aff'd*, 279 F. App'x 989 (Fed. Cir. 2008); *Total Containment, Inc. v. Environ Prods., Inc.*, 921 F. Supp. 1355, 1383 (E.D. Pa. 1995), *aff'd in part on other grounds*, 106 F.3d 427 (Fed. Cir. 1997).

R+L cites no case holding that its elective clarification or correction amendments were permissible during reexamination. R+L mistakenly relies upon cases involving correction of antecedent basis problems in response to a formal rejection or objection by the patent examiner.[1]

---

[1] These cases do not support R+L's arguments because, among other reasons (*see infra* at 4), antecedent basis for claim terms is a requirement. *See, e.g.*, *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 458 (S.D.N.Y. 2002) ("It is a fundamental concept in patent claim drafting that each element of a claim must have an antecedent basis; otherwise, the claim would be rejected as indefinite under 35 U.S.C. § 112."), *aff'd*, 84 F. App'x 76 (Fed. Cir. 2003). Thus, one reading a claim in which a term lacks the required antecedent basis would know that a drafting error has occurred. In contrast, claims are not required to have a transitional phrase, *see, e.g.*, *Biovail Labs. Int'l v. Impax Labs., Inc.*, 433 F. Supp. 2d 501, 507 (E.D. Pa. 2006), such that it would not be clear to one reading Claim 1 of the '078 Patent that a drafting error had occurred. *See also* Exhibit 7, *Certain Polyimide Films, Prods. Containing Same, and Related Methods*, Inv. No. 337-TA-772, USITC Pub. 4402 at 68 (July 2013) (Final) ("The [disputed term] appears in both claims 1 and 9, and is not followed by a transitional phrase in either claim. Rather, the

*See Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1114 (Fed. Cir. 1987) ("The examiner . . . rejected claims 1 through 3 as vague and indefinite in terms of 35 U.S.C. § 112 paragraph 2 because of the absence of an antecedent to the claim term 'collar.'"); *Dart Indus., Inc. v. E.I. du Pont de Nemours & Co.*, 348 F. Supp. 1338, 1343 (N.D. Ill. 1972) ("[T]he patent examiner raised a formal objection to Claim 1 because it failed to provide an adequate antecedent for the expression 'axis of the granule.'"), *rev'd on other grounds*, 489 F.2d 1359 (7th Cir. 1973).  Those cases are inapplicable because the patent examiner in the '078 Patent reexamination neither rejected nor objected to the original claim's lack of a transitional phrase.  Because 35 U.S.C. § 305 permits amendments "in response to a decision adverse to the patentability of a claim of a patent," the amendments in *Slimfold* and *Dart Industries* were proper because they were in response to a formal rejection or objection by the patent examiner for failure to comply with 35 U.S.C. § 112.  *See Slimfold Mfg.*, 810 F.2d at 1116; *Dart Indus.*, 348 F. Supp. at 1343; *see also Astra Aktiebolag*, 222 F. Supp. 2d at 458 (confirming that claims with terms lacking proper antecedent basis do not comply with 35 U.S.C. § 112).  In contrast, R+L's change to Claim 1 was not in response to a formal rejection or objection under 35 U.S.C. § 112, but was elective in nature to cure an admitted ambiguity.

Even if one could correct typographical errors during reexamination, as a matter of law, the lack of a transitional phrase in Claim 1 was not a "typographical error."  The Federal Circuit has defined "clerical or typographical error" to "include simple mistakes such as obvious misspellings that are immediately apparent."  *Superior Fireplace Co. v. Majestic Prods. Co.*, 270

---

[disputed term] is followed by a 'wherein' clause.  Read in the context of the claim, the [disputed term] is not a preamble.") (evidentiary citations omitted, citing *Biovail*).  Therefore, to the extent the cases cited by R+L can be read as allowing some form of error correction during reexamination, it is not the type of correction that R+L sought to make.

A3363

F.3d 1358, 1369-70 (Fed. Cir. 2001). In contrast, "a mistake in a claim the correction of which broadens the scope of coverage of that claim and is not clearly evident from the specification, drawings, and prosecution history is not a 'mistake of a clerical or typographical nature' subject to correction" by a certificate of correction. *Id.* at 1376 (affirming summary judgment that certificate of correction that changed claim term from "rear walls" to the singular "rear wall" was invalid because it improperly broadened the claim). As in *Superior Fireplace*, the alleged error in Claim 1 of the '078 Patent is not immediately apparent, such as an obvious misspelling, because claims are not required to include a transitional phrase. *See Biovail Labs.*, 433 F. Supp. 2d at 507; *Certain Polyimide Films, Prods. Containing Same, and Related Methods*, Inv. No. 337-TA-772, USITC Pub. 4402 at 68. In addition, the amendment to add the "comprising" language "broaden[ed] the scope of coverage of that claim," *see infra* at Section I.B., such that it cannot be characterized as the mere correction of a typographical error. *Superior Fireplace*, 270 F.3d at 1376. The only way that R+L could have properly made such a broadening amendment was via a reissue, which R+L chose not to timely pursue.[2] *See Senju Pharm. Co. v. Apotex Inc.*, -- F.3d --, 2014 WL 1272839, at *5 (Fed. Cir. 2014) ("[R]eissue can result in broadened claims under certain circumstances, whereas reexamination does not permit broadening.").

Moreover, R+L's own actions indicate that the absence of a transitional phrase from Claim 1 was not a typographical error that would have been readily apparent from the intrinsic

---

[2] The Patent Act provides for **broadening** reissue patents: "Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent, . . . reissue the patent . . . for the unexpired part of the term of the original patent." 35 U.S.C. § 251(a). But, it also imposes a **two-year time limit**, providing: "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." *Id.* at § 251(d).

record.  At least three times during prosecution of the application that matured into the '078 Patent, R+L filed papers to correct errors in the patent application, and each time, R+L declined to add transitional language to Claim 1.  *See* Exhibit 8, 7/3/2000 Preliminary Amendment; Exhibit 9, 5/14/2001 Amendment; Exhibit 10, 1/6/2010 Request for Certificate of Correction.  If the omission of transitional language from Claim 1 was truly a typographical error, R+L could have and should have corrected it during prosecution, rather than improperly seeking to do so during reexamination.  Importantly, after initiating this lawsuit, R+L sought a Certificate of Correction to correct an error in Claim 8, without seeking any correction of Claim 1.[3]  Exhibit 10, 1/6/2010 Request for Certificate of Correction.  The intrinsic record and R+L's undisputed actions and admissions indicate that the omission of transitional language from Claim 1 was not a typographical error at all, and also not the type of error that could be corrected with a broadening amendment because the original claim scope was not clearly evident from the intrinsic record.  *See, e.g.,* Exhibit 11, *Eon-Net L.P. v. Flagstar Bancorp*, No. 2:05-cv-02129-RSM, slip op. at 1-2 (W.D. Wash. Nov. 4, 2008) ("The claims in the '697 patent do not follow the customary format of preamble, transitional phrase, and body. . . .  In the absence of the

---

[3] A patentee who has made "a mistake of a clerical or typographical nature, or of minor character" may apply to the USPTO for a "certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination."  35 U.S.C. § 255.  A certificate of correction that ***broadens*** a claim is ***only valid if*** it corrects a "clerical or typographical" error that would have been clearly evident to one of skill in the art reading the intrinsic evidence.  *Superior Fireplace*, 270 F.3d at 1373 ("[W]e interpret § 255 to require that a broadening correction of a clerical or typographical error be allowed only where it is clearly evident from the specification, drawings, and prosecution history how the error should appropriately be corrected.").  Where (1) typographical mistakes are "not apparent to the reader at all, [*e.g.,*] a mistake resulting in another word that is spelled correctly and that reads logically in the context of the sentence" or (2) "where it is apparent that a mistake has been made, but it is unclear what the mistake is," "[i]t is not evident to the reader of the public record how to appropriately correct mistakes," so those categories of error cannot be repaired via a certificate of correction if the effect would be to broaden the claim.  *Id.* at 1370.

customary format and transitional terms of art, it is difficult for the Court to determine whether the patent claims as drafted are 'open' or 'closed.'"); R+L Supplement (Doc. 362) at 5, n.2 (R+L admitting that the purpose of the amendment was "to clarify and make the original transitional claim language express and consistent with the dependent claims").

Finally, the Court should not accept R+L's contention that the "comprising" language was "always present by implication" in Claim 1.  R+L Br. at 8.  R+L essentially asks the Court to "redraft" original Claim 1 to include the "comprising" language, and "courts do not redraft claims."  *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir 1995).  And even if the Court could use its equitable powers to read original Claim 1 in the manner urged by R+L, it should not do so.[4]  If the absence of the "comprising" language was a simple drafting error, R+L had numerous opportunities over the years to seek correction.  It chose not to do so, and then, when it finally decided to amend Claim 1, R+L pursued the wrong recourse and used the reexamination process to obtain a claim that is now expressly open-ended (and thus broader than the original claim), *see infra* at Section I.B.  The equities do not favor R+L.

---

[4] To the extent R+L asks the Court to use its equitable powers to construe original Claim 1 as reciting "comprising" in an effort to preserve the claim's validity, the Court should decline to do so.  As the Federal Circuit has explained:

> As with violations of other statutes in the Patent Act, claims that do not comply with section 305 cannot stand. Rodime agrees, but maintains that the proper recourse is for this court to exercise its inherent equitable powers by restricting the scope of the claims to their original terms, avoiding a holding of infringement against any devices that would not have been covered by any of the original claims as they existed prior to reexamination. We disagree. Although we construe claims, if possible, so as to sustain their validity, it is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims. Moreover, even if we could consider equities, they do not favor Rodime; they broadened their claims during reexamination despite the explicit prohibition against doing so in section 305.

*See Quantum*, 65 F.3d at 1584 (citations omitted).

Because R+L's amendment to "clarify" or "correct" Claim 1 during reexamination was not made for one of the permissible purposes, Claim 1 and its dependent claims are invalid under 35 U.S.C. § 305. *See* Defendants' Br. at 6.

### B.   R+L Impermissibly Broadened Claim 1 by the Addition of an "Open" Transitional Phrase, Thereby Invalidating the Claims

Even if the amendment to the preamble was for a proper purpose—which it was not—the amendment violated the 35 U.S.C. § 305 prohibition against any amendment "enlarging the scope of a claim of the patent." By amending Claim 1 to include the transition "comprising," R+L also impermissibly broadened the claim by transforming it from closed or partially closed into an open-ended claim.

R+L's reliance on dependent claims' recitation of "further comprising" or "further comprises" does not support its conclusion that Claim 1 must be interpreted as open-ended. R+L Br. at 6. First, R+L ignores the possibility that original Claim 1 could at least equally be interpreted as partially closed—i.e., as reciting "consisting essentially of"—because such a claim would be open to additional elements listed in the dependent claims so long as they "do not materially affect the basic and novel properties of the invention." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998). Indeed, case law confirms that a partially closed independent claim can have dependent claims that use open transitional phrases. *See Momentus Golf, Inc. v. Swingrite Golf Corp.*, 312 F. Supp. 2d 1134, 1144 (S.D. Iowa 2004) (holding independent claims using transition "consisting essentially of" partially closed, where dependent claims used open transitional phrase "comprising"), *vacated on other grounds,* 187 F. App'x 981 (Fed. Cir. 2006). Resolving the ambiguity as R+L proposes, in a way that gives the original claim "the broadest possible construction . . . would undermine the notice function of the claims because it would allow [R+L] to benefit from the ambiguity, rather than requiring [R+L]

A3367

to give proper notice of the scope of the claims to competitors." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1254 (Fed. Cir. 2008); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) ("Where there is an equal choice between a broader and a narrower meaning of a claim, . . . the notice function of the claim [is] best served by adopting the narrower meaning.").

Second, the recitation of "comprising" in the dependent claims and the '078 Patent's specification supports the conclusion that Claim 1 was not intended to include such language. *Contra* R+L Br. at 7. When one claim includes language that is absent from another claim, it is presumed that those differences in language are meant to impart differences in meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (en banc) ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms. For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.") (citations omitted). In other words, when R+L wanted to signal that a claim was open-ended, it did so by expressly reciting a "comprising" transitional phrase. The absence of that language from original Claim 1 indicates that the claim was not meant to be open-ended. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347 (Fed. Cir. 2009) ("Here, when the inventor wanted to restrict the claims to require the use of a key, he did so explicitly. None of the claims at issue on appeal recite the term 'key.' By contrast, all of the other independent claims require either an 'encryption key' or 'key data.' . . . This further indicates that the claims at issue on appeal do not require the use of a key in the preprinted paper.").

R+L's reliance on "the prior provisional application (09/283,032) and non-provisional application (09/283,032) repeatedly [using] transitional phrases 'comprises,' 'comprised,'

87263613.8                                    - 9 -

A3368

'comprising the steps of,' 'comprising, and 'further comprising' when disclosing the invention"
is equally misplaced.  R+L Br. at 8.  The correct conclusion that arises from this intrinsic
evidence is that R+L knew how to use the open transitional phrase but chose not to in original
Claim 1.  *See, e.g., Acumed LLC v. Stryker Corp.* 483 F.3d 800, 807-08 (Fed. Cir. 2007) ("The
intrinsic evidence of the specification therefore suggests that the patentees knew how to restrict
their claim coverage to holes passing through at right angles.  They could have used the word
'perpendicular,' as they did in discussing their preferred embodiment.  Instead, they chose a
different term that implies a broader scope.").  Likewise, R+L's reasoning that "originally filed
claim 1 of both the '365 provisional and '032 non-provisional include the 'open' transitional
phrases 'comprising' and 'comprising the steps of'" does not help R+L.  R+L Br. at 8.  The
correct conclusion that arises from this intrinsic evidence is that R+L knew how to use the open
transitional phrase, could have included such language in Claim 1, but chose not to do so.  *See
Phillips*, 415 F.3d at 1314-15.

Finally, R+L's argument that its amendment was permissible because the patent examiner
did not reject it is a red herring.  R+L Br. at 8.  R+L's position is legally incorrect because it
would mean that no claim amendment that an examiner permitted in reexamination could ever
violate 35 U.S.C. § 305, which is clearly not the case. *See Quantum*, 65 F.3d at 1584 ("As with
violations of other statutes in the Patent Act, claims that do not comply with section 305 cannot
stand."); *see also Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1349-50 (Fed. Cir. 1998)
(invalidating claim that was broadened during reexamination); *Thermalloy, Inc. v. Aavid Eng'g,
Inc.*, 121 F.3d 691, 694 (Fed. Cir. 1997) (same).

Because R+L impermissibly amended and impermissibly broadened Claim 1, the claim is
invalid under 35 U.S.C. § 305.  Because the amendment also necessarily broadened the claims

dependent on Claim 1, those claims are invalid as well. *See Thermalloy Inc. v. Aavid Eng'g, Inc.*, 935 F. Supp. 55, 60 & n.5 (D.N.H. 1996) (invalidating dependent claims because independent claim was impermissibly broadened during reexamination), *aff'd*, 121 F.3d 691 (Fed. Cir. 1997).  Thus, the Court should determine that all claims are invalid under 35 U.S.C. § 305 and dismiss R+L's claims with prejudice.

## II.  R+L's Narrowing Amendments Substantively Amended the Claims

R+L reaches the wrong legal conclusion that must flow from its admission that R+L acted as its own lexicographer in defining an "advance loading manifest" to require load planning software.  R+L Br. at 11 ("The specification *defines* an advance loading manifest as 'documents *generated by the load planning software*.'") (emphasis added and removed).  "[A] patentee who notifies the public that claim terms are to be limited beyond their ordinary meaning to one of skill in the art will be bound by that notification, even where it may have been unintended."  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004).  That is, "a definition of a claim term in the specification will prevail over a term's ordinary meaning if the patentee has acted as his own lexicographer and clearly set forth a different definition."  *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003).

Unlike R+L's express definition of "advance loading manifest," the Court's construction of "loading manifest" does not require load planning software: "a document that both identifies the cargo of a vehicle and all the packages that must be on another transporting vehicle for further shipment."  Doc. 348 at 4.  The Court's construction of "loading manifest" is broader than R+L's definition of "advance loading manifest" because the Court's construction encompassed *both* loading manifests generated by load planning software and loading manifests generated by any other means, including manual creation.  Thus, during reexamination, R+L

narrowed the claims from ones that did **not** require load planning software to generate the loading manifest into claims that **do** require loading planning software to generate the loading manifest.  Such a change in claim scope is substantive.  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).

R+L's assertions that the amendments are non-substantive are inconsistent with its statements to the USPTO in the reexamination.  In R+L's own summary of an interview with the examiner, R+L stated that the amendments "would overcome" certain claim rejections.  *See* Ex. 1 to Doc. 366, Summary of Examiner Interview at 4 ("Tentative Agreement was reached that the proposed claim amendment including the phrase 'loading manifest document for another transporting vehicle' would overcome the claim rejection of 35 USC § 103 involving N&M in combination with Rosenbaum."); *id.* at 5 ("[T]he proposed claim amendments including the phrase 'advance loading manifest document for another transporting vehicle' would overcome all of the claim rejections in the Office Action").  R+L then repeatedly argued that the claims **as amended** are patentable over the prior art.  Ex. 1 to Doc. 366, Applicant Remarks at 7 ("the methods recited in claims 1-9 **as presently amended** are not anticipated"), 9 (the methods recited in claims 1-9, **as presently amended**, are non-obvious"), 11 (same), 13 (same), 15 (same), 17 (same), 18 (same) (emphases added).  Those statements demonstrate that the amendments were made to overcome rejections, and were thus substantive.  *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) (holding that "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment"); *Bloom Eng'g*, 129 F.3d at 1250.

R+L's narrowing amendment defeats its claim of induced infringement—the only theory of infringement remaining in this case—because it creates an irrebuttable presumption that the

original claims are invalid and thus precludes any finding that Defendants had the requisite intent to induce infringement.  *See* Defendants' Br. at 11.  At a minimum, the amendment precludes recovery for any damages prior to the date of issuance of the reexamined claims.[5]  *See id.* at 11-12.

## **CONCLUSION**

Because R+L's amendments render the claims invalid, and moot the factual and legal bases for its infringement claims as a matter of law, a final judgment of invalidity and non-infringement should be entered in Defendants' favor under Fed. R. Civ. P. 56.


Date:  April 30, 2014

/s/  Richard S. Zembek
Richard S. Zembek
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651 5151 / Fax:  (713) 651 5246

Laura J. Borst
FULBRIGHT & JAWORSKI LLP
2100 IDS CENTER
80 S. Eighth Street
Minneapolis, Minnesota 55402-2112
Tel:  (612) 321-2800 / Fax:  (612) 321-2288

Douglas J. Williams
CARLSON CASPERS
Capella Tower, Suite 4200
225 South Sixth Street
Minneapolis, MN 55402
Tel:  (612) 436-9633 / Fax:  (612) 436-9605

James E. Burke (0032731)
KEATING MUETHING & KLEKAMP LLP

---

[5] R+L cannot recover any damages from Qualcomm because Qualcomm sold the business accused of infringement to a third party prior to issuance of the reexamined claims.  *See* Ex. 3 to Doc. 361.

A3372

One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel:  (513) 579-6400 / Fax: (513) 579-6457

**COUNSEL FOR DEFENDANTS QUALCOMM
INCORPORATED, MICRODEA, INC., AND
PEOPLENET COMMUNICATIONS CORPORATION**


*/s/  Thomas H. Shunk*
Thomas H. Shunk (0025793)
tshunk@bakerlaw.com
BAKER & HOSTETLER LLP
3200 PNC Building
1900 East Ninth Street
Cleveland, Ohio 44114-3485
Tel: (216) 621-0200 / Fax:  (216) 696-Facsimile:
216.696.0740

**COUNSEL FOR DEFENDANTS XEROX BUSINESS
SERVICES, LLC F/K/A AFFILIATED COMPUTER
SERVICES, INC., AND FFE TRANSPORTATION
SERVICES, INC.**


*/s/  Scott M. Petersen*
Scott M. Petersen
spetersen@fabianlaw.com
Phillip D. Dracht
pdracht@fabianlaw.com
FABIAN & CLENDENIN
215 S. State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:  (801) 531-8900
Facsimile:  (801) 596-2814

**COUNSEL FOR DEFENDANT DRIVERTECH, LLC**


*/s/  Carson P. Veach*
Carson P. Veach
cveach@freebornpeters.com
David S. Becker
Jacob D. Koering
Matthew J. Kramer
FREEBORN & PETERS
311 South Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 360-6382

A3373

Facsimile:  (312) 360-6995

Kara A. Czanik (0075165)
GRAYDON HEAD &RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202
Phone: (513) 629-2746
Fax: (513) 651-3836

**COUNSEL FOR DEFENDANT INTERMEC TECHNOLOGIES CORP.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on April 30, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via CM/ECF.

*/s/  Richard S. Zembek*
Richard S. Zembek

87263613.8

- 15 -

A3374

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | ) ) ) | MDL Docket No. 1:09-md-2050 |
| | ) | JUDGE BECKWITH |
| | ) | |
| | ) | **ALL CASES** |

<u>**R+L CARRIERS, INC.'S REPLY BRIEF ON A CLAIM AMENDMENT
TO U.S. PATENT 6,401,078 PURSUANT TO *EX PARTE*
REEXAMINATION CERTIFICATE**</u>

Anthony C. White          (0062146)
    *Trial Attorney*
Philip B. Sineneng          (0083406)
Stephanie M. Chmiel          (0087555)
41 South High Street, Suite 1700
Columbus, OH  43215-6101
Tel:  (614) 469-3200
Fax:  (614) 469-3361
*Tony.White@ThompsonHine.com*
*Philip.Sineneng@ThompsonHine.com*
*Stephanie.Chmiel@ThompsonHine.com*


Stephen J. Butler          (0010401)
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel:  (513) 352-6700
Fax: (513) 241-4771
*Stephen.Butler@ThompsonHine.com*

Megan D. Dortenzo          (0079047)
Arthur P. Licygiewicz          (0068458)
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Tel:  (216) 566-5500
Fax:  (216) 566-5800
*Megan.Dortenzo@ThompsonHine.com*
*Art.Licygiewicz@ThompsonHine.com*

John W. Ryan          (*pro hac vice*)
Thomas A. Haas          (*pro hac vice*)
1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Tel:    (202) 331-8800
Fax:    (202) 331-8330
*John.Ryan@ThompsonHine.com*
*Thomas.Haas@ThompsonHine.com*

*ATTORNEYS FOR R+L CARRIERS, INC.*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

I.    Introduction ................................................................................................... 1

II.   Law and Argument ........................................................................................ 1

      A.   Claim 1 Was Properly Amended Under 35 U.S.C. § 305 ...................... 1

      B.   R+L Did Not Broaden Its Claims During Reexamination Of The '078 Patent. ................. 4

      C.   The Addition Of The Term "Advance" Did Not Narrow The '078 Patent. ...................... 9

           1. Defendants Improperly Advocate For The Adoption Of A Per Se Rule For Invalidity
              Previously Rejected By The Federal Circuit. ............................................. 9

           2. "Loading Manifest" and "Advance Loading Manifest" Are Synonymous. .............. 10

           3. There Has Been No Change To The Timing Component Of The '078 Patent. ........ 14

III.  Conclusion ..................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
   73 F.3d 1573 (Fed. Cir. 1996)..................................................................................8

*Biovail Labs. Int'l v. Impax Labs., Inc.*,
   433 F. Supp. 2d 501 (E.D. Pa. 2006) ....................................................................8

*Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*,
   129 F.3d 1247 (Fed. Cir. 1997)............................................................................10

*Braintree Labs., Inc. v. Novel Labs., Inc.*,
   No. 2013-1438, 2014 U.S. App. LEXIS 7495 (Fed. Cir. Apr. 22, 2014) .................1

*Cordis Corp. v. Medtronic Ave, Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008)..............................................................................4

*In re Etter*,
   756 F.2d 852 (Fed. Cir. 1985)................................................................................2

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994)................................................................................2

*Laitram Corp. v. NEC Corp.*,
   952 F.2d 1357 (Fed. Cir. 1991)............................................................................10

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004)............................................................................15

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
   No. 2012-1576, 2012-1601, 2012-1602, 2012-1603, 2012-1604, 2012-1605,
   2012-1607, 2014 U.S. App. LEXIS 2242 (Fed. Cir. Feb. 6, 2014) ..........................1

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
   810 F.2d 1113 (Fed. Cir. 1987)..............................................................................3

*Tennant Co. v. Hako Minuteman, Inc.*,
   878 F.2d 1413 (Fed. Cir. 1989)............................................................................10

A3776

## I.    INTRODUCTION

Despite their burden to prove invalidity by clear and convincing evidence, Defendants'[1] opening brief offers nothing but assertions unsupported by the intrinsic evidence, and misstatements of the law.  In stark contrast, R+L's position is well-grounded in, and entirely supported by, the claim language, the specification of the '078 Patent, and the prosecution history.  In the end, there is no basis on which to find either that the '078 Patent is invalid after amendment or that there has been any substantive change to claim 1.

## II.    LAW AND ARGUMENT

It is well-settled that Defendants bear the burden of proving invalidity by clear and convincing evidence.  *Braintree Labs., Inc. v. Novel Labs., Inc.*, No. 2013-1438, 2014 U.S. App. LEXIS 7495, at *18 (Fed. Cir. Apr. 22, 2014) ("Invalidity must be proven by clear and convincing evidence."); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, No. 2012-1576, 2012-1601, 2012-1602, 2012-1603, 2012-1604, 2012-1605, 2012-1607, 2014 U.S. App. LEXIS 2242, at *20 (Fed. Cir. Feb. 6, 2014) ("Patent invalidity must be established by clear and convincing evidence.").  Therefore, in assessing Defendants' arguments that the '078 Patent is invalid because it was either broadened or amended for some improper purpose on reexamination, this is the standard we must apply.  Defendants have not met their burden.

### A.    Claim 1 Was Properly Amended Under 35 U.S.C. § 305.

Defendants misstate the law in suggesting that the amendment made on reexamination to the '078 Patent was somehow beyond the scope of permissible amendments under 35 U.S.C. § 305.  Defendants assert that a patent owner can only propose an amendment during reexamination to distinguish the claim from the prior art or to respond to an adverse decision as

---

[1] Capitalized terms used herein have the same meaning as those ascribed to them in R+L's Brief on a Claim Amendment to U.S. Patent 6, 401,078 Pursuant to *Ex Parte* Reexamination Certificate filed on April 14, 2014 (Docket No. 367).

to patentability.  Defendants' Brief at 5.  That statement is false, as is apparent from the very

cases that Defendants cite in their brief.

Contrary to Defendants' assertion, the Federal Circuit has unambiguously recognized that

a patentee also can submit amendments during re-examination to resolve issues under 35 U.S.C.

§ 112.  *In re Freeman*, 30 F.3d 1459, 1468 fn. 5 (Fed. Cir. 1994) ("Claims may also be amended

to comply with 35 U.S.C. §112 during reexamination.");  *In re Etter*, 756 F.2d 852 (Fed. Cir.

1985).  35 U.S.C. § 112 provides, in pertinent part, as follows:

> (a)  In General.  The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

> (b)  Conclusion.  The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

> (c)  Form.  A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

Thus, R+L was free to submit amendments to the Examiners to address any issues that could

arise under 35 U.S.C. § 112.

With Defendants' misstatement of the law revealed, their argument that the amendment

to the '078 Patent was improper under 35 U.S.C. § 305 is easily dispatched.  Both sides

acknowledge that R+L submitted the '078 Patent for reexamination based upon substantial new

questions of patentability created by the prior art Defendants presented for the first time during

this case.  That was undoubtedly proper under 35 U.S.C. § 305.  Once the '078 Patent was

properly submitted and accepted for reexamination, R+L was free to confer with the Examiners

about changes to eliminate the possibility that someone might misinterpret the scope of the claim

2

as being closed, and thereby assure compliance with the requirement of section 112(a) that the specification describe the invention in "full, clear, concise, and exact terms."

And that is exactly what occurred here. While it is apparent from the intrinsic evidence that original claim 1 of the '078 Patent was always intended to include the transitional phrase "comprising the steps of," (see Section B, *infra*), it is also possible that someone could have overlooked that intrinsic evidence and misinterpreted original claim 1 as not implicitly containing the transitional phrase "comprising the steps of." Indeed, Defendants' argument itself proves that this concern was justified, as Defendants have misinterpreted original claim 1 exactly as R+L imagined. Because the Examiners could have rejected claim 1 under section 112(a) as a result of the possibility of that misinterpretation even after R+L amended it to distinguish the prior art, R+L included in its proposed amendment the express transitional phrase "comprising the steps of" to make explicit in claim 1 what had always been implicit. *See* Declaration of Geoffrey L. Oberhaus, dated April 30, 2014 (attached hereto as Exhibit A). Rather than run the risk that the Examiners might potentially reject claim 1 under section 112(a) in a second round of rejections, thereby prolonging the reexamination proceeding, R+L efficiently eliminated the possibility of a misinterpretation in the first and only submitted amendment. In short, R+L did in one amendment what it could have done in two.

Nothing in the case law remotely suggests that this action was improper under 35 U.S.C. § 305. Instead, the law encourages patentees to correct possible ambiguities. *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116 (Fed. Cir. 1987) (noting that "whether the antecedent was already there by implication depend[s] on the facts of the case, and . . . the 'patentee should be allowed to correct an error or ambiguity without having to rely on implication or litigation.'") (citing *In re Altepohl*, 500 F.2d 1151, 1156 (CCPA 1974)).

A3779

Defendants certainly offer no case holding that this amendment  by R+L was somehow improper, and R+L is aware of none.

Significantly, as is implicit from their acceptance of the amendment to claim 1, the Examiners themselves recognized that this portion of the amendment was both permitted by 35 U.S.C. § 305 and appropriate, namely to address a potential question under section 112(a) about whether the specification described the invention in "full, clear, concise, and exact terms."  The three Examiners in the reexamination proceeding were tasked with assessing validity under 35 U.S.C. § 305.  *See Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1185 (Fed. Cir. 2008) ("The [Manual of Patent Examining Procedure] directs the examiner to determine only whether any added claims impermissibly enlarge the scope of the claims.") (citation omitted).  The Examiners reviewed all three subparts of the amendment and found them to be in compliance with the law.  Defendants offer no argument to challenge the Examiners' conclusion, let alone to meet their burden of proving the '078 Patent invalid by clear and convincing evidence.  R+L respectfully suggests that the Court reject Defendants' erroneous argument.[2]

**B.    R+L Did Not Broaden Its Claims During Reexamination Of The '078 Patent.**

The entire basis of Defendants' argument that R+L's amendment during reexamination improperly broadened claim 1 hinges on their unsupported assertion that original claim 1 is properly construed as closed.  Yet, as explained in R+L's opening brief, original claim 1 was always intended to be open and to contain the transitional phrase "comprising the steps of."

---

[2] It is important to note that R+L argued to the PTO in the reexamination that the '078 Patent was valid over the prior art.  While the PTO initially rejected that argument in the First Office Action, that issue was by no means prosecuted to its conclusion.  Rather than press this point through the reexamination process and obtain a determination from the PTO that the '078 Patent was indeed valid over the cited references, without an amendment, R+L addressed the issue by making a minimal, clarifying amendment to claim 1 that obviated the need to further prosecute this question.

The intrinsic evidence surrounding the '078 Patent clearly supports that conclusion.  That intrinsic evidence starts with the claims themselves, and the fact that dependent claims 2, 5, 6, 7, and 9, which all depend directly or indirectly from claim 1, use the transitional phrase "further comprising" or "further comprises."  The common sense of claim construction dictates that if a dependent claim "further comprises" or is "further comprising," the independent claim from which the dependent claim depends is properly construed as also containing the transitional phrase "comprising."

Furthermore, everything in the specification to the '078 Patent supports the conclusion that the proper construction of original claim 1 is open, implicitly containing the transitional phrase "comprising."  The specification specifically uses the term "comprising" repeatedly when describing the invention set forth in claim 1, expressly establishing original claim 1 as open.  *See* Docket No. 367, Appendix A.

Moreover, even beyond the repeated use of the term "comprising," the specification makes clear in other ways that original claim 1 is not closed.  For original claim 1 to be closed, it would have to be read as describing the invention as "this and no more," meaning that only the steps set out in original claim 1 can be part of the process, and if anything else were done in conjunction with generating the loading manifest described in that claim, that process would not read upon original claim 1.  For this to be true, the specification should teach a process that contains only the steps enumerated in original claim 1, and nothing more.  It does not.

The specification repeatedly describes the process set out in original claim 1 as one that includes steps that are ancillary to the production of the loading manifest which is the focus of original claim 1.  For example, the specification makes clear in many places that the load planning process described in original claim 1 is one that can and likely will be done in

A3781

conjunction with a billing process.  In the section entitled "Background of the Invention," the specification starts by describing the invention as one that "relates generally to methods of dynamic load planning *and billing*," and "more particularly, to a method for transmitting shipping documents or bills of lading directly from the truck driver to a common point or terminal *so that billing and load planning* can be accomplished while the load is being delivered from the customer."  *See* '078 Patent at Col. 1, ll. 14-20 (JA000015)  (emphasis added).  From there, the specification makes clear no less than *twenty-three times* that the process claimed in original claim 1 is one that can be done in conjunction with advanced billing before the package is removed from the transporting vehicle.  *See id.* at Col. 1, ll. 1-19; Col. 2, ll. 50-51, 61-65; Col. 2, l. 65-Col. 3, l. 2; Col. 3, ll. 3-6, 19-20, 21-22, 57-58, 60-63, 66-67; Col. 4, ll. 4-5; Col. 5, ll. 45-49, 49-51, 55-56, 57-60, 63-65; Col. 6, ll. 7-8, 10-11, 15-23, 23-27; Col. 9, ll. 42-46; Col. 12, l. 30 (JA000015-17, 19, 20).  There would have been no reason for the inventors to have so explicitly stated in the specification that the load planning process is often performed in conjunction with billing if they had intended original claim 1 to be closed.

The figures used by R+L in the '078 Patent to graphically describe the process claimed by original claim 1 also make clear that it is properly construed as open.  Figure 1A describes the process of original claim 1 as one that simultaneously "extract[s] load planning *and billing information*" at Step 60.  *See* JA000007  (emphasis added).  That load planning and billing information is then transmitted at the same time in Steps 70 and 90 for two different purposes, load planning and billing.  *Id*.  In Figure 1B, R+L again graphically describes the process of original claim 1 as separately but simultaneously extracting "load planning information" and "billing information," and then transmitting that information simultaneously for separate load planning and billing purposes.  *See* JA000008.

6

These figures only reinforce what is obvious from the specification—the '078 Patent described original claim 1 as an open claim intended to include steps that are unrelated to the load planning process revealed by the invention.  Defendants' request that the Court interpret original claim 1 as closed in order to invalidate the '078 Patent is contrary to the specification, and falls far short of their burden of proving the patent invalid by clear and convincing evidence.

Nothing in the prosecution history changes this conclusion.  The prior provisional application (serial no. 60/080,365) and non-provisional application (09/283,032) repeatedly use the transitional phrases "comprises," "comprised," "comprising the steps of," "comprising," and "further comprising" when disclosing this invention.  *See* Docket No. 367, Appendix A.  Indeed, originally filed claim 1 of both the '365 provisional and '032 non-provisional applications include the "open" transitional phrases "comprising" and "comprising the steps of" respectively.  Given this final piece, all of the intrinsic evidence compels the conclusion that original claim 1 of the '078 Patent is properly construed as open, and as a result, the amendment adding the transitional phrase "comprising the steps of" does not amount to a substantive change of that claim.

In an effort to shoehorn their argument into the intrinsic evidence, Defendants assert, with no citation to any evidence, that since original claim 1 could be construed to implicitly contain the transitional phrase "consisting essentially of," adding "comprising the steps of" amounts to a broadening of the claim.  Yet, nothing in the intrinsic evidence supports the assertion that original claim 1 should be properly construed as containing the transitional phrase "consisting essentially of."  Defendants offer no citation to any evidence that supports this bare statement.  To the contrary, all of the intrinsic evidence leads to the conclusion that original

7

A3783

claim 1 is open and always has been open.  Devoid of evidentiary support, Defendants' argument
is without merit.

      With no intrinsic evidence to support their arguments, Defendants resort to arguments
based on inapplicable case law.  As an example, Defendants cite to *Athletic Alternatives, Inc. v.
Prince Mfg., Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) for the proposition that since R+L drafted
original claim 1, if there is an equal choice between two interpretations of that claim, this Court
is required to accept the narrower one.  But the court in that case adopted the narrower
interpretation only because the claim language, specification and prosecution history all led to
two equally plausible constructions of the claim term at issue.  That circumstances does not exist
here.  The claim language, specification, and prosecution history of the '078 Patent are not
reasonably susceptible to two equally plausible constructions of either an open and closed
implicit transitional phrase in original claim 1.  As explained above, the intrinsic evidence points
only to the conclusion that original claim 1 is open.

      Next, Defendants twist the holding in *Biovail Labs. Int'l v. Impax Labs., Inc.*, 433 F.
Supp. 2d 501 (E.D. Pa. 2006), claiming that it announces the general rule that "when a claim
lacks a transitional phrase, all of the claim language is considered a part of the 'body' that recites
substantive limitations."  Defendants' Brief at p. 7.  The court in *Biovail* made no such sweeping
pronouncement.  Instead, the court there did what this Court must do, it analyzed the intrinsic
evidence to determine how the claims at issue should be construed.  Nothing in the intrinsic
evidence cited by the court in *Biovail* suggested  that the specification consistently described the
claim as being open, like the specification of the '078 patent does.  Thus, *Biovail* stands for
nothing more than the well-settled proposition that the Court must examine the intrinsic evidence
to determine the meaning of the claims.

8

A3784

And, even if the Court were to consider "all of the claim language" of original claim 1 to be part of the "body" of the claim, and the subsequent addition of "comprising the steps of" to have moved claim language from the body to a preamble, there would be nothing in that rearrangement of the words that would change the scope of claim 1.  Defendants point to no *actual* change in scope from original claim 1 to amended claim 1 resulting from their assertion that claim language was moved from the claim body to the preamble.  The best that Defendants can do is posit that the "position of the language within the claim structure <u>can</u> have an effect on the scope of the claim," or that the preamble language "<u>could, depending on the circumstances,</u> be interpreted as being non-limiting."  Defendants' Brief at p. 7 (emphasis added).  Defendants can only hypothesize about unidentified, possible scope change, and cannot point to any language in the specification that suggests there was an actual change in the scope of claim 1 as a result of the amendment.

### C.     The Addition Of The Term "Advance" Did Not Narrow The '078 Patent.

#### 1.     Defendants Improperly Advocate For The Adoption Of A Per Se Rule For Invalidity Previously Rejected By The Federal Circuit.

Defendants also assault the amendment to claim 1 by asserting in the alternative that if original claim 1 was not broadened by the amendment, then it must have been narrowed.  That too is erroneous.[3]

To carry this argument, Defendants advance what can only be seen as a *per se* rule of invalidity.  Specifically, Defendants assert that because claim 1 was amended on reexamination to distinguish prior art after the PTO issued a rejection, any amendment to claim 1 must be construed as substantively narrowing the claim.  This argument runs directly contrary to well-

---

[3] Defendants also are wrong that induced infringement is R+L's "only theory of infringement that remains in this case."  Defendants' Br. at p. 11.  R+L's claims against Frozen Foods Express, Inc. are based on its direct infringement of the '078 Patent.

9

established law.  Indeed, the authority that Defendants rely on in their brief expressly rejects any such *per se* rule, in either name or effect.  *See Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("There is no absolute rule for determining whether an amended claim is legally identical to an original claim.") (emphasis added).  In *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1361 (Fed. Cir. 1991), the Federal Circuit re-emphasized that it has "rejected the argument that any amendment to the claims during reexamination is substantive," including the mere fact that an amendment was made after a rejection based on prior art. (emphasis added) (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970 (Fed. Cir. 1986)).  A term can be added to a specification to make a claim more definite without causing a substantive change.  *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) (reversing dismissal because the addition of the word "bottom" to modify "wall section" made the claim more definite without substantively changing the scope of the original claim).

While Defendants do not openly advocate for the formal adoption of such a *per se* rule in name, the effect of their argument is the same.  Defendants would have this Court be distracted by the dicta in *Laitram* rather than the numerous holdings that make clear that the intrinsic evidence, not some wooden *per se* rule, determines whether an amendment during reexamination is substantive.  R+L respectfully urges the Court to reject Defendants' cloaked *per se* rule, and to analyze the intrinsic evidence, all of which proves that claim 1 was not narrowed by this amendment.

> **2.     "Loading Manifest" and "Advance Loading Manifest" Are Synonymous.**

Once forced to argue based on the intrinsic evidence, Defendants' assertions of narrowing fall apart.  Defendants insist that adding the term "advance" to modify "loading manifest" transformed the term into something new that substantively narrowed claim 1.

A3786

Specifically, Defendants assert that "loading manifest" in original claim 1 was one that "could be generated by a human without the use of load planning software." Defendants' Br. at 16. Defendants then theorize that since "advance loading manifest" in amended claim 1 is specifically defined as being generated pursuant to load planning software, amended claim 1 is more narrow than original claim 1. *Id.* This argument fails on multiple levels.

First, the entire argument hinges entirely on whether there is any intrinsic evidence that the loading manifest described in original claim 1 could be generated by a human without using software. Defendants cite to no such evidence because there is none. Thus, the argument collapses upon itself.

Second, the intrinsic evidence actually refutes the premise that the loading manifest of original claim 1 could be generated without software. Over and over again, the specification teaches that these loading manifests were always prepared using computer software (boldface indicates emphasis added):

- "A remote processor receives the documentation, stores the documentation and feeds the documentation to a **load planning software** for generation of **advance loading manifests**[.]" *See* '078 Patent at Abstract (JA000006);

- "**Load planning software**, while reducing the time expended in planning shipments, is unable **by itself** to reduce the inefficiency caused by partial loads that could have been full loads due to unscheduled freight[.] *Id.* at col. 2, ll. 23-26 (JA000015);

- "Thereafter, load plans for a destination, which may include interim and final destinations for a package, can be dynamically preformatted and manipulated **by using a computing device to request from the remote processing center's computing device an advance loading manifest**." *Id.* at col. 7, ll. 44-48 (JA000018);

- "**Advanced loading manifests**, are documents generated by the **load planning software** discussed above." *Id.* at col. 7, ll. 48-50 (JA000018);

- "Since, **the load planning software** is receiving documentation regarding the packages dynamically throughout delivery day, whenever the **load planning**

11

A3787

**software** is requested to generate an **advance loading manifest**, the loading efficiency of the trucks is fully maximized[.]" *Id.* at col. 7, ll. 54-58 (JA000018);

- "When an **advance loading manifest** is requested, the remote processing center's computing device, **utilizing a software logic**, will programmatically request an extract (step 180) of all documentation relevant to generating an **advance loading manifest** for a requesting destination." *Id.* at col 7, l. 66-col. 8, l. 3 (JA000018);

- "[T]he relevant information contained in these sets of documentation such as package weight, package dimension, package destination, package delivery requirements, package current location, etc., are fed to the **load planning software** to produce one or more **advanced loading manifests**." *Id.* at col. 8, ll. 5-10 (JA000018);

- "Alternatively, image data which is well fielded or structured may have the loading data programmatically extracted out of the image in step 370 and then inputted to a **load planning software** for generation of an **advanced loading manifest**[.]" *Id.* at col. 9, ll. 61-65 (JA000019);

- "Once the loading information from these images are appropriately extracted or manually keyed from these images, the information is passed to a **load planning software package** for generation of an **advanced loading manifest**." *Id.* at col 10, ll. 40-44 (JA000019);

- "This electronic text could then be programmatically inputted to a **load planning software** for generating **advance loading manifests**." *Id.* at col. 10, ll. 55-57 (JA000019);

- "Whenever a request is made of the remote processor for an **advance loading manifest**, the request will route to **load planning software** where an **advance loading manifest** is produced for further electronic transmission or hardcopy output." *Id.* at col. 12, ll. 35-39 (JA000020); and

- "The extracted load planning data is fed to a **load planning software** causing an **advance loading manifest** to be generated in block 820." *Id.* at col. 13, ll. 11-13 (JA000021).

The specification is replete with express statements making clear that the loading manifests of claim 1 are generated using software.

And, this clarity is not just reserved for the term "advance loading manifest." The specification makes clear that the term "loading manifest," even without the modifier "advance,"

12

A3788

was generated using computers and software.  There is only one instance where the specification

uses the term "loading manifest" without including "advance":

> The remote facility receives the ETA in 860 and makes a determination at some point to request a loading manifest 850 *from the remote processor* via the communications layer 780.

*Id.* at col. 13, ll. 2-5 (emphasis added) (JA000021).  Thus, a "loading manifest" is generated from

the remote computer processor referred to repeatedly throughout the specification.  Computer

processors, of course, only operate as computer processors when they are given instructions via

software.  Software that instructs a computer processor to generate a loading manifest is, by

definition, load planning software.  Therefore, the "loading manifest" as described in original

claim 1 is generated using load planning software, just like the "advance loading manifest"

described in the amendment is generated.  There is no difference, substantive or otherwise, in the

scope of these terms, and thus no basis for Defendants' argument.  The words "loading manifest"

and "advance loading manifest," as used in the '078 Patent, are synonymous.

Defendants' reference to the prosecution history of U.S. Patent 11/950, 529 (the "'529

Application"), to the extent it has any relevance, further confirms that loading manifests were

always to have been generated by loading software.

> As noted in the present Specification, **advance loading manifests are documents generated by load planning software.  The load planning software** utilizes the extracted packing data and dynamically calculates and then transmits the **advance loading manifest** to a remote facility.

*See* Defendants' Br. at p. 15 and at Ex. 4, p. 10 (emphasis added).  Nowhere in the prosecution

history of the '078 Patent is there any alternate definition of either "advance loading manifest" or

"loading manifest," or anything else to indicate that the scope of an "advance loading manifest"

is somehow different from a "loading manifest."

Further confirmation that loading manifests and advance loading manifests are documents prepared using load planning software is found in Defendants' claim construction arguments. Defendants did not urge this Court during claim construction to construe the term "advance loading manifest," or to construe how the "loading manifest" in original claim 1 is generated. Had the Defendants truly believed that a "loading manifest" is a document that is generated differently than the specific definition of "advance loading manifest" in the specification, they would have urged the Court to include that aspect of a "loading manifest" in its construction.

### 3. There Has Been No Change To The Timing Component Of The '078 Patent.

As their last ditch effort, Defendants' argue that the insertion of "advance" to amended claim 1 substantively changed original claim 1 by requiring the loading manifest to be generated before a vehicle's arrival at the terminal. There is no support for this argument either.

There is only one timing component found in the '078 Patent, and it has nothing to do with the vehicle's arrival at the terminal. The timing component in the '078 Patent is exclusively contained in the requirement that the loading manifest be prepared in advance of removing the package from the transporting vehicle:

> "Once the advance loading manifest is generated, it is sent to the requesting remote facility . . . in block 870 via the communication layer and used in 880 to load and unload (as appropriate) the arriving truck[.]"

*See* '078 Patent, col. 13, ll. 13-16 (JA000021). That is it, and that is the timing component, to the extent there is one, to which the term "advance" is referring. Further, this timing is expressly stated in claim 1 which reads "prior to the package being removed from the transporting vehicle[.]" *Id.* at col. 14, ll. 8-9 (JA000021). There was no change between original claim 1 and

14

amended claim 1 with respect to the timing component of the '078 Patent.  Thus, one does not have to look beyond the express language of the claim itself to determine the timing element.

As is the case with all of their arguments, Defendants provide no evidentiary support for their contention that the term "advance" in amended claim 1 refers to a timing component only based upon when the truck arrives at the terminal.  Defendants provide no citation to anything that allows for doubt that any timing component in the term "advance" is focused on when the package is removed from the transporting vehicle, as stated in the claim.  Without this, Defendants' argument for narrowing on this basis fails.

Defendants' entire argument on this point relies on the prosecution history of the '529 Application.  Yet, that application relates to an entirely different patent, not the '078 Patent. Thus, the '529 Application is not intrinsic evidence on the meaning of terms used in the '078 Patent, and it is hard to conceive of any relevance it has to the issues presented here. Defendants' lone citation to *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004), in the hopes of creating some relevance in the '529 Application fails on first blush. In *Microsoft*, the Federal Circuit was interpreting an identical claim term used throughout three separate patents, all of which contained the same specification.  That is certainly not the case here,[4] and Defendants have not even pointed to a single common claim term in the '529 Application and the '078 Patent.  Instead, they simply seek to graft aspects of the '529 Application onto interpretation of the '078 Patent to suit their purposes.  *Microsoft* certainly does not stand for that proposition, and Defendants offer nothing else to justify this exercise.

---

[4] The '529 Application is a continuation-in-part application that contains additional disclosure in the specification not found in the '078 Patent.

### III.    CONCLUSION

R+L respectfully requests the Court to find that the changes made by R+L to the claims of the '078 Patent during reexamination were not "substantive changes."[5]  Upon this finding, R+L respectfully requests an Order granting the proposed case schedule submitted on February 17, 2014, with all deadlines keyed off the date of such Order.

Respectfully submitted,

_____/s/ Anthony C. White_____

Anthony C. White          (0062146)
*Trial Attorney*
Philip B. Sineneng          (0083406)
Stephanie M. Chmiel          (0087555)
41 South High Street, Suite 1700
Columbus, OH  43215-6101
Tel:  (614) 469-3200
Fax:  (614) 469-3361
*Tony.White@ThompsonHine.com*
*Philip.Sineneng@ThompsonHine.com*
*Stephanie.Chmiel@ThompsonHine.com*

Megan D. Dortenzo          (0079047)
Arthur P. Licygiewicz          (0068458)
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Tel:  (216) 566-5500
Fax:  (216) 566-5800
*Megan.Dortenzo@ThompsonHine.com*
*Art.Licygiewicz@ThompsonHine.com*

Stephen J. Butler          (0010401)
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel:  (513) 352-6700
Fax: (513) 241-4771

---

[5] Even if the Court ruled that the '078 Patent was somehow narrowed by amendment in the reexamination, Defendants' assertion that they would be automatically entitled to summary judgment is incorrect.  Rather, each individual defendant would be required to file a motion for summary judgment demonstrating why there is no genuine issue of material fact as to it in light of such a ruling from the Court.

16

A3792

*Stephen.Butler@ThompsonHine.com*

John W. Ryan                    (*pro hac vice*)
Thomas A. Haas                 (*pro hac vice*)
 1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Tel: (202) 331-8800
Fax: (202) 331-8330
*John.Ryan@ThompsonHine.com*
*Thomas.Haas@ThompsonHine.com*

ATTORNEYS FOR R+L CARRIERS, INC.

17

A3793

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2014, a true and correct copy of the foregoing *R+L Carriers, Inc.'s Reply Brief on a Claim Amendment to U.S. Patent 6,401,078 Pursuant to Ex Parte Reexamination Certificate* was filed with the Clerk of Court using the CM/ECF system which will provide an electronic copy to all counsel of record.

_____/s/ Philip B. Sineneng_____
Philip B. Sineneng

1

A3794

1

A3795

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. | :<br>:<br>:<br>: | MDL Docket No. 1:09-md-2050 |

**O R D E R**

This matter is before the Court on its sua sponte order directing the parties to brief the effect, if any, on this lawsuit of the Patent & Trademark Office's ("PTO") decision to allow amended claim 1 at the conclusion of the ex parte reexamination of the patent-in-suit.  Doc. No. 359.  The parties filed principal briefs on the question presented by the Court on April 14, 2014 and responsive briefs on April 30, 2014.  (Doc. Nos. 366-369).  Accordingly, the question presented by the Court is ripe for decision. For the reasons that follow, the Court concludes that the reexamination proceedings resulted in a narrowing of claim 1, thereby precluding recovery of damages for infringement prior to the date the PTO issued the reexamination certificate.  The Court concludes further, however, that the scope of claim 1 was not broadened during the reexamination proceedings.  Consequently, claim 1 is not invalid on the grounds that it was impermissibly enlarged during those proceedings.

I. Introduction

A redundant but necessary introduction - Plaintiff R+L Carriers, Inc. is the owner of U.S. Patent 6,401,078 ("the '078 Patent") with an original issue date of June 4, 2002.

A3812

Generally speaking, the '078 Patent claims a method for transmitting bills of lading to improve the efficiency of less-than-a-load trucking operations.

Claim 1 is the only independent claim of the '078 Patent.  As originally issued claim 1 stated:

> 1. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:
>
>    placing a package on a transporting vehicle;
>
>    using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;
>
>    providing a portable image processor capable of wirelessly transmitting the image from the transporting vehicle;
>
>    wirelessly sending the image to a remote processing center;
>
>    receiving the image at said remote processing center; and
>
>    prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

'078 Patent col. 13, ll. 40-48, col. 14, ll. 1-12.

Currently pending before the Court are claims concerning alleged direct and induced infringement of the '078 Patent.  In June 2013, Plaintiff applied to the PTO for ex parte reexamination the '078 Patent on the grounds that several prior art references raised substantial new questions of patentability of the patent.  In August 2013, the PTO granted the application for reexamination and in December 2013 issued a First Office Action rejecting claims 1 through 9 of the '078 Patent as either being anticipated by the prior art references or obvious in light of the prior art references.

Plaintiff contested the First Office Action but, after concluding an in-person

-2-

A3813

interview with the patent examiner, amended claim 1 as follows (amendments

italicized):

1. A method for transferring shipping documentation data for a package from a
transporting vehicle to a remote processing center *comprising the steps of:*

    placing a package on a transporting vehicle;

    using a portable document scanner to scan an image of the documentation
    data for the package, said image including shipping details of the package;

    providing a portable image processor capable of wirelessly transmitting the
    image from the transporting vehicle;

    wirelessly sending the image to a remote processing center;

    receiving the image at said remote processing center; and

    prior to the package being removed from the transporting vehicle, utilizing said
    documentation data at said remote processing center to prepare [a] *an
    advance* loading manifest *document for another transporting vehicle* which
    includes said package for further transport of the package on another
    transporting vehicle.

See Doc. No. 367-3 (Reexamination Certificate).  As can be seen, Plaintiff amended the

'078 Patent by adding "comprising the steps of" as a transitional phrase in the preamble,

by changing "a loading manifest" to "an advance loading manifest document," and by

inserting the phrase "for another transporting vehicle" after "advance loading manifest

document."  The PTO concluded that as a result of these amendments, the '078 Patent

was not anticipated by or obvious in light of the cited prior art references.  The PTO

issued an Intent to Issue Reexamination Certificate confirming claims 1-9 as amended

on February 26, 2014.  The PTO issued the Reexamination Certificate on March 21,

2014.

       Because the ex parte reexamination proceedings potentially altered the scope of

-3-

A3814

the claims of the patent-in-suit, with a consequent effect on the infringement and

invalidity claims at issue in this case, the Court sua sponte ordered the parties to brief

the effect, if any, of the amended claims on this case.

## II. <u>Plaintiff Narrowed Claim 1 by Amending</u><br><u>"Loading Manifest" to "Advance Loading Manifest Document"</u>

Title 35, Section 252 of the United States Code provides that when reexamined

or reissued claims are identical to those of the original patent, they shall "have effect

continuously from the date of the original patent."  If, however, a patentee narrows a

claim during patent reexamination proceedings, he is precluded from recovering

damages for infringement prior to the effective date of the amended claim.  <u>Bloom Eng'g</u>

<u>Co., Inc. v. North Am. Mfg. Co., Inc.</u>, 129 F.3d 1247, 1250 (Fed. Cir. 1997); <u>Fresenius</u>

<u>USA, Inc. v. Baxter Int'l, Inc.</u>, 721 F.3d 1330, 1339 (Fed. Cir. 2013). "Unless a claim

granted or confirmed upon reexamination is identical to an original claim, the patent can

not be enforced against infringing activity that occurred before issuance of the

reexamination certificate." <u>Bloom Eng'g</u>, 129 F.3d at 1250.  The <u>Bloom Engineering</u>

Court explained further the process for determining when an amended claim is identical

to the original claim:

> "Identical" does not mean verbatim, but means at most without substantive
> change. . . [T]he scope of the claims must be the same after reissue, not that the
> same words must be used. Thus whether amendments made to overcome
> rejections based on prior art are substantive depends on the nature and scope of
> the amendments, with due consideration to the facts in any given case that
> justice will be done.

> There is no absolute rule for determining whether an amended claim is legally
> identical to an original claim.  An amendment that clarifies the text of the claim or
> makes it more definite without affecting its scope is generally viewed as identical
> for the purpose of § 252.  Determination of whether a claim change during
> reexamination is substantive requires analysis of the scope of the original and

-4-

reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information.

Id. (some quotation marks and internal citations omitted).

In this case, the parties agree that the term "advance loading manifest document" is limited to loading manifests that are created or prepared by computer load planning software.  Indeed, that definition is specifically mentioned in the specification of the patent.  See '078 Patent, col. 7, ll. 48-50 ("Advance loading manifests are documents generated by the load planning software[.]").  Defendants argue that Plaintiff narrowed the scope of claim 1 by amending it to "advance loading manifest document" because as originally issued, the term "loading manifest" in claim 1 was broad enough to cover both manually prepared loading manifests and loading manifests prepared by computer load planning software.  Plaintiff, however, contends that the term "loading manifest" in original claim 1 was always limited to covering loading manifests prepared by computer load planning software and that the amendment of claim 1 to "advance loading manifest document" was made simply to clarify that point.  See Doc. No. 369, at 14 (Plaintiff's Reply Brief) (rejecting Defendants' argument that "the loading manifest described in original claim 1 could be generated by a human without using software."); see also id. ("Over and over again, the specification teaches that these loading manifests were always prepared using computer software[.]").  According to Plaintiff, this amendment did not result in a substantive change to claim 1.  The Court concludes, however, that the scope of "advance loading manifest document" in amended claim 1 is narrower than the scope of "loading manifest" in original claim 1.

First, the plain language of original claim 1 puts no limitation on the means by

-5-

A3816

which a person practicing the method can prepare a loading manifest.  Rather, claim 1 states that a person practicing the method performs the last step by "*utilizing* said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle." '078 Patent, col. 14, ll. 7-12 (emphasis added).  To "utilize" something is to "make use of" it.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2525 (1971).  In other words, the last step of original claim 1 only requires a person practicing the patent to use the documentation data to prepare a loading manifest - there are no limitations on how the documentation data is actually used to prepare the loading manifest.  Moreover, there is no indication in the specification that the patentee was giving "utilizing" a meaning other than its ordinary meaning.

Second, the Court's claim construction of original claim 1 did not impose any limitations on how a person practicing the patent prepares the loading manifest.  See Doc. No. 348 (Order on Claim Construction), at 4 (defining "loading manifest" as "a document that both identifies the cargo of a vehicle and all the packages that must be on another transporting vehicle for further shipment.").

Third, while Plaintiff is correct that the specification of the '078 Patent is replete with references that "an advance loading manifest document" is generated by computer load planning software, Plaintiff is incorrect that the specification does not disclose or teach preparing loading manifests manually.  In fact, there are several references in the specification to manually preparing loading manifests.

Figures 1A and 1B, which are flow charts of a preferred embodiment, indicate that load planning information is transmitted to a "*load planner* or load planning

-6-

A3817

software." '078 Patent, Figures 1A & 1B.  The Summary of the Invention states that
"The load planning data is sent to a *load planner* or to load planning software[ .]" '078
Patent, col. 2, ll. 65-67 (emphasis added).  Later, the specification recites that once a
document communication system extracts the load planning information from the bill of
lading, the system will "transmit the required information to *either the load planner* or the
billing and accounting software package."  '078 Patent, col. 5, ll. 55-56 (emphasis
added).  The specification next states that an optical character reader could extract the
load planning information which "would preferably then be transmitted to *the load
planner* over a local area network" but to save time the information could be transmitted
directly to a computer that "would run a load planning software package which would do
the load consolidation and planning automatically."  '078 Patent, col. 5, ll. 57-67, col. 6,
ll. 1-6 (emphasis added).  A person of ordinary skill in the art would understand that a
"load planner," particularly when that term is consistently juxtaposed with terms such as
"load planning software package," is a person who manually prepares the loading
manifest.

The specification also indicates in several places that use of load planning
software to prepare the loading manifest is optional.  The specification notes that "*If a
computerized load planning system was not utilized*, a paper copy of the electronic bill
of lading would be printed and given to *the load planner*."  '078 Patent, col. 6, ll. 12-15
(emphasis added).  Next, the specification states that "[t]he load planning information
extracted *could be* transmitted or input into a load planning software package that could
automatically build a shipping and loading plan to minimize partial loads and keep the
shipments on time."  '078 Patent, col. 6, ll. 19-23 (emphasis added).  Finally, the

-7-

A3818

specification states, "In practice, this system can range from a fully automatic, electronic, paper less [sic] system *to one which relies on paper and uses the system merely as a transmission device*." '078 Patent, col. 6, ll. 27-30 (emphasis added).

In short, the specification clearly discloses that use of load planning software to prepare the loading manifest is not mandatory to practice the claimed method and that the manual preparation of loading manifests is contemplated by the method as originally claimed.  Plaintiff's contention that the term "loading manifest" has always been limited to documents prepared by load planning software violates the maxim that limitations from the specification cannot be used to limit the scope of the claim.  Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374 (Fed. Cir. 2008).  Moreover, given the numerous references in the specification relating to the manual preparation of loading manifests, Plaintiff's argument also violates the principle that a claim construction that excludes a preferred embodiment "is rarely, if ever, correct."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996); see also Primos Inc. v. Hunter's Specialties Inc., 451 F.3d 841, 848 (Fed. Cir. 2006) ("[W]e  . . . should not normally interpret a claim term to exclude a preferred embodiment.").

Fourth and finally, at least one of the prior art references considered during the reexamination proceedings discloses the manual preparation of loading manifests.  Specifically, the N&M reference notes that "[f]or the first week you will have to *fill out a hand written manifest* along with faxing in your bills."  Doc. No. 366-1, at 9 (emphasis added).  Although the examiner was apparently considering N&M in the context of whether the loading manifest in that reference related to the current transporting vehicle or another transporting vehicle, it is reasonable to conclude that N&M also anticipated

-8-

A3819

manually prepared loading manifests and, consequently, that Plaintiff's amendment of claim 1 to "advance loading manifest document" was necessary to avoid the N&M reference.

In summary, the foregoing discussion illustrates that, as originally allowed, claim 1 of the '078 Patent covered loading manifests prepared both manually and through use of load planning software. The term "advance loading manifest document" is narrower than "loading manifest" given the parties' agreement that an advance loading manifest document is only prepared by computerized load planning software. Therefore, this amendment to claim 1 was substantive, meaning that amended claim 1 is not identical to original claim 1.

Accordingly, Plaintiff is precluded from recovering damages for infringement prior to the issue date of the reexamination certificate.

### III. Adding "comprising the steps of" as a Transitional Phrase to Claim 1 Did Not Broaden the Scope of the Claim

A patentee cannot enlarge the scope of a claim during reexamination proceedings. Quantum Corp. v. Rodime, PLC, 65 F.3d 1577, 1580 (Fed. Cir. 1995). A claim that has been enlarged in reexamination proceedings is invalid. Id. at 1584; Thermalloy, Inc. v. Aavid Eng'g, Inc., 121 F.3d 691, 692 (Fed. Cir. 1997). A claim has been enlarged if it includes within its scope any subject matter that would not have infringed the original claim. Quantum Corp., 65 F.3d at 1580.

Use of the word "comprising" as a transition in the preamble of a claim signals that the claim is open-ended, meaning that it does not exclude elements or steps not specifically recited in the claim. MagSil Corp. v. Hitachi Global Storage Tech., Inc., 687

A3820

F.3d 1377, 1383 (Fed. Cir. 2012). In other words, with an open-ended claim, an

accused method can perform additional steps and still infringe the claimed method.

Whirlpool Corp. v. LG Elec., Inc., 423 F. Supp.2d 730, 741 (W.D.Mich. 2004). In this

case, the addition of "comprising the steps of" as a transitional phrase in the preamble

of amended claim 1 presumptively makes that claim an open-ended claim. Magsil, 687

F3.d at 1377. Indeed, Plaintiff does not contend otherwise. Accordingly, the scope of

amended claim 1 is broader than the scope of the steps specifically recited in the claim.

The issue presented, therefore, is whether original claim 1 was open-ended or whether

its scope was limited to the six steps specifically recited in the claim. If original claim 1

was not open-ended, then it was impermissibly broadened during the reexamination

process.

Initially, the Court notes that despite considerable research on its part, it does not

appear that an interpretative default rule has ever been laid to down to establish if a

claim is open-ended, closed-ended, or partially open-ended when "comprising" is not

included in the preamble. Nevertheless, if a claim is presumptively open-ended when

"comprising" is in the preamble, it is logical that the obverse would be true - a claim is

presumptively not open-ended when "comprising" is not included in the preamble.

Compare with Crystal Semiconductor Corp. v. TriTech Microelec. Int'l., Inc., 246 F.3d

1336, 1348 (Fed. Cir. 2001)(stating that the transition "having" can make a claim open-

ended, but that "having" does not convey the open-ended meaning as strongly as

"comprising"; therefore "having" "does not create a presumption that the body of the

claim is open."). Accordingly, in this case, since the transition "comprising the steps of"

was not included in the preamble of original claim 1, the Court starts with the

A3821

presumption that original claim 1 was not open-ended.  The Court, however, must examine original claim 1 in its "full context" to determine whether it was open-ended or limited to its recited steps.  Id.; see also Lampi Corp. v. American Power Prod., Inc., 228 F.3d 1365, 1376 (Fed. Cir. 2000) ("Transitional phrases such as 'having' must be interpreted in light of the specification to determine whether open or closed language is intended.")(quoting MPEP § 2113.03 (7th ed. rev. 2000)(internal ellipses omitted).  In light of its examination of the specification, the Court concludes that original claim 1 was open-ended.  Therefore, claim 1 was not broadened during the reexamination proceedings.

The Court agrees with Plaintiff that the specification of original claim 1 indicates that claim 1 was broad enough to cover, at a minimum, accused methods which also include a billing step.  As Plaintiff correctly observes, the specification contains many, many references to performing load planning and billing as part of the same process. Doc. No. 369, at 7-8.  Citing a few examples, therefore, will be sufficient to illustrate the point.  Figures 1A and 1B indicate that billing information is transmitted to a billing or accounting software package.  '078 Patent, Fig. 1A & 1B.  The Background of the Invention states that the claimed method involves "transmitting shipping documents or bills of lading directly from the truck driver to a common point or terminal *so that billing and load planning* can be accomplished while the load is being delivered from the customer."  '078 Patent, col. 1, ll. 17-20 (emphasis added).  The Summary of the Invention states that billing and load planning information is extracted from the electronic bill of lading and that "the billing data is sent to the billing clerk or accounting/billing software application."  '078 Patent, col. 3, ll.1-2.  Columns 5 and 6 of

-11-

the patent contain an extended discussion of methods for extracting and processing billing data from the bill of lading.  '078 Patent, cols. 5-6, <u>passim</u>.

The Court concludes that the specification of the '078 Patent indicates that original claim 1 was broader than the elements specifically recited in the claim. Therefore, Plaintiff did not impermissibly enlarge the scope of claim 1 during the reexamination proceedings.  Consequently, amended claim 1 is not invalid on the grounds that it was impermissibly broadened during reexamination.  While Defendants contend that Plaintiff admits that it used the reexamination process for an impermissible purpose by adding "comprising the steps of" to clarify claim 1, and therefore, that the amended claim is invalid, amendments that clarify the claim language or make it more definite are permissible during reexamination.  <u>Bloom Eng'g</u>, 129 F.3d at 1250.  Here, the Court agrees with Plaintiff that the addition of "comprising the steps of" to claim 1 simply made definite what was already indicated by the specification.  Defendants' motion to file an additional brief to further emphasize its argument (Doc. No. 370) is not well-taken and is **DENIED.**

-12-

A3823

<u>Conclusion</u>

In conclusion, the Court finds that Plaintiff narrowed the scope of claim 1 during the reexamination proceedings.  Therefore, Defendants are entitled to judgment on infringement claims that predate the issuance of the reexamination certificate.  Plaintiff, however, did not broaden the scope of claim 1 during the reexamination proceedings. Therefore, amended claim 1 is not invalid on the grounds that it was enlarged during reexamination.

**IT IS SO ORDERED.**

Dated: May 19, 2014                          s/Sandra S. Beckwith
                                          Sandra S. Beckwith
                                    Senior United States District Judge

-13-

A3824

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** )  )  )  ) | MDL Docket No. 1:09-md-2050  JUDGE BECKWITH |
| This document relates to: ) | |
| **R+L CARRIERS, INC.** ) | |
| Plaintiff, ) | Case No.:  1:09-cv-445 |
| vs. ) | **JOINT MOTION FOR AGREED ENTRY OF FINAL JUDGMENT** |
| **QUALCOMM, INC.,** ) | |
| Defendant. ) | |

R+L Carriers, Inc. ("R+L") and Qualcomm, Inc. ("Qualcomm") jointly move for an

agreed entry of final judgment of non-infringement of U.S. Patent 6,401,078 ("the '078 Patent")

based on the Court's May 19, 2014 Order (Docket No. 374), the Declaration of James E.

Hoffman, dated July 29, 2014, and the reasons set forth in the accompanying memorandum in

support.  Neither party waives its right to appeal.  A proposed Agreed Entry is attached for the

Court's convenience.

Respectfully submitted,

/s/ Anthony C. White
Anthony C. White          (0062146)
*Trial Attorney*
Philip B. Sineneng         (0083406)
Stephanie M. Chmiel      (0087555)
THOMPSON HINE LLP
41 S. High Street, Suite 1700
Columbus, OH  43215-6101

/s/ Richard S. Zembek
Douglas J. Williams
*Trial Attorney*
CARLSON CASPERS
Capella Tower, Suite 4200
225 South Sixth Street
Minneapolis, MN  55402
Tel:  (612) 436-9633

A3825

Tel:  (614) 469-3200
Fax:  (614) 469-3361
Tony.White@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com
Stephanie.Chmiel@ThompsonHine.com

Megan D. Dortenzo            (0079047)
Arthur P. Licygiewicz        (0068458)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Tel:  (216) 566-5500
Fax:  (216) 566-5800
Megan.Dortenzo@ThompsonHine.com
Art.Licygiewicz@ThompsonHine.com

Stephen J. Butler            (0010401)
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel:  (513) 352-6700
Fax:  (513) 241-4771
Stephen.Butler@ThompsonHine.com

John W. Ryan        (*pro hac vice*)
Thomas A. Haas      (*pro hac vice*)
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington DC  20036-3537
Tel:  (202) 331-8800
Fax:  (202) 331-8330
John.Ryan@ThompsonHine.com
Thomas.Haas@ThompsonHine.com

*Attorneys for Plaintiff R+L Carriers, Inc.*

Fax:  (612) 436-9605
dwilliams@carlsoncapsers.com

Richard S. Zembek
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Tel: (713) 651-5151
Fax:  (713) 651-5246
richard.zembek@nortonrosefulbright.com

Laura J. Borst
FULBRIGHT & JAWORSKI LLP
2100 IDS Center
80 S. Eighth Street
Minneapolis, MN  55402-2112
Tel:  (612) 321-2800
Fax:  (612) 321-2288
laura.borst@nortonrosefulbright.com

James E. Burke            (0032731)
KEATING MUETHING & KLEKAMP LLP
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
Tel:  (513) 579-6400
Fax:  (513) 579-6457
jburke@kmklaw.com

*Attorneys for Defendant Qualcomm, Inc.*

## MEMORANDUM IN SUPPORT

R+L alleges that Qualcomm has indirectly infringed the '078 Patent by inducing its

customers to use Qualcomm's In-Cab Scanning Services, Mobile Computing Platforms, and

OmniTRACS (collectively, the "Accused Instrumentalities") to practice the '078 Patent.  *See*

Amended Complaint at ¶¶ 12-62 (Docket No. 123).  Qualcomm has denied infringement and

A3826

filed counterclaims against R+L asserting non-infringement, invalidity, and an exceptional case. *See* Answer and Counterclaim (Docket No. 288).

In August 2013, the U.S. Patent and Trademark Office ("PTO") granted R+L's Request for *Ex Parte* Reexamination of the '078 Patent.  The PTO entered an *Ex Parte* Reexamination Certificate Issued Under 35 U.S.C. § 307 for the '078 Patent on March 21, 2014, amending claim 1.  *See Ex Parte* Reexamination Certificate (Docket No. 367-3).  This Court ruled that amended claim 1 is narrower than original claim 1 because the term "advance loading manifest" in amended claim 1 is narrower than the term "loading manifest" in original claim 1.  *See* Order (Docket No. 372) at p. 9.   The Court also determined that the added language "comprising the steps of" in amended claim 1 did not broaden the scope of the claim as compared to original claim 1, or invalidate the amendment.  *Id.* at p. 12.  As a result of the Court's ruling, R+L "is precluded from recovering damages for infringement prior to the issue date of the reexamination certificate."  *Id.* at p. 9.  The Court further concluded that Qualcomm is "entitled to judgment on infringement claims that predate the issuance of the reexamination certificate."  *Id.* at p. 13.

On August 1, 2014, Qualcomm provided R+L with the Declaration of James E. Hoffman ("Hoffman Dec."), attached hereto as Exhibit A.  The Hoffman Declaration sets forth that as of November 25, 2013, Qualcomm has no remaining interest in the Accused Instrumentalities because they were sold per its August 21, 2013 agreement with Coronado Holdings, LLC.

In accordance with the findings and rulings set out in the Court's Order (Docket No. 372), the Parties agree that there are no further infringement issues to resolve in the individual case.  The Parties agree that Qualcomm is entitled to a final judgment of non-infringement because (1) this Court has ruled that there can be no infringement of the '078 Patent before March 21, 2014; and (2) Qualcomm has presented facts under oath establishing beyond dispute

A3827

that it has not sold any devices capable of being used to infringe the '078 Patent since before March 21, 2014.

In addition, in view of the foregoing, the Parties agree that because Qualcomm has exited the business related to the Accused Instrumentalities that a final judgment of non-infringement would moot Qualcomm's declaratory judgment counterclaims of invalidity.  Accordingly, the Parties jointly move that these counterclaims be dismissed without prejudice as moot.

Furthermore, during the July 16, 2014 Telephonic Status Conference, the Parties and the Court discussed extending the deadline for Qualcomm to file any motion for costs, attorneys' fees, an exceptional case determination, or other relief ("Fee Motion").  (Tr. at 15:5-7, 16:11-18, 16:24 - 17:3).  The Court indicated its preference that any Fee Motion be filed after the resolution of R+L's appeal of an agreed final judgment in view of  the Court's order (Dkt. No. 372) holding that R+L narrowed Claim 1 of the '078 Patent during reexamination.  Accordingly, by contemporaneously filed separate motion, pursuant to Federal Rule of Civil Procedure 54(d)(2)(B) and Local Rules 54.1 and 54.2, the Parties seek a court order setting the deadline for Qualcomm to file any Fee Motion to 14 days after either the Court of Appeals for the Federal Circuit enters its mandate on R+L's appeal of this Court's Final Judgment, or the time has expired for filing an appeal if no appeal is filed.  In light of that order, the parties agree that Qualcomm's exceptional case counterclaim can be dismissed without prejudice at this time.

In *Gelboim v. Bank of America Corp*., No. 13-1174, the Supreme Court is presently reviewing whether the dismissal of an action that has been consolidated with other actions in an MDL proceeding is immediately appealable without a Rule 54(b) certification.  Further, the Federal Circuit has held that "absent Rule 54(b) certification, there may be no appeal of a judgment disposing of fewer than all aspects of a consolidated case."  *Spraytex, Inc. v. DJS&T*,

A3828

96 F.3d 1377, 1382 (Fed. Cir. 1996).  Accordingly, the Parties hereby seek a Final Entry of

Judgment pursuant to Fed. R. Civ. P. 54(b).

Upon consideration of factors including those articulated in *General Acquisition, Inc. v.*

*GenCorp, Inc*., 23 F.3d 1022, 1030 (6th Cir. 1994), the Parties submit that there is no just reason

for delay.  In brief, appellate review at this stage is the most efficient course in light of judicial

economy considerations, reduction of litigation expenses for the Parties, the likelihood that the

need for appellate review would not be mooted by future developments in the district court, the

likelihood that the appellate court would not be obliged to consider the same issues a second

time, and the fact that the adjudicated claims are not significantly intertwined with the

unadjudicated claims.  *See id.*

Respectfully submitted,


| /s/ Anthony C. White | | /s/ Richard S. Zembek |
|---|---|---|
| Anthony C. White          (0062146) | | Douglas J. Williams |
| *Trial Attorney* | | *Trial Attorney* |
| Philip B. Sineneng          (0083406) | | CARLSON CASPERS |
| Stephanie M. Chmiel          (0087555) | | Capella Tower, Suite 4200 |
| THOMPSON HINE LLP | | 225 South Sixth Street |
| 41 S. High Street, Suite 1700 | | Minneapolis, MN  55402 |
| Columbus, OH  43215-6101 | | Tel:  (612) 436-9633; Fax:  (612) 436-9605 |
| Tel:  (614) 469-3200; Fax:  (614) 469-3361 | | dwilliams@carlsoncaspers.com |
| Tony.White@ThompsonHine.com | | |
| Philip.Sineneng@ThompsonHine.com | | Richard S. Zembek |
| Stephanie.Chmiel@ThompsonHine.com | | FULBRIGHT & JAWORSKI LLP |
| | | Fulbright Tower |
| Megan D. Dortenzo          (0079047) | | 1301 McKinney, Suite 5100 |
| Arthur P. Licygiewicz          (0068458) | | Houston, TX  77010-3095 |
| THOMPSON HINE LLP | | Tel: (713) 651-5151; Fax:  (713) 651-5246 |
| 3900 Key Center, 127 Public Square | | richard.zembek@nortonrosefulbright.com |
| Cleveland, OH  44114-1291 | | |
| Tel:  (216) 566-5500; Fax:  (216) 566-5800 | | Laura J. Borst |
| Megan.Dortenzo@ThompsonHine.com | | FULBRIGHT & JAWORSKI LLP |
| Art.Licygiewicz@ThompsonHine.com | | 2100 IDS Center |
| | | 80 S. Eighth Street |
| Stephen J. Butler          (0010401) | | Minneapolis, MN  55402-2112 |

A3829

THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, OH  45202-4089
Tel:  (513) 352-6700; Fax:  (513) 241-4771
Stephen.Butler@ThompsonHine.com


John W. Ryan          (*pro hac vice*)
Thomas A. Haas        (*pro hac vice*)
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington DC  20036-3537
Tel:  (202) 331-8800; Fax:  (202) 331-8330
John.Ryan@ThompsonHine.com
Thomas.Haas@ThompsonHine.com


*Attorneys for Plaintiff R+L Carriers, Inc.*

Tel:  (612) 321-2800; Fax:  (612) 321-2288
laura.borst@nortonrosefulbright.com


James E. Burke          (0032731)
KEATING MUETHING & KLEKAMP LLP
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
Tel:  (513) 579-6400; Fax:  (513) 579-6457
jburke@kmklaw.com


*Attorneys for Defendant Qualcomm, Inc.*

A3830

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE:  Bill of Lading Transmission and Processing System Patent Litigation | § § § § | MDL Docket No. 1:09-md-2050 |
| | § | JUDGE BECKWITH |
| | § | |
| R+L CARRIERS, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:09-cv-445 |
| QUALCOMM, INC., | § § | |
| Defendant. | § § | |

DECLARATION OF JAMES E. HOFFMANN

1.    My name is James E. Hoffmann.  I am a citizen of the United States and am over 18 years of age.  I have personal knowledge of the matters stated in this declaration.

2.    I am a Senior Vice President, Legal Counsel at Qualcomm Incorporated ("Qualcomm").

3.    Before April 1, 2013, Qualcomm established and operated certain fleet management services, software and/or hardware to transportation and logistics companies in the United States under the name of Omnitracs or Qualcomm Enterprise Solutions (the "U.S. Fleet Management" business).

4.    On or about April 1, 2013, Qualcomm contributed the assets of the U.S. Fleet Management Business into a new corporation called Omnitracs, Inc., which was then operated as a wholly owned subsidiary of Qualcomm.

5.    On or about August 21, 2013, Qualcomm entered into an agreement with Coronado Holdings, LLC, a Delaware limited liability company, for the sale of all of the shares of Omnitracs,

A3833

Inc. The sale was completed on November 25, 2013, as indicated in the Press Release attached as Exhibit A.

6.      After November 25, 2013 and continuing to the date on which this declaration is signed, Qualcomm has had no remaining ownership, management, or business interest in Omnitracs, Inc or the U.S. Fleet Management business.

7.      The following Qualcomm products—Qualcomm In-Cab Scanning, Qualcomm OmniVision mobile computing platforms, and Qualcomm Service Fleet Manager Services (collectively, the "Accused Instrumentalities")—were owned by Omnitracs, Inc. and all of the shares of Omnitracs, Inc. were transferred in their entirety to Coronado Holdings LLC as part of the above detailed transaction.

8.      After November 25, 2013 and continuing to the date on which this declaration is signed, Qualcomm has maintained no direct or indirect ownership, management, or business interest in any business that manufactures, has manufactured for it, uses, sells, or offers to sell the Accused Instrumentalities.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on July 29, 2014.

James E. Hoffmann
Senior Vice President, Legal Counsel
Qualcomm Incorporated

A3834

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | ) ) ) ) | MDL Docket No. 1:09-md-2050 |
| | ) | JUDGE BECKWITH |
| This document relates to: | ) ) ) | |
| **R+L CARRIERS, INC.** | ) ) | |
| Plaintiff, | ) ) | Case No.:  1:09-cv-445 |
| vs. | ) ) ) | **AGREED ENTRY OF FINAL JUDGMENT** |
| **QUALCOMM, INC.,** | ) ) ) | |
| Defendant. | ) ) | |

Upon consideration of R+L Carriers, Inc. ("R+L") and Qualcomm, Inc.'s ("Qualcomm, Inc." and together with R+L, the "Parties") Joint Motion for an Agreed Entry of Final Judgment, and for other good cause shown, it is hereby ORDERED AND ADJUDGED THAT:

     (a)    the Parties' Joint Motion for an Agreed Entry of Final Judgment is GRANTED;

     (b)    all of R+L's claims against Qualcomm are DISMISSED WITH PREJUDICE, and judgment is hereby entered in favor of Qualcomm on those claims;

     (c)    judgment is hereby entered in favor of Qualcomm against R+L on Qualcomm's counterclaim of non-infringement;

     (d)    Qualcomm's counterclaim seeking a declaratory judgment of invalidity of U.S. Patent 6,401,078 is DISMISSED WITHOUT PREJUDICE as moot;

     (e)    Qualcomm's exceptional case counterclaim is DISMISSED WITHOUT PREJUDICE in view of the Court's order extending the deadline for Qualcomm to file any

A3841

motion for costs, attorneys' fees, an exceptional case determination, or other relief until after the

Court of Appeals for the Federal Circuit enters its mandate on R+L's appeal of this Court's Final

Judgment, or the time has expired for filing an appeal if no appeal is filed;

      (f)    any and all pending motions filed by Qualcomm are DENIED WITHOUT

PREJUDICE as moot;

      (g)    this is a final and appealable judgment of non-infringement as to Qualcomm

under Fed. R. Civ. P. 54(b) entered upon an express determination that there is no just reason for

delay; and

      (h)    nothing in this Agreed Entry shall preclude the Parties from taking an appropriate

appeal permitted under law of any adverse determination including, but not limited to, the

Court's May 19, 2014 Order (Docket No. 372).

                    SO ORDERED,

Date: **8/12/14**

                                   The Honorable Sandra S. Beckwith

Agreed to by:

    /s/ Anthony C. White
Anthony C. White      (0062146)
THOMPSON HINE LLP
41 S. High Street, Suite 1700
Columbus, OH 43215-6101
Tel: (614) 469-3200; Fax: (614) 469-3361
Tony.White@ThompsonHine.com

*Counsel for Plaintiff R+L Carriers, Inc.*

2

A3842

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| ) | |
| **IN RE:  Bill of Lading Transmission and** ) | MDL Docket No. 1:09-md-2050 |
| **Processing System Patent Litigation** ) | |
| ) | JUDGE BECKWITH |
| _____ ) | |
| ) | |
| This document relates to: ) | |
| ) | |
| **R+L CARRIERS, INC.** ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | Case No.:  1:09-cv-445 |
| ) | |
| vs. ) | **NOTICE OF APPEAL** |
| ) | |
| **QUALCOMM, INC.** ) | |
| ) | |
| Defendant/Counterclaim-Plaintiff. ) | |

_____

Notice is hereby given that R+L Carriers, Inc. ("R+L") hereby appeals to the United States Court of Appeals for the Federal Circuit from the August 12, 2014 decision (Docket No. 379) in the above-referenced case granting judgment of non-infringement in favor of Qualcomm, Inc.

Respectfully submitted,

_____/s/ Anthony C. White_____
Anthony C. White            (0062146)
*Trial Attorney*
Philip B. Sineneng          (0083406)
Stephanie M. Chmiel         (0087555)
THOMPSON HINE LLP
41 S. High Street, Suite 1700
Columbus, OH  43215-6101
Tel:  (614) 469-3200
Fax:  (614) 469-3361
Tony.White@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com
Stephanie.Chmiel@ThompsonHine.com

A3844

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. | : : : | MDL  Docket No. 1:09-md-2050 |
| ———————————————— | : : | Case No. 2:10-cv-90 |
| THIS DOCUMENT APPLIES TO: | : : |  |
| R&L Carriers, Inc., | : : |  |
| Plaintiff, | : : |  |
| v. | : : |  |
| Pitt Ohio Express, Inc., | : : |  |
| Defendant. | : |  |

**ORDER**

This matter is before the Court on Defendant Pitt Ohio Express, Inc.'s motion for attorney's fees and costs (Doc. No. 260).  For the reasons that follow, Defendant's motion for fees and costs is well-taken and is **GRANTED**.

**I. Background**

In February 2010, Plaintiff R&L Carriers, Inc. ("R&L") sued Defendant Pitt Ohio Express, Inc. ("Pitt Ohio") for infringement of U.S. Patent No. 6,401,078 ("the '078 Patent"). The '078 Patent claims a method for improving the efficiency of operations for less-than-a-load ("LTL") carriers centered on scanning and transmitting bills of lading from the cab of a truck. The claimed method has six steps:  1) placing a package on a transporting vehicle; 2) scanning an image of the package's documentation data with a portable document scanner; 3) providing a

-1-

A3852

portable image processor capable of wirelessly transmitting the image of the documentation data image, 4) wirelessly sending an image of the documentation data to a remote processing center; 5) receiving an image of the documentation data at a remote processing center; and 6) prior to the package being removed from the transporting vehicle, using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle. '078 Patent col. 13, ll. 40-48, col. 14, ll. 1-13. The gist of the claimed method is to "automate[] the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control." '078 Patent, Abstract.

In August 2011, Pitt Ohio moved for summary judgment on R&L's claim of infringement on the grounds that there was no evidence that it had ever performed every step of the claimed method. Specifically, Pitt Ohio argued that there was no evidence that it had performed the last step of the claimed method, using documentation data from a scanned image of a bill of lading to prepare a loading manifest. Once briefing was completed, the evidence showed that in the course of its normal operations, Pitt Ohio uses a PeopleNet g3 onboard computer in its trucks. When the driver picks up a package for further delivery, he types a message into the computer that contains all of the relevant shipping information and sends the message to the distribution center. At the distribution center, a "strip sheet" is created and used to prepare the further movement of the package. The Court held that this process does not infringe the '078 Patent because it does not involve scanning and transmitting images of a bill of lading. Doc. No. 257, at 7. The Court noted further that R&L essentially conceded that Pitt Ohio's normal operating method does not infringe the '078 Patent. *Id.*

-2-

The evidence also showed that in February and March 2009, Pitt Ohio tested the concept of implementing in-cab scanning of bills of lading into its operations. Pitt Ohio had actually scanned images of bills of lading from a cab and transmitted them to a remote processing center. The evidence showed, however, that Pitt Ohio did not create loading manifests with the bills of lading. Instead, the purpose of the test was to evaluate image quality. Pitt Ohio abandoned the idea of using in-cab scanning altogether a few months later. Thus, the Court ruled that Pitt Ohio was entitled to summary judgment because the evidence showed that it had not performed the last step of the claimed method. *See id.* at 4, 7-8.

The evidence R&L submitted to try to establish a genuine dispute about infringement had little or no probative value. There was a "white paper" authored by PeopleNet in 2007 which disclosed that Pitt Ohio had converted to using g3 computers to send messages - not scanned images - with shipping data to the distribution center. R&L submitted an inadmissible hearsay statement that Pitt Ohio had implemented in-cab scanning into its operations. R&L tendered an expert's opinion that was inadmissible because he merely concluded that Pitt Ohio "may have" infringed the '078 Patent, and that was otherwise speculative. Finally, R&L submitted a clip art image of a laptop computer from a Power Point presentation created by Pitt Ohio's chief financial officer, Scott Sullivan. R&L claimed that the clip art image was in fact a picture of its Mobile Data Terminal ("MDT"), which it uses for in-cab scanning, and argued that this image showed that Pitt Ohio was infringing the patent. The Court, however, characterized the notion that the image was R&L's MDT as "fanciful," particularly in light of Pitt Ohio's evidence that Sullivan's use of the image predated his employment with Pitt Ohio. Furthermore, the Court concluded that even if the image was the MDT, it did not show infringement because the MDT

-3-

involved the scanning and transmitting steps of the claimed process, and not the preparation of a loading manifest step, which was the basis of Pitt Ohio's motion. Doc. No. 257, at 7-13.

Pitt Ohio now moves the Court to declare the case exceptional pursuant to 35 U.S.C. § 285 and grant an award of its attorney's fees. Pitt Ohio also moves the Court for an award of costs pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920. Pitt Ohio seeks attorney's fees of approximately $315,000 and costs of $3,848.05. Pitt Ohio's motion is now ready for disposition.

## II. Standard of Review

The district court may award the prevailing party in a patent case its attorney's fees in an "exceptional case." 35 U.S.C. § 285. Declaring a case exceptional and awarding attorney's fees is a two-step process. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). First, the prevailing party must demonstrate by clear and convincing evidence that the case is exceptional. *Id.* Second, if the prevailing party proves that the case is exceptional, the district court must determine whether an award of attorney's fees is justified. *Id.* at 916.

A case may be declared exceptional if it involves willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Rule 11 of the Federal Rules of Civil Procedure, or other similar infractions. *Id.* If the prevailing party is the alleged infringer, other relevant considerations are "the closeness of the question, the plaintiff's pre-filing investigation and discussions with the defendant, and litigation behavior." *Id.* Absent litigation misconduct, a district court can award fees under § 285 only of the case was brought in subjective bad faith and was objectively baseless. *Id.* Litigation misconduct includes filing an infringement lawsuit that the patentee knew, or by conducting a reasonable investigation, should have known, was

-4-

baseless or frivolous. *Forest Lab., Inc. v. Abbott Lab.,* 339 F.3d 1324, 1329-30 (Fed. Cir. 2003).

Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Neutrino Dev. Corp. v. Sonosite, Inc.,* 512 F. Supp.2d 1004, 1007 (S.D.Tex. 2007). And, contrary to R&L's brief in opposition, which contends that this Court cannot declare the case exceptional and award attorney's fees without first holding an evidentiary hearing and giving it an opportunity to be heard, R&L's right to due process has been satisfied by Pitt Ohio's filing of a motion for fees and R&L's filing of a memorandum in opposition to the motion. *In re Perry*, 918 F.2d 931, 935 (Fed. Cir. 1990). The district court is not required to hold a formal evidentiary hearing before ruling on a motion for attorney's fees. *Id.*

Finally, while the trial court has discretion to defer ruling on a motion for attorney's fees pending resolution of the losing party's direct appeal, the preferred practice is to rule on a motion for fees immediately after ruling on the merits of the case. *Pfizer Inc. v. Teva Pharm. USA, Inc.*

___ F. Supp.2d___, No. 2:10-CV-128, 2011 WL 4943984 at *3 (E.D.Va. Oct. 17, 2011) (citing Fed. R. Civ. P. 54(d), Advisory Committee Notes (1993 Amendments)); *Klein v. Central States, Southeast & Southwest Areas Health & Welfare Plan*, 621 F. Supp.2d 537, 540 (N.D. Ohio 2009). The Court recognizes that it stayed ruling on motions for Rule 11 sanctions filed by several of the alleged indirect infringing Defendants in this case pending the outcome of R&L's appeal. Doc. No. 221. R&L's appeal from the dismissal of its claims against the alleged indirect

-5-

infringers pursuant to Rule 12(b)(6), however, involves new and important questions concerning

the proper application of the pleading standards enunciated in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007) and *Aschroft v. Iqbal*, 556 U.S. 662 (2009). The Court observed that the

Federal Circuit Court of Appeals' resolution of R&L's appeal would very likely affect its

determination of the propriety of awarding fees and sanctions. Doc. No. 221, at 2.

Consequently, the Court determined "that under the unique circumstances of this case, in the

interests of judicial economy and doing substantial justice to all of the parties, the best course of

action is to defer ruling on these motions until the merits of Plaintiff's appeals are resolved by

the Federal Circuit Court of Appeals." *Id.* The considerations that led the Court to defer ruling

on the alleged indirect infringers' motions for sanctions are not implicated by Pitt Ohio's motion

for attorney's fees. As opposed to the novel and important legal questions involving R&L's

pleading of indirect infringement claims, R&L has presented a run-of-the-mill direct

infringement claim against Pitt Ohio. The Court sees no benefit in deferring ruling on Pitt

Ohio's motion for fees. Any appeal from the Court's order on attorney's fees and costs can

easily be consolidated with R&L's appeal from the summary judgment order. Accordingly, the

Court will not defer ruling on Pitt Ohio's motion for attorney's fees and costs.

III. Analysis

Initially, it should be noted that, having prevailed on its motion for summary judgment on

non-infringement, Pitt Ohio is the prevailing party in this case for purposes of 35 U.S.C. § 285.

*See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)

("[W]hen Brooks established its non-infringement of the Dutailier patent, it prevailed in the

litigation."). In its motion, Pitt Ohio argues that this case is exceptional within the meaning of §

-6-

285 because R&L failed to conduct an adequate pre-suit investigation, filed and maintained a baseless and frivolous infringement claim, and engaged in vexatious, unjustified, and bad faith litigation conduct.  The Court generally agrees with Pitt Ohio's characterization of R&L's conduct in this case.  Some of these concepts are interrelated, for instance, the failure to conduct an adequate pre-filing investigation also implicates filing and maintaining a baseless and frivolous infringement claim.

The Court finds that this case is exceptional because considered as whole, counsel for R&L's entire course of conduct in prosecuting an infringement claim against Pitt Ohio constituted litigation misconduct for purposes of § 285.  As the Court views the case, counsel for R&L engaged in litigation misconduct by: 1) conducting a wholly inadequate pre-suit investigation before suing Pitt Ohio for infringement; 2) maintaining a patently baseless and frivolous infringement claim; 3) drawing objectively unreasonable inferences from the evidence; 4) opposing Pitt Ohio's motion for summary judgment with inadmissible or non-probative evidence; and 5) in opposing Pitt Ohio's motion for attorney's fees, exaggerating or mischaracterizing the record and failing to cite controlling authority.  These findings also indicate to the Court that R&L instituted and maintained this lawsuit in bad faith.  *See Forest Lab.,* 339 F.3d at 1329-30 (stating that for purposes of § 285 bad faith includes "vexatious, unjustified, or frivolous litigation"); *Eltech Sys. Corp. v. PPG Ind., Inc.,* 903 F.2d 805, 811 (Fed. Cir. 1990) (district court may infer bad faith where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court").

A. Pre-suit Investigation

It is fairly clear at this point that, despite its protestations to the contrary, counsel for

-7-

A3858

R&L conducted a wholly inadequate pre-suit investigation, if indeed, it conducted one at all. R&L contends that its pre-suit investigation was adequate, but then goes on to state that it does not matter whether it was adequate or not because the adequacy of its investigation *has no relevance* in determining whether the case is exceptional. Doc. No. 262, at 15, n. 6. In support of this contention, R&L cites *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-02 (Fed. Cir. 2004) and *Ulead Sys., Inc. v. Lex Computer & Mmgt. Corp.*, 351 F.3d 1139, 1150 (Fed. Cir. 2003). R&L miscites both of these cases.

The *Q-Pharma* Court specifically and extensively discussed the adequacy of the plaintiff's pre-filing investigation in the context of Rule 11 in the very pages cited by R&L. *Q-Pharma*, 360 F.3d at 1300-02. The Court relied on that discussion in ruling whether the case was exceptional. *Id.* at 1304. The *Ulead* Court did not hold that the adequacy of a party's pre-suit investigation is irrelevant to determining whether a case is exceptional. 351 F.3d at 1550. Rather, the Court stated that it would not impose a *requirement* to conduct an adequate pre-suit investigation outside of Rule 11. *Id.* In other words, the *Ulead* Court indicated that if the only consideration at issue is the adequacy of the pre-suit investigation, then Rule 11 is the sole authority for imposing sanctions. It was, however, the law of the Federal Circuit prior to *Ulead* that the adequacy of the plaintiff's pre-suit investigation is a relevant and important consideration in determining whether the case is exceptional. *See, e.g., Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1120 (Fed. Cir. 2002); *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002); *Superior Fireplace Co. v. Majestic Prod. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001). Thus, the *Ulead* Court could not have held that the adequacy of the pre-suit investigation is irrelevant to the exceptional case analysis because to

-8-

A3859

have done so would have violated the "one panel rule," which holds that "decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in* [sic] *banc*." *Newell Co., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). Additionally, it was the law of the Federal Circuit prior to *Ulead* that a Rule 11 violation can serve as a basis for finding that a case is exceptional. *E.g., Eltech,* 903 F.2d at 810-11 (affirming district court's determination that case was exceptional because "abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11, Fed.R.Civ.P."). Therefore, R&L's contention that *Ulead* stands for the proposition that the adequacy of its pre-suit investigation is irrelevant to determining whether the case is exceptional is wholly without support.

"The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case[.]" *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). "[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma*, 360 F.3d at 1302. In this case, it is evident that R&L did not make a good faith comparison of the patented claims versus Pitt Ohio's accused method. Counsel for R&L does not aver that such an analysis took place and there is no indicia in the record that a claims analysis took place. *Compare with MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1381-82 (Fed. Cir. 2005) (pre-filing investigation was adequate; attorneys reviewed patent and construed claims according to standard canons of claim construction, then compared claims to accused product); *Q-Pharma*, 360 F.3d at 1301 (pre-filing investigation was adequate; attorneys filed affidavits stating that they reviewed claims, written

-9-

description, and prosecution history and interpreted individual claim terms).

It is not disputed that R&L did not try to contact Pitt Ohio before filing suit to inquire about its advanced planning method. *See* Doc. No. 260-1, at 6; Doc. No. 264 at 3 (both noting that R&L sued Pitt Ohio without sending a cease and desist letter). Nor does it appear that R&L ever attempted to determine whether Pitt Ohio used scanners in its trucks. This could have been accomplished relatively easily by hiring private investigators who could have tried to look into the cab of Pitt Ohio trucks at truck stops or rest areas. Alternatively, it seems likely that R&L's drivers and Pitt Ohio's drivers would cross paths from time to time; R&L could have instructed its drivers to ask Pitt Ohio's drivers how they process their packages for further distribution or delivery. Any one of these obvious modes of investigation would have taken little or no effort.

Thus, this case is distinguishable from *Hoffman-LaRoche, Inc. v. Invamed, Inc.*, 213 F.3d 1359 (Fed. Cir. 2000), which R&L cites for the proposition that it was not required to make a comparison of the patent claims to the accused product. Doc. No. 262, at 13. The key to *Hoffman-LaRoche*, as R&L appears to recognize, is that the patentee made a good faith effort to obtain the accused manufacturing process from the defendant, who refused to disclose it. *See* 213 F.3d at 1363-65. In this case, however, R&L made no effort whatsoever to obtain information from Pitt Ohio about its process for handling packages before filing suit for infringement. Thus, *Hoffman-LaRoche* supports a finding that R&L's pre-suit investigation was inadequate because R&L made no attempt to discover Pitt Ohio's package handling process.

R&L also argues that it was reasonable for it to rely on the opinion of its expert, Mr. Clair, in filing suit against Pitt Ohio. Doc. No. 262, at 11-13. It is apparent, however, that Mr. Clair developed his opinion on infringement *after* R&L filed suit. As Pitt Ohio points out, Mr.

-10-

A3861

Clair's opinion is based almost entirely on materials Pitt Ohio provided to R&L during discovery. *See* Doc. No. 243, at 3. His opinion declaration is dated September 12, 2011 and neither he nor R&L have stated on what date he was first retained. For an expert's opinion to support a finding that the pre-suit investigation was reasonable, the expert must provide his infringement opinion *before* the suit is filed. *See Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997); *id.* at 785 ("Because Rule 11 is not about after-the-fact investigation, Judin and Van Der Wall's violation of Rule 11 was not cured by the fact that, after filing the complaint, Judin consulted with an expert and was able to make 'colorable' arguments in response to a motion for summary judgment of noninfringement."). The primary case cited by R&L in support of the reasonableness of its investigation indicates that the patentee obtained the expert's opinion before filing suit. *See Brooks*, 393 F.3d at 1382 (patentee consulted two experts before sending cease and desist letter and filing infringement counterclaim).

The other cases cited by R&L are inapposite. In *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000), the court reviewed a judgment of non-infringement entered after a ten-day trial, and the trial court's denial of attorneys fees under 35 U.S.C. § 285 to the defendant. During the trial, the plaintiff found and produced an invoice that established that the invention covered by one of the patents-in-suit had been sold more than one year before plaintiff filed its patent application. The trial court therefore found the patent invalid under the on-sale bar rule. Defendant argued that the patentee failed to reasonably investigate its records regarding the first-sale date, which justified an award of fees. The court of appeals found that the cases in which fees had been awarded based on findings that a patentee knew or "on reasonable investigation" should have known that its suit was unfounded were all premised on much more extreme

-11-

conduct.  It cited several cases affirming an award of fees based on evidence that the patentee

actually knew its action was unfounded either factually or legally.  In the pending case, however,

the Court noted that the patentee's attorneys prepared for trial by engaging a qualified expert on

infringement issues, and that the late discovery of the invoice was not the sort of egregious

conduct that compelled a conclusion of exceptional case status.  In the context of the opinion, the

Court's reference to the plaintiff's expert implies that absent the issue of the on-sale bar date,

plaintiffs did not pursue an unfounded claim, as it is illogical to conclude that a party with

knowledge of an on-sale bar would engage an infringement expert and undertake expensive trial

preparations on infringement issues.  *See id* at 1260.  In other words, in *Speedplay*, the patentee

was not saved from the imposition of exceptional case fees because he had obtained an expert on

infringement issues at trial, as R&L appears to contend.  Rather, the patentee's failure to

discover the subject invoices before trial did not render its pre-suit investigation insufficient in

light of the fact that it otherwise had a good faith basis for alleging infringement.  In contrast, in

this case, R&L's pre-suit investigation of infringement by Pitt Ohio was objectively inadequate

and the fact that it later obtained an infringement opinion from Mr. Clair does not cure that

insufficiency.  *See Judin, supra.*

　　*Ultrak, Inc. v. Radio Eng'g Ind., Inc.*, Nos. 97-1523, 97-1543, 1999 WL 197173 (Fed.

Cir. Apr. 8, 1999), is inapt because it did not involve consideration of the patentee's pre-suit

investigation. Rather, in *Ultrak*, the Court held that the plaintiff was not entitled to damages for

willful infringement or attorney's fees as an exceptional case because the defendant had a good

faith basis for believing that its activities did not infringe the patent-in-suit based on the opinion

of its expert, even though his opinion ultimately was incorrect. *Id.* at *1, *6. *Corwin v. Walt*

-12-

*Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697, at \*19 (M.D.Fla. Mar. 18,

2008), is somewhat similar to *Ultrak* and fails to support R&L because the adequacy of the

plaintiff's pre-suit investigation was not at issue there. Rather, in *Corwin*, a copyright

infringement suit, the district court held that counsel did not engage in vexatious conduct under

28 U.S.C. § 1927 for relying on expert opinions which were struck at the summary judgment

stage. Indeed, the district court, relying on an earlier opinion it had issued, ruled that although

the defendant alleged that the plaintiff did not have a good faith basis for filing suit, § 1927

sanctions are not available for filing a frivolous complaint. *Id.* at \*16-\*18. Thus, *Corwin* does

not support R&L's position because it was not a patent case and did not consider the adequacy of

the plaintiff's pre-suit investigation in the context of § 285.

       In summary, Mr. Clair's opinion, which was obtained after R&L filed suit against Pitt

Ohio, does not support R&L's contention that its pre-suit investigation was reasonable.

       R&L notes that in determining whether to file a patent infringement suit, it is entitled to

rely on publicly available information and the alleged infringer's public statements which

indicate that infringement is taking place. R&L then argues that its pre-suit investigation was

reasonable because of the "sheer volume" of public statements and admissions by Pitt Ohio

indicating infringement. Doc. No. 262, at 14. Courts have indicated that a pre-filing

investigation will be deemed reasonable where substantial publicly available information

indicates infringement of the patent. In *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,

398 F. Supp.2d 305, 314 (D.Del. 2005), for instance, the alleged infringer had disclosed the

functionality of the alleged accused device in an industry conference and in its sales literature.

Additionally, the patentee obtained a copy of the accused device's source code and had received

-13-

information on the accused device from field engineers, marketing representatives, and customers. *Id.* at 314. The patentee then referred all of this information to both inside and outside counsel, who recommended that the patentee file suit for infringement. *Id.*

In this case, however, the record does not reflect that substantial public information indicated that Pitt Ohio was infringing the '078 Patent or that Pitt Ohio made any statements which reasonably can be interpreted as indicating infringement. The PeopleNet "white paper," which the Court has discussed several times before, does not reasonably indicate infringement by Pitt Ohio. As stated, the white paper discloses sending messages to the remote processing center, not scanning images of bills of lading. Doc. No. 243, at 44. Indeed, R&L's proposed claim construction interprets the claimed method to require "convert[ing] a physical document, in whole or in part, into an electronic reproduction of the document" Doc. No. 238, at 5, and then transmitting the image to the remote processing center. *Id.*; *see also* '078 Patent, col. 14, ll.4-5 (independent claim 1, which requires "wirelessly sending the image to a remote processing center."). In other words, R&L's proffered claim construction contradicts its contention that the white paper indicates infringement of the '078 Patent. Thus, according to R&L's own construction of the patent, the white paper does not reasonably indicate infringement by Pitt Ohio. Moreover, this is additional evidence that R&L did not attempt to construe the patent and apply it to the accused method before filing suit against Pitt Ohio. A good faith effort to do so would have indicated that the white paper points away from infringement.

R&L also includes Robert Bowman's hearsay statement from PeopleNet CEO Ron Konezny that Pitt Ohio had implemented in-cab scanning across its fleet as publicly available information indicating infringement of the patent. R&L cites cases standing for the proposition

-14-

that a party is entitled to rely on hearsay as part of its pre-suit investigation. But R&L's single hearsay statement, which R&L never attempted to verify with either Peoplenet[1] or, more importantly, Pitt Ohio, before filing suit, is an insufficient basis upon which to launch an expensive patent infringement suit. This is particularly true in light of R&L's failure to attempt to obtain what information it could from Pitt Ohio about its package handling system and failure to conduct a pre-suit infringement analysis.

The only other public statements *by Pitt Ohio* reflected in the record are two comments made by its business systems director, Kent Szalla, during a radio show in December 2008 in which he indicated that Pitt Ohio has an integrated system to process pick-ups and deliveries. Clair Aff. (Doc. No. 243) ¶¶ 81-83.[2] These statements, however, are fairly vague and only indicate infringement of the '078 Patent if one assumes that the only way a competing LTL carrier can improve the efficiency of its operations using electronic equipment is to practice each and every step of the '078 patent. The Court, however, has previously rejected such an assumption as unreasonable. The other public statements identified in Mr. Clair's affidavit are statements by PeopleNet and Microdea about *their* products, and not *by Pitt Ohio* about its method of operations. These statements by third parties about their products do not reasonably

---

[1] In his deposition, Konezny denied making this statement to Bowman.

[2] Szalla stated: "Pickups and deliveries are integrated through the PeopleNet end-to-end solution and to our back office" and "What is really interesting is we try to plug into the whole electronic inventory into our dock operation, so if a driver is 2 hours out and he says he is coming back for the day , the dock knows well in advance as to what is coming in to [sic] his dock so he can start planning the cross-dock operations. And then of course we start loading that information into our outbound projections so we know how many trailers and line haul units to schedule that evening." *See id.*

A3866

indicate infringement by Pitt Ohio.

This case is fairly indistinguishable from *View Engineering*, in which the Court held that the party's pre-suit investigation was insufficient where it failed to perform a claim construction and instead relied solely on the publicly available information about the accused device and the alleged infringer's sales literature and advertisements. 208 F.3d at 984-86. Similarly, R&L failed to conduct a pre-suit infringement analysis and did not contact Pitt Ohio about its method of operations. Nor it did obtain any pre-suit infringement analysis from an independent expert. Instead, R&L largely if not entirely based its infringement lawsuit against Pitt Ohio upon a number of statements by third parties that do not plausibly suggest infringement of the patent by Pitt Ohio.

Accordingly, the Court concludes that R&L's pre-suit investigation was wholly inadequate and that this factor favors finding that the case is exceptional under § 285.

### B. The Infringement Question Was Not Close

As *MarcTec* indicates, another factor in the exceptional case analysis is whether the case for infringement was close. 664 F.3d at 916. The Court's order granting Pitt Ohio's motion for summary judgment speaks for itself on this issue. Succinctly put, the question of infringement was not close. R&L adduced virtually no admissible evidence that Pitt Ohio practiced the last step of the claimed method, and the evidence that was admissible was nearly devoid of probative force.

R&L's brief implies that the Court ruled on Pitt Ohio's motion for summary judgment before it had a fair opportunity to complete discovery. *See* Doc. No. 262, at 5 ("R&L was in the midst of further developing these facts [concerning the in-cab scanning test] when Pitt Ohio

-16-

sought summary judgment. R&L had not yet completed its discovery when Pitt Ohio's motion

was granted."); *id.* at 11 ("Given the limited merits discovery that occurred prior to summary

judgment . . . ."). Pitt Ohio, however, was free to move for summary judgment at any time, Fed.

R. Civ. P. 56(b), and, as the Court ruled, R&L failed to meet its burden under Rule 56(d) to

establish that it needed more discovery to respond adequately to Pitt Ohio's motion. Doc. No.

255. As that order stated, Pitt Ohio had already produced the information R&L claimed it

needed or R&L was seeking additional discovery on issues generally unrelated to whether Pitt

Ohio created loading manifests during the in-cab scanning test. *See id.*

Accordingly, this factor favors finding that this case is exceptional under § 285.

### C. R&L Maintained an Objectively Baseless Lawsuit Against Pitt Ohio

As amply recounted by this point, R&L adduced no evidence that Pitt Ohio ever

practiced every step of the claimed method. The evidence that it did submit was either

inadmissible or wholly lacking in probative value. Even Mr. Clair's opinion, upon which R&L

relies so heavily to sustain the basis for this lawsuit, merely states that Pitt Ohio *may have*

infringed the patent, and left open the only issue Pitt Ohio raised in its motion for summary

judgment: whether it had ever prepared loading manifests with scanned images of bills of lading.

*See* Clair Aff. (Doc. No. 243) ¶¶ 99-104 (noting a number of "unanswered questions," including

whether "document images from the Microdea/PeopleNet solution were viewed by the load

planners.").

R&L rejected reasonable assurances from Pitt Ohio, in the form of two affidavits from

Pitt Ohio's CFO, Scott Sullivan, as well as in its responses to requests for admissions, averring

that Pitt Ohio had not used in-cab scanning and did not intend to implement in-cab scanning.

-17-

Instead of objectively viewing the record and voluntarily dismissing its infringement claim, R&L unreasonably and vexatiously sought additional reassurances from Pitt Ohio and persisted in prosecuting a claim that lacked a realistic chance of success.[3] It is not clear to the Court what specifically motivated R&L to proceed in this fashion; perhaps it was seeking metaphysical certainty that Pitt Ohio had not infringed the patent. In any event, its maintenance of the suit in light of nearly overwhelming evidence of non-infringement was unreasonable and tantamount to litigating in bad faith.[4]

---

[3]    In April 2011, R&L submitted a proposed affidavit for Pitt Ohio to complete and return concerning Pitt Ohio's testing of in-cab scanning. Doc. No. 262-1. The outline of affidavit left blank spaces for Pitt Ohio to complete with details of the test and included other paragraphs for affirming that Pitt Ohio had not ever used in-cab scanning and had no current plans or intentions of implementing in-cab scanning. On May 19, 2011, Pitt Ohio provided R&L with Scott Sullivan's signed declaration (Doc. No. 249-1 at 55-57) that is not materially different from the draft declaration proposed by R&L. R&L then requested a second declaration from Pitt Ohio stating that it had never used technology from EBE Technologies, Inc. for any purpose, including in-cab scanning and declaring that the statements that Robert Bowman claimed that PeopleNet had made about Pitt Ohio implementing in-cab scanning were false. Doc. No. 249-1, at 59. Pitt Ohio provided another sworn declaration from Sullivan averring that Pitt Ohio had never used EBE Technology's equipment to scan documents from trucks. Doc. No. 249-1, at 64-66. Pitt Ohio declined to address the statements Bowman attributed to PeopleNet on the grounds that it was not privy to the conversation. Doc. No. 249-1, at 64. Although R&L now complains that Pitt Ohio modified these affidavits without consulting it, and thus needlessly prolonged the resolution of the case, the contemporaneous correspondence between the parties does not indicate that R&L was dissatisfied with Sullivan's two declarations at the time. Doc. No. 249-1, 104-22. Indeed, Sullivan's two declarations, under the penalty of perjury, should have been sufficient to assure R&L that Pitt Ohio had not infringed the patent in any fashion. Then the parties discussed whether Pitt Ohio might submit a third declaration in lieu of a Rule 30(b)(6) deposition. However, the third declaration R&L proposed to obtain from Pitt Ohio, Doc. No. 249-1, at 124-27, was little more than a reiteration of the contents of Sullivan's first two declarations. The Court concludes that R&L's request for multiple and repetitive declarations from Pitt Ohio was unreasonable and vexatious, and that R&L, not Pitt Ohio, unnecessarily prolonged the resolution of this case.

[4]    The Court also notes that throughout the litigation, R&L has placed great emphasis on the fact that Pitt Ohio practiced some, or even a majority, of the steps of the claimed method, as if that were sufficient, without more, to sue Pitt Ohio for infringement. This is not

### D. R&L Engaged in Litigation Misconduct

The Court finds that R&L engaged in litigation misconduct by drawing unreasonable inferences from the evidence, mischaracterizing the record, and misciting and/or failing to cite controlling authority.

The Court has discussed several times how PeopleNet's white paper does not remotely suggest that Pitt Ohio was practicing the claimed method, and it was objectively unreasonable for R&L to persist in arguing that the white paper is a "roadmap" to practicing the patent. This conclusion is particularly reinforced by R&L's own claim construction, which interprets the patent to scan and transmit images with the load information, not send messages with this information.

R&L also unreasonably inferred and argued that the clip art image from Scott Sullivan's Power Point presentation was an image of its MDT and that this image demonstrated infringement. Although the Court had to credit R&L's contention that the image was its MDT for purposes of summary judgment, the Court also stated this contention was fanciful. Doc. No. 257, at 11. An honest appraisal of this clip art image, which would have included asking and trying to answer the question where would Sullivan have obtained an image of its MDT, would have led a reasonable attorney to reject this theory as inherently incredible. It was objectively unreasonable for R&L to continue to contend that the clip art image was actually a photo of its MDT after Pitt Ohio provided discovery responses and documents which showed that Sullivan's

---

horseshoes, however, and suing Pitt Ohio because it practiced most of the steps of the claimed method is not good enough. R&L was required to have a reasonable basis for alleging, and was required to adduce evidence demonstrating, that Pitt Ohio practiced every step of the claimed method. *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008). R&L utterly failed to do so.

use of this image pre-dated his employment with Pitt Ohio. *See* Doc. No. 249-1, at 98-99; Doc. No. 240-1, at 89.

The Court does not ordinarily sanction an attorney or party for submitting inadmissible hearsay in opposition to a motion for summary judgment because it happens in other cases from time to time. Nevertheless, in the context of an otherwise unsupported claim of infringement, R&L's reliance on Bowman's affidavit to establish infringement by Pitt Ohio, which was the paradigm of hearsay evidence, was objectively unreasonable.

R&L's reliance on Mr. Clair's opinion to establish infringement by Pitt Ohio was unreasonable given that he could not and did not provide an opinion on the ultimate question raised by the motion for summary judgment. *Compare with MarcTec*, 664 F.3d at 919-20 (holding that although exclusion of expert testimony under *Daubert* does not automatically warrant a finding of litigation misconduct, award of attorney's fees was appropriate in that case in part because patentee's expert's testimony did not meet even minimal standards of reliability).

R&L also mischaracterized and exaggerated the state of the record in its brief in opposition to Pitt Ohio's motion for attorney's fees. Most notably, as Pitt Ohio correctly observes, R&L asserts that this Court agreed with its expert, Mr. Clair, and concluded that Pitt Ohio created a strip sheet using in-cab scanning during the feasibility study. Doc. No. 262, at 12 n.4 (citing the Court's order denying R&L's Rule 56(d) motion, Doc. No. 255, at 7). Had the Court actually come to that conclusion, then it seems obvious that it would have denied Pitt Ohio's motion for summary judgment, since this would have been evidence that Pitt Ohio practiced the last step of the patent. In actuality, in the section of the order cited by R&L, the Court was addressing R&L's contention that it needed more time to discover whether Pitt Ohio

-20-

had created a strip sheet during the in-cab scanning road test before responding to Pitt Ohio's motion for summary judgment. In denying R&L's motion, the Court pointed out that Scott Sullivan testified that Pitt Ohio's normal procedure includes preparing a strip sheet based on messages sent from the driver and that during the road test the driver followed the normal procedures. Doc. No. 255, at 7. Thus, the Court concluded, "the only logical inference is that a strip sheet was created." *Id.* The Court, however, unequivocally did not state or conclude that Pitt Ohio created a strip sheet using in-cab scanning. R&L's contention that the Court agreed with Mr. Clair on this point is a misrepresentation of the record.

R&L also misstated Mr. Clair's opinion in its opposition to Pitt Ohio's motion. R&L states that "Mr. Clair determined it was reasonable to conclude that Pitt Ohio is practicing the '078 Patent." Doc. No. 262, at 12. That statement is incorrect, however. Mr. Clair opined that Pitt Ohio *may have* practiced the '078 Patent. Moreover, as previously stated, Mr. Clair completely left open the only issue raised in Pitt Ohio's motion - whether it practiced the last step of the patent. Indeed, Mr. Clair's opinion was essentially nothing more than speculation that Pitt Ohio practiced every step of the patent. *See* Doc. No. 257, at 12-13.

The Court finds that R&L misstates the record when it argues its lawsuit was reasonably grounded because its evidence shows that Pitt Ohio scanned documents after March 26, 2009, the date when Pitt Ohio averred it terminated the in-cab scanning test. *See* Doc. No. 262, at 5. As the Court pointed out in denying R&L's Rule 56(d) motion, *R&L's own witness confirmed that Pitt Ohio's last activity scanning and transmitting images occurred on March 26, 2009.* Doc. No. 255, at 10; Doc. No. 253-6, ¶ 16.

Elsewhere R&L exaggerates the strength of its case by calling the evidence of

-21-

A3872

infringement "overwhelming" and stating the "sheer volume" of Pitt Ohio's public statements indicated that infringement was taking place. In fact, R&L's evidence of infringement was practically non-existent. There was a paucity of public statements identified by R&L and even those did not reasonably suggest infringement by Pitt Ohio.

R&L miscited and failed to cite controlling authority in opposing Pitt Ohio's motion. Most egregiously, as indicated, R&L argued that the adequacy of its pre-suit investigation is irrelevant to the exceptional case determination and failed to cite a host of cases holding that it is a relevant consideration. *See supra.* R&L also miscited and/or failed to cite controlling authority in implying or arguing that it would be denied due process without notice and an evidentiary hearing. R&L's misuse, miscitation of, and failure to cite controlling authority are all indicative of a bad faith effort to avoid sanctions under § 285.

<u>Conclusion</u>

Having reviewed the record and the pleadings, the Court is persuaded by clear and convincing evidence that this case is exceptional within the meaning for 35 U.S.C. § 285 for the reasons stated herein. A district court is not required to grant an award of attorney's fees after determining that a case is exceptional under § 285. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001)("[T]he amount of attorney fees awarded may be zero, even though the case is exceptional."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128 (Fed. Cir. 1993) ("[N]ot every exceptional case warrants the award of attorney fees."). Attorney's fees should be awarded to an accused infringer under § 285 only if necessary to prevent a "gross injustice." *Forest Lab.*, 339 F.3d at 1329. The Court concludes that it would be grossly unjust if Pitt Ohio were not awarded its reasonable attorney's fees and costs in this case. Due to opposing

-22-

counsels' failure to conduct a reasonable pre-suit investigation, and their filing of and prosecuting a baseless and frivolous infringement claim, Pitt Ohio was required to incur substantial litigation expenses. An award of attorney's fees is necessary to deter similar unprofessional and frivolous conduct in future cases and to provide just compensation to Pitt Ohio.

Section 285 contemplates a two-step process in which the trial court first determines whether the case is exceptional and whether the prevailing party should be awarded its reasonable attorney's fees. If the district court determines that an award of attorney's fees is appropriate, the prevailing party then submits a fee petition based on the lodestar amount, *i.e.*, a reasonable number of hours expended billed at a reasonable hourly rate. *Special Devices*, 269 F.3d at 1344-45; *Maxwell v. Angel-Etts of Ca., Inc.*, 53 Fed. Appx. 561, 568 (Fed. Cir. 2002).

Accordingly, Pitt Ohio is ordered to submit a properly supported fee petition using the lodestar method within thirty-day (30) days of the date of this order. Further briefing on Pitt Ohio's fee petition, *i.e.*, a brief in opposition and a reply brief, shall be according to the schedule provided by S.D. Ohio Civ. R. 7.2(a)(2).


**IT IS SO ORDERED**.


Dated: March 6, 2012                     s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                              Senior United States District Judge

A3874

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. | : MDL  Docket No. 1:09-md-2050 |
| ———————————————— | : Case No. 2:10-cv-90 |
| THIS DOCUMENT APPLIES TO: | : |
| R&L Carriers, Inc., | : |
| Plaintiff, | : |
| v. | : |
| Pitt Ohio Express, Inc., | : |
| Defendant. | : |

**ORDER**

This matter is before the Court on Defendant Pitt Ohio Express, Inc.'s ("Pitt Ohio")

petition for attorney's fees and costs (Doc. No. 266).  On March 6, 2012, the Court entered an

order (Doc. No. 265) declaring this case exceptional within the meaning of 35 U.S.C. § 285 and

awarding Pitt Ohio its reasonable attorney's fees and costs incurred in defending this lawsuit.

The same order directed Pitt Ohio to submit a fee petition based on the lodestar amount, *i.e.*, a

reasonable number of hours expended billed at a reasonable hourly rate.  Doc. No. 265, at 23.  In

response to the Court's order, Pitt Ohio submitted the instant fee petition seeking attorney's fees

of $347,107.50, expenses of $3,266.46, and costs of $3,848.05.  Plaintiff R&L Carriers, Inc.

("R&L") has filed its opposition to Pitt Ohio's fee petition (Doc. No. 269), and Pitt Ohio has

replied.  Doc. No. 271.  Accordingly, Pitt Ohio's fee petition is ripe for disposition.

-1-

A3875

Pitt Ohio's attorney's fee application breaks down as follows:

| Attorney | Hours Billed | Hourly Rate | Total Fees Claimed |
|---|---|---|---|
| G. Jankowski | 64.7 | $425 | $27,497.50 |
| | 153.5 | $445 | $68,307.50 |
| | 31.5 | $470 | $14,805.00 |
| M. Dever | 115.2 | $515 | $59,328.00 |
| | 145.5 | $540 | $78,570.00 |
| | 18.0 | $555 | $9,990.00 |
| R. Harper | 16.1 | $490 | $7,889.00 |
| | 6.5 | $500 | $3,250.00 |
| M. Landes | 7.1 | $300 | $2,130.00 |
| C. Salvatore | 16.1 | $235 | $3,783.50 |
| | 121.1 | $245 | $29,669.50 |
| J. Marks | 18.2 | $215 | $3,913.00 |
| M. Baird | 29.9 | $260 | $7,774.00 |
| Paralegal/Staff | | | |
| S. Ferrare | 13.3 | $200 | $2,660.00 |
| | 87.2 | $200 | $17,440.00 |
| | 35.2 | $205 | $7,216.00 |
| K. Carradine | 8.3 | $200 | $1,660.00 |
| M. Lange | 4.1 | $190 | $779.00 |
| E. Minnetti | 2.7 | $165 | $445.50 |
| Totals | 894.2 | | $347,107.50 |

Doc. No. 266-1, at 23.

Because this is a patent case, the law of the Federal Circuit applies to Pitt Ohio's fee application. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). Before

-2-

A3876

considering any objections to specific items in Pitt Ohio's application, however, the Court first addresses a more general objection by R&L to Pitt Ohio's claim for fees.

R&L's brief in opposition more or less suggests that the Court deny almost all of Pitt Ohio's claimed fees because Pitt Ohio rejected its reasonable proposals to keep costs down through an informal information exchange and because Pitt Ohio unreasonably failed to provide adequate assurances that it was not infringing the patent-in-suit. The Court will not relitigate these issues. The Court's order finding this case exceptional under § 285 found that R&L unreasonably persisted in maintaining this lawsuit despite nearly overwhelming evidence of non-infringement by Pitt Ohio and unreasonably rejected adequate assurances of non-infringement tendered by Pitt Ohio. Doc. No. 265, at 18 & 18 n.3. Therefore, to the extent that R&L implies that Pitt Ohio unreasonably incurred legal fees due to the manner in which it defended the case, the argument is rejected.

Having said that, however, the Court agrees with R&L that Pitt Ohio's fee petition is excessive, although perhaps not to the degree argued by R&L.[1] In the main, the areas

---

[1] Pitt Ohio's reply brief suggests that the Court should afford its fee petition a presumption of reasonableness since Pitt Ohio has already reviewed and actually paid for fees billed by its counsel. In other words, counsel for Pitt Ohio essentially argues that the fact that the client paid the bill shows that the attorney's fees it now claims are commercially reasonable and should, therefore, be approved by this Court without close scrutiny. While this is an attractive argument, and Pitt Ohio cites a district court case in support of it, its position seems to be in conflict with Federal Circuit law on fee petitions. *See Codex Corp. v. Milgo Elec. Corp.*, 717 F.2d 622, 632 (Fed. Cir. 1983). In *Codex*, the Court specifically rejected the applicant's argument that "due to the arms length relationship with its attorney, great weight should be given to bargained-for fees." *Id.* The Court also stated that "[a] court would be shirking its responsibility to render a principled decision were it to accept without scrutiny and close examination the fees agreed upon by client and counsel." *Id.* Accordingly, the Court will not afford Pitt Ohio's fee application any presumption of reasonableness simply because Pitt Ohio has actually already paid the fees billed.

-3-

of concern for the Court are block billing, duplication of effort, and excessive conferencing by defense counsel. The Court agrees with R&L that fees billed by attorney R.T. Harper are not reasonable and will be disallowed. Additionally, the Court agrees with R&L that the hours billed by defense counsel preparing and submitting its fee petition are excessive and unreasonable.

While R&L has submitted an extensive list of objections to specific entries of Pitt Ohio's fee petition, the Court will not issue seriatim rulings on these objections. *See Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.,* 264 F. Supp.2d 753, 775 (S.D.Ind. 2003) (noting that in a case with a voluminous fee application, "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application.")(citing *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 2nd Cir. 1983)). Rather, it is reasonable in such a case for the court to make a reasonable percentage deduction from the hours claimed. *Id.* That is what the Court will do in this case. R&L, however, does not object to the hourly rates charged by defense counsel. Accordingly, the Court will assume that the rates charged by counsel are reasonable without further review.

A. Block Billing, Duplicative Effort, and Conferencing

Pitt Ohio's lodestar summary worksheet (Doc. No. 266-1) reports that all counsel devoted 60.7 hours to "case management and litigation strategy" - in other words, conferencing with each other. While conferencing among counsel is both inevitable and important, the Court concludes that 60 hours of conferencing was excessive in this fairly straightforward, non-technical patent infringement case. *Compare with Yeager v. Bowlin,* No. Civ. 2:08-102 WBS JFM, 2010 WL 2303273, at *8-*10 (E.D.Cal. June 7, 2010) (in a Lanham Act case involving

-4-

A3878

802 hours of claimed attorney's fees, counsel billed and court allowed 8.3 hours for conferencing). Thus, a reduction in the hours claimed due to excessive conferencing is appropriate.

Additionally, Pitt Ohio's billing records indicate redundancy or duplication of effort among counsel, mostly between Ms. Jankowski and Mr. Dever, and particularly involving reading and reviewing pleadings, court orders, correspondence, and emails. Thus, a reduction in the hours claimed due to redundancy or duplicative effort is appropriate.

Pitt Ohio's time sheets also indicate some block billing - or grouping several tasks together under a single time entry - occurred. On balance, however, the Court is satisfied that block billing is not a substantial problem with Pitt Ohio's fee petition.

A 15% reduction in attorney's fees claimed by Pitt Ohio, or $52,066.13, is appropriate due to excessive conferencing, redundancy, and duplication of effort.

### B. Robert T. Harper

Attorney Robert T. Harper billed approximately 23 hours in this case at rates of $490 to $500 per hour. It is not clear to the Court what role Mr. Harper played in this litigation. Mr. Harper did not enter an appearance in the case but he is listed on invoices as the "legal contact," which the Court interprets to mean that he is the firm's principal relationship manager for Pitt Ohio. In any event, a substantial number of Mr. Harper's time entries are vague. For instance, Mr. Harper's entries include, among others, "updates re:", Doc. No. 267 at 4, "input on answer," *id.* at 5, "discussion re: Disclosure Filing and answer, *id.*, "follow up on case" and "review documents," *id.* at 9, "update regarding case status," *id.* at 76, and "input re" depositions and settlement discussions, *id.* at 89. Counsel for Pitt Ohio assigned two partners to work on this

-5-

A3879

case.  Billing time for yet a third partner, whose contribution to the successful resolution of the case cannot be ascertained based on the information before the Court, was unnecessary and unreasonable.  All of Mr. Harper's hours will be disallowed.

### C. Fee Petition

Pitt Ohio claims $51,743.00 in attorney's fees for 152.5 hours of time spent preparing its fee petition through the filing of its principal brief.  This represents about 17% of the total hours claimed by Pitt Ohio and is equal to about 20% of the total non-fee litigation activities.  Pitt Ohio then claims it expended another 69.40 hours of attorney time and $20,514.00 filing its reply brief in support of its fee petition. While the Court agrees with Pitt Ohio that since this case is controlled by Federal Circuit case law, the 3% cap on fee petition preparation fees established by the Sixth Circuit in *Coulter v. State of Tenn.*, 805 F.2d 146 (6th Cir. 1986) does not apply, 221 hours spent preparing and defending the fee petition in this case is clearly excessive.  Indeed, a fee petition should not result in a second major litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While R&L interposed a number of objections to Pitt Ohio's fee petition, to which Pitt Ohio was required to respond, litigating these issues should have been a fairly straightforward task, including briefing.  A more reasonable number of hours allowable for preparing and defending the fee petition is 75, or about half of what Pitt Ohio has actually claimed through the filing of its principal brief.  Accordingly, the Court will allow $25,447.38 in attorney's fees for  preparing the fee petition.[2]

### D. Paralegal and Clerical Fees

R&L objects to $3,361 in fees for 7.9 hours of work claimed by Pitt Ohio for

---

[2]        Calculated as follows: $51,743/152.50 x 75 = $25,447.38

A3880

clerical work performed by paralegals, such as updating case files and calling court reporters. In

*Missouri v. Jenkins*, 491 U.S. 274 (1989), a lodestar fee case arising under 42 U.S.C. § 1988, the

Supreme Court indicated that fees for clerical work performed by paralegals are recoverable, but

not at prevailing market rates for paralegals. *Id.* at 288 n.10. The Court proffered a non-

exhaustive lists of tasks that would be compensable at the prevailing market rate for paralegals:

factual investigation, including locating and interviewing witnesses, assistance with depositions,

interrogatories and document production, compilation of statistical and financial data, checking

legal citations, and drafting correspondence. *Id.* Tasks not falling within this list, or reasonably

related to this list of tasks, presumably would not be compensable at paralegal rates.

   In this case, R&L has correctly characterized the tasks to which it objects as

clerical in nature. *See generally* Doc. No. 269, at 18-19. Therefore, compensating Pitt Ohio for

clerical services at the full paralegal rate is not appropriate. Neither side, however, has proposed

an alternative reasonable market rate for performing secretarial or clerical tasks. It is, however,

Pitt Ohio's burden to demonstrate the reasonableness of its fee application. Since it has not

proposed a reasonable rate for performance of clerical tasks, the Court will disallow $3,361 for

performance of clerical tasks by paralegals.

### E. Redactions

   R&L also objects to a number of entries in Pitt Ohio's time sheets because they

contain excessive redactions. As a result of the redactions, R&L argues that it is impossible to

know whether the hours claimed by Pitt Ohio were reasonably expended. Pitt Ohio states that

some of the entries were redacted to preserve the attorney-client privilege and has offered to

submit the unredacted entries to the Court for an *in camera* review. An *in camera* review will

-7-

not be necessary.   While some entries have been redacted, generally the entries contain sufficient information to show that the time billed was reasonably incurred litigating the case. Accordingly, the Court will not deduct any hours claimed for excessive redactions.

### F.  Hours Not Related to this Case

R&L objects that Pitt Ohio is claiming fees for hours not related to the defense of its claims against Pitt Ohio.  Generally speaking, the alleged objectionable hours are fees incurred reviewing pleadings and keeping abreast of all the events in this MDL proceeding.  The Court will not deduct fees Pitt Ohio incurred staying current with the pleadings of the other parties in the case and matters relevant to the other MDL cases.   In addition to the need to coordinate with the Court-appointed liaison counsel for all of the MDL defendants, it seems to the Court that Pitt Ohio would have been ill-served had its counsel not reviewed all of the MDL pleadings and rulings since, as Pitt Ohio points out, there were common factual and legal issues among the defendants.  It was, therefore, entirely reasonable for counsel to review all of the pleadings and Court orders for legal theories, defenses, and case law that potentially would assist in Pitt Ohio's defense of the case.

### Summary

In summary, the Court allows Pitt Ohio's fee petition as follows:

| | |
|---|---|
| Total Fees Claimed | $347,107.50 |
| Deductions | |
| Duplication, Redundancy | ($52,066.13) |
| R.T. Harper Fees | ($11,139.00) |
| Clerical Tasks | ($3,361.00) |

-8-

A3882

| | |
|---|---|
| Fee Petition | <u>($26,295.62)</u> |
| Attorney's Fees Allowed | $254,245.75 |
| Costs | $3,848.05 |
| Expenses | $3,266.46 |

**IT IS SO ORDERED**

Dated: June 6, 2012                      <u>s/Sandra S. Beckwith</u>
                                    Sandra S. Beckwith
                            Senior United States District Judge

A3883

# United States Court of Appeals
# for the Federal Circuit

*R&L Carriers, Inc. v Qualcomm, Inc.,* No. 2014-1718

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **January 26, 2015,** counsel has authorized me to electronically file the foregoing **Joint Appendix** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Jonathan S. Franklin
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, NW
Washington, DC 20004
202-662-0466
jonathan.franklin
    @nortonrosefulbright.com

J. Derek Vandenburgh
Douglas J. Williams
CARLSON CASPERS
Capella Tower, Suite 4200
225 South Sixth Street
Minneapolis, MN  55402
612-436-9600
dvandenburgh@carlsoncaspers.com
dwilliams@carlsoncaspers.com

Richard S. Zembek
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010
713-651-5151
richard.zembek
    @nortonrosefulbright.com

Sheila Kadura
FULBRIGHT & JAWORSKI LLP
98 San Jacinto Boulevard
Suite 1100
Austin, TX 78701
512-474-5201
sheila.kadura@nortonrosefulbright.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

January 26, 2015                    /s/Robyn Cocho
                                   Robyn Cocho
                                   Counsel Press